## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK D. CHAPMAN, LEROY GWINN JR., WILLIAM MCDUFFIE, GARY GODWIN, ROBERT HOAG, CLAY KINCHELOE, BRYAN JOYCE, and TIM TAYLOR, individually and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS LLC, a Delaware corporation, <br><br> Defendant. | Cause No. 19-cv-12333 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    PARTIES ................................................................................................4

       A.    The Plaintiffs ..............................................................................4

             1.    Plaintiff Mark D. Chapman...............................................5

             2.    Plaintiff Leroy Gwinn Jr ..................................................7

             3.    Plaintiff William McDuffie...............................................8

             4.    Plaintiff Gary Godwin......................................................10

             5.    Plaintiff Robert Hoag ......................................................11

             6.    Plaintiff Clay Kincheloe .................................................13

             7.    Plaintiff Bryan Joyce.......................................................15

             8.    Plaintiff Tim Taylor ........................................................16

       B.    The Defendant ...........................................................................17

             1.    General Motors LLC........................................................18

III.   JURISDICTION AND VENUE ...........................................................18

IV.    FACTUAL ALLEGATIONS ................................................................19

       A.    The Class Vehicles....................................................................19

       B.    The Rise of Diesel Vehicles in the United States ...................20

       C.    GM's Knowledge of Incompatibility, Defectiveness, and
             Failures Associated with Bosch's CP4 Pump When Used
             with American Diesel Fuel........................................................21

       D.    Pre-Class Period Failures Are Quickly Followed by Failures
             in the Earliest GM-Manufactured CP4 Vehicles ...................28

       E.    Supposed "Remedies" are Insufficient and Costly ................52

F.    GM Knew Durability and Superiority Were Material to Consumers and Made Hollow Promises of Durability and Superiority. ................................................................55

G.    GM's "Certified Pre-Owned" Vehicle Sales Allow GM to Further Profit Off of its Fraudulent Conduct. ....................................62

H.    Allegations Establishing Agency Relationship Between Manufacturer GM and GM Dealerships. ...............................64

V.    TOLLING OF THE STATUTE OF LIMITATIONS ...................................67

VI.    CLASS ACTION ALLEGATIONS ...............................................................71

VII.    CAUSES OF ACTION...................................................................................75

A.    Multi-State Claims ...............................................................................75

COUNT I  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. § 2301, *ET. SEQ.* ...............................................................75

B.    Claims Brought on Behalf of the Alabama Class ...............................78

COUNT I  VIOLATIONS OF THE ALABAMA DECEPTIVE  TRADE PRACTICES ACT (ALA. CODE § 8-19-1, *ET SEQ.*) ...............................78

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ALABAMA LAW)...............................................................................79

COUNT III  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (ALA. CODE § 7-2-314) .......................................84

COUNT IV  UNJUST ENRICHMENT ...............................................................85

C.    Claims Brought on Behalf of the Alaska Class...............................86

COUNT I  VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT. ANN. § 45.50.471, *ET SEQ.*) ...............................................................86

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ALASKA LAW)...............................................................................87

D.    Claims Brought on Behalf of the Arizona Class...............................93

COUNT I  VIOLATIONS OF THE ARIZONA CONSUMER FRAUD
    ACT (ARIZ. REV. STAT. § 44-1521 *ET SEQ.*)............................................93

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ARIZONA
    LAW)............................................................................................................97

    E.    Claims Brought on Behalf of the Arkansas Class.............................101

COUNT I  VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE
    ACT (ARK. CODE ANN. § 4-88-101 *ET SEQ.*)........................................101

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    ARKANSAS LAW) .....................................................................................106

    F.    Claims Brought on Behalf of the Colorado Class.............................111

COUNT I  VIOLATIONS OF THE COLORADO CONSUMER
    PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *ET SEQ.*)..............111

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    COLORADO LAW).....................................................................................116

COUNT III  BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY (COLO. REV. STAT. § 4-2-314) ........................121

COUNT IV  UNJUST ENRICHMENT .................................................................122

    G.    Claims Brought on Behalf of the Connecticut Class ........................123

COUNT I  VIOLATIONS OF THE CONNECTICUT UNFAIR  TRADE
    PRACTICES ACT (CONN. GEN. STAT. ANN. § 42-110A *ET
    SEQ.*)........................................................................................................123

COUNT II  FRAUDULENT NON-DISCLOSURE (BASED ON
    CONNECTICUT LAW)...............................................................................127

    H.    Claims Brought on Behalf of the District of Columbia (D.C.)
    Class ................................................................................................132

COUNT II  FRAUDULENT CONCEALMENT (BASED ON D.C. LAW)........137

    I.    Claims Brought on Behalf of the Delaware Class .............................142

COUNT I VIOLATIONS OF THE DELAWARE CONSUMER FRAUD
ACT (DEL. CODE §§ 2513, *ET SEQ.*) ........................................................ 142

J. Claims Brought on Behalf of the Georgia Class .............................. 152

COUNT I VIOLATION OF GEORGIA'S FAIR BUSINESS
PRACTICES ACT (GA. CODE ANN. § 10-1-390 *ET SEQ.*) .................... 152

COUNT II VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE
TRADE PRACTICES ACT (GA. CODE ANN. § 10-1-370 *ET SEQ.*) ............................................................................................................ 153

COUNT III FRAUDULENT CONCEALMENT (BASED ON
GEORGIA LAW) ....................................................................................... 154

COUNT IV UNJUST ENRICHMENT ................................................................ 159

K. Claims Brought on Behalf of the Hawaii Class ............................... 159

COUNT I UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF
HAWAII LAW (HAW. REV. STAT. ANN. §§ 480, *ET SEQ.*) ................ 159

COUNT II FRAUDULENT CONCEALMENT (BASED ON HAWAII
LAW) ......................................................................................................... 163

COUNT III BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (HAW. REV. STAT. ANN. § 490:2-314) ........... 168

L. Claims Brought on Behalf of the Idaho Class .................................. 169

COUNT I VIOLATIONS OF THE IDAHO CONSUMER
PROTECTION ACT (IDAHO CIV. CODE § 48-601 *ET SEQ.*) .............. 169

COUNT II FRAUDULENT CONCEALMENT (BASED ON IDAHO
LAW) ......................................................................................................... 173

COUNT III UNJUST ENRICHMENT ................................................................ 178

M. Claims Brought on Behalf of the Illinois Class ............................... 179

COUNT I VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS
505/1 *ET SEQ.* AND 720 ILCS 295/1A) .................................................... 179

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ILLINOIS LAW) ...................................................................................183

COUNT III  BREACH OF THE IMPLIED WARRANTY FOR MERCHANTABILITY (810 ILCS 5/2-314) ..............................187

COUNT IV  UNJUST ENRICHMENT ..............................................................188

    N.    Claims Brought on Behalf of the Indiana Class.................189

COUNT I  VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3) ...................................189

COUNT II  FRAUD BY CONCEALMENT (BASED ON INDIANA LAW) ...................................................................................190

COUNT III  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (IND. CODE § 26-1-2-314) ................................195

COUNT IV  UNJUST ENRICHMENT ..............................................................196

    O.    Claims Brought on Behalf of the Iowa Class....................197

COUNT I  CONSUMER FRAUDS ACTS IN VIOLATION OF IOWA LAW (IOWA CODE § 714H.1 *ET SEQ.*)....................................197

COUNT II  FRAUDULENT CONCEALMENT (BASED ON IOWA LAW) ...................................................................................201

    P.    Claims Brought on Behalf of the Kansas Class ................206

COUNT I  VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (KAN. STAT. ANN. § 50-623 *ET SEQ.*)................206

COUNT II  FRAUDULENT CONCEALMENT (BASED ON KANSAS LAW) ...................................................................................211

COUNT III  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (KAN. STAT. ANN. § 84-2-314)........................216

    Q.    Claims Brought on Behalf of the Kentucky Class .............217

COUNT I  VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. ANN. § 367.110 *ET SEQ.*)........217

COUNT II FRAUD BY CONCEALMENT (BASED ON KENTUCKY LAW) ................................................................................................221

    R. Claims Brought on Behalf of the Louisiana Class ............................226

COUNT I VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. STAT. ANN. § 51:1401 *ET SEQ.*) ...............................................................226

COUNT II FRAUDULENT CONCEALMENT (BASED ON LOUISIANA LAW) ...................................................................................230

COUNT III BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/WARRANTY AGAINST REDHIBITORY DEFECTS (LA. CIV. CODE ART. 2520, 2524)............235

    S. Claims Brought on Behalf of the Maine Class ................................236

COUNT I VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)................................................................................................236

COUNT II FRAUDULENT CONCEALMENT (BASED ON MAINE LAW) ................................................................................................237

COUNT III BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (ME. REV. STAT. ANN. TIT. § 2-314).............241

    T. Claims Brought on Behalf of the Maryland Class ............................242

COUNT I VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE ANN., COM. LAW § 13-101 *ET SEQ.*) ..................................................................................................242

COUNT II FRAUDULENT CONCEALMENT (BASED ON MARYLAND LAW)...............................................................................247

COUNT III BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MD. CODE COM. LAW § 2-314) ....................252

    U. Claims Brought on Behalf of the Massachusetts Class....................253

COUNT I  VIOLATIONS OF THE MASSACHUSETTS CONSUMER
PROTECTION ACT (MASS. GEN. LAWS CH. 93A)..............................253

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
MASSACHUSETTS LAW).........................................................................253

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (MASS. GEN. LAWS CH. 106, § 2-314) ..........258

V.   Claims Brought on Behalf of the Michigan Class ...........................259

COUNT I  VIOLATION OF THE MICHIGAN CONSUMER
PROTECTION ACT  (MICH. COMP. LAWS § 445.903 *ET SEQ.*) .........259

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
MICHIGAN LAW) ...................................................................................264

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (MICH. COMP. LAWS § 440.2314)...................268

COUNT IV  UNJUST ENRICHMENT .................................................................269

W.   Claims Brought on Behalf of the Minnesota Class...........................270

COUNT I  VIOLATION OF THE MINNESOTA PREVENTION OF
CONSUMER FRAUD ACT  (MINN. STAT. § 325F.68 *ET SEQ.*)...........270

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
MINNESOTA LAW) ..................................................................................274

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (MINN. STAT. § 336.2-314)...............................279

X.   Claims Brought on Behalf of the Mississippi Class .........................280

COUNT I  VIOLATION OF MISSISSIPPI CONSUMER PROTECTION
ACT (MISS. CODE ANN. § 75-24-1, *ET SEQ.*)........................................280

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
MISSISSIPPI LAW)...................................................................................280

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (MISS. CODE ANN. § 75-2-314) ......................285

Y.     Claims Brought on Behalf of the Missouri Class .............................286

COUNT I  VIOLATIONS OF THE MISSOURI MERCHANDISING
        PRACTICES ACT (MO. REV. STAT. § 407.010 *ET SEQ.*) .....................286

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
        MISSOURI LAW).................................................................................290

COUNT III  BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (MO. REV. STAT. §  400.2-314) ........................295

COUNT IV  UNJUST ENRICHMENT ................................................................296

Z.     Claims Brought on Behalf of the Montana Class .............................297

COUNT I  VIOLATION OF MONTANA UNFAIR TRADE
        PRACTICES AND CONSUMER PROTECTION ACT OF 1973
        (MONT. CODE ANN. § 30-14-101 *ET SEQ.*) ............................................297

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
        MONTANA LAW) ...............................................................................301

COUNT III  BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (MONT. CODE § 30-2-314)................................306

AA.   Claims Brought on Behalf of the Nebraska Class............................307

COUNT I  VIOLATION OF THE NEBRASKA CONSUMER
        PROTECTION ACT (NEB. REV. STAT. § 59-1601 *ET SEQ.*) ...............307

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
        NEBRASKA LAW) ..............................................................................311

COUNT III  BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (NEB. REV. STAT. § 30-2-314) ........................316

BB.   Claims Brought on Behalf of the Nevada Class ...............................317

COUNT I  VIOLATIONS OF THE NEVADA DECEPTIVE TRADE
        PRACTICES ACT (NEV. REV. STAT. § 598.0903 *ET SEQ.*) ................317

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEVADA
        LAW)...................................................................................................321

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (NEV. REV. STAT. § 104.2314).........................326

    CC.   Claims Brought on Behalf of the New Hampshire Class
Under New Hampshire Law.................................................................327

COUNT I  VIOLATION OF NEW HAMPSHIRE CONSUMER
PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1 *ET
SEQ.*)..................................................................................................327

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW
HAMPSHIRE LAW).................................................................................332

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.H. REV. STAT. ANN. § 382-A:2-314)..........337

COUNT IV  UNJUST ENRICHMENT ...............................................................339

    DD.   Claims Brought on Behalf of the New Jersey Class Under
New Jersey Law .................................................................................340

COUNT I  VIOLATIONS OF THE NEW JERSEY CONSUMER
FRAUD ACT (N.J. STAT. ANN. § 56:8-1 *ET SEQ.*) ................................340

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW
JERSEY LAW).......................................................................................344

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.J. STAT. ANN. §12A:2-314) .........................349

    EE.   Claims Brought on Behalf of the New Mexico Class ......................350

COUNT I  VIOLATIONS OF THE NEW MEXICO UNFAIR  TRADE
PRACTICES ACT (N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)...................350

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW
MEXICO LAW) ....................................................................................355

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.M. STAT. ANN. § 55-2-314) .........................360

    FF.   Claims Brought on Behalf of the New York Class ...........................361

COUNT I  VIOLATIONS OF NEW YORK GENERAL BUSINESS
     LAW § 349 (N.Y. GEN. BUS. LAW § 349) ................................................361

COUNT II  VIOLATIONS OF NEW YORK GENERAL BUSINESS
     LAW § 350 (N.Y. GEN. BUS. LAW § 350) ................................................365

COUNT III  FRAUDULENT CONCEALMENT (BASED ON NEW
     YORK LAW)..................................................................................................368

COUNT IV  BREACH OF IMPLIED WARRANTY OF
     MERCHANTABILITY (N.Y. U.C.C. § 2-314)..........................................374

COUNT V  UNJUST ENRICHMENT.................................................................375

     GG.   Claims Brought on Behalf of the North Carolina Class....................375

COUNT I  VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND
     DECEPTIVE ACTS AND PRACTICES ACT (N.C. GEN. STAT.
     § 75-1.1 *ET SEQ.*)............................................................................................375

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NORTH
     CAROLINA LAW) ........................................................................................380

COUNT III  BREACH OF IMPLIED WARRANTY OF
     MERCHANTABILITY (N.C. GEN. STAT. § 25-2-314) ..........................385

     HH.   Claims Brought on Behalf of the North Dakota Class......................386

COUNT I  VIOLATIONS OF THE NORTH DAKOTA CONSUMER
     FRAUD ACT (N.D. CENT. CODE § 51-15-02)........................................386

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NORTH
     DAKOTA LAW)..............................................................................................391

COUNT III  BREACH OF IMPLIED WARRANTY OF
     MERCHANTABILITY (N.D. CENT. CODE § 41-02-31) ........................396

     II.    Claims Brought on Behalf of the Ohio Class.....................................397

COUNT I  VIOLATIONS OF THE OHIO CONSUMER SALES
     PRACTICES ACT (OHIO REV. CODE § 1345.01 *ET SEQ.*)...................397

COUNT II  FRAUDULENT CONCEALMENT (BASED ON OHIO
     LAW)..............................................................................................................402

COUNT III  BREACH OF IMPLIED WARRANTY IN TORT .........................406

    JJ.    Claims Brought on Behalf of the Oklahoma Class ..........................407

COUNT I  VIOLATION OF OKLAHOMA CONSUMER
PROTECTION ACT (OKLA. STAT. TIT. 15, § 751 *ET SEQ.*) ...............407

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
OKLAHOMA LAW)..................................................................413

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (OKLA. STAT. ANN. § 12A-2-314) .................418

    KK.   Claims Brought on Behalf of the Oregon Class...............................419

COUNT I  VIOLATIONS OF THE OREGON UNLAWFUL TRADE
PRACTICES ACT  (OR. REV. STAT. § 646.605, ET SEQ.)....................419

COUNT II  FRAUDULENT CONCEALMENT (BASED ON OREGON
LAW) .................................................................................423

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (OR. REV. STAT. § 72-3140).............................428

    LL.    Claims Brought on Behalf of the Pennsylvania Class .....................429

COUNT I  VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW (73 P.S.
§ 201-1 *ET SEQ.*)..........................................................................429

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
PENNSYLVANIA LAW) ........................................................434

COUNT III  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (13 PA. CONS. STAT. ANN. § 2314) ...............439

COUNT IV  UNJUST ENRICHMENT .............................................................440

    MM.  Claims Brought on Behalf of the Rhode Island Class .....................441

COUNT I  VIOLATION OF THE RHODE ISLAND UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN.
LAWS § 6-13.1 *ET SEQ.*) .........................................................441

COUNT II  FRAUDULENT CONCEALMENT (BASED ON RHODE
    ISLAND LAW) ...........................................................................443

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (R.I. GEN. LAWS § 6A-2-314)...........................447

COUNT IV  UNJUST ENRICHMENT ................................................................448

    NN.   Claims Brought on Behalf of the South Carolina Class...................450

COUNT I  VIOLATIONS OF THE SOUTH CAROLINA UNFAIR
    TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10 *ET*
    *SEQ.*).......................................................................................450

COUNT II  VIOLATIONS OF THE SOUTH CAROLINA
    REGULATION OF MANUFACTURERS, DISTRIBUTORS,
    AND DEALERS ACT (S.C. CODE ANN. § 56-15-10 *ET SEQ.*) .............454

COUNT III  FRAUDULENT CONCEALMENT (BASED ON SOUTH
    CAROLINA LAW) ......................................................................455

COUNT IV  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (S.C. CODE § 36-2-314) .....................................460

    OO.   Claims Brought on Behalf of the South Dakota Class.....................461

COUNT I  VIOLATIONS OF SOUTH DAKOTA DECEPTIVE TRADE
    PRACTICES AND CONSUMER PROTECTION LAW (S.D.
    CODIFIED LAWS § 37-24-1 *ET SEQ.*) ........................................461

COUNT II  FRAUDULENT CONCEALMENT (BASED ON SOUTH
    DAKOTA LAW)..........................................................................465

COUNT III  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (S.D. CODIFIED LAWS § 57A-2-314) ..............470

    PP.   Claims Brought on Behalf of the Tennessee Class ..........................471

COUNT I  VIOLATIONS OF THE TENNESSEE CONSUMER
    PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET SEQ.*) .........471

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
    TENNESSEE LAW) ....................................................................476

COUNT III  BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY (TENN. CODE ANN. § 47-2-314).....................480

    QQ.   Claims Brought on Behalf of the Utah Class ....................481

COUNT I  VIOLATIONS OF THE UTAH CONSUMER SALES
            PRACTICES ACT (UTAH CODE ANN. § 13-11-1 *ET SEQ.*) ................481

COUNT II  FRAUDULENT CONCEALMENT (BASED ON UTAH
            LAW)...........................................................................................486

COUNT III  BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY (UTAH CODE ANN. § 70A-2-314)....................491

    RR.   Claims Brought on Behalf of the Vermont Class .............492

COUNT I  VIOLATIONS OF THE VERMONT CONSUMER FRAUD
            ACT (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*) .....................492

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
            VERMONT LAW) ...................................................................493

COUNT III  BREACH OF IMPLIED WARRANTY OF
            MERCHANTIBILITY (VT. STAT. ANN. TIT. 9A, § 2-314)..................497

    SS.   Claims Brought on Behalf of the Virginia Class .............499

COUNT I  VIOLATIONS OF THE VIRGINIA CONSUMER
            PROTECTION ACT (VA. CODE ANN. § 59.1-196 *ET SEQ.*)................499

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
            VIIRGINIA LAW) ..................................................................504

COUNT III  BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY (VA. CODE ANN. § 8.2-314) ............................508

    TT.   Claims Brought on Behalf of the Washington Class .......510

COUNT I  VIOLATIONS OF THE WASHINGTON CONSUMER
            PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010 *ET
            SEQ.*)...........................................................................................510

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
            WASHINGTON LAW)..............................................................514

COUNT III  BREACH OF IMPLIED WARRANTY OF
      MERCHANTABILITY (WASH. REV. CODE ANN. § 62A.2-314) ........519

      UU.   Claims Brought on Behalf of the West Virginia Class ....................521

COUNT I  VIOLATIONS OF THE WEST VIRGINIA CONSUMER
      CREDIT AND PROTECTION ACT (W. VA. CODE § 46A-1-101
      *ET SEQ.*) ...............................................................................................521

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WEST
      VIRGINIA LAW).......................................................................................521

COUNT III  BREACH OF IMPLIED WARRANTY OF
      MERCHANTABILITY (W. VA. CODE § 46-2-314)................................526

      VV.   Claims Brought on Behalf of the Wisconsin Class...........................527

COUNT I  VIOLATIONS OF THE WISCONSIN  DECEPTIVE TRADE
      PRACTICES ACT (WIS. STAT. § 110.18)................................................527

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
      WISCONSIN LAW)....................................................................................531

      WW.  Claims Brought on Behalf of the Wyoming Class...........................536

COUNT I  VIOLATIONS OF THE WYOMING CONSUMER
      PROTECTION ACT ...................................................................................536

(WYO. STAT. §§ 40-12-105 *ET SEQ.*)................................................................536

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
      WYOMING LAW).....................................................................................540

COUNT III  BREACH OF THE IMPLIED WARRANTY OF
      MERCHANTABILITY (WYO. STAT. §§ 34.1-2-314)............................544

PRAYER FOR RELIEF .......................................................................................546

DEMAND FOR JURY TRIAL ...........................................................................547

Mark D. Chapman, Leroy Gwinn Jr., William McDuffie, Gary Godwin, Robert Hoag, Clay Kincheloe, Bryan Joyce, and Tim Taylor, individually and on behalf of all others similarly situated ("the Class"), file this suit against Defendant General Motors LLC ("GM").  This lawsuit is based upon the investigation of counsel, the review of scientific and automotive industry papers, and the investigation of experts with relevant education and experience. In support thereof, Plaintiffs state as follows:

## I.       INTRODUCTION

1.       General Motors LLC ("GM") has sold hundreds of thousands of diesel-tank automobiles equipped with high-pressure fuel injection pumps that are proverbial ticking time bombs, wholly unbeknownst to an unassuming American public who ponies up big bucks for these vehicles' fictitious "durability," "longevity," and "topnotch fuel economy." GM promised consumers the continued reliability of their diesel engines, but with increased fuel efficiency and power at greater fuel efficiency.  However, this came with a hidden and catastrophic cost that was secretly passed on to consumers. The catalyst is the Bosch-supplied CP4 high-pressure fuel injection pump, which comes standard in 2011-2016 GMC and Chevrolet diesel trucks equipped with 6.6L Duramax engines, and which unbeknownst to consumers is incompatible with American diesel fuel.

2.       GM saw Bosch's CP4 fuel injection pump as a cost-saving measure: it uses less fuel by exerting higher fuel pressures. The CP4 fuel pump gave GM a way to profit by advertising the trucks' superior fuel efficiency, while also being able to tout the reliability and durability that diesel vehicles are known for. After the CP4 fuel injection system worked relatively successfully in vehicles in Europe, GM sought to use the CP4 pump in American vehicles, promising consumers exactly what they were looking for—improvements in torque, horsepower, durability, and

fuel economy.  But GM could never deliver on that promise for American vehicles because the CP4 fuel pump is not compatible with American diesel fuel; in fact, the improved fuel efficiency that comes with the CP4 pump *also* comes at the cost of running the pump nearly dry so that it destroys itself, and—ultimately—destroys the fuel injection system and the engine altogether. This "catastrophic" (*i.e.*, complete and total) pump failure can occur as early as "mile 0," as the pump disintegration process begins at the very first fill of the tank, and starts damaging the vehicle's fuel injection system and engine immediately upon the vehicle's first use.

3.      American diesel fuel is cleaner than European diesel, which means that it also provides less lubrication than European diesel fuel. When American diesel is run through the fast-moving, high-pressure, lower volume CP4 pump, it struggles to maintain lubrication.  The cleaner, thinner diesel allows air pockets to form inside the pump during operation, causing metal to rub against metal, generating metal shavings which are dispersed throughout the fuel injection system, contaminating and destroying the fuel system and indeed the entire engine.  The pump secretly deposits metal shavings and debris throughout the fuel injection system and the engine until it suddenly and catastrophically fails without warning.   Such catastrophic failure often causes the vehicle to shut off while in motion and renders it unable to be restarted, because the vehicle's fuel injection system and engine component parts have been completely contaminated and destroyed. The sudden and unexpected shutoff of the vehicle's engine while it is in motion and subsequent inability to restart the vehicle present an inherent risk to consumer safety—one which GM has recognized in the past—and one which Plaintiffs were not aware of prior to purchasing the Class Vehicles. Thus, contrary to GM's claims that the CP4 fuel injection system renders the Class Vehicles more reliable, more durable, more powerful, and more fuel-efficient, the CP4 fuel injection system actually renders them unreasonably costly, destructive, and dangerous.

4.    Moreover, when catastrophic CP4 pump failure occurs, it results in an outrageously expensive repair bill, ranging from $8,000-$20,000 even when "covered under warranty," all for a repair that will not truly ameliorate the issue so long as the vehicle is being filled with American diesel.

5.    Compound this with the fact that these vehicles come with a hefty price tag to begin with, as known prices range from approximately $43,000 to $75,000 if purchased brand new and from $36,000 to $75,000 if purchased used. Diesel fans pay so much more for their trucks because diesel trucks are expected to last for 500,000 to 800,000 miles, and have more power *and* a lower fuel bill than their gasoline counterparts.

6.    The kicker is, GM knew from the specifications of the pump as compared to the specifications of American diesel, that the CP4 fuel pump was clearly incompatible with the consistency of American diesel fuel. Indeed, well before GM ever chose to implement the CP4 component part (as incorporated in the diesel engines of the subject Class Vehicles), the issue of incompatibility was (or should have been) known and yet was totally ignored in the design of the Class Vehicles' engine systems.  This is further evidenced by the fact that GM, as well as its fellow "Big Three" automotive manufacturers, had experience with widespread catastrophic fuel injection pump failures when cleaner diesel standards were first implemented in the 1990s.  By 2002, the Truck & Engine Manufacturers Association ("EMA")—of which GM is a member company[1]—acknowledged that the lower lubricity of American diesel could cause catastrophic failure in fuel injection system components that are made to European diesel specifications.  Not only did GM fail to inform American consumers and fail to stop touting the fabricated benefits of the

---

[1] *See* Truck & Engine Manufacturers Association (EMA) membership webpage, http://www.truckandenginemanufacturers.org/companies/ (last visited Aug. 5, 2019).

vehicles containing CP4 pumps, they actively attempted to shift the blame to the American consumers.  For instance, GM claimed it was *consumers'* improper use of contaminated or substandard fuels that damaged the vehicles' fuel system, even when GM knew that the malfunction was *actually* the result of the CP4 fuel injection pump design, which was simply not fit for American diesel fuel.

7.      Put simply, Plaintiffs and all members of the proposed Class paid a premium for their diesel vehicles, and were harmed by being sold vehicles with a defective fuel injection pump that is substandard for American fuel. Plaintiffs and similarly situated Class members have suffered from an innately manifested— though not readily apparent—defect that secretly existed in the Class Vehicles at the time of sale (or lease), and which began damaging the Class Vehicles and their fuel delivery systems upon first use.  Plaintiffs were thus injured at the point of sale and throughout their ownership of the vehicle and paid far more than they would have if GM had told the truth.

## II.    PARTIES

### A.    The Plaintiffs

8.      For ease of reference, the following chart identifies the Representative Plaintiffs and their vehicles:

| Representative Plaintiff | Make | Model | Year |
|---|---|---|---|
| Mark D. Chapman | Chevrolet | Silverado 2500 HD | 2016 |
| Leroy Gwinn Jr. | Chevrolet | Silverado 3500 HD | 2014 |
| William McDuffie | GMC | Sierra 2500 HD | 2014 |
| Gary Godwin | Chevrolet | Silverado 2500 HD | 2016 |
| Robert Hoag | GMC | Sierra 3500 HD | 2012 |
| Clay Kincheloe | Chevrolet | Silverado 3500 HD | 2015 |
| Bryan Joyce | GMC | Sierra 2500 | 2015 |
| Tim Taylor | Chevrolet | Silverado 3500 | 2013 |

**Plaintiff Mark D. Chapman**

9.     Plaintiff Mark D. Chapman (for the purposes of this paragraph, "Plaintiff") is a citizen of the State of New York, and domiciled in Tully, New York. On or about May 10, 2016, Plaintiff purchased a new Chevrolet Silverado 2500 HD, VIN 1GC1KUE87GF193498 (for the purposes of this paragraph, the "Class Vehicle") for approximately $53,000 from Jack McNerney Chevrolet, an authorized GM dealership in Tully, New York. Plaintiff still owns the vehicle and it presently has approximately 80,000 miles on the odometer. Plaintiff purchased his Silverado as his daily driving vehicle to get to and from work, and for daily activities. On August 5, 2018, with just 52,000 miles on the Class Vehicle's odometer, Plaintiff experienced a catastrophic failure of his CP4 fuel injection pump. Plaintiff was driving the Class Vehicle on a highway when the truck suddenly lost power and shut down. The vehicle was towed to the GM dealership where he purchased the Vehicle, Jack McNerney Chevrolet in Tully, NY. After a day of diagnostics, the GM dealership informed him that the CP4 fuel pump had "detonated" and damaged his entire fuel system. The repair estimate quoted by the GM dealership was approximately $15,000, which GM then refused to cover under warranty despite the fact the truck only had approximately 52,000 miles on the odometer. At the time of the catastrophic failure Plaintiff's Class Vehicle was still under a GM-backed 5-year/100,000 mile manufacturing warranty. Plaintiff took the vehicle to Double Down diesel repair shop for the repair. Plaintiff had to replace the entire fuel system at his own expense, which included approximately $9,000 in out-of-pocket repair costs.  In an effort to mitigate future CP4 pump failures, Plaintiff (like so many other Class members) had no choice but to modify the vehicle with a CP3 fuel pump and lift pump for another (approximately) $1,000 in out-of-pocket expenses.  Plaintiff thusly brings claims individually and as a representative of the Class.

10.    In the days and weeks preceding Plaintiff's purchase, and in contemplating his needs, Plaintiff saw GM's television commercials, internet advertisements, sales brochures, and heard statements from GM dealership sales representatives wherein GM claimed that the Duramax diesel truck which Plaintiff ultimately purchased had superior fuel economy, reliability, and durability compared to other trucks in the American market. More importantly, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use. Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles, and consequently the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the GM diesel engine's CP4 high pressure fuel pump system— which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of GM's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished values of the vehicles. There is a substantial difference in the market value of the Vehicle promised by GM and the market value of the

defective vehicle received by Plaintiff, and Plaintiff did not receive the benefit of his bargain.  Plaintiff thusly brings claims individually and as a representative of the Class.

**Plaintiff Leroy Gwinn Jr**

11.   Plaintiff Leroy Gwinn Jr. (for the purposes of this paragraph, "Plaintiff") is a citizen of the State of Illinois, and domiciled in Chatham, Illinois. In or around April 2015, Plaintiff purchased a new 2014 Chevrolet Silverado 3500 HD, VIN 1GC4K0C85EF165978 (for the purposes of this paragraph, the "Class Vehicle") for approximately $58,000 from Smokey Jennings Chevrolet, an authorized GM dealership in Palmyra, Illinois. Plaintiff still owns the vehicle and it currently has approximately 49,000 miles on the odometer. Plaintiff purchased the Class Vehicle to use as his daily driver to get to and from work, and for daily activities.

12.   In the days and weeks preceding Plaintiff's purchase, and in contemplating his needs, Plaintiff saw GM's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein GM claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market. More importantly, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use. Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and

which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the GM diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of GM's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished values of the vehicles. There is a substantial difference in the market value of the vehicle promised by GM and the market value of the vehicle received by Plaintiff. Plaintiff did not receive the benefit of the bargain, but received less than what was bargained for. Moreover, Plaintiff (like so many other Class members) has had to purchase fuel lubricant additives to prevent the inevitable catastrophic CP4 fuel pump failure he awaits. Plaintiff thusly brings claims individually and as a representative of the Class.

**Plaintiff William McDuffie**

13.    Plaintiff William McDuffie (for the purposes of this paragraph, "Plaintiff") is a citizen of the State of Iowa, and domiciled in Glenwood, Iowa. In or around November 2013, Plaintiff purchased a new 2014 GMC Sierra 2500 HD, VIN 1GT121C87EF150746 (for the purposes of this paragraph, the "Class Vehicle") for approximately $51,000 from H&H Buick GMC, an authorized GM dealership in

Council Bluffs, Iowa.   Plaintiff still owns the vehicle and it currently has approximately 35,000 miles on the odometer.  Plaintiff purchased his GMC Sierra to use as his daily driving vehicle to get to and from work, and for daily activities.

14.    In the days and weeks preceding Plaintiff's purchase, and in contemplating his needs, Plaintiff saw GM's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein GM claimed the diesel truck, like the one Plaintiff would purchase, had superior fuel economy, reliability, and durability compared to other trucks in the American market. More importantly, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use. Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the GM  diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of GM's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for

the vehicles at the time of purchase, decreased performance of the vehicles, and diminished values of the vehicles. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiff, and Plaintiff did not receive the benefit of the bargain but received less than what was bargained for.  Plaintiff thusly brings claims individually and as a representative of the Class.

**Plaintiff Gary Godwin**

15.    Plaintiff Gary Godwin (for the purposes of this paragraph, "Plaintiff") is a citizen of the State of Maryland, and domiciled in Baltimore County, Maryland. On or about September 2016, Plaintiff purchased a new 2016 Chevrolet Silverado 2500 HD, VIN 1GC1KWE83GF221311 (for the purposes of this paragraph, the "Class Vehicle") for approximately $71,000 from Bob Bell Chevrolet, an authorized GM dealership in Bel Air, Maryland.  Plaintiff still owns the vehicle and it currently has approximately 18,000 miles on the odometer. Plaintiff purchased his Chevrolet Silverado as his leisure driving vehicle and to get to and from work.

16.    In the days and weeks preceding Plaintiff's purchase, and in contemplating his needs, Plaintiff saw GM's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein GM claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market. More importantly, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use. Unbeknownst

to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the GM diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of GM's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished values of the vehicles. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiff. Plaintiff did not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thusly brings claims individually and as a representative of the Class.

### Plaintiff Robert Hoag

17.     Plaintiff Robert Hoag (for the purposes of this paragraph, "Plaintiff") is a citizen of the State of Nevada, and is domiciled in Las Vegas, Nevada. On or about November 12, 2011, Plaintiff purchased a new 2012 GMC Sierra 3500 HD, VIN 1GT24C82CF128701 (for the purposes of this paragraph, the "Class Vehicle") for approximately $53,000 from AutoNation Buick GMC, an authorized GM

dealership in Henderson, Nevada. Plaintiff still owns the vehicle and it currently has approximately 56,000 miles on the odometer. Plaintiff purchased his Chevrolet Silverado as his daily driving vehicle to get to and from work, and for daily activities.

18.     In the days and weeks preceding Plaintiff's purchase, and in contemplating his needs, Plaintiff saw GM's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein GM claimed the diesel truck, like the one Plaintiff would purchase, had superior fuel economy, reliability, and durability compared to other trucks in the American market. More importantly, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use. Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the GM  diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of GM's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for

the vehicles at the time of purchase, decreased performance of the vehicles, and diminished values of the vehicles. There is a substantial difference in the market value of the vehicle promised by Defendant and the market value of the vehicle received by Plaintiff. Plaintiff do not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thusly brings claims individually and as a representative of the Class.**Plaintiff Clay Kincheloe**

19.     Plaintiff Clay Kincheloe (for purposes of this paragraph and the two paragraphs that follow, "Plaintiff") is a citizen of the State of Montana, and is domiciled in Sam Leo, Montana. In or around November 2014, Plaintiff purchased a new 2015 Chevrolet Silverado 3500 HD, VIN 1GC4KZC8XFF167781 (for the purposes of this paragraph and the two paragraphs that follow, the "Class Vehicle") for approximately $58,000 from Notbohm Motors, an authorized GM dealership in Miles City, Montana. Plaintiff still owns the vehicle and it presently has approximately 128,000 miles on its odometer. Plaintiff purchased his Silverado as his daily driving vehicle to get to and from work, to pull trailers, and for daily activities. In February 2019, with approximately 119,000 miles on the odometer, Plaintiff's vehicle experienced a catastrophic CP4 fuel pump failure.  Specifically, while towing a stock trailer with eight (8) cows on Kinsey Highway in the Miles City, MT vicinity, Plaintiff's vehicle suddenly went into reduced power mode, and then seemed to completely die shortly thereafter.  Luckily, Plaintiff was able to coast the vehicle to the side of the road, and then had the vehicle towed to the GM dealership of his original purchase (Notbohm Motors). Despite diagnosing this catastrophic failure as being caused by the implosion of the CP4 high-pressure fuel injection pump—a known, inherent defect in the Class Vehicles—GM refused to cover the price of the repair, and Plaintiff was forced to pay approximately $10,000 out of his own pocket to have the entire fuel injection system flushed and replaced.In the days and weeks preceding Plaintiff's purchase, and in contemplating his needs,

Plaintiff saw and heard GM's television commercials, internet advertisements, and radio advertisements wherein GM claimed that the Duramax diesel truck which Plaintiff ultimately purchased had superior fuel economy, reliability, and durability compared to other trucks in the American market. More importantly, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use. Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles, and consequently the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the GM diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of GM's wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished values of the vehicles. There is a substantial difference in the market value of the Class Vehicle promised by GM and the market value of the defective vehicle received by Plaintiff, and Plaintiff did not receive the benefit of his bargain.

Plaintiff thusly brings claims individually and as a representative of the Class. **Plaintiff Bryan Joyce**

22.     Plaintiff Bryan Joyce (for purposes of this paragraph and the paragraph that immediately follows, "Plaintiff") is a citizen of the State of Pennsylvania, and is domiciled in Pittsburgh, Pennsylvania. In or around March 2015, Plaintiff purchased a new 2015 GMC Sierra 2500, VIN 1GT12YE80FF135996 (for the purposes of this paragraph and the paragraph that immediately follows, the "Class Vehicle") for approximately $57,000 from Budd Baer Auto, an authorized GM dealership in Washington, Pennsylvania. Plaintiff still owns the vehicle and it presently has approximately 108,000 miles on the odometer. Plaintiff purchased his Silverado as his daily driving vehicle, and relied on the GM dealerships' statements about the Class Vehicle's durability and performance in making the underlying purchase. More importantly, in the days and weeks preceding Plaintiff's purchase, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. Absent these representations, Plaintiff would not have purchased the vehicle because it is unfit for its ordinary use. Unbeknownst to Plaintiff, at the time of acquisition, the Class Vehicle contained a defective CP4 fuel injection system that was not suitable for American vehicles and which deceived American consumers. Consequently, the vehicle could not deliver the advertised combination of durability, power, reliability, and fuel efficiency of diesel that Plaintiff relied upon. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully and unexpectedly defective nature of the GM diesel engine's CP4 high pressure fuel pump system—which is common to all Class Vehicles—prior to purchasing. Accordingly, Plaintiff and each Class member suffered concrete

economic injury as a direct and proximate result of GM's wrongful, deceptive conduct.In addition, in December 2018, with approximately 97,000 miles on the odometer, Plaintiff's Vehicle experienced the catastrophic failure of its CP4 high-pressure fuel injection pump.  Specifically, while driving on a highway in the Robinson, Pennsylvania area, Plaintiff's Vehicle completely shut off and would not restart. Plaintiff had the Vehicle towed to #1 Cochran Buick GMC of Robinson in Pittsburgh, Pennsylvania, where the GM dealership service center informed him that the CP4 fuel pump in his Class Vehicle had imploded and metal shards had dispersed throughout his Vehicle's fuel injection system. After going back-and-forth with GM about warranty coverage of the repairs, GM declined to cover the cost, and Plaintiff was forced to pay approximately $11,000 out-of-pocket for said repairs.**Plaintiff Tim Taylor**

24.    Plaintiff Tim Taylor (for purposes of this paragraph and the two immediately following paragraphs, "Plaintiff") is a citizen of the state of Virginia, and is domiciled in Lebanon, Virginia. In or around November 2012, Plaintiff purchased a new 2013 Chevrolet Silverado 3500, VIN 1GC4K0C89DF119004 (for purposes of this paragraph and the two that immediately follow, the "Class Vehicle") for approximately $60,000 from Ramey Chevrolet, an authorized GM dealership in Tazewell County, Virginia. Plaintiff purchased the vehicle to be able to use it as his daily driver, and to tow trailers recreationally. Plaintiff still owns the vehicle, and it presently has approximately 86,000 miles on its odometer.In February 2019, with approximately 80,000 miles on the odometer, Plaintiff's vehicle experienced a catastrophic CP4 fuel pump failure. Specifically, while Plaintiff was driving down Interstate 40 in the middle of Arizona, the vehicle suddenly and without warning shut down, almost as if it was out of fuel, and would not restart. Plaintiff's fuel tank needle indicated that he did have sufficient fuel, but regardless, he thought that perhaps the needle was off and had someone bring him some diesel fuel to put in the

tank. Thereafter, the vehicle still would not crank. He ultimately had someone tow his vehicle to the closest GM dealership, which was in Kingman, Arizona. The GM dealership service center diagnosed the problem as a CP4 fuel pump failure and showed him pictures of the metal that was dispersed throughout the fuel injector lines and entire fuel system. Despite recognizing this as yet another CP4 fuel pump failure, GM refused to cover the cost of the repairs, and Plaintiff was forced to pay approximately $11,000 out-of-pocket for said repairs. In the days and weeks preceding Plaintiff's purchase, and in contemplating his needs, Plaintiff saw GM's television commercials, internet advertisements, sales brochures, and heard statements from dealer sales representatives wherein GM claimed the diesel truck, like the one Plaintiff would purchase, had superior horsepower, fuel economy, reliability, and durability compared to other trucks in the American market. More fundamentally, Plaintiff relied on representations from GM that the Class Vehicle was compatible with American diesel fuel, as all GM advertisements Plaintiff ever observed contained representations of the Class Vehicles driving in America as if they were compatible with U.S. diesel fuel—*but they are not*. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, paying a high premium for the engine compared to what they would have paid for a gas-powered engine or other non-defective diesel truck, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished values of the vehicles. There is a substantial difference in the market value of the vehicle promised by GM and the market value of the vehicle received by Plaintiff. Plaintiff did not receive the benefit of the bargain, but received less than what was bargained for. Plaintiff thusly brings claims individually and as a representative of the Class.**The Defendant**

**General Motors LLC**

27.     Defendant General Motors LLC ("GM") is a Delaware corporation with its headquarters and principal place of business located in Detroit, Michigan. Defendant General Motors LLC can be served with process through its agent The Corporation Company, 30600 Telegraph Road Ste. 2345, Bingham Farms, Michigan, 48025. The sole member and owner of General Motors LLC is General Motors Holdings LLC.   General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.

28.     Defendant GM, through its various entities, including Chevrolet and GMC, is in the business of designing, manufacturing, distributing, and selling GM-brand automobiles in this District, in the jurisdictions of the Named Plaintiffs' Class Vehicle purchases and/or leases, and in the jurisdictions of all U.S. states whose Class claims are iterated herein.   GM and/or its agents designed, manufactured, and installed the engine systems in the Class Vehicles.   GM also developed and disseminated the materially misrepresentative owner's manuals and warranty booklets, advertisements, and other intentionally unreasonable and deceptive promotional materials relating to the Class Vehicles.   GM also designed advertising material that it sent to GM dealerships for the purpose of having dealers distribute these to consumers, and GM authorized dealers to communicate with consumers about the performance of the vehicles, and GM further undertook that the dealership was a place where GM could disclose material facts to prospective buyers.

### III.    JURISDICTION AND VENUE

29.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from the Defendant; the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and

interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Subject-matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq*.

30.    Venue is proper in this District under 28 U.S.C. § 1391 in light of the following: (1) GM is headquartered in this District, and GM has marketed, advertised, sold, and leased the Class Vehicles within this District; and (2) many of the acts and transactions giving rise to this action occurred in this District, including, *inter alia,* GM's design, manufacturing, promotion, marketing, distribution, and sale of Class Vehicles containing the Bosch CP4 high-pressure fuel injection pump. Further, a significant number of the Class Vehicles are registered in this District and thousands of Class Vehicles are in operation in this District.  Venue is also proper under 18 U.S.C. § 1965(a) because GM is subject to personal jurisdiction in this District as alleged, *infra*, and GM has multiple agents, *i.e.*, GM-certified dealerships, located in this District.

## IV.   FACTUAL ALLEGATIONS

### A.    The Class Vehicles

31.    For purposes of this Complaint, the "Class Vehicles" consist of the following GM-manufactured diesel-fueled U.S. automobiles:

- 2011–2016 2500HD Silverado 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2011–2016 3500HD Silverado 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2011–2016 2500HD Sierra 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2011–2016 3500HD Sierra 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2010–2011 Chevrolet Express van with Duramax LGH engines;

- 2010–2011 GMC Savana van with Duramax LGH engines;

- 2010–2011 GMC Sierra trucks with RPO ZW9 (chassis cabs or trucks with pickup box delete) with Duramax LGH engines;

- 2011–2012 Chevrolet 2500HD Silverado 6.6L V8 Duramax Diesel Trucks with LGH engines;

- 2011–2012 Chevrolet 3500HD Silverado 6.6L V8 Duramax Diesel Trucks with LGH engines;

- 2011–2012 Chevrolet 2500HD Sierra 6.6L V8 Duramax Diesel Trucks with LGH engines; and

- 2011–2012 Chevrolet 3500HD Sierra 6.6L V8 Duramax Diesel Trucks with LGH engines.

**B.     The Rise of Diesel Vehicles in the United States**

32.     Diesel engines have long enjoyed a loyal following in some U.S. market segments because of their reliability, fuel efficiency, and power.  Diesel engines produce higher torque, even at low revolutions per minute ("RPM"), making them popular in buses, heavy-duty pickups, and vans, including commercial vehicles, farm trucks, and ambulances.

33.     With the invention of common-rail systems, diesel fuel was injected at higher pressure, forming a finer mist that increases fuel efficiency and power. Common-rail systems also made diesel engines burn cleaner and with less noise. While diesel had long been popular overseas, these advances fueled a growing market here in the U.S. for diesel trucks, and even diesel passenger cars.

34.     From the outset, GM was in competition with fellow "Big Three" auto manufacturers like Ford and Fiat Chrysler, each racing to dominate the growing

American diesel vehicle market.  GM looked to Europe and the expertise of international automotive parts supplier Bosch to increase the fuel efficiency and power of its diesel engines.  The heart of this diesel revolution would be powered by Bosch's extremely durable CP3 fuel injection pump, the predecessor to the CP4 fuel injection pump at issue in this suit.  The CP3 pump was one of Bosch's heavy-duty injection pumps, simplified for increased reliability.  The reliability of the CP3 became key to the "million-mile" performance of diesel truck engines in the U.S. Not surprisingly, American trust in diesel technology grew.

35.     Americans paid a premium for the increased reliability, fuel efficiency, and power of diesel—and, Bosch promised to continue to deliver advances in diesel engine technology.  Bosch claimed that the next generation of fuel pump, the CP4, would maintain reliability while also increasing fuel efficiency and power.

36.     However, much like what occurred in the nationwide Volkswagen emissions scandal involving Bosch, reliance on Bosch's expertise in the design of diesel engines would lead GM into a course of action it should now regret.  The heart of GM's success under increasingly competitive fuel efficiencies was Bosch's cheaper, substandard CP4 fuel injection pump.  Bosch had the technical know-how to do what needed to be done to get ahead; unfortunately for the American public, the easiest way for GM to succeed was to cheat American consumers on durability and overall vehicle functionality by equipping the Class Vehicles with this ticking time bomb of a fuel injection pump that doomed the modern GM Duramax diesel engine system from day one.

### C.     GM's Knowledge of Incompatibility, Defectiveness, and Failures Associated with Bosch's CP4 Pump When Used with American Diesel Fuel

37.     The Bosch CP4 pump operates at higher pressures than its predecessor, the CP3. The CP4 achieves greater fuel efficiency by pumping less fuel through the

engine.  The Bosch CP4 Pump had a proven track record in Europe, but it is not compatible with American diesel fuel.

38.    The CP4 relies on the diesel fuel itself to maintain lubrication.  The lubricity of diesel in Europe is more standardized than American diesel, but European diesel is also dirtier.  Because the sulfur in diesel exhaust is a major cause of smog and acid rain, in 2007, the EPA required diesel fuel sold in the U.S. to have less than 15 ppm of sulfur. This is known as Ultra Low Sulfur Diesel ("ULSD").  It is produced through a refinery process known as hydrodesulfurization ("HDS"). Sulfur provides some of the lubricity needed for the pump to operate.  But more importantly, the refinery process required to produce low sulfur diesel destroys a variety of important nitrogen and oxygen based polar and organic compounds that give diesel fuel its lubricity.  Indeed, ULSD fuel is considered to be very 'dry' and incapable of lubricating vital diesel fuel delivery components, specifically high-pressure fuel pumps and injectors; as a result, American diesel does not contain the lubrication necessary for the Bosch CP4 Pump to operate durably, and these fuel injection system components "are at risk of premature and even catastrophic failure when ULSD fuel is introduced to the system."[2]

39.    Low sulfur diesel fuel first appeared in American markets in the 1990's, with fewer than 500 ppm of sulfur.  It is estimated that 65 million fuel injection pumps failed as a result.  It was thought that the pumps failed at the equivalent of 100 to 200 hours of operation.  Thus, the critical importance of lubricity for diesel injection pumps was well known to all auto manufacturers for a decade or more before the Class Vehicles were designed or introduced into the market.

---

[2] Arlen Spicer, *Diesel Fuel Lubricity Additives: Study Results*, THE DIESEL PLACE (Aug. 26, 2007), https://www.jatonkam35s.com/DeuceTechnicalManuals/Diesel_fuel_additive_test.pdf.

40.     Vehicle engine manufacturers were well aware of the mismatch between engine part specifications that require a maximum of 460 wear scar, and the lower lubricity specifications of Ultra Low Sulphur American diesel fuel:

> Lubricity describes the ability of a fluid to minimize friction between, and damage to, surfaces relative to motion under loaded conditions. Diesel fuel injection equipment relies on the lubricating properties of fuel. Shortened life of engine components such as fuel injection pumps and unit injectors can usually be attributed to lack of fuel lubricity and, hence, lubricity is of concern to engine manufacturers. This property is not addressed adequately by ASTM D 975.

4/22/2002 Engine Manufacturers' Association, Position Statement titled, "EMA Consensus Position Pump Grade Specification." GM is a member of the Engine Manufacturers' Association.[3]

41.     Further, the Engine Manufacturers' Association made clear:

> Regardless of the fuel sulfur level, ASTM D975 currently requires lubricity specified as a maximum wear scar diameter of 520 micrometers using the HFRR test method (ASTM D6079) at a temperature of 60°C. Based on testing conducted on ULSD fuels, however, fuel injection equipment manufacturers have required that ULSD fuels have a maximum wear scar diameter of 460 micrometers. EMA recommends that the lubricity specification be consistent with the fuel injection equipment manufacturers' recommendation.

8/8/2005 Engine Manufacturers Association, Position Paper titled "North American Ultra Low Sulfur Diesel Fuel Properties."

42.     In 2005, the EPA instituted a lubricity requirement for the lower sulfur diesel sold in the U.S. It required sellers of diesel to ensure the fuel meets a

---

[3] *See* Truck & Engine Manufacturers Association (EMA) membership webpage, *supra* note 1.

minimum lubricity level of a maximum wear scar diameter of 520 microns based on the testing and standard propounded by the American Society for Testing and Materials ("ASTM") D-975.

43.     By 2007, on-road diesel fuel in the U.S. for highway vehicles was uniformly ULSD, which has an allowable sulfur content much lower (15 ppm) than the previous U.S. on-highway standard for low sulfur diesel (500 ppm)."[4]

44.     In reality, U.S. diesel frequently contains even less than 15 ppm, a truth that is widely known within the U.S. automotive industry.  For example, according to a 2014 Infineum Worldwide Winter Diesel Fuel Quality Survey in which 341 diesel fuel samples were tested from around the world, **all** diesel fuel samples that the organization collected and tested from the U.S. and Canada contained 10 ppm S or less.[5]

45.     Moreover, in September 2009, the Joint Diesel Fuel Injection Equipment Manufacturers ("Joint FIE Manufacturers") released a "Common Position Statement regarding Fuel Requirements for Diesel Fuel Injection Systems," in which the Joint FIE Manufacturers expressed the following key points to their U.S. automotive industry customers:

> The continuous world-wide tendency to increase engine performance and reduce emissions has necessitated the

---

[4] *See New Ultra Low Sulfur Diesel fuel and new engines and vehicles with advanced emissions control systems offer significant air quality improvement*, Clean Diesel Fuel Alliance, Feb. 25, 2017, available at https://web.archive.org/web/20170225141751/http://www.ct.gov/deep/lib/deep/air/ultra_low_sulfur_diesel/ulsdfs.pdf (last accessed Aug. 5, 2019); *see also* J. Thijssen, LLC, *The Impact of Future Diesel Fuel Specifications and Engine Emissions Standards on SOFC*, U.S. DEPT. OF ENERGY, NAT'L ENERGY TECHNOLOGY LABORATORY (Jun. 29, 2004), at I.

[5] *Infineum Worldwide Winter Diesel Fuel Quality Survey 2014*, INFINEUM INT'L LTD., available at https://www.infineum.com/media/80722/wdfs-2014-full-screen.pdf (last accessed Aug. 5, 2019), at 6-7.

development of new generations of enhanced diesel fuel injection equipment, supporting the achievement of stringent legislation targets. Rising injection pressures and multiple injections result in higher operating temperatures, increased contract pressures and reduced clearances . . . . Alterations to fuel quality, e.g., by increasingly severe refinery hydroprocessing being introduced to remove Sulphur also reduce the content of aromatics and destroy surface active compounds and antioxidants. ***Removal of these beneficial compounds effects boundary lubrication, commonly known as lubricity, and inherent oxidation stability and must be compensated for.*** Fuel parameters such as cetane number, viscosity, density, lubricity, oxidation stability, sulfur and aroma content, together with the absence of free water and dirt contamination, are key parameters required to ensure performance of equipment in the field.

Biofuels are becoming increasingly available to end-users [including] in the United States of America . . . . It must be recognized that the physical and chemical characteristics of bio components are significantly different to conventional fuels and that care must be taken in their specification and use.

Diesel fuel injection equipment (FIE) manufacturers fully support the development of alternative sources of fuel . . . . ***However, many vehicles, engines and equipment are not designed to run on them. It is recommended to refer to the vehicle and engine manufacturers "Limitations of Use" documents for guidance.***[6]

46.    A prudent manufacturer would design or select a fuel injection pump designed for the fuel of the country in which the vehicle is to be sold.

47.    Yet GM solicited Bosch to provide the CP4 Pump for GM's Duramax engines in the 2010 and 2011 model years. It was no secret to GM that the Bosch CP4 Pump was inappropriate for diesel vehicles in the U.S. The Bosch CP4 Pump

---

[6] Joint FIE Manufacturers, *Fuel Requirements for Diesel Fuel Injection Systems: Diesel Fuel Injection Equipment Manufacturers: Common Position Statement 2009*, Sept. 2009, available at http://www.globaldenso.com/en/topics/files/common_position_paper.pdf (last visited Aug. 5, 2019) (emphasis added).

specifications for fuel lubricity allow for a maximum of 460 wear scar.  By definition, the 520 wear scar specification of American diesel fuel is inadequate to lubricate the Bosch CP4 Pump.

48.     In order to reduce costs and increase fuel efficiency, GM sold vehicles with a fuel injection pump that was clearly out of specification, having inadequate lubrication for the U.S. market.

49.     Moreover, the adverse effects of ULSD on high-pressure fuel pump injection systems have been acknowledged within the automotive industry. For example, in a July 2014 study on the use of fuel injection equipment with global diesel fuels, Parker Racor, the leading global supplier of diesel fuel filtration systems, explained the following:

> The increase in system pressures in diesel engines has a significant effect on filtration requirements. These systems are highly vulnerable to many forms of contaminants and the need for robust high efficiency filtration has never been higher . . . .  An analysis of global diesel fuel quality shows that although the fuel quality in the developed markets has improved, significant quality concerns still remain. Levels of water and contaminants remain at levels that can cause long term issues to the latest fuel injection systems. Specifically, the levels of contaminants smaller than 5 microns remain very high. These particles can be small enough to pass into the internal clearances of high pressure fuel injection systems and can lead to erosion and wear of critical areas leading to a loss in system performance and eventually system malfunction. Diesel filtration balances pressure drop, useful life and efficiency. ***However the real long term effect on fuel system life is often not adequately considered[,] as much of the engine durability testing performed is done using high quality fuel that doesn't represent the range of fuels seen in the market***. Consideration of filtration performance under less than ideal conditions is necessary to develop an acceptable level of protection.[7]

------

[7] Steven Hardison & Adam Pearce, *July 2014 Summary of Fuel Injection Equipment with Respect to Diesel Fuel Filtration*, PARKER RACOR & AVL, Jan. 7,

50.     The Bosch CP4 Pump multiplies the diesel fuel problem in ways that are catastrophic.  But GM chose the Bosch CP4 Pump because it was supposed to improve fuel efficiency by using less fuel.  The Bosch CP4 Pump struggles to supply adequate fuel to the engine under the lower pressure of newer engines.   The combination of the low volume of fuel, which is under constant suction, and the low lubricity of the fuel, allows cavitation of the fuel.  Air pockets form inside the pump during operation.  These air bubbles allow metal to rub against metal.  GM had achieved greater fuel efficiency at the expense of running the pump dry.

51.     As the Bosch CP4 Pump wears, it sends metal shavings and sometimes even larger particles throughout the fuel system. As the shavings disperse and contaminate the engine and the high-pressure fuel system, the fuse of the proverbial CP4 "time bomb" has been lit, and it is only a matter of time before the entire engine system fails. The failure of a CP4 pump requires repair or replacement of the entire high-pressure fuel system, including the pump, fuel injectors, fuel rails, and injection lines.[8]  Repair costs when a CP4 pump fails average between $8,000 and $20,000.

---

2015, available at https://www.parker.com/literature/Racor/RSL0194%20Rev%20-%20(TAP_AVL-Fuel-Study-Racor).pdf (last accessed Aug. 6, 2019), at i; *see also id.* at 13 ("Careful monitoring of fuel quality and filter performance is needed to protect sensitive diesel engine injection systems"); *id.* at 29 ("To avoid costly engine and fuel system components damages, advanced multi-stage filtration is recommended"); *id.* at 31 ("Modern high pressure diesel fuel injection systems contain very small internal clearances and are vulnerable to any build-up of deposits on these components . . . .  This issue has become a significant concern in the industry").

[8]  *See, e.g.*, *2011-2015 6.6L LML/LGH Duramax Diagnostics*, OREGON FUEL INJECTION, INC. (Nov. 18, 2016), at 6, available at https://cdn.oregonfuelinjection.com/content/uploads/2016/08/gm-duramax-11-15-diagnostic.pdf (last accessed Aug. 5, 2019) (providing diagnostic tips for addressing CP4 failures and noting, "**Note: The CP4.2 pumps are not as durable as the CP3 pumps . . . . When they fail it is often catastrophic and they send metal particles throughout the high pressure side of the fuel system, causing further damage**").

52.     As Diesel Tech Magazine, an industry publication, aptly explained in its December 2017 article entitled, "Common Problems: The CP4 Time Bomb:"

> It's always frustrating to finally get your hands on a brand-new truck (or at least, new to you) and find out there's something wrong with it. It's even more frustrating to learn that not only are you not alone in your suffering, but that it's a common problem to your vehicle. . . . To kick things off, we're going to look at something that's very near and dear to our hearts: the CP4 injection pump. . . . Boy, where to begin? People have taken a somewhat hyperbolic approach and refer to the CP4 as a time bomb, among other colorful terms. The thing is, they're not too far from the truth. Even if you have a 100 percent stock pickup, there's a *really* good chance that you're going to be on the receiving end of a $10,000 bill when it finally goes out on you and destroys your entire fuel system.[9]

53.     Rather than remedy the problem it caused, GM chose to extract a second round of profits from the consumers it has already duped.   GM created a licensing scheme to market premium diesel fuels with greater lubricity that is more compatible with its CP4 pumps, in markets where most profitable.  GM named this higher lubricity fuel "TOP TIER™," GM's registered trademark brand.  In markets where available, GM's TOP TIER diesel is sold for a premium, costing a few cents more per gallon.  GM then double dips, profiting again, a second time from its wrongdoing, by charging a licensing fee to fuel marketers who sell TOP TIER diesel.

## D.     Pre-Class Period Failures Are Quickly Followed by Failures in the Earliest GM-Manufactured CP4 Vehicles

54.     The Bosch CP4 fuel injection pump was defective and incompatible with U.S. diesel fuel from the get-go, even prior to GM's usage of it in the Class Vehicles. CP4 failures began running rampant in American Audi and Volkswagen

---

[9] Trevor Mason, *Common Problems: The CP4 Time Bomb*, DIESEL TECH, Dec. 2017, available at https://www.dieseltechmag.com/2017/12/common-problems-the-cp4-time (last accessed Aug. 5, 2019) (internal punctuation omitted).

vehicles at least as early as 2008,[10] before GM ever implemented the cheaper, less robust pump in its 2011 and later model year diesel automobiles. These failures echo the very failures that continue to occur in the Class Vehicles to this day, and from late 2011 through early 2012, documentation regarding these widespread CP4 failures was provided to the National Highway Traffic Safety Administration ("NHTSA") by Bosch, Audi, and Volkswagen, in connection with NHTSA's Office of Defect Investigations ("ODI") Inquiry No. INRD-EA11003, an investigation which GM was subject to as well.[11]

55.    This documentation demonstrates the nature of the CP4 defect that would ultimately come to exist in the Class Vehicles.  For example, in August 2009, Audi sent Bosch a failed CP4 fuel pump for analysis after "[t]he high pressure fuel pump failed catastrophically shedding metal shavings throughout the entire fuel system. . . . This car will require a complete new fuel system from tank to injectors and everything in between. This will be a very lengthy repair (weeks). . . We need to determine if component failure or bad fuel is to blame." March 7, 2011 Bosch

---

[10] *See, e.g.,* Jul. 7, 2008 email between Audi and Bosch representatives re: "Performance drop AU716 98017 with shavings in the HPP," discussing how "[s]omething is disintegrating" in the Audi 716 fuel pump and that "[w]e are a bit speechless" about "[t]he shavings, or whatever it is"), submitted as part of Bosch's May 2012 responses to NHTSA ODI Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59334P.pdf," at 6; *id.* at 27 (Jul. 31, 2008 email from Audi representative re: "Fuel quality in [**REDACTED**]," stating that, "With our [Audi's] V6TDI with the high-pressure pump CP4.2 we have significantly higher failure rates in [**REDACTED**] (higher by a factor of approx. 30 than the average of all markets) . . . . Have you any information suggesting that such a thing could be possible with this country-specific diesel fuel?"); *id.* at 28-31 (Feb.-May 2011 email chain between Audi, Volkswagen and Bosch representatives re: "Status CP4 USA," in which the parties discuss the substantial increase in warranty claims with the implementation of the CP4 in vehicles in the U.S. market).

[11] *See infra* ¶ 64 & n. 12 (discussing GM's response to NHTSA's requests pursuant to ODI Inquiry No. INRD-EA11003).

submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 35. Thereafter, on September 1, 2009, Bosch responded to Audi with the following flippant analysis note from their failed pump inspection: "Gentleman, [t]he pump mentioned below was analyzed. The result of the finding is sand-like particles in the fuel. ***Defect caused by customer***." *Id.* at 38 (emphasis added).[12]

56.    Likewise, in September 2009, Bosch, at the time supplying the defective CP4 fuel pump to Audi and Volkswagen, received a notice from Audi about a "3rd HPP failure" in the U.S., explaining, "I'm afraid there's bad news from the U.S.: After 2 failures in the field . . . the 3rd HPP failure has now occurred in the

---

[12] *See also* March 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 21 (Mar. 31, 2008 email from Volkswagen to Bosch re: "Radio: Drivetrain damage failure US07 (Jetta)," in which the parties are discussing an HPFP failure in a 2007 Jetta and the Volkswagen representative frustratedly states, "Can you (panel of experts) explain to us how the failure mechanism was after this mileage? . . . . We will certainly not accept a failure because of fuel quality! . . . . We also see a big risk here for our BIN5 pump, which has to manage with the same fuel in USA"); May 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59334P.pdf," at 9–10 (Jul. 4, 2008 email from Audi to Bosch re: "CP4 BIN5 3rd and 4th failure in USA," analyzing root cause of CP4 field failures and positing, "Why is it that EC pumps do not fail? Because of a different fuel?"); Jul. 27, 2012 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59345P.pdf," at 7 (emphasis added) (Jun. 30, 2009 email between Bosch and Audi representatives re: "ANS: HPP measures/ USE," in which the Audi representative writes, "I don't think you're reading my mails anymore! Please look at the failure curves specifically, then you'll see that ***we only have a problem in certain markets[.] . . . Depending on how poor the fuel currently on the market is***"); *id.* ("I'd prefer to have a more robust pump").

EC endurance run."[13] Photos attached to the email show the failed Bosch CP4 fuel pump, replete with metal shavings in the gasket:[14]



57.     Yet, GM went on to contract with Bosch to supply the CP4 fuel pumps in 2011 and later model years. Seeking to gain an advantage, GM began a long partnership with Bosch in 2000.  But from the beginning, GM was aware of a mismatch between Bosch's European fuel injection pumps and American diesel fuel.

58.     GM set out to design a modern diesel engine for its pickup trucks.  In 2000, GM formed a joint venture with Isuzu, called "DMAX" to create the 6.6L Duramax V8 engine.  DMAX then teamed up with Robert Bosch GmbH to incorporate Bosch's high pressure common-rail for fuel injection.  Two years later, the Duramax engine had garnered 30% of the U.S. market for diesel pickup trucks. The Duramax engine has long been an option on GM pickups, vans, and medium-duty trucks, and has undergone many changes over the years.

59.     For 2010, GM created the LGH version of the Duramax engine.  It featured increased power, increased torque, and greater fuel efficiency.  But, in order

---

[13] Sept. 2, 2009, email from Audi representative to Bosch representatives regarding "3rd HPP Failure USA," produced in response to NHTSA Inquiry EA11003EN-00639[0], available at https://static.nhtsa.gov/odi/inv/2011/INRD-EA11003-59428P.PDF (last accessed Nov. 6, 2018), at 146.

[14] *Id.* at 148-50.

to achieve greater fuel efficiency, the Duramax LGH engine incorporated a newer, lower-volume fuel injection pump, Bosch's CP4 pump.

60. On February 7, 2011, as the first models of the Class Vehicles were being sold, NHTSA's Office of Defect Investigations ("ODI") opened an investigation certain major automotive manufacturers for a potential defect in predecessor diesel high pressure fuel injection pumps as well as certain model year vehicles containing the CP4 pump.[15] As part of that investigation, in October 2011, ODI requested "peer vehicle" information from GM, specifically regarding (among other things) an "[a]lleged defect" involving "[a]ny one or more of the following symptoms or conditions. . .: (1) HPFP failure; (2) *Metallic debris/contamination in the fuel system*; (3) Repairs involving fuel system replacement; (4) General allegations of fuel pump failure (*i.e.*, the specific fuel pump is not identified); or (5) All other allegations of fuel system failures or malfunctions resulting in engine stall."[16]

61. The field data GM provided NHTSA from October-December 2011 was already sufficient to detect a serious defect involving Class Vehicles' fuel pumps. Among other things, GM responded that in the 2nd quarter of 2011 *alone*, it was aware of at least *ninety-nine* (99) field reports of high-pressure fuel pump

---

[15] *See* Feb. 7, 2011, NHTSA ODI Resume for Investigation No. EA 11-003 regarding "High-Pressure Fuel Pump Failure (HPFP)," available at https://static.nhtsa.gov/odi/inv/2011/INOA-EA11003-5971.PDF (last accessed Nov. 16, 2018) .

[16] Oct. 7, 2011, Ltr. from Frank S. Borris, Director, Office of Defects Investigation, to Carmen Benavides, GM Director of Product Investigations, available at https://static.nhtsa.gov/odi/inv/2011/INPR-EA11003-48548.pdf (last accessed Nov. 16, 2018).

failure in the 2011 Chevrolet Silverado HD, thirty (30) of which involved moving stalls.[17]

62.     Importantly, the data showed a significant uptick in fuel pump failure-related claims beginning with the 2011 model year (the first year the CP4 was implemented). GM counted sixteen (16) fuel pump-related warranty claims in the 2011 GMC Sierra HD by October 2011, compared to just eight (8) in the two preceding years of Sierras combined.[18] Likewise, GM reported thirty (30) catastrophic fuel pump failures in the 2011 Chevrolet Silverado HD compared to just eight (8) in the two preceding model years of Silverados combined.[19]

63.     Likewise, the data GM provided comparing warranty claims in 2011 model year Class Vehicles with their predecessors is illuminating in terms of the increase in fuel pump-related claims.  Whereas the 2011 model year Silverado had already generated 68 warranty claims for the fuel pump, the 2010 model year Silverado only had 20. And whereas the 2011 model year Sierra had generated 35 warranty claims, the preceding model year only had 2.[20]

64.     A major quality control measure used by GM and other automotive manufacturers is to compare a particular model year vehicle's warranty claims and other aggregate information (such as driver complaints and field reports) with the preceding model year vehicle's data to evaluate whether there is a measurable uptick in the failure rate. In modern day vehicle production, failures are typically measured

---

[17] Dec. 9, 2011, Ltr. from Carmen Benavides, head of GM Product Investigations and Safety Regulations, to Frank Borris, head of NHTSA's Office of Defects Investigations (ODI), in response to ODI Inquiry No. EA11-003, at 3, available at https://static.nhtsa.gov/odi/inv/2011/INRL-EA11003-50067P.pdf (last accessed Feb. 16, 2019).

[18] *Id*.

[19] *Id.*

[20] *Id.* at 8.

per thousand vehicles or sometimes even per hundred thousand vehicles, and defect trends are frequently identified after just one or several reported failures. Where, like here, the early warranty rates reflected between a three-fold and seventeen-fold increase over the previous year, GM must have recognized the existence of a defect no later than December 2011 at the time it compiled this information for NHTSA (though it was likely conducting internal analysis of its own even earlier).

65.     In addition, for many decades, GM has conducted durability and reliability testing of its new vehicles before introducing them to the market. This means that GM trucks, including Class Vehicles, are exposed to lengthy and comprehensive physical testing that reveals how the vehicles and component parts (including the engines and fuel pumps) will last when driven for tens of thousands of miles.

66.     Through this testing, GM also would have discovered the defect— before selling the first Class Vehicle. As the driver complaints to NHTSA show,[21] it is not uncommon for the Class Vehicle fuel pump to fail before the vehicle has driven 50,000 miles, with some failing at as low as 7,000 miles of driving. Likewise, it is not uncommon for the Class Vehicle fuel pump to fail within the first year or two of driving. These early failures are well within the scope of GM's durability and reliability testing.

67.     Despite this knowledge, beginning with the 2011 model year GM was touting the improved durability of its all-new Duramax LML engine, which was installed in many of the subject Class Vehicles and incorporated the CP4 fuel pump. Indeed, GM claimed that the Duramax LML improve durability while increasing fuel injection pressure to 29,000 psi, increasing noise reduction and also tolerating

---

[21] *See infra* ¶¶ 66–89 (customer complaints regarding catastrophic CP4 fuel pump failure in the Class Vehicles).

up to 20% biodiesel fuel mixtures, and added a urea-based diesel exhaust fluid ("DEF") system to treat its exhaust.  The Duramax LML continued to use the new lower-volume Bosch CP4 fuel injection pump, as did some of the Duramax LGH's, including but not necessarily limited to the following vehicles:

- 2011–2016 Chevrolet 2500HD Silverado 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2011–2016 Chevrolet 3500HD Silverado 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2011–2016 Chevrolet 2500HD Sierra 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2011–2016 GMC 3500HD Sierra 6.6L V8 Duramax Diesel Trucks with LML engines;

- 2010–2011 Chevrolet Express van with Duramax LGH engines;

- 2010–2011 GMC Savana Van with Duramax LGH engines;

- 2010–2011 GMC Sierra Trucks with RPO ZW9 (chassis cabs or trucks with pickup box delete) with Duramax LGH engines;

- 2011–2012 Chevrolet 2500HD Silverado 6.6L V8 Duramax Diesel Trucks with LGH engines;

- 2011-2012 Chevrolet 3500HD Silverado 6.6L V8 Duramax Diesel Trucks with LGH engines;

- 2011–2012 Chevrolet 2500HD Sierra 6.6L V8 Duramax Diesel Trucks with LGH engines;

- 2011-2012 Chevrolet 3500HD Sierra 6.6L V8 Duramax Diesel Trucks with LGH engines.

68.    Some of these vehicles are modified for commercial purposes, such as cargo vans, specialized work trucks, and a variety of ambulances offered by GM.

The CP4 has long experienced problems, and the failure of these pumps can be devastating to people and businesses alike. The CP4 performed terribly from the start, but GM put it into more and more engines.

69.     Importantly, GM was on notice—and indeed, has repeatedly *admitted*—that the safety risks of moving stalls or "no-starts" such as those associated with the CP4 fuel pump pose an inherent risk to vehicle occupant safety. In 2014, GM issued a series of safety recalls for approximately 30 million vehicles due to an ignition switch defect which caused, among other things, loss of engine power (in other words, moving stalls), which "increase[e] the risk of a crash."[22] because the Class Vehicles have an inherent safety defect (as evidenced by the customer complaints cited herein), the purchasers and lessors of the Class Vehicles have been economically injured, because a vehicle which later turns out to have a safety defect is clearly worth less than it was at the point-of-sale while the defect was still being concealed.

70.     The federal Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including claims relating to property damage received by the automotive manufacturer, warranty claims paid by the automotive manufacturer, consumer complaints, incidents involving injury or death, and field reports prepared by the automotive manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues.  49 U.S.C. § 30166(m)(3); 49 C.F.R. § 579.21.

---

[22] *See, e.g.*, GM 573 Ltr. to NHTSA re: NHTSA Recall No. 14V346, Jun. 19, 2014. The full relevant text of paragraph 573.6(c)(5) reads as follows: "There is a risk, under certain conditions, that some drivers may bump the ignition key with their knee and unintentionally move the key away from the "run" position. If this occurs, engine power, and power braking will be affected and power steering may be affected, increasing the risk of a crash. . . ."

71. The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists. United States v. General Motors Corp., 574 F. Supp. 1047, 1050 (D.D.C. 1983). A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident." 49 U.S.C. § 30102(a)(8). Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including "make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all warranty claims, field or service reports, and other information" that formed the basis of the determination that the defect was safety related. 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6(b)-(c). Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must notify the owners of the defective vehicles. 49 C.F.R. §§ 577.5(a), 577.7(a). Violating these notification requirements can result in a maximum civil penalty of $15,000,000. 49 U.S.C. § 30165(a)(1).

72. Thus, on top of wholly violating the Federal Safety Act, GM has economically injured the purchasers and lessors of the Class Vehicles, as a vehicle which later turns out to have a safety defect is clearly worth less than it was at the point-of-sale while the defect was still being concealed.

73. Field incidents involving CP4 implosions in the Class Vehicles came rolling in almost as soon as the vehicles were off the assembly line. To be sure, GM has had notice of *scores* of consumer complaints regarding the now-notorious CP4 pump failure, and is notorious for blatantly refusing to take responsibility for its own defective vehicle design.

74.    For example, on October 5, 2010, a Duramax Forum member posted the following regarding a nearly brand-new 2011 Chevrolet Silverado 3500 Crew Cab 6.6L Duramax:

> I[']ve got 3200 miles on my 2011 3500 srw, crew cab, 4x4, z71, duramax. And [I']ve already got- in my opinion a serious[] problem- it won[']t start. Cranks and Cranks and cranks. Usually it finally starts. After extensive diagnostic review, the dealer and the chief duramax engineer from gm feel it[']s an Injector Pump issue . . . . Of course the part is back ordered. Any one else had similar issues? I[']m pretty frustrated.[23]

75.    In the same vein, on October 13, 2013, the owner of a 2011 GMC Sierra HD 2500 posted the following on the diesel enthusiast website TheDieselPageForums.com: "My 2011 GMC 2500HD recently experienced what has been diagnosed at a GM dealership as a high pressure fuel pump failure […] a bit of a loss of confidence in the reliability of the bullet proof 6600 Durmax here . . . ."[24] The truck owner went on to note the following diagnosis from his GM service advisor:

> CONTAMINATED FUEL SYSTEM CAUSED BY HIGH PRESSURE PUMP FAILURE[.] CRANK NO START-SCAN PCM, NO FAILURE CODES. CHECK CRANK SENSOR OPERATION AND CRANKING RPM'S-HAS NORMAL CRANKING SPEED AND RPM'S. CHECK FUEL API RATING-API OF 40. INSPECT FOR FUEL LEAKS AND AIR IN FUEL SYSTEM-NO AIR AND NO FUEL LEAKS. CHECK FUEL PRESSURE WHILE CRANKING...INSTALL PRESSURE GUAGE AT FUEL TEST

---

[23] Oct. 5, 2010, DuramaxForum.com thread post entitled, "2011 Injector Pump failure," available at https://www.duramaxforum.com/forum/11-16-lml-duramax-powertrain/72500-2011-injector-pump-failure.html (last accessed Aug. 5, 2019).

[24] Oct. 30, 2013, TheDieselPageForums.com thread post entitled, "High Pressure Fuel Pump Failure at 50K," available at https://www.thedieselpageforums.com/tdpforum/archive/index.php/t-42676.html (last accessed Aug. 5, 2019).

PORT AND AND PUMP TO 10 PSI WITH FUEL PRIMER PUMP-CRANK ENGINE FUEL PRESSURE DOES NOT DROP. CALL TAC. **INSPECT FUEL PRESSURE REGULATOR AND SENSORS FOR METAL DEBRIS. FOUND FUEL SYSTEM CONTAMINATED WITH METAL FROM HIGH PRESSURE FUEL PUMP**. SEE PIP5133, PIP5151, PIP4949C . . . ."[25]

76.     Similarly, on July 2, 2014, the following customer complaint involving a 2012 GMC Sierra 3500 HD was filed with NHTSA:

DRIVING FROM GM DEALER FOR TWO MILES CHANGE FUEL FILTER MESSAGE APPEARED AND ENGINE DIED. TOWED TO A DEALER DIAGNOSED AS A HIGH PRESSURE INJECTOR PUMP FAILURE WITH METAL CONTAMINATION TO FUEL SYSTEM. I HAVE FOUND A BULLETIN DATED 2009 FROM EQUIPMENT MANUFACTURERS. THIS JOINT STATEMENT HAS INFORMATION ABOUT THE FUEL USED IN THE USA THAT I WAS NOT AWARE OF AND MAY HAVE AVOIDED THIS FAILURE. THIS IS A VERY EXPENSIVE REPAIR AS I USE MY TRUCK FOR WORK. *TR[26]

77.     Likewise, on August 5, 2014, the owner of a 2012 Chevrolet Silverado 2500 filed a complaint with NHTSA about the following incident which occurred on July 11, 2014, in Chualar, California:

VEHICLE WOULD NOT START. WHEN THEY PUT IT ON SCOPE THEY FOUND THAT THE FUEL RAIL PRESSURE WAS TO LOW. **THEY FOUND METAL SHAVINGS THROUGHOUT THE FUEL SYSTEM AS IF A PART WAS COMING APART FROM THE INSIDE**. THEY HAD TO REPLACE ENTIRE FUEL SYSTEM FROM PUMP TO INJECTORS PLUS ALL THE LINES AND INJECTION PUMP. THIS VEHICLE IS 2 YEARS OLD. *TR[27]

78.     On December 26, 2014, the following report regarding another 2012 Chevrolet Silverado 2500 was sent to NHTSA:

---

[25] *Id.* (emphasis added).
[26] NHTSA ID No. 10607796.
[27] NHTSA ID No. 10619113 (emphasis added).

THE CONTACT OWNS A 2012 CHEVROLET SILVERADO 2500. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 35 MPH, **THE VEHICLE STALLED**. **THE VEHICLE WAS NOT ABLE TO RESTART.** THE VEHICLE WAS TOWED TO A DEALER, WHO DIAGNOSED THAT THE FUEL PUMP NEEDED TO BE REPLACED. THE TECHNICIAN MENTIONED THAT **THE FUEL PUMP FRACTURED AND DEBRIS WENT THROUGH THE FUEL SYSTEM CAUSING INTERNAL DAMAGES**. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 47,000.[28]

79.    On February 7, 2015, the following "catastrophic failure" caused by the CP4 pump in a 2012 GMC Sierra Duramax truck was reported to NHTSA:

**THE FUEL INJECTION PUMP CP4 HAD A CATASTROPHIC FAILURE AS I WAS DRIVING ON A HEAVILY TRAVELED FOUR LANE HIGHWAY**, US RT.20. I LOST POWER STEERING AND BRAKES. I FELT FORTUNATE THAT I WAS NOT TOWING A 16,000 LB. FIFTH WHEEL CAMPER DOWN A MOUNTAIN ROAD.I SAY THIS BECAUSE IT WAS EXTREMELY DIFFICULT TO MAINTAIN CONTROL OVER THE TRUCK STEERING IT AND BRINGING IT TO A CONTROLLED STOP. I HAVE READ ABOUT THESE PUMPS FAILING ON NUMEROUS DIESEL FORD AND GM TRUCKS. I ALSO FEEL IF A WOMAN OR SMALL PERSON HAD THIS HAPPEN TO THEM THE OUTCOME COULD END IN LOSS OF CONTROL RESULTING IN INJURIES EVEN DEATHS. THE ONLY ONE THAT KNOWS THE ACTUAL NUMBER OF PUMPS THAT HAVE FAILED IS THE MANUFACTURERS, WHO WILL NOT SHARE THAT INFORMATION WILLINGLY. *JS[29]

80.    On May 4, 2015, the following report regarding a 2011 GMC Sierra Duramax HD was filed with NHTSA:

---

[28] NHTSA ID No. 10668322 (emphasis added).
[29] NHTSA ID No. 10681960 (emphasis added).

VEHICLE WAS TRAVELING DOWN ACCESS ROAD COMING
UP TO INTERSTATE OFFRAMP. **RIGHT BEFORE YIELD SIGN
BOSCH CP4 PUMP FAILED STOPPING MOTOR**. BRAKES
AND STEERING AFFECTED. JUST ENOUGH MOMENTUM TO
FIGHT TRUCK INTO ADJACENT PARKING LOT RIGHT AFTER
RAMP. *TR[30]

81.    On June 29, 2015, the following incident involving a 2011 GMC

Sierra 3500 was reported to NHTSA:

WHILE DRIVING UP HILL THE TRUCK JUST SHUT OFF. COULD NOT
START IT AGAIN. THERE WAS NO WARNING SIGNS IT TOOK OVER
2 WEEKS AND 2 DIFFERENT GM DEALERS TO FIGURE OUT IT WAS
A FUEL INJECTOR PUMP THAT EXPLODED. THERE WERE NO
CODES ON THE TRUCKS COMPUTER TO ACKNOWLEDGE THERE
WAS ANY PROBLEM WITH THE TRUCK EVEN AFTER IT WOULD
NOT START. COULD HAVE BEEN EXTREMELY DANGEROUS IF
OUR CIRCUMSTANCE WE'RE DIDFERENT. 5 MILES EARLIER AND
WE WOULD HAVE BEEN ON AN EXPRESS WAY.[31]

82.    On October 29, 2015, the following complaint involving a 2013

Chevrolet Silverado 2500 was reported to NHTSA:

ON AUG 2, 2015 ABOUT 25 MILES EAST OF GRAND JUNCTION CO.
DRIVING SPEED WAS ABOUT 65 MPH ON INTERSTAE I-70. MY
CHEVY SILVERADO 2500 WENT INTO A COMPUTER SHUT
DOWN.BEING A SKILLED PROFESSIONAL DRIVER, WITH A CLASS
A CDL I JUST MADE IT TO THE SHOULDER BEFORE TRUCK SHUR
DOWN, TRUCK AND TRAVEL TRAILER I WAS TOWING NEEDED TO
BE TOWED TO ED BOZARTH GM DEALER.ON MONDAY I WAS
INFORMED WOULD NEED TO PAY $ 775 TO DETERMINE POINT OF
FAILURE. AT THE TIME A COMPANY CALLED SPEEDCO WAS AND
MAYBE SUSPECT AS TO CAUSE. THE DID A OIL CHANGE AND
FUEL FILTER IN W. MEMPHIS AR. THIS SERVICE WAS DONE ON
JULY 24,2015. ON JULY 25,2015 TRUCK NO START, SPEEDCO CAME
OUT WITH ANOTHER FUEL FILTER. WHEN FIRST FUEL FILTER

---

[30] NHTSA ID No. 10714457 (emphasis added).
[31] NHTSA ID No. 10730877.

TAKEN OFF , THERE WERE NO GASKETS. HOWEVER GM APPEARS TO BE CONCELING MATERIAL FACTS AS TO INTERNAL SERVICE BULLETINS. THIS BULLETIN AS TO POINT FAILER WAS PRINTED AUG 3, 2015 , 5 PAGES . A ESTIMATE BY SAID DEALER WAS GIVEN TO SPEEDCO AND MYSELF IN THE AMOUNT OF $ 8,692.02. WHEN THE FUEL INJECTION PUMP WENT , SENT METAL SHAVINGS THOUGH MY WHOLE SYSTEM ENGINE, FUEL OIL, COOLING SYSTEM ECT. GM HAS KNOW ABOUT THIS PROBLEM FOR A LONG TIME, HOWEVER FAILED TO DISCLOSE TO ITS CUSTOMERS. IN MY OPINION TO ALLOW FOR WARRANTY TO EXPIRE. ONCE SPEEDCO WAS PRESENTED WITH SERVICE BULLETIN THEY BACKED DOWN FROM PAYING. GM HAD PROVED TO SPEEDCO THAT GM IS THE PROBLEM. I HAVE CONTACTED GM IN DETRIOT MANY TIMES WITH DIFFERENT CASE NUMBERS. ONE PHONE CALL I GOT FROM GM, STATED THE ORIGINAL ESTIMATED STATED ABOVE WAS FAR LOW. WHEN I ASKED HOW MUCH, STATED TO ME COULD NOT SAY HOWEVER MUCH HIGHER. I'M IN POSSESSION OF A LOT OF DOCUMENTATION. I HAVN'T SCANED THE DOCUMENTS YET. THIS TRUCK WAS PURCHASED IN OCT. OF 2013 FOR $ 56,000, BANK FINANCING. ALSO THIS TRUCK WAS PURCHASED TO EARN A LIVING PULLING NEW TRAVEL TRAILERS. MY EXCELLENT CREDIT IS ON THE LINE DUE TO THIS LEMOM. TRUCK HAD 20K, WITH WARRANTY.[32]

83.     Similarly, on June 13, 2016, the owner of a 2012 Chevrolet Silverado submitted the following complaint to NHTSA regarding the defective condition:

I WAS DRIVING DOWN A HIGHWAY ROAD WHEN MY VEHICLE ABRUPTLY LOST POWER, I RECEIVED A WARNING FROM MY DASHBOARD SAYING FUEL FILTER NEEDS REPLACING AND SUBSEQUENTLY LOST ENGINE POWER WHICH RESULTED IN NO POWER STEERING AND NO BRAKES. I WAS ABLE TO KEEP THE VEHICLE UNDER CONTROL AND GOT IT TO THE SIDE OF THE ROAD BEFORE IT BECAME DEAD. **AFTER GETTING THE VEHICLE TOWED TO A GARAGE IT WAS DETERMINED THAT THE CP4 FUEL INJECTION PUMP HAD FAILED RESULTING IN FUEL**

---

[32] NHTSA ID No. 10787120.

**BEING STARVED FROM THE ENGINE AND THE RESULT WAS THE ENGINE SHUTTING OFF.** THE REPAIRS ALONE FOR THIS SINGLE FAILURE ARE $8550 BECAUSE THIS PUMP HAS FOULED ALL THE FUEL INJECTORS AND REGULATORS IN THE FUEL SYSTEM. MOST IMPORTANTLY THOUGH, I WAS FORTUNATE ENOUGH TO BE IN A POSITION ON HIGHWAY WHERE I HAD NO TRAFFIC BEHIND ME, AND ON A RELATIVELY STRAIGHT ROAD WHERE I WAS ABLE TO GET TO THE CURB BEFORE IT BECOME A BIGGER PROBLEM. FROM WHAT I HAVE FOUND THIS IS BECOMING A COMMON PROBLEM ON ALL OF THE DURAMAX 6.6L LML ENGINES UTILIZING THIS TYPE OF FUEL INJECTION PUMP AND GM NEEDS TO RECALL THESE SYSTEMS AND REPAIR THEM. I DO NOT HAVE THE REPAIR INVOICE YET BECAUSE THE VEHICLE IS STILL BEING REPAIRED BUT WILL BE HAPPY TO SUPPLY IT WHEN I RECEIVE IT.[33]

84.     On December 19, 2016, the owner of a 2012 Chevrolet Silverado 2500 reported the following failure to NHTSA:

TL* THE CONTACT OWNS A 2012 CHEVROLET SILVERADO 2500. WHILE DRIVING 10 MPH, THE VEHICLE STALLED WITHOUT WARNING. THE VEHICLE WAS TOWED TO THE DEALER TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THERE WAS METAL CONTAMINATION IN THE FUEL SYSTEM DUE TO A FUEL PUMP FRACTURING IN THE FUEL TANK. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 130,000.[34]

85.     On December 28, 2016, the owner of a 2016 GMC Sierra 2500 reported the following to NHTSA regarding an incident that occurred on November 27, 2016:

TL* THE CONTACT OWNS A 2016 GMC SIERRA 2500. WHILE DRIVING APPROXIMATELY 15 MPH, THE ENGINE STALLED WITHOUT WARNING. THE VEHICLE WAS TOWED TO A DEALER WHERE IT WAS DIAGNOSED THAT THE FUEL

---

[33] NHTSA ID No. 10873931 (emphasis added).
[34] NHTSA ID No. 10936256.

INJECTOR PUMP FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS INFORMED OF THE FAILURE. THE VIN WAS UNKNOWN. THE APPROXIMATE FAILURE MILEAGE WAS 11,000.[35]

86.     Likewise, on January 9, 2017, the owner of a 2013 GMC Sierra 2500 submitted the following complaint to NHTSA regarding the defective condition:

**BOSCH CP4 FUEL PUMP FAILURE**. PLEASE REFERENCE EA11-003 AND FIND THE SAME FUEL PUMPS THAT WERE FOUND TO FAIL ON AUDI/VW VEHICLES ARE ALSO USED ON GM, FORD, AND DODGE VEHICLES. SAID PUMP FAILED DURING DRIVING WITHOUT WARNING CAUSING COMPLETE ENGINE SHUTDOWN AND LOSS OF POWER. CERAMIC AND METAL INTERNALS OF THE PUMP DISINTEGRATED AND TRAVELED THROUGH THE FUEL SYSTEM, SUBSEQUENTLY CAUSING THE INJECTORS TO FAIL. SIMILAR TO THE FINDINGS IN EA11-003, PAGE 16 PARAGRAPH 2, THE REPAIR IS TO COST APPROXIMATELY $10,000 TO FIX THE ENTIRE FUEL SYSTEM. *TR[36]

87.     Similarly, on March 15, 2017, the owner of a 2012 Chevrolet Silverado 3500 submitted the following complaint to NHTSA regarding the defective condition:

WHILE DRIVING ON A FOUR-LANE HIGHWAY TOWING OUR 15,500 LB FIFTH WHEEL, SUDDENLY, WITHOUT ANY WARNING, WE HEARD RATTLING, LOST POWER, AND THE ENGINE SHUT DOWN. THE NOISE AND LOSS OF PROPULSION, POWER STEERING AND POWER BRAKES ALL OCCURRED WITHIN ABOUT 2-3 SECONDS. GRATEFULLY, THE DRIVER HAD THE FORTITUDE TO IMMEDIATELY BEGIN PULLING ONTO THE SHOULDER OF THE SLIGHT DOWNWARD SLOPE ON WHICH WERE [SIC] DRIVING. LUCKILY, WE WERE ON A STRETCH OF ROAD THAT WAS NOT INCLINED, NOT IN A CONSTRUCTION ZONE WITH BARRIERS, NOT IN A SNOWY MOUNTAIN PASS OR IN OTHER

---

[35] NHTSA ID No. 10937972.
[36] NHTSA ID No. 10943828 (emphasis added).

INCLEMENT WEATHER, NOT IN THE LEFT LANE PASSING, ETC. HAD ANY OF THESE FACTORS PREVENTED US FROM SIMPLY PULLING ONTO THE SHOULDER OF THE ROAD, THE POTENTIAL FOR A LIFE THREATENING ACCIDENT WOULD HAVE BEEN SIGNIFICANT. **THE CHEVROLET/GM SERVICE CENTER CONFIRMED THE BOSCH CP4 HPFP SUFFERED A CATASTROPHIC FAILURE, DESTROYING THE ENTIRE FUEL SYSTEM OF THE TRUCK.** GM IS COVERING PART OF THE REPAIR COSTS (TRUCK IS AT 119,705 MILES), BUT OUR BILL WILL REMAIN SUBSTANTIAL. RESEARCH OF DIESEL, TDI, AND OTHER FORUMS DOCUMENT THIS PROBLEM AS WELL-KNOWN AND BROADER THAN THE EXISTING 9 COMPLAINTS IN THE NHSTA PUBLIC DATABASE AND THE INVESTIGATION OF VW/AUDI. SOME PEOPLE ARE EVEN REPORTING MULTIPLE FAILURES. THE MOST COMMON BELIEVABLE CAUSE OF THE FAILURES SEEMS TO BE A MISMATCH OF LUBRICITY SPECS BETWEEN THE BOSCH CP4 AND THE DIESEL FUEL IN THE U.S. PLEASE OPEN AN INVESTIGATION, AND ORDER GM, FORD, VW, BOSCH AND OTHERS TO RECALL THESE VEHICLES TO PROVIDE THE NECESSARY REPAIRS. ALSO PLEASE MANDATE, TO THE EXTENT YOU'RE ABLE, REIMBURSEMENT TO THOSE OF US PAYING FOR REPAIRS TODAY. I HAVE READ, BUT HAVE NOT BEEN ABLE TO CONFIRM, THAT VW EXTENDED THE WARRANTY TO 120K MILES. THIS SEEMS LIKE A MINIMUM (MORE IS BETTER) STEP, AND IT SHOULD BE RETROACTIVE.[37]

88.     On May 26, 2017, the owner of a 2012 GMC Denali Duramax Sierra 2500 posted the following on DuramaxForum.com:

So I have a 2012 GMC Denali Duramax with 116k on the odometer. A couple of weeks it just stopped working while driving. We had it towed to the dealer and they took a look at it and stated the fuel pump 'blew' up and contaminated the entire fuel delivery system. They want to

---

[37] NHTSA ID No. 10966092 (emphasis added).

replace the entire fuel system as well as put in an 'upgraded' GM pump for about $7100.[38]

89.   In the same vein, diesel truck owners in the online forum DieselPlace.com lamented their woes in the following conversation thread entitled, *"Have they fixed the CP4 issue yet?"*

- "[My 2015 GMC LML] just blew up at 68k. Sent metal through the whole fuel system. [$]10.5K to fix."

- "There is nothing NORMAL about a +$10k repair bill . . . . If CP4s failed like CP3[']s nobody would be talking about it. But the fact they puke with no [failsafe] is the real issue. When people are having to take out 2nd mortgages to get their truck repaired there's a problem with that."[39]

90.   Along these same lines, in January 2015, the owner of a 2015 GMC Sierra 3500 began a thread on the DuramaxForum.com stating as follows:

I have a new 2015 GMC 3500 with 14k miles that the injection pump crapped out on me. Dealer has had it for 3 1/2 weeks. Was told if they find any metal they would have to tear the engine down. Well they found metal but didn't tear it all the way down. Has anyone else had an issue [with] the injection pump on the 2015 Duramax[?][40]

91.   Shortly thereafter, the following response comes in from a fellow DuramaxForum.com user: "[L]ots of LML's have had injector pump issues in the states[,] go down to the LML [forum] and read, it[']s caused by the new

---

[38] May 26, 2017, DuramaxForum.com thread entitled, "Injection CP4 pump failure," available at https://www.duramaxforum.com/forum/11-16-lml-duramax-powertrain/909393-injection-cp4-pump-failure.html (last accessed Aug. 5, 2019).

[39] https://www.dieselplace.com/forum/63-gm-diesel-engines/365-duramax-fifth-generation-2011-2016-lml/794162-have-they-fixed-cp4-issue-yet.html (last accessed Aug. 6, 2019).

[40] *See* https://www.duramaxforum.com/forum/general-discussion/560786-2015-duramax-injection-pump-troubles.html (last accessed Aug. 5, 2019).

cp4.2 pump that needs better fuel then what you can buy."[41]

92.     Notably, the initial complainant then explained how he finally got his truck back after a series of fuel line/tank line/chassis line flushes and replacements by the dealership, including a fuel pump injector replacement: "[I]t was around [an $]8000.00 job and that was warranty price."[42]  One DuramaxForum.com user aptly responded, "To[o] bad the dealers won[']t just install a cp3 instead of the crappy cp4 when these go out in the lml[]s.  It only makes sense!!!"[43]

93.     Along the same lines, on August 3, 2017, the owner of a 2012 Chevrolet Silverado 2500 submitted the following complaint to NHTSA regarding the defective condition:

> **BOSCH CP4.2 FUEL PUMP MALFUNCTIONED AND CONTAMINATED THE ENTIRE FUEL AND INJECTION SYSTEM WITH METAL SHAVINGS.** THE TRUCK ENGINE STOPPED WHILE TRAVELING AT 50 MPH ON A CITY STREET AND LEFT ME WITH NO POWER STEERING. THE ENTIRE FUEL SYSTEM NEEDS TO NOW BE REPLACED AND NOT COVERED BY THE MANUFACTURER. REPAIR BILL OF OVER $7,000.[44]

94.     On November 13, 2017, the following incident involving a 2014 GMC Sierra 2500HD Duramax truck was filed with NHTSA:

> MY FUEL PUMP AND INJECTORS FAILED WHILE I WAS DRIVING, STRANDING MY TRUCK IN THE MIDDLE OF TRAFFIC RIGHT WHERE A CITY STREET WAS CHANGING TO A COUNTRY ROAD. THE GMC DEALERSHIP FALSELY CLAIMED THAT THIS WAS CAUSED BY USING UNAPPROVED FUEL. THE FUEL I USED WAS B20 BIODIESEL, WITH 80% RENEWABLE    DIESEL,    WHICH    MEETS    DIESEL

---

[41] *See id.*

[42] *Id.*

[43] *Id.*

[44] NHTSA ID No. 11012551 (emphasis added).

SPECIFICATIONS AND IS A LEGAL ROAD FUEL IN CALIFORNIA. THEY ALSO CLAIMED THAT A CASCADE OF OTHER PROBLEMS WERE ALL CAUSED BY MY FUEL AND REFUSED TO APPLY MY WARRANTY.[45]

95.     On April 10, 2018, the following customer complaint involving a 2016 Chevrolet Silverado 3500 diesel truck was filed with NHTSA:

> TL* THE CONTACT OWNS A 2016 CHEVROLET SILVERADO 3500. WHILE DRIVING 40-45 MPH, THE REDUCED ENGINE SPEED WARNING INDICATOR ILLUMINATED AND THE VEHICLE STALLED. THE CONTACT WAS UNABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO HERB EASLEY MOTORS (1125 CENTRAL E FWY, WICHITA FALLS, TX 76306, (940) 723-6631) WHERE IT WAS DIAGNOSED THAT THE FAILURE WAS DUE TO CONTAMINATION OF METAL SHAVINGS IN THE FUEL PUMP AND FUEL RAILS. IN ADDITION, THE FAN CLUTCH FAILED AND NEEDED TO BE REPLACED, INCLUDING THE ENTIRE FUEL SYSTEM. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED SEVERAL MONTHS LATER. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE FUEL SYSTEM NEEDED TO BE REPLACED AGAIN. THE VEHICLE WAS NOT REPAIRED DUE TO COST. THE MANUFACTURER WAS NOTIFIED OF THE FAILURES AND CASE NUMBER: 8-4064184145 WAS OPENED. THE APPROXIMATE FAILURE MILEAGE WAS 38,000.[46]

96.     On April 17, 2018, the following report was submitted to NHTSA on behalf of the owner of a 2013 GMC Sierra 3500:

> TL* THE CONTACT OWNS A 2013 GMC SIERRA 3500. THE CONTACT STATED THAT THE VEHICLE FAILED TO START. THE VEHICLE WAS TOWED TO KUHIO CHEVROLET CADILLAC HYUNDAI NISSAN (3033 AUKELE ST, LIHUE, HI 96766, (808) 245-6731) WHERE IT WAS DIAGNOSED THAT THE FUEL PUMP AND INJECTORS FAILED AND NEEDED TO BE

---

[45] NHTSA ID No. 11045708.
[46] NHTSA ID No. 11084287.

REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS CONTACTED AND DID NOT ASSIST. THE APPROXIMATE FAILURE MILEAGE WAS 34,500. THE VIN WAS NOT AVAILABLE.[47]

97.     On November 12, 2018, the owner of a 2011 Chevrolet Silverado 2500 submitted the following complaint to NHTSA regarding the defective condition:

"I WAS TRAVELING TO WORK IN THE FAST LANE OF THE FREEWAY WHEN I HEARD A FAINT SQUEALING NOISE AND THE TRUCK SUDDENLY STARTED RUNNING ROUGH. I BEGAN CROSSING ALL 4 LANES AND BY THE TIME I MADE IT TO THE [SIC] SLOW LANE THE TRUCK COMPLETELY DIED. I WAS ABLE TO SAFELY COAST OFF OF THE FREEWAY DUE TO MY QUICK REACTION AND LACK OF TRAFFIC AT THE TIME, BUT THE SITUATION WAS VERY DANGEROUS AND COULD HAVE BEEN MUCH MORE SO WITH HEAVIER TRAFFIC OR A LESS AWARE DRIVER. **LATER DIAGNOSIS AT THE CHEVROLET DEALERSHIP TOLD ME THAT THE CP4 FUEL PUMP DISINTEGRATED INSIDE. AFTER SPEAKING WITH THE DIESEL TECHNICIAN AT THE DEALER I LEARNED THAT IT IS A VERY COMMON PROBLEM AND THE REPAIR COMES WITH A $10,000 PRICE TAG.** I WAS ALSO VERY SURPRISED THAT THERE HAS NEVER BEEN A RECALL FOR THIS PROBLEM AND GM CONTINUED TO USE THEM UNTIL 2017...7 YEARS! MY TRUCK IS A 2011 WITH ONLY 54K MILES, AND THEY JUST FIXED A 2017 WITH ONLY 7K MILES! I HAVE SINCE DONE A LOT OF RESEARCH FINDING HUNDREDS OF LOW MILEAGE GM DURAMAX DIESEL BETWEEN 2011-2017 WITH THE EXACT SAME FAILURE. I WAS ABLE TO GET THE BOTTOM OF THE FAILURE ITSELF AND I FOUND THE FOLLOWING...THE BOSCH CP4 FUEL PUMPS THAT WERE USED IN THESE TRUCKS (ALSO FOUND IN LATE FORD AND VW DIESELS) ARE MADE IN EUROPE TO DIFFERENT SPECIFICATIONS. THE PUMPS RELY ON LUBRICANT FOUND IN DIESEL #1 TO OPERATE SMOOTHLY AND LAST A LONG TIME. HERE IN

---

[47] NHTSA ID No. 11088735.

THE U.S. WE ONLY HAVE DIESEL #2 WHICH LACKS THAT LUBRICANT AND CAUSES THE INTERNAL PARTS OF THE PUMP TO DISINTEGRATE SENDING METAL SHAVINGS THROUGHOUT THE ENTIRE FUEL SYSTEM. THIS IS WHY THE REPAIR AVERAGES $10,000 ACROSS THE COUNTRY, THE ENTIRE FUEL SYSTEM BECOMES CONTAMINATED AND HAS TO BE REPLACED. I CONTACTED GM AND THEY DON'T BELIEVE THIS IS A SAFETY ISSUE. A VEHICLE SUDDENLY DIEING WITH SECONDS NOTICE ON THE FREEWAY IS CERTAINLY A SAFETY ISSUE IN MY EYES. ESPECIALLY WHEN IT'S A COMMON FAILURE THAT CAN BE PREVENTED."[48]

98.     Notably, in August 2014, GM issued an internal "Preliminary Information" service bulletin to dealers—but *not* consumers—regarding the following vehicles equipped with the 6.6L Duramax Diesel RPO codes LGH and LML: 2010–15 Chevrolet Express van, 2010–15 Chevrolet Silverado, 2010–15 GMC Savana van, and the 2010–15 GMC Sierra.[49] The bulletin's subject was, "Duramax Diesel Hard Start No Start P0087 P0088 P0191 P128E Or Injection Pump Replacement," and stated that if a customer with one of the aforementioned vehicles came into a dealership with "a hard start or a no start" problem, and the normal diagnostic procedure led the dealer to conclude that fuel injection pump replacement was necessary, "Fuel Pressure Regulator 1 must be inspected for magnetic metal debris" as well.[50] In other words, simply replacing the fuel injection pump would not completely solve the problem because metal shavings would have contaminated the entire fuel injection system. The bulletin directed dealers to remove the fuel injection pump and pressure regulator and "inspect[] for magnetic metal debris," and

[48] NHTSA ID No. 11150932 (emphasis added).

[49] *See* Aug. 2014 GM Service Bulletin PIP4949D, Preliminary Information regarding "Duramax Diesel Hard Start No Start P0087 P0088 P0191 P128E Or Injection Pump Replacement," available at https://static.nhtsa.gov/odi/tsbs/2014/SB-10044240-3551.pdf (last accessed Aug. 5, 2019).

[50] *Id.* at 1.

if metal debris was found, GM required its dealers to retain the affected fuel system components which "will be requested back for an engineering inspection."[51]  The following photographs of a contaminated fuel pressure regulator were provided as examples of the condition having manifested—and metal shavings can be seen throughout:[52]



99.    Rather than issue a recall, in March 2017 GM went on to reissue the Preliminary Information as Technical Service Bulletin #16-NA-102, expanding the affected model years to include the 2016 model year.[53]

100.  Tellingly, GM stopped equipping the Class Vehicles with the CP4 pump after the 2016 model year, opting instead for the Denso HP4 fuel injection

---

[51] *Id.* at 1, 3.

[52] *Id.* at 2–3.

[53] Mar. 2, 2017, GM Technical Service Bulletin #16-NA-102: Duramax Diesel Hard Start, No Start, DTCs P0087, P0088, P0191, P128E or Injection Pump Replacement, Document ID: 4474673, available at https://f01.justanswer.com/ Bluegorilla/53288260-1d95-4c61-94ef-9cbd4868f4c1_My_Boot_Camp_printed_ document.pdf (last accessed Aug. 5, 2019).

pump[54]—a design that has been available for medium and large-sized trucks since at least the 2004 model year.[55]

### E.    Supposed "Remedies" are Insufficient and Costly

101.    Because of its incompatibility with U.S. diesel fuel, CP4 pumps and corresponding fuel injection systems, even when replaced or "fixed," will continue to fail in the Class Vehicles. Indeed, in a June 2010 email chain between Bosch and representatives of Audi and Volkswagen regarding the failure of a CP4 pump in a 2010 Audi A3 TDI, Audi asked Bosch, "[W]hy are the defects mentioned below still present after replacing the high-pressure pump and the injector? What could the [dealer] have done wrong by way of incorrect repair so that such defects are appearing?" Bosch responded that "In this case the complete fuel system (HPP, rail, injectors, **all** lines) need to be changed. . . .  I assume that because of the 'cruncher,' the entire system is contaminated with chips, which are then pumped in circulation and can soon lead to the next failure! The rough running can be explained by the fact that a chip is already present before or in the injector and is impairing its function."[56]

---

[54] *See, e.g.*, Dec. 26, 2018, *Duramax History, Lesson 6: L5P*, DRIVINGLINE.COM, available at   https://www.drivingline.com/articles/duramax-history-lesson-6-l5p/ (last accessed Aug. 6, 2019)

[55] *See, e.g.*, Sept. 2007 Denso Diesel Injection Pump Service Manual for Common Rail System (CRS) Operation, Sec. 1.5 ("Common Rail System And Supply Pump Transitions"), available at http://steldiesel.ru/files/crdensoservismanual.pdf (last accessed Aug. 5, 2019) ("In 2004, the three-cylinder HP4 based on the HP3 was introduced"); Dec. 2013 Denso Diesel Systems & Diagnostics, Technical News Bulletin, Issue 1, at 1, available at http://www.denso.ro/media/151806/2013_technical-service-bulletin_no-01.pdf (last accessed Aug. 5, 2019) (showing different types of Denso high-pressure pumps and their range of applications, including the HP4, beginning in the 2004 2nd Generation Common Rail System).

[56] Mar. 7, 2011 Bosch submission to NHTSA in response to Inquiry No. INRD-EA11003, document entitled, "INRD-EA11003-59347P.pdf," at 79-80 (Jun. 7-9, 2010 email chain between Bosch, Audi, and Volkswagen representatives regarding CP4 fuel pump failure falsely attributed to "misfuel").

102.   The Bosch CP4 Pump problem is so prevalent that several automotive parts sellers now provide kits to mitigate the inevitable harm.  "Disaster Preventer Kits" or "bypass kits" usually refer to a fuel bypass system that does not prevent the failure, the loss of the expensive injection pump, or the need to clean metal shavings from the fuel system.  But these kits are designed to redirect the lubricating fuel for the CP4 back to the fuel tank, so that it will be filtered before it returns to the engine. The bypass kit directs the fuel contaminated with metal shavings into the gas tank, which is less expensive to clean than the engine and high-pressure fuel system—in other words, a "Band-Aid" solution. These bypass kits are also less expensive than more complete remedies, requiring only $300-$400 in parts, and are marketed as having the ability to "[p]revent CP4 failures from contaminating the high pressure fuel system."[57] Many consumers have turned to this sort of remedy preemptively due to the known impending failures their vehicles are facing.

103.   Another method of addressing the Bosch CP4 Pump failure is to modify the Class Vehicles to return to the older, more reliable technology of simply using more fuel. With Duramax engines, the strategy may be simply to buy a predecessor CP3 pump from an independent automotive parts vendor and install it in place of the Bosch CP4 Pump.  Indeed, the CP4 pump is so substandard that many Class Vehicle owners have opted to replace their CP4 pumps with CP3 pumps at a cost of at least $3,000 per vehicle for the replacement parts alone.[58] Resorting to this "remedy" fails

---

[57]   Online sales listing for "2011-2016 LML CP4 Fuel Bypass Kit," PerformanceFueled.com, available at http://performancefueled.com/cp4-fuel-bypass-kit/ (last accessed Aug. 5, 2019).

[58]   *See, e.g.*, http://www.engineered-diesel.com/lml-duramax-cp3-conversion-kit-with-re-calibrated-pump-50-state-carb-certified (last accessed Aug. 5, 2019) (selling "LML Duramax CP3 Conversion Kit with re-calibrated Pump[s]" for $3,000.00 and noting that the "[k]it is designed to replace the less reliable CP4 that comes stock on the LML"); https://www.dieselpowerproducts.com/p-15627-industrial-injection-436403-cp4-to-cp3-injection-pump-conversion-kit-tuning-required-11-16-66l-gm-

to make consumers whole because they are not getting the fuel efficiency promised with the Bosch CP4 Pump, and for which they paid a premium. Further, consumers are having to pay thousands of dollars out of pocket to essentially redesign a design flaw that was implemented by GM in the Class Vehicles.

104. Another potential "remedy" is to leave the CP4 in place on the Class Vehicle, but install a lift pump, a second pump to assist the Bosch CP4 Pump and increase the fuel pressure. But, again, this "remedy" deprives consumers of the fuel-efficiency for which they paid a premium.

105. The lift pump and CP3 pump options remedy part of the problem by pumping and burning more fuel. So, in addition to the expense of buying a new fuel injection pump, the "remedies" would require owners to purchase more fuel.

106. A fourth way to mitigate the damage is to spend money for fuel additives to increase the lubricity of the fuel. This approach may work best in conjunction with the previously discussed modifications, but even by itself, it can be expensive.

107. In short, there is no known way to remedy or mitigate CP4 pump failure without decreasing the fuel efficiency promised to Plaintiffs and other Class members and without significant expense to Plaintiffs and other Class members.

---

duramax-lml.aspx (last accessed Aug. 5, 2019) (selling an "Industrial Injection CP4 to CP3 Injection Pump Conversion Kit" for 2011-2016 6.6L GM Duramax LML and noting, "With the release of the LML Duramax in 2011, GM made the switch from the reputable CP3 injection pump to the lower output CP4 pump, simply because they deemed it was 'good enough.' Is 'good enough' good enough for you and your truck? We've seen numerous failures on the CP4 on stock trucks, let alone even slightly modified trucks that chew them up and spit them out. Industrial Injection has this complete conversion kit that delivers everything you need to swap out your failure prone CP4 to a dependable CP3").

F.    **GM Knew Durability and Superiority Were Material to Consumers and Made Hollow Promises of Durability and Superiority.**

108.   When it first came on the scene in 2010, GM announced that its new 6.6 liter Duramax V-8 diesel engine for 2011 model year Chevrolet Silverado and GMC Sierra heavy duty trucks would be 11 percent more fuel efficient than its previous Duramax diesel engines, with "a mind-blowing 765 pounds-feet of torque."[59]   In a press release, GM's chief Duramax engineer, Gary Arvan, proclaimed, "[W]e've enhanced the Duramax to make it one of the most competitive engines in the segment—one that takes performance and fuel economy to the next level.  Whether it's a new Sierra Denali HD or an ambulance based on a Sierra chassis cab, customers will find the Duramax is the power behind the greater capability these trucks offer."[60]

109.   GM's 2011 Chevrolet Silverado HD truck brochure boasted of an eleven-percent increase in fuel efficiency while claiming the durability of its predecessors, "PROVEN DURABILITY[:]  The Duramax-Allison combination continues to build on its proven reliability."

110.   GM's 2011 Chevrolet Silverado HD brochure further emphasized that GM had "engineered the new 2011 Silverado HD with durable, advanced technology that makes this [their] **most powerful heavy-duty ever.**" GM also provided an express "100,000 mile/5-year Powertrain Warranty to guarantee the quality." The

---

[59] Mar. 9, 2010, "GM Announces Best-in-Class Power Figures for 2011 6.6-liter Duramax V-8 Diesel," PickupTrucks.com, available at https://news.pickuptrucks.com/2010/03/gm-announces-best-in-class-power-figures-for-2011-duramax-v8-diesel.html (last accessed Aug. 5, 2019).

[60] Mar. 10, 2010, "GMC's 2011 Heavy-Duty Trucks Build on Proven Heritage with New Duramax 6.6L Turbo Diesel Engines," GM Pressroom, available at https://media.gm.com/media/us/en/gm/news.detail.html/content/Pages/news/us/en/2010/Mar/0310_gmc_sierra_hd/0310_duramax.html (last accessed Aug. 5, 2019).

brochure further stated "[t]he new Silverado HD. From Chevrolet—the most dependable, longest-lasting full-size pickups on the road."

111.   Moreover, this brochure expressly stated that the Duramax diesel engine in the 2011 Silverado could run on "B20 biodiesel. . . which is composed of 20% biodiesel mixed with regular diesel:"[61]



112.   Likewise, for the 2012 GMC Sierra HD, GM actively touted the Duramax diesel engine's "advanced" high-pressure diesel direct injection system "that helps it start in as little as 3.0 seconds . . . [and] can give you a maximum

---

[61]   2011 Chevrolet Silverado HD Vehicle Brochure, at 5, available at http://www.auto-brochures.com/makes/Chevrolet/Silverado/Chevrolet_US%20SilveradoHD_2011.pdf (last visited Aug. 5, 2019).

highway range of up to 680 miles on a single fill-up, thanks to its extra-large 36-gallon fuel tank[:]"[62]



113. GM's 2012 Chevrolet Silverado HD brochure highlights the "dependable, long-lasting workhorse of a truck that comes with the best coverage of

---

[62]   2012 GMC Sierra Vehicle Brochure, at 28, available at https://cdn.dealereprocess.net/cdn/brochures/gmc/2012-sierra.pdf (last accessed Aug. 5, 2019).

any size pickup – a 100,000 MILE/5-YEAR POWERTRAIN WARRANTY. Because [they know] it's one thing to talk quality and quite another to back it up[:]"[63]



Brute strength solves a lot of problems. Reason enough to build the 2012 Silverado HD—**OUR MOST POWERFUL HEAVY DUTY** yet. By teaming an available **DURAMAX® 6.6L TURBO-DIESEL V8** powerhouse with the legendary Allison® 6-speed transmission, Silverado HD delivers **397 HORSEPOWER, 765 LB.-FT. OF TORQUE** and a **MAXIMUM TOWING CAPACITY OF UP TO 23,000 LBS.** Factor in a high-strength, fully boxed steel frame that's capable of hauling up to 7,215 lbs. of payload and the phrase "**THE STRONGEST SILVERADO HD EVER**" takes on a much deeper meaning.

Want to configure your rig? Silverado HD gives you the choices you need to carry both cargo and crew. Choose from Regular Cab, Extended Cab or Crew Cab, all available in 2WD or 4x4 models to help you get the right people to the job.

The 2012 Silverado HD. This dependable, long-lasting workhorse of a truck comes with the best coverage of any full-size pickup—a **100,000-MILE/5-YEAR POWERTRAIN WARRANTY.** Because we know it's one thing to talk quality and quite another to back it up.

114.   GM's 2013 Chevrolet Silverado HD brochure underlined the depth of their heritage and passion for what they do at Chevrolet. Chevrolet's brochure

---

[63]   2012 Chevrolet Silverado Vehicle Brochure, at 3, available at https://cdn.dealereprocess.net/cdn/brochures/chevrolet/2012-silveradohd.pdf (last accessed Aug. 5, 2019).

indicated that it is "ingrained in the bold design, spirited performance, proven durability, and exceptional value [their] drivers enjoy."[64]  Moreover, GM touted its 2013 1500 HD trucks as the "most dependable[,] longest-lasting full-size pickups on the road[:]"[65]



115.   GM's 2014 Chevrolet Silverado HD brochure emphasized that consumers could "EXPECT THE BEST" and guaranteed that, "every Silverado 2500HD and 3500HD is backed by the Best Pickup Coverage in America, including a 100,000-mile/5-year Powertrain Limited Warranty and 24,000-mile/2-year scheduled maintenance. That's long-lasting dependability you can believe in."[66]

116.   For the 2015 Chevrolet Silverado HD, which GM touted as "our most advanced heavy-duty pick-up ever," GM's vehicle brochure proclaimed, "You don't get to be part of the most dependable, longest-lasting full-size pickups on the road

---

[64]   2013 Chevrolet Silverado Vehicle Brochure, at 2, available at https://cdn.dealereprocess.net/cdn/brochures/chevrolet/2013-silverado1500.pdf (last accessed Aug. 5, 2019).

[65]   *Id.* at 4.

[66]   2014 Chevrolet Silverado HD Vehicle Brochure, at 2, available at https://cdn.dealereprocess.net/cdn/brochures/chevrolet/2014-silverado2500hd.pdf (last accessed Aug. 5, 2019).

by tampering with what works. You build on proven success. You make your best even better[:]"[67]



**THE STRENGTH OF EXPERIENCE. SILVERADO HD.**

Introducing the new Silverado HD. Built heavy-duty strong to help get you through the most demanding jobs, the 2015 Silverado HD offers the proven power of our Duramax 6.6L Turbo-Diesel V8 mated to the legendary Allison® transmission—produced by the makers of military tank transmissions. Or there's the muscle of our standard Vortec 6.0L V8. The new Silverado HD is heavy-duty smart, too. With its advanced exterior and interior designs, plus safety innovations including the available Safety Alert Driver Seat, the 2015 Silverado 2500HD and 3500HD move the strong tradition of Chevy trucks decisively forward.

Got something serious to tow? Got a mountain to climb? Silverado 3500HD can tow up to 23,200 lbs[1]—without breaking a sweat. With advanced technology like Trailer Sway Control, Silverado HD is a tow vehicle that combines brute strength with engineering refinement.

You don't get to be part of the most dependable, longest-lasting full-size pickups on the road[2] by tampering with what works. You build on proven success. You make your best even better.

117. Additionally, in the Duramax diesel supplement to the owners' manual for the 2015 Duramax diesel Chevrolet Silverado and GMC Sierra, GM specifically represented that, "This vehicle is approved to use . . . diesel and biodiesel blends [which] must meet all the requirements as defined in the most current versions of the local fuel standards."[68]

118. Likewise, GM touted the longevity and reliability of the Duramax 6.6L Turbo-Diesel engines in 2016 Chevrolet Silverado HD 2500 and 3500 vehicles by proclaiming that, "There are over 1 million Duramax diesels with Allison transmissions on the road today with over 100 billion miles of experience . . . . [The]

---

[67] 2015 Chevrolet Silverado HD Vehicle Brochure, at 3, available at https://www.gmcertified.com/PDFs/ModelLibrary/Chevrolet/Silverado%20HD/2015-Chevrolet-Silverado-HD.pdf (last accessed Aug. 6, 2019).

[68] 2015 Chevrolet/GMC Duramax Diesel Supplement, Sec. 9-21 ("Fuel"), available at https://my.chevrolet.com/content/dam/gmownercenter/gmna/dynamic/manuals/2015/gmc/sierra_1500/2015-Silverado%20HD%20&%20Sierra%20HD-Duramax-Diesel-Manual.pdf (last accessed Aug. 5, 2019).

Duramax Turbo-Diesel engine lets Silverado HD offer you best-in-class maximum conventional towing capability.  That's power you can trust to go the distance[:]"[69]



Duramax 6.6L Turbo-Diesel V8 engine.

**DURAMAX 6.6L TURBO-DIESEL.** This is heavy-duty strength you can count on. There are over 1 million Duramax diesels with Allison® transmissions on the road today with over 100 billion miles of experience.

Churning out an earthshaking 765 lb.-ft. of torque, the available Duramax Turbo-Diesel engine lets Silverado HD offer you best-in-class maximum conventional towing capability.² That's power you can trust to go the distance.

**BUILT FOR THE EXTREME.** Duramax glow plugs heat up quickly and, together with Direct Injection, can help your Silverado HD start quickly in extremely cold temperatures.

At the other end of the spectrum, the engine oil cooler, transmission cooler and turbo intercooler will give you confidence when climbing even in the hottest conditions.

119.  GM similarly touted the capability of the 2011 Chevrolet Express van by noting that its new 6.6L Duramax diesel engine had "up to 11-percent greater fuel economy" than previous models, along with a "new 30,000-psi (2,000 bar) piezo-actuated fuel injection system—capable of operating on ASTM grade B20

---

[69] 2016 Chevrolet Silverado HD Vehicle Brochure, at 9, available at https://www.gmcertified.com/PDFs/ModelLibrary/Chevrolet/Silverado%20HD/2016-Chevrolet-Silverado-HD.pdf (last accessed Aug. 5, 2019).

biodiesel[—]ensur[ing] more precise fuel delivery, improving emission performance."[70]

120.   Likewise, GM advertised the 2011 GMC Savana van as having a "new Duramax 6.6L turbo diesel" engine that was "more fuel-efficient—up to 11-percent greater fuel economy than the outgoing model," as well as having a "new 30,000-psi (2,000 bar) piezo-actuated fuel injection system—capable of operating on ASTM grade B20 biodiesel—ensur[ing] more precise fuel delivery, improving emission performance."[71]

121.   GM also provided an express 60-month, 100,000-mile written warranty with the Class Vehicles it manufactured.

122.   GM has repeatedly refused to honor its warranties, deviously claiming that the metal shavings caused by the failures of their pump design voided the warranty because they also caused fuel contamination.

123.   GM induced Plaintiffs and other Class members to pay a premium for increased durability, performance and fuel efficiency, with a design GM has long known would cause fuel contamination—a condition GM now uses to absolve itself of the catastrophic and costly consequences to Plaintiffs and other Class members.

## G.   GM's "Certified Pre-Owned" Vehicle Sales Allow GM to Further Profit Off of its Fraudulent Conduct.

124.   While GM has ostensibly ceased production of new diesel trucks containing the defective Bosch CP4 fuel pump, it continues to market and sell the

---

[70] "2011 Chevrolet Express Offers Powerful Duramax Diesel in 3500 Passenger Vans, Greater Connectivity," GM PRESSROOM, available at https://media.gm.com/media/us/en/chevrolet/vehicles/express-psgr/2011.html (last accessed Aug. 5, 2019).

[71] "2011 GMC Savana Offers Powerful Duramax Diesel in 3500 Passenger Vans, Greater Connectivity," GM PRESSROOM, available at https://media.gmc.com/media/us/en/gmc/vehicles/savana/2011.html (last accessed Aug. 5, 2019).

Class Vehicles through its "Certified Pre-Owned" program.  In so doing, GM continues to conceal the fact that the Class Vehicles are defective and contain serious safety and functionality defects, while fraudulently representing that these "Certified Pre-Owned" vehicles are free from safety defects and were built with "premium" and superior engineering and design.

125.   Indeed, GM's "Certified Pre-Owned" website touts the fact that said vehicles "[m]ust pass our 172-Point Vehicle Inspection and Reconditioning Process"[72] to give you "172 Reasons to Feel Confident."[73]  And indeed, this Certified Pre-Owned 172-Point Vehicle Inspection expressly comes with the promise that the vehicle's fuel system has been professionally evaluated[74] so that the vehicle can "meet our premium manufacturing standards to earn the Certified title."[75] The Certified Pre-Owned package also purports to include an "[i]mproved 6-Year/100,000-Mile Powertrain Limited Warranty"[76] which only *further* perpetuates GM's fraud by noting that this warranty coverage does "[n]ot [i]nclude[] . . . [d]amage due to contaminated or poor-quality fuel."[77] In other words, GM will continue to blame customers when their CP4 fuel pumps catastrophically fail in a "Certified Pre-Owned Vehicle," instead of taking responsibility for the fact that GM

---

[72] https://www.gmcertified.com/certified-benefits/built-in-value (last visited Aug. 5, 2019).

[73] https://www.gmcertified.com/certified-benefits/vehicle-car-inspection (last visited Aug. 5, 2019).

[74] *See* https://storage.static-gm.com/aa/a025aeed-72c4-4e86-9289-964422138cbe/8154502a-6403-4112-beb5-1b280b5dc92f/172-Point_Inspection_Checklist_02_2016.pdf (last visited Aug. 5, 2019).

[75] https://www.gmcertified.com/certified-benefits (last visited Aug. 5, 2019).

[76] https://www.gmcertified.com/certified-benefits/used-car-warranty (last visited Aug. 5, 2019).

[77] *Id.*

manufactured the Class Vehicles with a fuel pump that is simply incompatible with U.S. diesel fuel.

126. And yet countless Class members who have purchased Certified Pre-Owned Class Vehicles have received none of the "happily ever after"[78] GM promised, when Class members later come to learn that they have been duped into buying an *American* vehicle that is inherently incompatible with the only diesel fuel they can reasonably expected to use *in America*.

**H.    Allegations Establishing Agency Relationship Between Manufacturer GM and GM Dealerships.**

127. Upon information and belief, Manufacturer Defendant GM has impliedly or expressly acknowledged that GM-authorized dealerships are its sales agents, the dealers have accepted that undertaking, GM has the ability to control authorized GM dealers, and GM acts as the principal in that relationship, as is shown by the following:

    i.    Manufacturer GM can terminate the relationship with its dealers at will;

    ii.    The relationships are indefinite;

    iii.    Manufacturer GM is in the business of selling vehicles as are its dealers;

    iv.    Manufacturer GM provides tools and resources for GM dealers to sell vehicles;

    v.    Manufacturer GM supervises its dealers regularly;

    vi.    Without Manufacturer GM, the relevant GMs dealers would not exist;

    vii.    Manufacturer Principal GM requires the following of its dealers:

        a.    Reporting of sales;

        b.    Computer network connection with Manufacturer GM;

---

[78]    *See*    https://www.gmcertified.com/certified-benefits/customer-satisfaction-3-day-150-mile (last accessed Aug. 6, 2019).

c. Training of dealers' sales and technical personnel;

d. Use of Manufacturer GM-supplied computer software;

e. Participation in Manufacturer GM's training programs;

f. Establishment and maintenance of service departments in GM dealerships;

g. Certify GM pre-owned vehicles;

h. Reporting to Manufacturer GM with respect to the car delivery, including reporting Plaintiffs' names, addresses, preferred titles, primary and business phone numbers, e-mail addresses, vehicle VIN numbers, delivery date, type of sale, lease/finance terms, factory incentive coding, if applicable, vehicles' odometer readings, extended service contract sale designations, if any, and names of delivering dealership employees; and

i. Displaying Manufacturer GM logos on signs, literature, products, and brochures within GM dealerships.

viii. Dealerships bind Manufacturer GM with respect to:

a. Warranty repairs on the vehicles the dealers sell; and

b. Issuing service contracts administered by Manufacturer GM.

ix. Manufacturer GM further exercises control over its dealers with respect to:

a. Financial incentives given to GM dealer employees;

b. Locations of dealers;

c. Testing and certification of dealership personnel to ensure compliance with Manufacturer GM's policies and procedures; and

d. Customer satisfaction surveys, pursuant to which Manufacturer GM allocates the number of GM cars to each dealer, thereby directly controlling dealership profits.

x. GM dealers sell GM vehicles on Manufacturer GM's behalf, pursuant to a "floor plan," and Manufacturer GM does not receive payment for its cars until the dealerships sell them.

xi. Dealerships bear GM's brand names, use GM's logos in advertising and on warranty repair orders, post GM-brand signs for the public to see, and enjoy a franchise to sell Manufacturer GM's products, including the Class Vehicles.

xii. Manufacturer GM requires GM dealers to follow the rules and policies of Manufacturer GM in conducting all aspects of dealer business, including the delivery of Manufacturer GM's warranties described above, and the servicing of defective vehicles such as the Class Vehicles.

xiii. Manufacturer GM requires its dealers to post GM's brand names, logos, and signs at dealer locations, including dealer service departments, and to identify themselves and to the public as authorized GM dealers and servicing outlets for Manufacturer GM cars.

xiv. Manufacturer GM requires its dealers to use service and repair forms containing Manufacturer GM's brand names and logos.

xv. Manufacturer GM requires GM dealers to perform Manufacturer GM's warranty diagnoses and repairs, and to do the diagnoses and repairs according to the procedures and policies set forth in writing by Manufacturer GM.

xvi. Manufacturer GM requires GM dealers to use parts and tools either provided by Manufacturer GM, or approved by Manufacturer GM, and

to inform GM when dealers discover that unauthorized parts have been installed on one of Manufacturer GM's vehicles.

xvii.   Manufacturer GM requires dealers' service and repair employees to be trained by GM in the methods of repair of GM-brand vehicles.

xviii.   Manufacturer GM audits GM dealerships' sales and service departments and directly contacts the customers of said dealers to determine their level of satisfaction with the sale and repair services provided by the dealers; dealers are then granted financial incentives or reprimanded depending on the level of satisfaction.

xix.   Manufacturer GM requires its dealers to provide GM with monthly statements and records pertaining, in part, to dealers' sales and servicing of Manufacturer GM's vehicles.

xx.   Manufacturer GM provides technical service bulletins and messages to its dealers detailing chronic defects present in product lines, and repair procedures to be followed for chronic defects.

xxi.   Manufacturer GM provides its dealers with specially trained service and repair consultants with whom dealers are required by Manufacturer GM to consult when dealers are unable to correct a vehicle defect on their own.

xxii.   Manufacturer GM requires GM-brand vehicle owners to go to authorized GM dealers to obtain servicing under GM warranties.

xxiii.   GM dealers are required to notify Manufacturer GM whenever a car is sold or put into warranty service.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS

128.   As of the date of this Complaint, GM continues to market the Class Vehicles based on superior durability, performance, and fuel efficiency, despite its

knowledge that the Class Vehicles are defective and have failed or will fail—in fact, GM still has not disclosed and continues to conceal that the Class Vehicles are defective, incompatible with American diesel fuel, and will experience catastrophic and costly failure.

129.   Until shortly before the filing of this Complaint, Plaintiffs and other Class members had no way of knowing about GM's wrongful and deceptive conduct with respect to their defective Class Vehicles.

130.   With respect to Class Vehicles that have not experienced a catastrophic CP4 pump failure, Plaintiffs and other Class members did not discover and could not reasonably have discovered that their Class Vehicles are defective, that their Class Vehicles are out of specification and incompatible with American diesel fuel, that this incompatibility has resulted in the breakdown of fuel components and contamination of fuel caused by the defective CP4 fuel pump, that their CP4 fuel pumps will fail, that the durability and performance of their Class Vehicles is impaired by this defect and incompatibility and that such durability and performance is far less than GM promised, or that, as a result of the foregoing, they overpaid for their vehicles, the value of their vehicles is diminished, and/or their vehicles will require costly modification to avoid a catastrophic, even more costly failure, and that any such modifications will impair other qualities of the Class Vehicles that formed a material part of the bargain between the parties in the purchase of the Class Vehicles by Plaintiffs and other Class members.

131.   With respect to Class Vehicles that have experienced a catastrophic CP4 pump failure prior to the filing of this Complaint, Plaintiffs and other Class members did not discover and could not reasonably have discovered that their CP4 pump failure was due to a defect known to GM or that such failure was due to an incompatibility between the Class Vehicle and the fuel intended by GM to be used in the Class Vehicles.

132.   Within the period of any applicable statutes of limitation or repose, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that GM was concealing the conduct complained of herein and misrepresenting the defective nature of the Class Vehicles.

133.   As pleaded herein, GM knew of and failed to disclose a major, inherent product defect, and thus any imposition of "durational limitations" on the warranty breaches or claims alleged herein constitute "overreaching," and therefore any such durational limitations are unconscionable.  When a manufacturer is aware that its product is inherently defective, but the buyer has no notice of or ability to detect the problem, there is perforce a substantial disparity in the parties' relevant bargaining power.  In such a case, Plaintiffs' acceptance of any limitations on his/her contractual remedies, including any warranty disclaimers, cannot be said to be "knowing" or "voluntary," and thereby renders such limitations unconscionable and ineffective. GM's superior knowledge of the CP4 defect over the weaker-situated Plaintiffs and Class members demonstrates that the underlying vehicle transactions involved elements of deception such that there was significant unconscionability in the bargaining process, and any durational limitations that GM may purport to assert on Plaintiffs' claims are unconscionable as a matter of law.

134.   Further, Plaintiffs and other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that GM did not report information within their knowledge to consumers, dealerships, or relevant authorities; nor would a reasonable and diligent investigation have disclosed that GM was aware of the non-conforming and defective nature of the CP4 fuel pump and the Class Vehicles in which it was incorporated.  Plaintiffs only learned of the defective nature of the CP4 fuel injection pump and their vehicles, and of GM's scheme to design and sell such non-conforming and defective fuel pumps and vehicles, shortly before this action was filed.

135.   All applicable statutes of limitation and repose have also been tolled by GM's knowing, active, and fraudulent concealment, and denial of the facts alleged herein throughout the period relevant to this action.

136.   Instead of disclosing the defective nature of the CP4 fuel pumps to consumers, GM falsely represented that CP4 pump failure in the Class Vehicles was caused by Plaintiffs' or other Class members' conduct or by the use of contaminated fuel.

137.   In reality, GM's conduct in designing, manufacturing, marketing, or selling Class Vehicles for use with American diesel fuel, with which GM knew the Class Vehicles were incompatible, causes the "fuel contamination" that ultimately leads to CP4 pump failure.

138.   GM, with the purpose and intent of inducing Plaintiffs and other Class members to refrain from filing suit, pursuing warranty remedies, or taking other action with respect to GM's conduct or the Class Vehicles, fraudulently concealed the true cause of CP4 pump failure by blaming Plaintiffs, Class members, and/or contaminated fuel when GM, even before the design, manufacture, or sale of the Class Vehicles, knew that the defective nature of the Bosch CP4 Pump would and has caused fuel contamination and resulting CP4 pump failure.

139.   GM was under a continuous duty to disclose to Plaintiffs and other Class members the true character, quality, and nature of the durability and performance of Class Vehicles, the ongoing process of fuel contamination in Class Vehicles, CP4 pump failure, and the true cause of CP4 pump failure.  Instead, GM knowingly, affirmatively, and actively concealed or recklessly disregarded the foregoing facts.  As a result, GM is estopped from relying on any statutes of limitation or repose as a defense in this action.

140.   For the foregoing reasons, all applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by GM's fraudulent

concealment with respect to all claims against GM; and, GM is estopped from asserting any such defenses in this action.

## VI.    CLASS ACTION ALLEGATIONS

141.   Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rule of Civil Procedure on behalf of the class of persons (collectively, the "Class") who purchased or leased one or more of the "Class Vehicles," which include the following CP4-equipped, GM-manufactured, diesel-engined vehicles:

- 2011–2016 Chevrolet Silverado 2500 HD / 3500 HD 6.6L V8 Duramax Diesel Trucks;

- 2011-2016 GMC Sierra 2500 HD / 3500 HD 6.6L V8 Duramax Diesel Trucks;

- 2010-2011 Chevrolet Express Duramax Diesel Vans;

- 2010-2011 GMC Savana 6.6L V8 Duramax Diesel Vans; and

- 2010-2011 GMC Sierra Duramax Diesel Vans

142.   Plaintiffs assert claims under the laws of each state set forth below.

143.   Excluded from the Class are GM and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which GM has a controlling interest. In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Class. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

144. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

145.   The Class Representatives are asserting claims that are typical of claims of their respective Classes, and they will fairly and adequately represent and protect the interests of the Classes in that they have no interests antagonistic to those of the putative Class members.

146.   The amount of damages suffered by each individual member of the Class, in light of the expense and burden of individual litigation, would make it difficult or impossible for individual Class members to redress the wrongs done to them.   Plaintiffs and other members of the Classes have all suffered harm and damages as a result of GM's unlawful and wrongful conduct.   Absent a class action, GM will likely not have to compensate victims for GM's wrongdoings and unlawful acts or omissions, and will continue to commit the same kinds of wrongful and unlawful acts or omissions in the future.

147.   **Numerosity under Federal Rule of Civil Procedure 23(a)(1):** The members of the Class are so numerous that individual joinder of all of its members is impracticable.   Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class Plaintiffs is at least in the tens of thousands, and are numerous and geographically dispersed across the country.   While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, as well as by the notice Class members will receive by virtue of this litigation so that they may self-identify.   The disposition of the claims of Class members in a single class action will provide substantial benefits to all Parties and the Court.   Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

148.   **Commonality and Predominance under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.   Whether GM engaged in the conduct alleged herein;

b.   Whether GM knew about the CP4 defect and the inherent problems related thereto when said component part is used with American diesel fuel, and if so, how long GM knew or should have known as much;

c.   Whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed the defective Class Vehicles into the stream of commerce in the United States;

d.   Whether the GM diesel engine systems that are the subject of this complaint are defective such that they are not fit for ordinary consumer use;

e.   Whether GM omitted material facts about the quality, durability, fuel economy, and vehicle longevity of the Class Vehicles;

f.   Whether GM designed, manufactured, marketed, and distributed Class Vehicles with defective or otherwise inadequate fuel injection systems;

g.   Whether GM's conduct violates the state consumer protection statutes identified herein, and constitutes breach of contract or warranty and fraudulent concealment/misrepresentation, as asserted herein;

h.   Whether Plaintiffs and the other Class members overpaid for their vehicles at the point of sale; and

i.   Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, what amount.

149.   **Typicality under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs' claims are typical of the other Class members' claims because all have been comparably injured through GM's wrongful conduct as described above.

150.   **Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent. Additionally, Plaintiffs have retained counsel with substantial experience in handling complex class action and multi-district litigation.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

151.   **Superiority of Class Action under Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against GM's wrongful conduct.  Even if members of the Class could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CAUSES OF ACTION

A.    **Multi-State Claims**

## COUNT I

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. § 2301, *et. seq.*

152.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

153.   Plaintiffs bring this Count on behalf of all persons who are members of the Class set forth in Section (VI.) above (collectively for purposes of this Count, the "Magnuson-Moss Class").

154.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

155.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).   The Plaintiffs and Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

156.  GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

157.  15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

158.   GM provided Plaintiffs with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).  As a part of the implied warranty of merchantability, GM warranted that the Class Vehicles were fit for their ordinary purpose as safe, American-diesel-fuel-

compatible motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

159.   GM breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common defect in that they are all equipped with a Bosch CP4 high-pressure fuel injection pump which is not compatible with the lubricity of American diesel fuel.  This incompatibility causes the Class Vehicles to suddenly fail during normal operation, leaving occupants of the Class Vehicles vulnerable to crashes, serious injury, and death. Even where death or serious injury does not occur, the CP4's incompatibility with American diesel fuel renders the Class Vehicles, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving in America with standard American diesel fuel.

160.   In its capacity as warrantor, GM had knowledge of the inherently defective nature of the high-pressure fuel-injection system in the Class Vehicles. Any effort by GM to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit such liability is null and void.

161.   Any limitations GM might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between GM and Plaintiffs, as, at the time of purchase and lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from GM.

162.   Any limitations GM might seek to impose on its warranties are substantively unconscionable. GM knew that the Class Vehicles were defective and incompatible with U.S. diesel fuel, and that the Vehicles would fail when used as intend.  Moreover, GM knew the Class Vehicles would pose safety risks after the warranties purportedly expired. GM failed to disclose this defect to Plaintiffs. Thus,

GM's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

163.   Plaintiffs have had sufficient direct dealings with either GM or its agents (dealerships) to establish privity of contract between GM and Plaintiffs. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between GM and its dealers, and specifically, of GM's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defect, as catastrophic CP4 fuel pump failure can cause the vehicle to stall while in motion and then subsequently become unable to be restarted, which increases the risk of a crash and presents an unreasonable risk to vehicle occupant safety.

164.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give GM notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

165.   Plaintiffs would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because GM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Class Vehicles by retaining them.

166.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other

Magnuson-Moss Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Magnuson-Moss Class members in connection with the commencement and prosecution of this action.

167.  Plaintiffs also seek the establishment of a GM-funded program for Plaintiffs and Magnuson-Moss Class members to recover out of pocket costs incurred in attempting to rectify and/or mitigate the effects of the CP4 incompatibility defect in their Class Vehicles.

**B.      Claims Brought on Behalf of the Alabama Class**

## COUNT I

### VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT (ALA. CODE § 8-19-1, *et seq.*)

168.  Plaintiffs (for purposes of all Alabama Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

169.  Plaintiffs and the Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

170.  Plaintiffs, the Class members, and GM are "persons" within the meaning of Ala. Code § 8-19-3(5).

171.  The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

172.  Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

173. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

174. Plaintiffs intend to assert a claim under the Alabama DTPA. Plaintiffs will make a demand in satisfaction of Ala. Code § 8-19-3 and may amend this Complaint to assert claims under the Alabama DTPA once the required 15 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Alabama DTPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON ALABAMA LAW)

175. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

176. Plaintiffs bring this Count on behalf of the Alabama Class members against GM.

177. As set forth above, Plaintiffs and other Alabama Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles. Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

178.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Alabama Class about the true defective nature of the Class Vehicles.

179.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

180.   As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

181.   As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

182.   As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

183.   Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

184.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

185.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

186.    GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions.  Meanwhile,

Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

187. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

188. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

189. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve

no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

190.   Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

191.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

192.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

193.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

194.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.   GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (ALA. CODE § 7-2-314)

195.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

196.   This claim is brought on behalf of the Alabama Class members.

197.   GM was a merchant with respect to motor vehicles within the meaning of Ala. Code § 7-2-314.

198.   Under Ala. Code § 7-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs or other Class members purchased or leased their Class vehicles.

199.   The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

200.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

201.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

202.   As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

203.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

204.   This claim is brought on behalf of the Alabama Class members against GM.

205.   This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs.

206.   GM has received and retained a benefit from Plaintiffs and inequity has resulted.

207.   GM has benefitted from selling and leasing the Class Vehicles, for more than they were worth as a result of GM's actions, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

208.   Thus, all Plaintiffs conferred a benefit on GM.

209.   It is inequitable for GM to retain these benefits.

210.   Plaintiffs were not aware of the true facts about the Class Vehicles prior to purchase or lease, and did not benefit from GM's conduct.

211.   GM knowingly accepted the benefits of its unjust conduct.

212.   As a result of GM's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

### C.     Claims Brought on Behalf of the Alaska Class

### COUNT I

### VIOLATION OF THE ALASKA UNFAIR TRADE
### PRACTICES AND CONSUMER PROTECTION ACT
### (ALASKA STAT. ANN. § 45.50.471, *et seq.*)

213.  Plaintiffs (for purposes of all Alaska Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

214.  The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") proscribes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471.

215.  Pursuant to ALASKA STAT. ANN. § 45.50.531, Plaintiffs will amend their Complaint to seek monetary relief against GM measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each Plaintiff.

216.   Plaintiffs will also amend to seek an order enjoining GM's unfair, unlawful, and/or deceptive practices pursuant to ALASKA STAT. ANN. § 45.50.535(b)(1), attorneys' fees, and any other just and proper relief available under the Alaska CPA.

217.   Plaintiffs will make a demand in satisfaction of Alaska Stat. Ann. § 45.50.535, and may amend this Complaint to assert claims under the Alaska CPA once the required notice period has elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Alaska CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ALASKA LAW)

218.   Plaintiffs hereby incorporate by reference all paragraphs as though fully set forth herein.

219.   Plaintiffs bring this Count on behalf of the Alaska Class members against GM.

220.   As set forth above, Plaintiffs and other Alaska Class members have suffered from a defect that existed in the Class Vehicles which began damaging the Class Vehicles and their fuel delivery systems upon the first use of the Class Vehicles.   Plaintiffs and other Class members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

221.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Alaska Class about the true defective nature of the Class Vehicles.

222.    As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

223.    As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

224.    As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

225.    As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

226.    Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

227.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity,

durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

228.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

229.   GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions.  Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair,

replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

230.   GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

231.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

232.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4

pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

233.   Further, because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles.  Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

234.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

235.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

236.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

237.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be
determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (ALASKA STAT. § 45.02.314)

238.   Plaintiffs incorporate by reference all paragraphs as though fully set
forth herein.

239.   Plaintiffs bring this Count on behalf of the Alaska Class members
against GM.

240.   GM was a merchant with respect to motor vehicles within the meaning
of ALASKA STAT. § 45.02.314.

241.   Under ALASKA STAT. § 45.02.314, a warranty that the Class Vehicles
were in merchantable condition was implied by law in the transactions when
Plaintiffs or other Class members purchased or leased their Class vehicles from GM.

242.   The Class Vehicles, when sold and at all times thereafter, were not
merchantable and are not fit for the ordinary purpose for which cars are used.

243.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently
defective in that they are incompatible with U.S. diesel fuel such that the normal use
of the Class Vehicles causes metal shards to wear off of the pump and disperse
throughout the vehicle's fuel injection system, leading to catastrophic engine failure
(oftentimes while the vehicle is in motion, causing a moving stall and subsequent
inability to restart the vehicle), thereby causing an increased likelihood of serious
injury or death.

244. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

245. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### D. Claims Brought on Behalf of the Arizona Class

### COUNT I

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV. STAT. § 44-1521 *et seq.*)

246. Plaintiffs (for purposes of all Arizona Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

247. Plaintiffs bring this Count on behalf of the Arizona Class members.

248. The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

249. In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly

in light of Defendant's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

250.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

251.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

252.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

253.   Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

254.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

255.   Defendant knew or should have known that its conduct violated the Arizona CFA.

256.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

    a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

    b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

257.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their

vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

258.   Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

259.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

260.   Defendant's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

261.   Plaintiffs and the Class seek monetary relief against Defendant in an amount to be determined at trial.  Plaintiffs and the Class also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind.

262.   Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ARIZONA LAW)

263.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

264.   Plaintiffs this claim on behalf of the Arizona Class members against GM.

265.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Arizona Class about the true defective nature of the Class Vehicles.

266.   In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

267.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the

CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

268.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

269.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

270.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or

leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

271. GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions. Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

272. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by GM for their durability and performance, will fail when used as intended by GM.

273. GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

274. GM falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

275.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

276.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

277.   Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

278.  GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

279.  GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

280.  Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

281.  GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### E.    Claims Brought on Behalf of the Arkansas Class

### COUNT I

### VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT
### (ARK. CODE ANN. § 4-88-101 *ET SEQ.*)

282.  Plaintiffs (for purposes of all Arkansas Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

283. This claim is brought on behalf of the Arkansas Class members.

284. GM, Plaintiffs, and Arkansas Class members are "persons" within the meaning of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), ARK. CODE ANN. § 4-88-102(5).

285. The "Class Vehicles" are "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

286. The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." ARK. CODE ANN. § 4-88-107(A)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." ARK. CODE ANN. § 4-88-108.

287. In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such

concealment, suppression, or omission, in connection with the sale of Class Vehicles.

288.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

289.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

290.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

291.   Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

292.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

293.   Defendant knew or should have known that its conduct violated the Arkansas DTPA.

294.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

295.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers.   GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

296.   Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

297.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.   These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

298.   Defendant's violations present a continuing risk to Plaintiffs as well as to the general public.   Defendant's unlawful acts and practices complained of herein affect the public interest.

299.   Plaintiffs and the Class seek monetary relief against Defendant in an amount to be determined at trial.   Plaintiffs and the Class also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind. Indeed, Defendant carried out despicable conduct with willful and conscious disregard of the rights of others.   Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages

300.   Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ARKANSAS LAW)

301.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

302.   Plaintiffs bring this Count on behalf of the Arkansas Class members against GM.

303.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Arkansas Class about the true defective nature of the Class Vehicles.

304.   In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendant's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.   Accordingly, Defendant engaged in practices of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud and concealment in connection with the sale of Class Vehicles.

305.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

306.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

307.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

308.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs

and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

309.   GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

310.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by GM for their durability and performance, will fail when used as intended by GM.

311.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

312.   GM falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

313.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class

Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

314. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

315. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

316. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class

members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

317.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

318.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

319.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (ARK. CODE ANN. § 4-2-314)

320.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

321.   Plaintiffs bring this count on behalf of the Arkansas Class members.

322.   GM was a merchant with respect to motor vehicles within the meaning of the ARK. CODE ANN. § 4-2-314.

323.   Under ARK. CODE ANN. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

324.   The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

325.   The Bosch CP4 fuel pumps are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

326.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

327.   As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### F.   Claims Brought on Behalf of the Colorado Class

### COUNT I

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *et seq.*)

328.   Plaintiffs (for purposes of all Colorado Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

329.   Plaintiffs bring this Count on behalf of the Colorado Class members.

330.   Colorado's Consumer Protection Act (the "Colorado CPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or

certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." COLO. REV. STAT. § 6-1-105(1)(b), (e). The Colorado CPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," "advertis[ing] goods … with intent not to sell them as advertised," and "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105(1)(g), (i), & (u).

331. Defendant is a "person" under § 6-1-102(6) of the Colorado CPA, COLO. REV. STAT. § 6-1-101 *et seq*.

332. Plaintiffs and Colorado Class members are "consumers" for the purpose OF COLO. REV. STAT. § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

333. In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

334.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

335.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

336.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

337.   Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

338.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

339.   Defendant knew or should have known that its conduct violated the Colorado CPA.

340.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

341.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in

fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

342.   Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

343.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

344.   Defendant's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by GM's deceptive practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

345.   Defendant's widespread false and deceptive advertisement directed to the market generally implicates a significant public impact under Colorado law.[79]

346.   Pursuant to COLO. REV. STAT. § 6-1-113, Plaintiffs and the Class seek monetary relief against Defendant measured as the greater of (a) actual damages in

---

[79] *See Electrology Lab., Inc. v. Kunze,* 169 F. Supp. 3d 1119, 1162 (D. Colo. 2016); *see also Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

an amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiffs and each Class member.

347.   Plaintiffs and the Class also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON COLORADO LAW)

348.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

349.   Plaintiffs bring this Count on behalf of the Colorado Class members against GM.

350.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Colorado Class about the true defective nature of the Class Vehicles.

351.   In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

352.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

353.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

354.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

355.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause

damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

356.   GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

357.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by GM for their durability and performance, will fail when used as intended by GM.

358.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

359.    GM falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

360.    GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members, and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

361.    Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Class members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

362.    Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality

of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

363.    GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

364.    GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

365.    Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

366.    GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
(COLO. REV. STAT. § 4-2-314)

367.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

368.   Plaintiffs bring this Count on behalf of the Colorado Class members.

369.   GM was a merchant with respect to motor vehicles within the meaning of the COLO. REV. STAT. § 4-2-314.

370.   Under COLO. REV. STAT. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

371.   The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

372.   The Bosch CP4 fuel pumps are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

373.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

374.   As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

375.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

376.   Plaintiffs bring this Count on behalf of the Colorado Class members against GM.

377.   This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

378.   GM has received and retained a benefit from Plaintiffs and inequity has resulted.

379.   GM has benefitted from selling and leasing the Class Vehicles for more than they were worth as a result of their concealed defects, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

380.   Thus, all Plaintiffs conferred a benefit on GM.

381.   It is inequitable for GM to retain these benefits.

382.   Plaintiffs were not aware of the true facts about their Class Vehicles, and did not benefit from GM's conduct.

383.   GM knowingly accepted the benefits of its unjust conduct.

384.   As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

### G.    Claims Brought on Behalf of the Connecticut Class

### COUNT I

### VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. ANN. § 42-110A *et seq.*)

385.   Plaintiffs (for purposes of all Connecticut Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

386.   Plaintiffs bring this Count on behalf of the Connecticut Class members.

387.   Defendant and Plaintiffs are each "persons" as defined by CONN. GEN. STAT. ANN. § 42-110a(3).

388.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  CONN. GEN. STAT. ANN. § 42-110b(a).  The Connecticut UTPA further provides a private right of action under CONN. GEN. STAT. ANN. § 42-110g(a).

389.   In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Accordingly, Defendant engaged in unfair and deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other business persons.   The harm caused to consumers, motorists, and pedestrians

outweighs any benefit associated with such practices, and Defendant fraudulently concealed the defective nature of the Class Vehicles from consumers.

390.   Defendant has also engaged in deceptive conduct because (1) it made representations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material—that is, likely to affect consumer decisions or conduct.

391.   Particularly in light of Defendant's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

392.   In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

393.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations and omissions.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of

the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

394.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

395.   Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

396.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

397.   Defendant knew or should have known that its conduct violated the Connecticut UTPA.

398.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

   a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

   b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

   c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

399.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and

Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

400.   Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

401.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

402.   Defendant's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

403.   Plaintiffs and the Class seek monetary relief against Defendant in an amount to be determined at trial.  Plaintiffs and the Class also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil motive.

404.   Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II

### FRAUDULENT NON-DISCLOSURE
### (BASED ON CONNECTICUT LAW)

405.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

406.   Plaintiffs bring this Count on behalf of the Connecticut Class members.

407.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Connecticut Class about the true defective nature of the Class Vehicles.

408.   GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). A reasonable American consumer would expect the

Class Vehicles to be compatible with *American* diesel fuel, but they are not. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

409.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiff or the Class.

410.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

411.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

412.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with

the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

413.  GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

414.  GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

415.   GM falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

416.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

417.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

418.   Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality

of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

419.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

420.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

421.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

422.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### UNJUST ENRICHMENT

423.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

424.   Plaintiffs bring this claim on behalf of the Connecticut Class members.

425.   This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

426.   GM has received and retained a benefit from Plaintiffs and inequity has resulted.

427.   GM has benefitted from selling, leasing, and distributing the Class Vehicles for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

428.   Thus, all Plaintiffs conferred a benefit on GM.

429.   It is inequitable for GM to retain these benefits.

430.   Plaintiffs were not aware of the true facts about the Class Vehicles and did not benefit from GM's conduct.

431.   GM knowingly accepted the benefits of its unjust conduct.

432.   As a result of GM's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

### H.   Claims Brought on Behalf of the District of Columbia (D.C.) Class
### COUNT I

### VIOLATIONS OF THE CONSUMER PROTECTION PROCEDURES ACT (D.C. CODE § 28-3901, *ET SEQ.*)

433.   Plaintiffs (for purposes of all D.C. Class Counts) hereby incorporate by reference all paragraphs as though fully set forth herein.

434. Plaintiffs bring this Count on behalf of the D.C. Class members.

435. GM is a "person" under the Consumer Protection Procedures Act ("D.C. CPPA"), D.C. Code § 28-3901(a)(1).

436. The Class members are "consumers," as defined by D.C. Code Ann. § 28-3901(1)(2), who purchased or leased one or more Class Vehicles.

437. GM's actions as set forth herein constitute "trade practices" under D.C. Code § 28-3901.

438. The D.C. CPPA deems it unlawful for "any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to: (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; . . . (f) fail to state a material fact if such failure tends to mislead; . . . [or] (h) advertise or offer goods. . . without the intent to sell them as advertised or offered." D.C. CODE § 28-3904.

439. In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Accordingly, Defendant engaged in unfair and deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other

business persons. The harm caused to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and Defendant fraudulently concealed the defective nature of the Class Vehicles from consumers.

440. Defendant has also engaged in deceptive conduct because (1) it made representations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material—that is, likely to affect consumer decisions or conduct, and did indeed affect said decisions.

441. Particularly in light of Defendant's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

442. In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure.

443. Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations and omissions. They had no way of knowing that Defendant's representations were false and gravely misleading. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

444.   Defendant's   deception,   fraud,   misrepresentation,   concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

445.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

446.   Defendant knew or should have known that its conduct violated the Delaware Consumer Fraud Act.

447.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

448.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over

other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers.   GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

449.   Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

450.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

451.   Plaintiffs and the Class seek monetary relief against Defendant in an amount to be determined at trial.  Plaintiffs and the Class also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil motive.

452.   Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON D.C. LAW)

453.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

454.   Plaintiffs bring this Count on behalf of the D.C. Class members.

455.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Connecticut Class about the true defective nature of the Class Vehicles.

456.   GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). A reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel, but they are not. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

457.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiff or the Class.

458.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

459.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

460.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs

and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

461.   GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

462.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

463.   GM falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

464.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over

integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

465.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

466.   Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

467.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch

CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

468.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

469.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

470.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.   GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(D.C. CODE § 28:2-314)

471.   Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

472.   Plaintiffs bring this Count on behalf of the D.C. Class members.

473.   GM was a merchant with respect to motor vehicles within the meaning of D.C. Code § 28:2-104(1).

474. Under D.C. Code § 28:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and the other Class members purchased or leased the Class Vehicles.

475. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which automobiles are used.

476. The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

477. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

478. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## I. Claims Brought on Behalf of the Delaware Class

### COUNT I
### VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
### (DEL. CODE §§ 2513, *ET SEQ.*)

479. Plaintiffs (for purposes of all Delaware Class Counts) hereby incorporate by reference all paragraphs as though fully set forth herein.

480. Plaintiffs bring this Count on behalf of the Delaware Class members.

481. GM is a "person" within the meaning of 6 Del. Code § 2511(7).

482. The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false

promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

483.   In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Accordingly, Defendant engaged in unfair and deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other business persons.   The harm caused to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and Defendant fraudulently concealed the defective nature of the Class Vehicles from consumers.

484.   Defendant has also engaged in deceptive conduct because (1) it made representations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material—that is, likely to affect consumer decisions or conduct, and did indeed affect said decisions.

485.   Particularly in light of Defendant's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud,

misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

486.   In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

487.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations and omissions.  They had no way of knowing that Defendant's representations were false and gravely misleading. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

488.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

489. Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

490.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

491.   Defendant knew or should have known that its conduct violated the Delaware Consumer Fraud Act.

492.    Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

493.    Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.

Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

494. Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

495. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

496. Defendant's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

497. Plaintiffs and the Class seek monetary relief against Defendant in an amount to be determined at trial. Plaintiffs and the Class also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil motive.

498. Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON DELAWARE LAW)

499.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

500.   This claim is brought on behalf of the Delaware Class.

501.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Delaware Class about the true defective nature of the Class Vehicles.

502.   In the course of Defendant's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendant's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.  Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

503.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

504.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further

affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

505.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

506.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of

U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

507.   GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

508.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by GM for their durability and performance, will fail when used as intended by GM.

509.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

510.   GM falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

511.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous

model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members, and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

512. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Class members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

513. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

514. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch

CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

515.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

516.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

517.   GM's fraudulent actions have been gross, oppressive, and aggravated, and have involved breaches of trust and/or confidence in its consumers, such that GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (6. DEL. CODE § 2-314)

518.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

519.   This Count is brought on behalf of the Delaware Class members.

520.   GM was and is a "merchant" with respect to motor vehicles within the meaning of 6 DEL. CODE § 2-104(1).

521.    Under 6 DEL. CODE § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and Class members purchased or leased the Class Vehicles from GM.

522.    The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which automobiles are used.

523.    The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

524.    GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

525.    As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### J.    Claims Brought on Behalf of the Georgia Class

### COUNT I

### VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. § 10-1-390 *ET SEQ.*)

526.    Plaintiffs (for purposes of all Georgia Counts) hereby incorporate all paragraphs as though set forth herein.

527.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN.

§ 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised."  GA. CODE. ANN. § 10-1-393(b).

528.   Plaintiffs and Georgia Class members are "consumers" within the meaning of GA. CODE ANN. § 10-1-393(b).

529.   At all relevant times, GM has engaged in "trade or commerce" within the meaning of GA. CODE ANN. § 10-1-393(b).

530.   Plaintiffs will make a demand in satisfaction of GA. CODE. ANN. § 10-1-399(b), and may amend this Complaint to assert claims under the Georgia FBPA once the required notice period has elapsed.

531.   This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

## COUNT II

### VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (GA. CODE ANN. § 10-1-370 *ET SEQ.*)

532.   Plaintiffs hereby incorporate all paragraphs as though fully set forth herein.

533.   This claim is brought on behalf of the Georgia Class members.

534.   Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising

goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10-1-393(b).

535.   Defendant, Plaintiffs, and Georgia Class members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

536.   Plaintiffs seek an order enjoining GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON GEORGIA LAW)

537.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

538.   Plaintiffs bring this claim on behalf of the Georgia Class against GM.

539.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Georgia Class about the true defective nature of the Class Vehicles.

540.   GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). A reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel, but they are not. Accordingly, Defendant engaged in unlawful trade practices by employing

deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

541.  As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

542.  Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

543.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

544.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their

namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

545.   GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

546.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

547.   GM falsely represented the durability of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the

Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

548.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

549.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

550.   Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid

substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure.

551.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

552.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

553.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

554.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

## UNJUST ENRICHMENT

555.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

556.   Plaintiffs bring this Count on behalf of the Georgia Class members.

557.   This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

558.   GM has received and retained a benefit from Plaintiffs and inequity has resulted.

559.   GM has benefitted from selling and leasing the Class Vehicles for more than they are worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

560.   Thus, all Plaintiffs conferred a benefit on GM.

561.   It is inequitable for GM to retain these benefits.

562.   Plaintiffs were not aware of the true facts about the Class Vehicles and did not benefit from GM's conduct.

563.   GM knowingly accepted the benefits of its unjust enrichment.

564.   As a result of GM's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

### K.    Claims Brought on Behalf of the Hawaii Class

## COUNT I

## UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW
## (HAW. REV. STAT. ANN. §§ 480, *ET SEQ.*)

565.   Plaintiffs (for purposes of all Hawaii Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

566.   Plaintiffs bring this Count on behalf of the Hawaii Class members.

567.   Haw. Rev. Stat. Ann. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

568.   GM is a "person" under Haw. Rev. Stat. Ann. § 480-1.

569.   Plaintiffs and Hawaii Class members are "consumer[s]" as defined by Haw. Rev. Stat. Ann. § 480-1, who purchased or leased the Class Vehicles.

570.   GM's acts and omissions, as set forth above, occurred in the conduct of trade or commerce.

571.   In the course of GM's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of Defendant's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel; representing otherwise had the tendency and capacity to mislead, and did in fact mislead Plaintiffs and other Hawaii Class members. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

572.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

573.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations and omissions, and would not have purchased the vehicles (or would have paid less for them) had they known of the Class Vehicles' susceptibility to catastrophic CP4 fuel pump failure.   They had no way of knowing that Defendant's representations were false and gravely misleading.

574.   Defendant's deception, fraud, misrepresentation, concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

575.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

576.   Defendant knew or should have known that its conduct violated Hawaii law regarding unfair or deceptive acts in trade or commerce.

577.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

 a. Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

 b. Intentionally concealed the foregoing from Plaintiffs and the Class; and

 c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

578.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers.   GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

579.   Defendant's conduct proximately caused injuries to Plaintiffs and the other Class members.

580.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class

Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

581.   GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest, as its actions offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

582.   Pursuant to Haw. Rev. Stat. Ann. § 480-13, Plaintiffs seek monetary relief against GM measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

583.   Under Haw. Rev. Stat. Ann. § 480-13.5, Plaintiffs seek an additional award against GM of up to $10,000 for each violation directed at a Hawaii elder. GM knew or should have known that its conduct was directed to one or more Plaintiffs who are elders. GM's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder. Plaintiffs who are elders are substantially more vulnerable to GM's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from GM's conduct.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON HAWAII LAW)

584.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

585.   Plaintiffs bring this Count on behalf of the Hawaii Class members.

586.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Hawaii Class about the true defective nature of the Class Vehicles.

587.   GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). A reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel, but they are not. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

588.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

589.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and

that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

590.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

591.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

592.   GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

593.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

594.   GM committed these fraudulent acts and omissions for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

595.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing its fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members, and the American public at large regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

596.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will

fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mitigate the impact of or prevent failure.

597.   Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Class Vehicles, and had Plaintiffs and other Class members known the truth about that true nature and quality, they would not have acted as they did in purchasing or leasing the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring, and for repair of Class Vehicles after catastrophic failure. Plaintiffs and other Class members have also suffered from loss of use of the Class Vehicles, loss of earnings, and other damages to be proved at trial.

598.   Defendant also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Defendant represented to Plaintiffs and Class members that they were purchasing or leasing durable, long-lasting diesel vehicles when, in fact, they were purchasing or leasing defective vehicles with high-pressure fuel pumps that are incompatible with U.S. diesel. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. That durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could

and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

599.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 Fuel Pump in the Class Vehicles with U.S. diesel fuel.

600.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

601.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (HAW. REV. STAT. ANN. § 490:2-314)

602.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

603.   Plaintiffs bring this Count on behalf of the Hawaii Class members.

604.   GM was and is a "merchant" with respect to motor vehicles within the meaning of Haw. Rev. Stat. Ann. § 490:2-104(1).

605.   Under Haw. Rev. Stat. Ann. § 490:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles.

606.   The Class Vehicles, at the time of sale or lease and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which automobiles are used.

607.   The Class Vehicles are inherently defective in the Bosch CP4 fuel pumps installed therein are incompatible with U.S. diesel fuel, such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

608.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

609.   As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs and other Class members have been damaged in an amount to be proven at trial.

### L.     Claims Brought on Behalf of the Idaho Class

### COUNT I

### VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CIV. CODE § 48-601 *ET SEQ.*)

610.   Plaintiffs (for purposes of all Idaho Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

611.   Plaintiffs bring this Count on behalf of the Idaho Class.

612.   GM is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"), IDAHO CIV. CODE § 48-602(1).

613.   GM's acts and practices as set forth above and herein occurred in the conduct of "trade" or "commerce" under Idaho Civ. Code § 48-602(2).

614.   IDAHO CIV. CODE § 48-603 prohibits deceptive business practices, including but not limited to (1) representing that the Class Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce. IDAHO CIV. CODE § 48-603.

615.   In the course of GM's business, it willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel; representing otherwise had the tendency and capacity to mislead, and did in fact mislead Plaintiffs and other Idaho Class members. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

616.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendant's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse

throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

617.   Plaintiffs and Class members reasonably relied upon Defendant's false misrepresentations, and would not have purchased the vehicles (or would have paid less for them) had they known of the Class Vehicles' susceptibility to catastrophic CP4 fuel pump failure.   They had no way of knowing that Defendant's representations were false and gravely misleading.

618.   Defendant's deception, fraud, misrepresentation, concealment, suppression, and omission of material facts were likely to and did in fact deceive reasonable consumers.

619.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

620.   Defendant knew or should have known that its conduct violated the Idaho CFA.

621.   Defendant owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because Defendant:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the CP4 into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

- 171 -

622.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers.   GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

623.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

624.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class

Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

625.   Defendant's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

626.   Plaintiffs seeks the greater of $1,000 or actual ascertainable damages, including out-of-pocket and/or benefit-of-the-bargain damages, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

627.   Plaintiffs also seeks punitive damages against Defendant because Defendant's conduct evidences an extreme deviation from reasonable standards. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON IDAHO LAW)

628.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

629.   Plaintiffs bring this Count on behalf of the Idaho Class members.

630.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Idaho Class members about the true defective nature of the Class Vehicles.

631.   As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the

CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

632.   As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

633.   As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

634.   As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

635.   Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

636.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class

members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

637.   Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

638.   GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

639.   Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and

engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

640.   GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

641.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

642.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of

Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

643.   Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

644.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

645.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

646.   Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

647.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### UNJUST ENRICHMENT

648.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

649.   Plaintiffs bring this Count on behalf of the Idaho Class against GM.

650.   This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

651.   GM has received and retained a benefit from Plaintiffs and inequity has resulted.

652.   GM has benefitted from manufacturing, distributing, and selling the Class Vehicles for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

653.   Thus, all Plaintiffs conferred a benefit on GM.

654.   It is inequitable for GM to retain these benefits.

655.   Plaintiffs were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

656.   GM knowingly accepted the benefits of its unjust conduct.

657.   As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

M.    **Claims Brought on Behalf of the Illinois Class**

## COUNT I

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *ET SEQ.* AND 720 ILCS 295/1A)

658.   Plaintiffs (for purposes of all Illinois Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

659.   Plaintiffs bring this Count on behalf of the Illinois Class members.

660.   Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

661.   Plaintiffs and the Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

662.   The purpose of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") is to enjoin trade practices which confuse or deceive the consumer. The Illinois CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

663.   In the course of GM's business, it willfully failed to disclose and actively concealed, suppressed, and/or omitted that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' CP4 high-pressure fuel pumps and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national

advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not. GM acted with the intent that Plaintiffs and other Class members rely upon the deception, concealment, suppression, or omission of the material facts.

664.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' CP4 pumps and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure.

665.   Plaintiffs and Class members reasonably relied upon Defendant's misrepresentations and omissions, and had no way of knowing that GM's representations were false and gravely misleading. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part and Plaintiffs were not aware of the defective nature of the CP4 fuel pump in the Class Vehicles prior to purchase or lease.

666.   GM's actions as set forth above occurred in the conduct of trade or commerce.

667.   GM's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

668.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

669.   GM knew or should have known that its conduct violated the Illinois CFA.

670.   GM owed Plaintiffs and the Class a duty to disclose the truth about its incompatibility of the Class Vehicles with U.S. diesel fuel because GM:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on the high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pump into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

671.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage

to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers.   GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

672.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

673.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.   These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

674.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.   GM's unlawful acts and practices complained of herein affect the public interest.

675.   Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Class members seek monetary relief against GM in the amount of actual damages, as well as punitive damages because GM acted with fraud and/or malice and/or was grossly negligent.

676.   Plaintiffs also seeks attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1 *et seq.*

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON ILLINOIS LAW)

677.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

678.   Plaintiffs bring this Count on behalf of the Illinois Class.

679.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their fuel/engine systems, in order to defraud and mislead the Illinois Class about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

680.   In the course of GM's business, it willfully failed to disclose and actively

concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.  Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

681.   As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

682.    GM concealed and suppressed the defects with the Class Vehicles with the intent to deceive Plaintiffs and other Class members.

683.    Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

684.    The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs or other Class members to purchase a Class Vehicle.

685.    Due to GM's specific and superior knowledge that the Bosch CP4 Pumps in the

Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to

provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

686.   GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

687.   GM knew that Plaintiffs and other Class members did not know, and could not have known, that Class Vehicles will fail when used as intended by GM.

688.   GM actively concealed and/or suppressed or falsely represented these material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used with the Class Vehicles, and the consequences of the incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles and to increase their revenue and profits.

689.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

690.   Had Plaintiffs and other Class members known that the Class vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicles, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or in the case of Plaintiffs and other Class members whose vehicles experience CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

691.   Because of GM's false representations and concealment of material facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality of the Bosch CP4 Fuel Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about the nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have pain substantially less for them. Plaintiffs and other Class members have also

sustained damages by having to pay for fuel activities and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

692.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Fuel Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

693.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

694.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

695.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY FOR MERCHANTABILITY
## (810 ILCS 5/2-314)

696.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

697.    Plaintiffs bring this Count on behalf of the Illinois Class members.

698.    GM was a merchant with respect to motor vehicles within the meaning of the 810 ILCS. 5/2-314.

699.    Under 810 ILCS 5/2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased the Class Vehicles.

700.    The Class Vehicles, when sold and at all times thereafter, were not merchantable they were not in a safe condition nor substantially free from defects— in fact, they were quite the opposite.

701.    The Class Vehicles are inherently defective in that their high-pressure fuel injection systems are incompatible with U.S. diesel fuel, such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

702.    GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

**703.**    As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

### UNJUST ENRICHMENT

704.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

705.    Plaintiffs bring this Count on behalf of the Illinois Class.

706. This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

707. GM has received and retained a benefit from Plaintiffs and inequity has resulted.

708. GM has benefitted from selling and leasing the Class Vehicles, for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

709. Thus, all Plaintiffs conferred a benefit on GM.

710. It is inequitable for GM to retain these benefits.

711. Plaintiffs were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct but were harmed by it.

712. GM knowingly accepted the benefits of its unjust enrichment.

713. As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

### N. Claims Brought on Behalf of the Indiana Class

### COUNT I

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)

714. Plaintiffs (for purposes of all Indiana Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

715. Plaintiffs bring this Count on behalf of the Indiana Class members.

716. GM is a "person" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

717. Plaintiffs' purchases and leases of Class Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

718. Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person or supplier from engaging in "an unfair, abusive or deceptive act, or omission, or practice in connection with a consumer transaction." "Deceptive acts" include: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits if does not have which the supplier knows or should reasonably know it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . . . . . (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

719. Plaintiff will make a demand in satisfaction of Ind. Code § 24-5-0.5-5(a), and may amend this Complaint to assert claims under the Indiana DCSA once the required notice period elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Indiana DCSA.

## COUNT II

## FRAUD BY CONCEALMENT
## (BASED ON INDIANA LAW)

720. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

721. Plaintiffs bring this Count on behalf of the Indiana Class members.

722. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the

Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud, deceive, and mislead the Indiana Class about the true defective nature of the Class Vehicles.

723. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their engine systems, in order to defraud and mislead the Indiana Class about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

724. In the course of GM's business, it willfully failed to disclose and actively

concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

725. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

726.   GM concealed and suppressed the defects with the Class Vehicles with the intent to deceive Plaintiffs and other Class members.

727.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

728.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induce and were intended to induce Plaintiffs or other Class members to purchase a Class Vehicle.

729.   Due to GM's specific and superior knowledge that the Bosch CP4 Pumps in the

Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were

material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

730. GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions. Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

731. GM knew that Plaintiffs and other Class members did not know, and could not have known, that Class Vehicles will fail when used as intended by GM.

732. GM actively concealed and/or suppressed or falsely represented these material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used with the Class Vehicles, and the consequences of the incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles and to increase their revenue and profits.

733. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class

Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

734.   Had Plaintiffs and other Class members known that the Class vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicles, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or in the case of Plaintiffs and other Class members whose vehicles experience CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

735.   Because of GM's false representations and concealment of material facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality of the Bosch CP4 Fuel Pump in the Class Vehicles, and had Plaintiffs and other Class members known the truth about the nature and quality, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have pain substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel activities and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

736. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Fuel Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

737. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

738. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

739. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (IND. CODE § 26-1-2-314)

740. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

741. Plaintiffs bring this Count on behalf of the Indiana Class members.

742.   GM was a merchant with respect to motor vehicles within the meaning of the Ind. Code § 26-1-2-314.

743.   Under Ind. Code § 26-1-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles.

744.   The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

745.   The Bosch CP4 fuel pumps in the Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pumps and disperse throughout the vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

746.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

747.   As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

### UNJUST ENRICHMENT

748.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

749.   Plaintiffs bring this Count on behalf of the Indiana Class members.

750.   This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

751.   GM has received and retained a benefit from Plaintiffs and inequity has resulted.

752.   GM has benefitted from manufacturing, distributing, selling, and leasing the Class Vehicles for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs.

753.   Thus, all Plaintiffs conferred a benefit on GM.

754.   It is inequitable for GM to retain these benefits.

755.   Plaintiffs were not aware of the true defective nature of the Class Vehicles at the time of acquisition, and did not benefit from GM's conduct.

756.   GM knowingly accepted the benefits of its unjust conduct.

757.   As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to the proof.

O.     **Claims Brought on Behalf of the Iowa Class**

COUNT I

**CONSUMER FRAUDS ACTS IN VIOLATION OF IOWA LAW
(IOWA CODE § 714H.1 *ET SEQ.*)**

758.   Plaintiffs (for purposes of the Iowa Counts) incorporate by reference all paragraphs as though fully set forth herein.

759.   Plaintiffs bring this Count on behalf of the Iowa Class members.

760.   GM is a "person" under IOWA CODE § 714H.2(7).

761.   Plaintiffs are "consumers," as defined by IOWA CODE § 714H.2(3), who purchased or leased one or more Class Vehicles.

762.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the

misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." IOWA CODE § 714H.3. GM participated in misleading, false, or deceptive acts that violated the Iowa CFA with the intent that Plaintiffs and other Class members rely on it. By systematically concealing the defects in Class Vehicles, GM engaged in deceptive business practices prohibited by the Iowa CFA.

763.   GM's actions, as set forth above, occurred in the conduct of trade or commerce.

764.   In the course of GM's business, it willfully failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, false pretense, or false promise, or the misrepresentations, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. GM's acts had the capacity, tendency, or effect of deceiving or misleading consumers. GM engaged in unfair and deceptive business practices in violation of the Iowa CFA.

765.   In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by GM's failure to disclose that the normal use of the Class

Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

766.   Plaintiffs and other Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, Plaintiffs and Class members could not, and did not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part of the Class Vehicles and Plaintiffs were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

767.   GM's unfair or deceptive acts or practices, deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

768.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiffs.

769.   GM knew or should have known that its conduct violated the Iowa CFA.

770.   As alleged above, GM made material representations about the safety, performance, and reliability of the Class Vehicles that were either false or misleading.

771.   GM owed Plaintiffs a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with the U.S. diesel fuel because GM:

   a.   Possessed exclusive knowledge about the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in it vehicles, including the uptick in warranty claims it saw

upon the introduction of the Bosch CP4 fuel pump into the Class Vehicles;

b.　　Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.　　Made incomplete representations about the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

772.　Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump

disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

773.    As a direct and proximate result of GM's conduct, Plaintiffs and other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

774.    GM's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, GM's unlawful acts and practices complained of herein affect the public interest.

775.    Pursuant to IOWA CODE § 714H.5, Plaintiffs seek an order enjoining GM's unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of GM's willful and wanton disregard for the rights or safety of others; attorneys' fees; and such other equitable relief as the Court deems necessary to protect the public from further violations of the Iowa CFA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON IOWA LAW)

776.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

777.    Plaintiffs bring this Count on behalf of the Iowa Class members.

778.    As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their

fuel/engine systems, in order to defraud and mislead the Iowa Class about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

779. In the course of GM's business, GM willfully failed to disclose and willfully concealed, suppressed, or omitted the fact that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission in connection with the sale of Class Vehicles.

780. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiff or other Class members.

781. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and

that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

782.   The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

783.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump

disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

784. GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions. Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the U.S. diesel fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicle engines.

785. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by GM for their durability and performance, will fail when used as intended by GM, and GM knew that Plaintiffs and other Class members could not have known as much.

786. GM falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

787. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American

public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

788.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

789.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

790.   Because of GM's concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of  GM's concealment of the true nature and quality of the Bosch CP4 fuel pump in Class Vehicles, and had Plaintiffs and Class members been aware of the truth about the true nature and quality of the CP4 fuel pumps, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring and reoccurring.

791. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Plaintiffs and other Class members including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage cause to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicle, loss of earnings, and other damages.

792. Accordingly, GM is liable to Plaintiffs and Class members for damages and in an amount to be proven at trial.

793. Plaintiffs seek attorneys' fees and any other just and proper relief available.

794. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### P. Claims Brought on Behalf of the Kansas Class

### COUNT I

### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (KAN. STAT. ANN. § 50-623 *ET SEQ.*)

795. Plaintiffs (for purposes of all Kansas Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

796. Plaintiffs bring this Count on behalf of the Kansas Class members.

797.   GM is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

798.   Kansas Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

799.   The sale or lease of the Class Vehicles to the Kansas Class members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

800.   The Kansas CPA states that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact."  The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

801.   In the course of GM's business, GM willfully failed to disclose and willfully concealed, suppressed, or omitted the fact that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with

*American* diesel fuel. Accordingly, GM engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles in light of representations of fact made in a positive manner. GM actions were unconscionable in connection with the transaction involving the Class Vehicle. GM engaged in unfair and deceptive business practices in violation of the Kansas CPA.

802.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), as described above.

803.   GM acted with intent that others rely on the concealment or omission of material facts. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and

Plaintiffs and Class members were not aware of the defective nature of the CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

804.   GM's actions as set forth above occurred in the conduct of trade or commerce.

805.   GM's unfair or deceptive acts or practices, willful misrepresentations, concealment, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

806.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

807.   GM knew or should have known that its conduct violated the Kansas CPA.

808.   GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it say upon the introduction of the Bosch CP4 fuel pump into the Class Vehicle;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

809.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false

representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

810.   GM's conduct directly and proximately caused injuries to Plaintiffs and the other Class members.

811.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

812.    GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest. Specifically: (1) the number of consumers affected by GM's deceptive practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

813.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs and the Kansas Class seek monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for Plaintiffs and each Kansas Class member. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

814.    Plaintiffs also seek an order enjoining GM's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623 *et seq*.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON KANSAS LAW)

815.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

816.    Plaintiffs bring this Count on behalf of the Kansas Class members.

817.    As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their

defective CP4 fuel pumps with the intent to deceive, defraud, and mislead Plaintiffs and other Class members about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

818.   In the course of GM's business, GM willfully failed to disclose and willfully concealed, suppressed, or omitted the fact that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission in connection with the sale of Class Vehicles.

819.   As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

820.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and

that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

821.   The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle

822.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump

disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

823.   GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the U.S. diesel fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicle engines.

824.   GM falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

825.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

826.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles

were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

827. Because of GM's false representations, concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of  GM's concealment of the true nature and quality of the Bosch CP4 fuel pump in Class Vehicles, and had Plaintiffs and Class members been aware of the truth about the true nature and quality of the CP4 fuel pumps, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring and reoccurring.

828. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Plaintiffs and other Class members including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage cause to the Class

Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicle, loss of earnings, and other damages.

829.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

830.   Accordingly, GM is liable to Plaintiffs and Class members for damages and in an amount to be proven at trial.

831.   Plaintiffs seek attorneys' fees and any other just and proper relief available.

832.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (KAN. STAT. ANN. § 84-2-314)

833.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

834.   Plaintiffs bring this Count on behalf of the Kansas Class members.

835.   GM was a merchant with respect to motor vehicles within the meaning of the Kan. Stat. Ann. § 84-2-314.

836.   Under Kan. Stat. Ann. § 84-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

837.   The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles contain a latent, inherent defect because they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

838.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

839.   As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

Q.     **Claims Brought on Behalf of the Kentucky Class**

## COUNT I

## VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. ANN. § 367.110 *ET SEQ.*)

840.   Plaintiffs (for purposes of all Kentucky Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

841.   Plaintiffs bring this Count on behalf of the Kentucky Class members.

842.   GM, Plaintiffs, and each member of the Kentucky Class are "person[s]" within the meaning of the Ky. Rev. Stat. Ann. § 367.110(1).

843.   GM engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110(2).

844.  The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. Ann. § 367.170(1).  GM participated in misleading, false, or deceptive acts that violated the Kentucky CPA. Accordingly, Defendant engaged in deceptive business practices prohibited by the Kentucky CPA.

845.  In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. All of these defects would be material to a reasonable consumer. Accordingly, GM engaged in unfair, false, misleading, or deceptive acts or practices.

846.  In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

847.  Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, of which they had no way of knowing were false and gravely misleading.  Indeed, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component in the Class Vehicles and Plaintiffs and

other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

848.   GM's actions as set forth above occurred in the conduct of trade or commerce.

849.   GM's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and other Class members, about the true safety and reliability of their vehicles.

850.   GM knew or should have known that its conduct violated the Kentucky CPA.

851.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

852.   GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because  GM:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pump into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

853.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

854.   GM's conduct and violation of the Kentucky CPA directly and proximately caused injury-in-fact and/or actual damages to Plaintiffs and the other Class members.

855.   Plaintiffs and Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and the other Class members overpaid for their Class

Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

856. GM's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

857. Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs and the Class seek to recover actual damages in an amount to be determined at trial; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT II

## FRAUD BY CONCEALMENT
## (BASED ON KENTUCKY LAW)

858. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

859. Plaintiffs bring this Count on behalf of the Kentucky Class members.

860. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of the Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

861. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the CP4 fuel pump in Class Vehicles is

- 221 -

incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's widespread national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM made false representations with the intent to deceive Plaintiffs.

862.   As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

863.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

864.   The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

865.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false

representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

866.   GM acted with intent that others rely upon the concealment and false representations of material fact. Plaintiffs and Class members reasonably relied upon GM's deception, false representations, and omissions, and had no way of knowing that GM's representations were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs

and other Class members for the failure of the Bosch CP4 fuel pump failure and the known consequences of that failure to the Class Vehicle engines.

867.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

868.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

869.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

870. Because of GM's false representations, concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class

Vehicles, and had Plaintiffs and Class members known the truth about the true nature and quality of the Class Vehicles, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or Bosch CP4 fuel pump conversion kits to prevent a catastrophic CP4 fuel pump failure from occurring or reoccurring.

871.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

872.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

873.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

874.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

R.    **Claims Brought on Behalf of the Louisiana Class**

## COUNT I

## VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## (LA. STAT. ANN. § 51:1401 *ET SEQ.*)

875.   Plaintiffs (for purposes of all Louisiana Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

876.   Plaintiffs bring this Count on behalf of the Louisiana Class members.

877.   GM, Plaintiffs, and Louisiana Class members are "persons" within the meaning of the La. Stat. Ann. § 51:1402(8).

878.   Plaintiffs and Louisiana Class members are "consumers" within the meaning of La. Stat. Ann. § 51:1402(1).

879.   GM engaged in "trade" or "commerce" within the meaning of La. Stat. Ann. § 51:1402(9).

880.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. § 51:1405(A). GM participated in misleading, false, or deceptive acts that violated Louisiana CPL. By systematically concealing the incompatibility of the CP4 fuel pump in the Class Vehicles with the U.S. diesel fuel, GM engaged in deceptive business practices prohibited by the Louisiana CPL. These facts concealed would be material to a reasonable consumer.

881.   In the course of GM's business, GM willfully failed to disclose and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in

motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful conduct of unfair or deceptive acts or practices in the conduct of any trade or commerce with the intent that a consumer rely on the same in connection therewith.

882.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations in purchasing or leasing the Class Vehicles.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part of the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the CP4 fuel pump in the high-pressure fuel injection system prior to purchase or lease.

883.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

884.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

885.   GM knew or should have known that its conduct violated the Louisiana CPL.

886.   GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

   a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of the low-lubricity diesel fuel on high-pressure fuel injections systems in it vehicles, including the uptick in warranty claims

it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

887.    Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump

disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

888.   GM's violations present a continuing risk to Plaintiffs and other Class members as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest. GM's violations offend public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious. Specifically: (1) the number of consumers affected by GM's deceptive practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as a the Class Vehicles continue to be advertised and sold for use with American diesel fuel, the likelihood of continued injurious impact on other consumers is significant.

889.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. There injuries are the direct and natural consequence of GM's misrepresentations and omissions.

890.   Pursuant to La. Stat. Ann. § 51:1409, Plaintiffs and the Louisiana Class seek to recover actual damages in an amount to be determined at trial; treble damages for GM's knowing violations of the Louisiana CPL; an order enjoining GM's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Stat. Ann. § 51:1409.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON LOUISIANA LAW)

891.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

892.   Plaintiffs bring this Count on behalf of the Louisiana Class members.

893.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the Class Vehicles and (more importantly) facts concerning the incompatibility of that fuel pump with U.S. diesel fuel, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles; in the alternative, GM acted with reckless disregard for the truth and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

894.   In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or lease of the Class Vehicles.

895.   As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

896.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

897.   The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

898.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to

bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and other Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

899.   GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Moreover, Plaintiffs and the other Class members had no way of knowing that GM's representations were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pump to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

900.   GM falsely represented the durability of the Class Vehicles and concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase its own revenue and profits.

901.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

902.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

903.   Because of the aforementioned misrepresentations and omissions, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles, and had Plaintiffs and Class members known the truth about the true nature and quality of the Class Vehicles, they would not have purchased said Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having

to pay for fuel additives and/or Bosch CP4 fuel pump conversion kits to prevent a catastrophic Bosch CP4 fuel pump failure from occurring or reoccurring.

904.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

905.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

906.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

907.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY/WARRANTY AGAINST REDHIBITORY
DEFECTS
(LA. CIV. CODE ART. 2520, 2524)**

908.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

909.   Plaintiffs bring this Count on behalf of the Louisiana Class members.

910.   GM was a merchant with respect to motor vehicles within the meaning of the La. Civ. Code Art. 2520, 2524.

911.   Under La. Civ. Code Art. 2520 and 2524, a warranty that the Class Vehicles did not have redhibitory defects was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

912.   The Class Vehicles, when sold and at all times thereafter, were not merchantable and not fit for the ordinary purpose for which cars are used. The Class Vehicles had a redhibitory defect. In being inherently defective and incompatible with U.S. diesel fuel, he Class Vehicles' use is so inconvenient that it must be presumed that a buyer would not have bought it had he known of the defect, or would have paid substantially less for it.

913.   The Bosch CP4 fuel pumps are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

914. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

915. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### S.   Claims Brought on Behalf of the Maine Class

### COUNT I

### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)

916. Plaintiffs (for purposes of all Maine Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

917. This claim is brought on behalf of the Maine Class members.

918. The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." ME. REV. STAT. ANN. TIT. 5, § 207.

919. GM, Plaintiffs, and Maine Class members are "persons" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(2).

920. GM was and is engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(3).

921. Plaintiffs intend to assert a claim under the Maine UTPA and will make a demand in satisfaction of Me. Rev. Stat. Ann. tit. 5, § 213(A), and may amend this Complaint to assert claims under the Maine UTPA once the required 30 days have elapsed. This paragraph is included for notice purposes only and is not intended to actually assert a claim under the Maine UTPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MAINE LAW)

922.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

923.   Plaintiffs bring this Count on behalf of the Maine Class members.

924.   As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their engine systems, in order to defraud and mislead the Maine Class about the true defective nature of the Class Vehicles, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decisions.

925.   In the course of GM's business, it willfully failed to disclose and actively

concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.  Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

926.   As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

927.   Despite this knowledge, GM marketed the Class Vehicles with the intent to deceive Plaintiffs and the other Class members, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false.

928.   The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs or other Class members to purchase a Class Vehicle.

929.   Due to GM's specific and superior knowledge that the Bosch CP4 Pumps in the

Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class vehicles, GM had a duty to disclose to Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose

not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Longevity, durability, performance, and safety are material concerns to diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

930.   GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions.  Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

931.   GM knew that Plaintiffs and other Class members did not know, and could not have known, that Class Vehicles will fail when used as intended by GM.

932.   GM actively concealed and/or suppressed or falsely represented these material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used with the Class Vehicles, and the consequences of the incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles and to increase their revenue and profits.

933.   GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

934.   Had Plaintiffs and other Class members known that the Class vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicles, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or in the case of Plaintiffs and other Class members whose vehicles experience CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

935.   Because of GM's false representations and concealment of material facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality of the Bosch CP4 Fuel Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel activities and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

936. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Fuel Pumps and the resulting failure of Class Vehicle engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

937. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

938. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

939. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (ME. REV. STAT. ANN. TIT. § 2-314)

940. Plaintiffs reallege and incorporate all paragraphs as though fully set forth herein.

941. Plaintiffs bring this Count on behalf of the Maine Class members.

942.   GM is a merchant with respect to motor vehicles within the meaning of Me. Rev. Stat. Ann. tit. 11, § 2-104(1).

943.   Under Me. Rev. Stat. Ann. tit. § 2-314, a warranty that the Class Vehicles were in a merchantable condition was implied by law in the transactions when Plaintiffs and other Class members purchased or leased the Class Vehicles from GM.

944.   The Class Vehicles, when first sold and at all times thereafter, were not merchantable an are not fit for the ordinary purpose for which cars are used.

945.   Specifically, the Class Vehicles contain a latent, inherent defect because they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

946.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

947.   As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

T.   **Claims Brought on Behalf of the Maryland Class**

## COUNT I

## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE ANN., COM. LAW § 13-101 *ET SEQ.*)

948.   Plaintiffs (for purposes of all Maryland Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

949.   Plaintiffs bring this Count on behalf of the Maryland Class members.

950.   Defendant, Plaintiffs, and the Maryland Class members are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

951.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good.  Md. Code Ann., Com. Law Code § 13-303.  These include "(1) false, falsely disparaging, or misleading oral or written statement, visual description, or other representations of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) Representation that: (i) consumer goods . . . . have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quality which they do not have; . . . (iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;" and "(3) failure to state a material fact if the failure deceives or tends to deceive;" and "(6) false or misleading representation of fact which concerns; (i) The reason for or the existence of a price reduction; or (ii) A price comparison to a price of a competitor or to one's price at a past or future time;" and "(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods." GM participated in misleading, false, or deceptive acts that violated the Maryland CPA. By concealing the known defects in Plaintiffs' Class Vehicles, GM engaged in deceptive business practices prohibited by the Maryland CPA.

952.   GM's actions, as set forth above, occurred in the conduct of trade or commerce.

953.   In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel

such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

954. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), as described above.

955. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that said representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated

methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

956. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

957. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

958. GM knew or should have known that its conduct violated the Maryland CPA.

959. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

   a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

   b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

   c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

960.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

961.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

962.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles

have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

963.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

964.   Pursuant to Md. Code Ann., Com. Law § 13-408, Plaintiffs and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MARYLAND LAW)

965.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

966.   Plaintiffs bring this Count on behalf of the Maryland Class against GM.

967.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of Class Vehicles and their engines, in order to defraud and mislead the Maryland Class about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and other Class members information that is highly relevant to their purchasing decision.

968.   In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes

while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

969.   As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

970.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

971.   The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

972.   Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false

representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the Bosch CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

973.  GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions. Plaintiffs and Class members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or

compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

974.   Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by GM for their durability and performance, will fail when used as intended by GM.

975.   GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

976.   GM falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

977.   GM's devious scheme to design, market, and sell Class Vehicles with defective Bosch CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

978.   Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not

purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced Bosch CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

979.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 fuel pump conversion kits to prevent a catastrophic Bosch CP4 fuel pump failure from occurring or reoccurring.

980.   GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the Bosch CP4 fuel pump, loss of earnings, and other damages.

981.   GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

982.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

983. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MD. CODE COM. LAW § 2-314)

984. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

985. Plaintiffs bring this Count on behalf of the Maryland Class against GM.

986. GM was a merchant with respect to motor vehicles within the meaning of the Md. Code Com. Law § 2-314.

987. Under Md. Code Com. Law § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

988. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

989. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

990.   GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

991.   As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**U.     Claims Brought on Behalf of the Massachusetts Class**

## COUNT I

### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (MASS. GEN. LAWS CH. 93A)

**992.**   Plaintiffs (for purposes of all Massachusetts Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

993.   Plaintiffs intend to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(1).  Plaintiffs will make a demand in satisfaction of Mass. Gen. Laws ch. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed.   This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MASSACHUSETTS LAW)

994.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

995.   Plaintiffs bring this Count behalf of the Massachusetts Class against GM.

996.   As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their incompatibility with U.S. diesel fuel, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles.  GM denied Plaintiffs and other Class members information that was highly relevant to their vehicle transaction decisions.

997.   In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

998.   As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

999.   Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further

affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

1000. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase or lease a Class Vehicle.

1001. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other

Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1002. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions, and that they had no way of knowing that GM's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

1003. Plaintiffs and other Class members could not have known that the Class Vehicles will fail when used as intended by GM.

1004. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1005. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and

GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1006. Because of the false representations, concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 fuel pump conversion kits to prevent a catastrophic CP4 fuel pump failure from occurring or reoccurring.

1007. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

1008. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

1009. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial, including treble damages for its willful and knowing conduct.

1010. Indeed, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mass. Gen. Laws CH. 106, § 2-314)

1011. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1012. Plaintiffs bring this Count on behalf of the Massachusetts Class members.

1013. GM was a merchant with respect to motor vehicles within the meaning of the Mass. Gen. Laws ch. 106, § 2-314.

1014. Under Mass. Gen. Laws ch. 106, § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1015. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1016. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and

disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1017.  GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1018.  As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### V.  Claims Brought on Behalf of the Michigan Class

### COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.903 *ET SEQ.*)

1019.  Plaintiffs (for purposes of all Michigan Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1020.  Plaintiffs bring this Count on behalf of the Michigan Class members.

1021.  Plaintiffs and the Michigan Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

1022.  GM is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

1023.  The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact

could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."   MICH. COMP. LAWS § 445.903(1).   GM participated in unfair, unconscionable, or deceptive methods, acts, or practices that violated the Michigan CPA. By concealing the known defects in Plaintiffs' Class Vehicles, GM engaged in deceptive business practices prohibited by the Michigan CPA.

1024. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

1025. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the

transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

1026. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure.

1027. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that said representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of this defect prior to purchase or lease.

1028. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1029. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1030. GM knew or should have known that its conduct violated the Michigan CPA.

1031. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1032. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material

because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1033. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1034. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

1035. GM's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1036. Plaintiffs seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 per each Plaintiff; and reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911. Plaintiffs also seek punitive damages against GM because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. GM's conduct constitutes malice, oppression, and fraud warranting punitive damages.

Case 2:19-cv-12333-TGB-DRG   ECF No. 1, PageID.279   Filed 08/06/19   Page 279 of 563

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MICHIGAN LAW)

1037. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1038. Plaintiffs bring this Count on behalf of the Michigan Class members.

1039. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their incompatibility with U.S. diesel fuel, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles. GM denied Plaintiffs and other Class members information that was highly relevant to their vehicle transaction decisions, and thus denied them the ability to make a fair, informed vehicle purchase and/or lease decision.

1040. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1041. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

1042. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

1043. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase or lease a Class Vehicle.

1044. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to

bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1045. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions, and that they had no way of knowing that GM's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

1046. Plaintiffs and other Class members could not have known that the Class Vehicles will fail when used as intended by GM.

1047. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over

integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1048. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1049. Because of the false representations, concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 fuel pump conversion kits to prevent a catastrophic CP4 fuel pump failure from occurring or reoccurring.

1050. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the

cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

1051. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

1052. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MICH. COMP. LAWS § 440.2314)

1053. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1054. Plaintiffs bring this Count on behalf of the Michigan Class members.

1055. At all relevant times, GM was and is a merchant with respect to motor vehicles within the meaning of the Mich. Comp. Laws § 440.2314.

1056. Under Mich. Comp. Laws § 440-2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1057. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1058. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and

subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1059. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1060. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

### UNJUST ENRICHMENT

1061. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1062. Plaintiffs bring this Count on behalf of the Michigan Class members.

1063. This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

1064. GM has received and retained a benefit from Plaintiffs and inequity has resulted.

1065. GM has benefitted from selling and leasing the Class Vehicles for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

1066. Thus, all Plaintiffs conferred a benefit on GM.

1067. It is inequitable for GM to retain these benefits.

1068. Plaintiffs were not aware of the true facts about their Class Vehicles, and did not benefit from GM's conduct, but rather were harmed by it.

1069. GM knowingly accepted the benefits of its unjust conduct.

1070. As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

### W.    Claims Brought on Behalf of the Minnesota Class

### COUNT I

### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68 *ET SEQ.*)

1071.  Plaintiffs (for purposes of all Minnesota Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1072.  Plaintiffs bring this Count on behalf of the Minnesota Class members.

1073.  The Class Vehicles constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

1074.  The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1).  GM participated in misleading, false, or deceptive acts that violated the Minnesota CFA. By concealing the known defects in Plaintiffs' Class Vehicles, GM engaged in deceptive business practices prohibited by the Minnesota CFA.

1075.  GM's actions, as set forth above, occurred in the conduct of trade or commerce.

1076.  In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a

moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in fraud, misrepresentation, and deceptive practices. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that Plaintiffs and other Class members rely thereon in connection with the sale of the Class Vehicles.

1077. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1078. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions, and that they had no way of knowing that GM's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

1079. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppressions and/or omissions of material facts were likely to and did in fact deceive reasonable consumers.

1080. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1081. GM knew or should have known that its conduct violated the Minnesota CFA.

1082. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1083. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class

Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1084. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1085. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1086. GM's violations present a continuing risk and impact to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by GM's deceptive practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed

for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1087. Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

1088. Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that GM's acts show deliberate disregard for the rights of others.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MINNESOTA LAW)

1089. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1090. Plaintiffs bring this Count on behalf of the Minnesota Class members.

1091. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their incompatibility with U.S. diesel fuel, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles. GM denied Plaintiffs and other Class members information that was highly relevant to their vehicle transaction decisions, and thus denied them the ability to make a fair, informed vehicle purchase and/or lease decision.

1092. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes

while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1093. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

1094. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

1095. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase or lease a Class Vehicle.

1096. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false

representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1097. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions, and that they had no way of knowing that GM's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of

the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

1098. Plaintiffs and other Class members could not have known that the Class Vehicles will fail when used as intended by GM.

1099. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1100. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1101. Because of the false representations, concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles. Plaintiffs and other

Class members have also sustained damages by having to pay for fuel additives and/or CP4 fuel pump conversion kits to prevent a catastrophic CP4 fuel pump failure from occurring or reoccurring.

1102. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

1103. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

1104. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.  In addition, because GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights in order to enrich GM, GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MINN. STAT. § 336.2-314)

1105. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1106. Plaintiffs bring this Count on behalf of the Minnesota Class members.

1107. GM was and is a merchant with respect to motor vehicles within the meaning of the Minn. Stat. § 336.2-314.

1108. Under Minn. Stat. § 336.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1109. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1110. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' CP4 high-pressure fuel injection pumps and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1111. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1112. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

X.     **Claims Brought on Behalf of the Mississippi Class**

## COUNT I

## VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT
### (MISS. CODE ANN. § 75-24-1, *et seq.*)

1113. Plaintiffs (for purposes of all Mississippi Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1114. Plaintiffs state this Count on behalf of the Mississippi Class members.

1115. The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e)" representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;" and (g) representing that goods or services are of a particular standard, quality, or grade, or that goods are a particular style or model, if they are of another;" and "(i) advertising goods or services with intent not to sell them as advertised." Plaintiffs will comply with the pre-suit dispute resolution procedure in Miss. Code Ann. § 75-24-15(2), and may amend this Complaint to assert claims under Mississippi CPA once the required procedure has been followed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Mississippi CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
### (BASED ON MISSISSIPPI LAW)

1116. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1117. Plaintiffs bring this Count on behalf of the Mississippi Class members.

- 280 -

1118. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and their incompatibility with U.S. diesel fuel, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles. GM denied Plaintiffs and other Class members information that was highly relevant to their vehicle transaction decisions, and thus denied them the ability to make a fair, informed vehicle purchase and/or lease decision.

1119. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1120. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

1121. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and

other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

1122. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase or lease a Class Vehicle.

1123. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible

with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1124. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions, and that they had no way of knowing that GM's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

1125. Plaintiffs and other Class members could not have known that the Class Vehicles will fail when used as intended by GM.

1126. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1127. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve

no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1128. Because of the false representations, concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 fuel pump conversion kits to prevent a catastrophic CP4 fuel pump failure from occurring or reoccurring.

1129. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

1130. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

1131. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.  In addition, because GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights in order to enrich GM, GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1132. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive, exemplary, and or any such additional damages necessary and sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MISS. CODE ANN. § 75-2-314)

1133. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1134. Plaintiffs bring this Count on behalf of the Mississippi Class against GM.

1135. GM was and is a merchant with respect to motor vehicles within the meaning of the Miss. Code Ann. § 75-2-314.

1136. Under Miss. Code Ann. § 75-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1137. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1138. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' CP4 high-pressure fuel injection pumps and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1139. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1140. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

Y.   **Claims Brought on Behalf of the Missouri Class**

## COUNT I

# VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
(MO. REV. STAT. § 407.010 *ET SEQ.*)

1141. Plaintiffs (for purposes of all Missouri Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1142. Plaintiffs bring this Count on behalf of the Missouri Class against GM.

1143. GM, Plaintiffs, and the Missouri Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

1144. GM engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

1145. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020. GM used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce, in violation of the Missouri MPA.

1146. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1147. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1148. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading. Indeed, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1149. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1150. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1151. GM knew or should have known that its conduct violated the Missouri CPA.

1152. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1153. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1154. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1155. Plaintiffs and the other Class members purchased Class Vehicles for personal, family, or household use and were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1156. GM's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1157. GM is liable to Plaintiffs and the Missouri Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining GM's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MISSOURI LAW)

1158. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1159. Plaintiffs bring this Count on behalf of the Missouri Class members.

1160. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of Class Vehicles and the incompatibility of their fuel injection systems with U.S. diesel fuel, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles, and further denied Plaintiffs and other Class members information that is highly relevant to their purchasing and/or leasing decisions.

1161.  As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Missouri Class members about the true defective nature of the Class Vehicles.

1162.  As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

1163.  As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1164.  As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1165.  As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1166.  Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

1167. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1168. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1169. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy

diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1170. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1171. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1172. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1173. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1174. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1175. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1176. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1177. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1178. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MO. REV. STAT. §  400.2-314)

1179. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1180. Plaintiffs bring this Count on behalf of the Missouri Class members.

1181. GM is a merchant with respect to motor vehicles within the meaning of the Mo. Rev. Stat. § 400.2-314.

1182. Under Mo. Rev. Stat. § 400.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1183. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1184. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles

causes metal shards to wear off of the Vehicles' CP4 high-pressure fuel injection pumps and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle, thereby causing an increased likelihood of serious injury or death.

1185. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1186. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

1187. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1188. Plaintiffs bring this Count on behalf of the Missouri Class members.

1189. This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

1190. GM has received and retained a benefit from Plaintiffs and inequity has resulted.

1191. GM has benefitted from selling and leasing the Class Vehicles for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

1192. Thus, all Plaintiffs conferred a benefit on GM.

1193. It is inequitable for GM to retain these benefits.

1194. Plaintiffs were not aware of the true facts about their Class Vehicles prior to spending their money on said Vehicles, and did not benefit from GM's conduct.

1195. GM knowingly accepted the benefits of its unjust conduct.

1196. As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

1197. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

### Z.    Claims Brought on Behalf of the Montana Class

### COUNT I

### VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. § 30-14-101 *ET SEQ.*)

1198. Plaintiffs (for purposes of all Montana Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1199. Plaintiffs bring this Count on behalf of the Montana Class members.

1200. GM, Plaintiffs, and the Montana Class members are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

1201. Plaintiffs and Montana Class members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

1202. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."   MONT. CODE ANN. § 30-14-103. GM participated in false, misleading, or deceptive acts or practices that violated the Montana CPA. By concealing known defects in the Class

Vehicles, GM's conduct, actions, and inactions offend established public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

1203. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

1204. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1205. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose the aforementioned material facts.

1206. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading.  Indeed, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the

Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1207. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1208. GM knew or should have known that its conduct violated the Montana CPA.

1209. GM owed Plaintiffs and the Class members a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1210. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the

expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1211. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1212. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest and offends public policy and is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Specifically: (1) the number of consumers affected by GM's unfair and deceptive acts or practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the

Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1213. Because Defendant's unlawful methods, acts, and practices have caused Plaintiffs and Montana Class members to suffer an ascertainable loss of money and property, Plaintiffs and the Class seek from Defendant actual damages, discretionary treble damages, reasonable attorneys' fees, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MONTANA LAW)

1214. Because Defendant's unlawful methods, acts, and practices have caused Plaintiffs and Montana Class members to suffer an ascertainable loss of money and property, Plaintiffs and the Class seek from Defendant actual damages, discretionary treble damages, reasonable attorneys' fees, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

1215. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1216. Plaintiffs bring this Count on behalf of the Montana Class members against GM.

1217. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class

Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and other Class members information that is highly relevant to their purchasing decision.

1218. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

1219. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful, unfair, deceptive practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1220. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made

- 302 -

1221. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

1222. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1223. GM knew that Plaintiffs and other Class members reasonably relied upon GM's false representations and omissions. Plaintiffs and Class members reasonably relied upon GM's deception.  They had no way of knowing that Defendant's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

1224. Plaintiffs and other Class members could not have known that the Class Vehicles, which were touted by GM for their durability and performance, will fail when used as intended by GM.

1225. GM knew that Plaintiffs and other Class members could not have known that Class Vehicles will fail when used as intended by GM.

1226. GM falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

1227. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American

public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1228. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1229. Because of the false representations, concealment and/or suppression of the material facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles, and had  Plaintiffs and Class members known the truth about the true nature and quality of the Class Vehicles, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 fuel pump conversion kits to prevent a catastrophic CP4 fuel pump failure from occurring or reoccurring.

1230. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure

of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

1231. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

1232. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1233. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MONT. CODE § 30-2-314)

1234. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1235. Plaintiffs bring this Count on behalf of the Montana Class members.

1236. GM is a merchant with respect to motor vehicles within the meaning of the Mont. Code § 30-2-314.

1237. Under Mont. Code § 30-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1238. The Class Vehicles, when first sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1239. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' CP4 high-pressure fuel injection pumps and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1240. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1241. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## AA.   Claims Brought on Behalf of the Nebraska Class

### COUNT I

### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (NEB. REV. STAT. § 59-1601 *ET SEQ.*)

1242. Plaintiffs (for purposes of all Nebraska Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1243. Plaintiffs bring this Count on behalf of the Nebraska Class members against GM.

1244. GM, Plaintiffs, and Nebraska Class members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

1245. GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

1246. The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602. GM's conduct as set forth herein constitutes unfair or deceptive acts or practices prohibited by the Nebraska CPA.

1247. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1248. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1249. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false

and gravely misleading.  Indeed, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1250. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1251. GM knew or should have known that its conduct violated the Nebraska CPA.

1252. GM owed Plaintiffs and the Class members a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1253. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and

Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1254. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1255. GM's violations present a continuing risk to Plaintiffs as well as to the general public, and thus GM's unlawful acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by

GM's unfair or deceptive acts or practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers in significant.

1256. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1257. Because GM's conduct caused injury to Nebraska Class members' through violations of the Nebraska CPA, Plaintiffs and the Nebraska Class seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Defendant's unfair or deceptive acts and practices, court costs, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEBRASKA LAW)

1258. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1259. This Count is brought on behalf of the Nebraska Class members.

1260. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and

other Class members information that is highly relevant to their purchasing and/or leasing decisions.

1261. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

1262. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful, unfair, deceptive practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1263. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

1264. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle.

1265. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1266. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions, and that they had no way of knowing that GM's representations and omissions were false and/or misleading, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 fuel pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 fuel pumps and the known consequences of that failure to the Class Vehicles engines.

1267. Plaintiffs and other Class members could not have known that the Class Vehicles will fail when used as intended by GM.

1268. GM falsely represented the durability of the Class Vehicles and actively concealed, suppressed, or omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase their revenue and profits.

1269. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 fuel pumps, knowing the U.S. diesel fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles and their fuel delivery systems.

1270. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles

were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would have not purchased a Class Vehicle, or would have paid substantially less for the Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced CP4 fuel pump failure, would have taken affirmative steps to mediate the impact of or prevent failure.

1271. Because of the false representations, concealment and/or suppression of the material facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true nature and quality of Bosch CP4 fuel pump in the Class Vehicles, and had Plaintiffs and Class members known the truth about the true nature and quality of the Class Vehicles, Plaintiffs and other Class members would not have purchased the Class Vehicles, or would have paid substantially less for them. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 fuel pump conversion kits to prevent a catastrophic CP4 fuel pump failure from occurring or reoccurring.

1272. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 fuel pumps and the resulting failure of Class Vehicles engines, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, loss of earnings, and other damages.

1273. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel.

1274. Because GM's conduct caused injury to Plaintiffs' property through violations of the Nebraska CPA, Plaintiffs seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining New GM's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (NEB. REV. STAT. § 30-2-314)

1275. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1276. Plaintiffs bring this Count on behalf of the Nebraska Class members.

1277. GM is a merchant with respect to motor vehicles within the meaning of the Neb. Rev. Stat. § 30-2-314.

1278. Under Neb. Rev. Stat. § 30-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1279. The Class Vehicles, when first sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1280. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' CP4 high-pressure fuel injection pumps and disperse throughout the Vehicles' fuel injection systems, leading to

catastrophic engine failure while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle, thereby causing an increased likelihood of serious injury or death.

1281. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1282. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## BB.   Claims Brought on Behalf of the Nevada Class

### COUNT I

### VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### (NEV. REV. STAT. § 598.0903 *ET SEQ.*)

1283. Plaintiffs (for purposes of the Nevada Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1284. Plaintiffs bring this Count on behalf of the Nevada Class members.

1285. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903 *et seq.*, prohibits deceptive trade practices.  Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person:  "5.  Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or

"15.   Knowingly makes any other false representation in a transaction." Accordingly, GM has violated the Nevada DTPA by knowingly representing that the Class Vehicles have uses and benefits which they do not have; representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

1286. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

1287. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1288. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure

(oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1289. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading.  Indeed, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1290. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1291. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1292. GM knew or should have known that its conduct violated the Nevada DTPA.

1293. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1294. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1295. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's

conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1296.  GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1297.  Accordingly, Plaintiffs and the Nevada Class members seek their actual damages, punitive damages, court costs, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA.  NEV. REV. STAT. § 41.600.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON NEVADA LAW)

1298.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1299.  Plaintiffs bring this Count on behalf of the Nevada Class members against GM.

1300.  As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and other Class members information that is highly relevant to their purchasing decision.

1301.  As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of Class Vehicles and the

incompatibility of their fuel injection systems with U.S. diesel fuel, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles, and further denied Plaintiffs and other Class members information that is highly relevant to their purchasing and/or leasing decisions.

1302. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Missouri Class members about the true defective nature of the Class Vehicles.

1303. As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

1304. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1305. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1306. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1307. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects,

had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

1308. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1309. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs

and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1310. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1311. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1312. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1313. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then

concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1314. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1315. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1316. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or

replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1317. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1318. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1319. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (NEV. REV. STAT. § 104.2314)

1320. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1321. Plaintiffs bring this Count on behalf of the Nevada Class members against GM.

1322. GM is a merchant with respect to motor vehicles within the meaning of the Nev. Rev. Stat. § 104.2314.

1323. Under Nev. Rev. Stat. § 104.2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1324. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1325. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1326. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1327. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### CC. Claims Brought on Behalf of the New Hampshire Class Under New Hampshire Law

### COUNT I

### VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1 *ET SEQ.*)

1328. Plaintiffs (for purposes of all New Hampshire Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1329. Plaintiffs bring this Count on behalf of the New Hampshire Class members.

1330. Plaintiffs, other Class Members, and GM are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"). N.H. REV. STAT. § 358-A:1.

1331. GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

1332. The New Hampshire CPA prohibits a person in the conduct of any trade or commerce from using "any unfair or deceptive act or practice," including "but . . . not limited to the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have," "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another," and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. REV. STAT. § 358-A:2. GM participated in unfair methods of competition or unfair or deceptive acts or practices that violated the New Hampshire CPA. By representing that the Class Vehicles were compatible with U.S. diesel fuel when they were not, and by touting these diesel trucks' superior durability and longevity, all the while concealing its knowledge of those false representations, GM engaged in deceptive business practices prohibited by the New Hampshire CPA. The facts concerning the inherently defective nature of the Class Vehicles would be material to a reasonable consumer.

1333. In the course of GM's business, it willingly, knowingly, and intentionally failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of GM's nationwide advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM willfully and knowingly engaged in unfair and deceptive trade practices, in unfair methods of competition, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities

which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transactions in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowingly concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1334. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion causing a moving stall and subsequent inability to restart the vehicle).

1335. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations and omissions were false and gravely misleading; indeed, they did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component in the Class Vehicles and Plaintiffs and Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1336. The facts concealed and omitted by GM were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  But GM's unfair and deceptive acts of fraud, misrepresentation, concealment, suppression, and/or omission of material facts were likely to and did in fact deceive reasonable consumers.

1337. GM knew or should have known that its conduct violated the New Hampshire CPA.

1338. GM owed Plaintiffs and the other Class members a duty to disclose the truth about the incompatibility of the CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

> a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 into the Class Vehicles;
>
> b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1339. Due to GM's specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, and due to its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and the Class members that their Class Vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other diesel vehicles or of their namesake predecessor engines, that catastrophic failure of the Bosch CP4 Pumps will cause damage to Class Vehicle engine and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

347 of 563   Filed 08/06/19   Page 347 of 563

1340. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damages as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective and destructive CP4 fuel pump. These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1341. GM's violations present a continuing risk to Plaintiffs as well as the other Class members and the general public. GM's unlawful acts and practices complained of herein affect the public interest, and its practices are immoral, unethical, oppressive, and/or unscrupulous.

1342. Pursuant to N.H. Rev. Stat. § 358-A:10, Plaintiffs and Class members seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, and any other just and proper relief available under N.H. Rev. Stat. § 358-A:10.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEW HAMPSHIRE LAW)

1343. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein

1344. Plaintiffs bring this Count on behalf of the New Hampshire Class members.

1345. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (more importantly) facts concerning the compatibility of the Class

Vehicles with U.S. diesel fuel, in order to defraud and mislead the New Hampshire Class about the true defective nature of the Class Vehicles.

1346. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1347. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1348. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1349. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1350. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1351. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

1352. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1353. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other

gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1354. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1355. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1356. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1357. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1358. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1359. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1360. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1361. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1362. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1363. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.H. REV. STAT. ANN. § 382-A:2-314)

1364. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1365. Plaintiffs bring this Count on behalf of the New Hampshire Class members.

1366. GM was at all times a merchant with respect to motor vehicles within the meaning of N.H. Rev. Stat. Ann. § 382-A:2-314.

1367. Under N.H. Rev. Stat. Ann. § 382-A:2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and other Class members purchased or leased their Class Vehicles from GM.

1368. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by GM and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel causes a breakdown of the CP4 fuel pump (a condition that GM knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicles.

1369. The normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1370. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1371. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

**1372.** Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1373. Plaintiffs bring this Count on behalf of the New Hampshire Class members.

1374. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

1375. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects the Class Vehicles' high-pressure fuel injection systems and the concealment thereof, GM charged a higher price for the Class Vehicles than the Class Vehicles' true value and GM, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

1376. GM has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by GM's concealment of the defective nature of the CP4 fuel pump in the Class Vehicles, and false representations related thereto.

1377. GM enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

1378. GM has received and retained unjust benefits from the Plaintiffs and other Class members, and inequity has resulted.

1379. It would be inequitable and unconscionable for GM to retain these wrongfully obtained benefits.

1380. Because GM concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1381. GM knowingly accepted and retained the unjust benefits of its fraudulent conduct.

1382. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class members, in an amount to be proven at trial.

DD. **Claims Brought on Behalf of the New Jersey Class Under New Jersey Law**

### COUNT I

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)

1383. Plaintiffs (for purposes of all New Jersey Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1384. Plaintiffs bring this Count on behalf of the New Jersey Class members.

1385. GM and Plaintiffs are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

1386. GM engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

1387. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* ("N.J. CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person

has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2. GM engaged in unconscionable commercial practice or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Plaintiffs rely upon their acts of concealment, suppression and/or omission.

1388. In the course of GM's business, GM willfully failed to disclose and actively concealed or omitted that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel, but they are not. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; knowingly failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the New Jersey CFA.

1389. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1390. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations and omissions were false and gravely misleading; indeed, they did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component in the Class Vehicles and Plaintiffs and Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1391. The facts concealed and omitted by GM were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  But GM's unfair and deceptive acts of fraud, misrepresentation, concealment, suppression, and/or omission of material facts were likely to and did in fact deceive reasonable consumers.

1392. GM intentionally, affirmatively, and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1393. GM knew or should have known that its conduct violated the New Jersey CFA.

1394. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

 a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection

systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and

c.      Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1395. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump

disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1396. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1397. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1398. Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiffs and the New Jersey Class members seek an order enjoining GM's unlawful conduct, actual damages, treble damages, attorneys' fees, costs, and any other just and proper relief available under the New Jersey CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEW JERSEY LAW)

1399. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1400. Plaintiffs bring this Count on behalf of the New Jersey Class members.

1401. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the New Jersey Class members about the true defective nature of the Class Vehicles.

1402. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1403. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1404. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1405. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1406. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1407.  Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

1408.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1409.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines

and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1410. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1411. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1412. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1413. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1414. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1415. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1416. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain

Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1417. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1418. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1419. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. STAT. ANN. §12A:2-314)

1420. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1421. Plaintiffs bring this Count on behalf of the New Jersey Class members.

1422. GM is a merchant with respect to motor vehicles within the meaning of the N.J. Stat. Ann. § 12A:2-314.

1423. Under N.J. Stat. Ann. § 12A:2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1424. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1425. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death.

1426. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1427. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**EE. Claims Brought on Behalf of the New Mexico Class**

**COUNT I**

**VIOLATIONS OF THE NEW MEXICO UNFAIR
TRADE PRACTICES ACT
(N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)**

**1428.** Plaintiffs (for purposes of all New Mexico Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1429. Plaintiffs bring this Count on behalf of the New Mexico Class members.

1430. Defendant, Plaintiffs, and New Mexico Class members are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-2.

1431. Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

1432. The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).  Defendant's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D).   In addition, Defendant's actions constitute unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), since it took advantage of the lack of knowledge, ability, experience, and capacity of the New Mexico Class members to a grossly unfair degree.

1433. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others

rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1434. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1435. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations and omissions were false and gravely misleading; indeed, they did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component in the Class Vehicles and Plaintiffs and Class members were not aware of the defective nature of that high-pressure fuel injection system prior to purchase or lease.

1436. The facts concealed and omitted by GM were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  But GM's unfair and deceptive acts of fraud, misrepresentation, concealment, suppression, and/or omission of material facts were likely to and did in fact deceive reasonable consumers.

1437. GM intentionally, affirmatively, and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1438. GM knew or should have known that its conduct violated the New Mexico UTPA.

1439. GM owed Plaintiffs and the other Class members a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

a.  Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and

c.  Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1440. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class

Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1441. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1442. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

1443. Because GM's unconscionable, willful conduct caused actual harm to Plaintiffs and New Mexico Class members, Plaintiffs and the New Mexico Class members seek recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON NEW MEXICO LAW)

1444. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1445. Plaintiffs bring this Count on behalf of the New Mexico Class members.

1446. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the New Mexico Class members about the true defective nature of the Class Vehicles.

1447. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.   Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1448. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1449. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1450. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1451. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1452. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

1453. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel

pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1454. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1455. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1456. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the

Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1457. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1458. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1459. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4

pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1460. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1461. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1462. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1463. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1464. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in

an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.M. STAT. ANN. § 55-2-314)

1465. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1466. Plaintiffs bring this Count on behalf of the New Mexico Class members.

1467. GM is a merchant with respect to motor vehicles within the meaning of the N.M. Stat. Ann. § 55-2-314.

1468. Under N.M. Stat. Ann. § 55-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1469. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1470. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes.

1471. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1472. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**FF.   Claims Brought on Behalf of the New York Class**

**COUNT I**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

1473. Plaintiffs (for purposes of all New York Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1474. Plaintiffs bring this Count on behalf of the New York Class members.

1475. Plaintiffs are "persons" within the meaning of New York General Business Law ("New York GBL"). N.Y. GEN. BUS. LAW § 349(h).

1476. GM is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

1477. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 349. GM's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the New York GBL. All of GM's deceptive acts and practices, which were intended to mislead consumers in a material way in the process of purchasing or leasing Class Vehicles, constitute conduct directed at consumers and "consumer-oriented." Further, Plaintiffs and other Class members suffered injury as a result of the deceptive acts or practice.

1478. GM's actions, as set forth above, occurred in the conduct of business, trade or commerce.

1479. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the Bosch CP4 fuel pumps in Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1480. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1481. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1482. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression and omission of material facts were likely to and did in fact deceive reasonable consumers.

1483. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1484. GM knew or should have known that its conduct violated the New York GBL.

1485. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1486. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in

Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1487. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1488. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful and deceptive acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by GM's deceptive practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class

members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

1489. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs and each Class member seek actual damages or $50, whichever is greater, in addition to discretionary three times actual damages up to $1,000 for Defendant's willful and knowing violation of N.Y. Gen. Bus. Law § 349. Plaintiffs and New York Class members also seek attorneys' fees, an order enjoining GM's deceptive conduct, and any other just and proper relief available under the New York GBL.

<h3 style="text-align:center">COUNT II</h3>

<h3 style="text-align:center">VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350<br>(N.Y. GEN. BUS. LAW § 350)</h3>

1490. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1491. Plaintiffs bring this Count on behalf of the New York Class members.

1492. New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity."  N.Y. GEN. BUS. LAW § 350-a.

1493. GM caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, representations that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to GM, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

1494. GM has violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).

1495. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure.

1496. Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1497. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1498. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1499. GM knew or should have known that its conduct violated the New York GBL § 350.

1500. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1501. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material

because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1502. GM's actions as set forth above occurred in the conduct of trade or commerce.

1503. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1504. Plaintiffs and the other Class members are entitled to recover their actual damages or $500, whichever is greater.  Because GM acted willfully or knowingly, Plaintiffs and the other Class members are entitled to recover three times actual damages, up to $10,000.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON NEW YORK LAW)

1505. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1506. Plaintiffs bring this Count on behalf of the New York Class members.

1507. As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the New York Class members about the true defective nature of the Class Vehicles.

1508. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.  Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1509. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1510. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1511. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

385 of 563

1512.  As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1513.  Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

1514.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1515. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection

systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1516. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1517. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1518. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the

incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1519. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1520. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1521. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members

have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1522. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1523. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1524. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1525. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. § 2-314)

1526.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1527.  Plaintiffs bring this Count on behalf of the New York Class members.

1528.  GM is a merchant with respect to motor vehicles within the meaning of the N.Y. U.C.C. § 2-314.

1529.  Under N.Y. U.C.C. § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1530.  The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1531.  The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes.

1532.  GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1533.  As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V

## UNJUST ENRICHMENT

1534. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1535. Plaintiffs bring this Count on behalf of the New York Class members.

1536. This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

1537. GM has received and retained a benefit from Plaintiffs and inequity has resulted.

1538. GM has benefitted from selling and leasing the Class Vehicles for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

1539. Thus, all Plaintiffs conferred a benefit on GM.

1540. It is against equity and good conscience for GM to retain these benefits.

1541. Plaintiffs were not aware of the true facts about their Class Vehicles, and did not benefit from GM's conduct.

1542. GM knowingly accepted the benefits of its unjust conduct.

1543. As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

### GG.   Claims Brought on Behalf of the North Carolina Class

## COUNT I

## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)

1544. Plaintiffs (for purposes of all North Carolina Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1545. Plaintiffs bring this Count on behalf of the North Carolina Class members.

1546. GM engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

1547. The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. GEN. STAT. § 75-1.1(a).  GM willfully committed unfair or deceptive acts or practices in violation of North Carolina UDTPA.

1548. GM's actions occurred in the conduct of trade or commerce.

1549. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of

deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive acts or practices in violation of the North Carolina UDPTA.

1550. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1551. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1552. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression and omission of material facts were likely to and did in fact deceive reasonable consumers.

1553. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1554. GM knew or should have known that its conduct violated the North Carolina UDPTA.

1555. GM owed Plaintiffs and the Class members a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1556. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material

because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1557. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1558. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

**1559.** GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

**1560.** Because GM's actions and conduct were willful, Plaintiffs seek an order for treble their actual damages, an order enjoining GM's unlawful acts, court costs, attorneys' fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON NORTH CAROLINA LAW)

1561. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1562. Plaintiffs bring this Count on behalf of the North Carolina Class members.

1563. As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the North Carolina Class members about the true defective nature of the Class Vehicles.

1564. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1565. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1566.  As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1567.  As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1568.  As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1569.  Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

1570.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel

pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1571. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1572. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1573. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the

Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1574. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1575. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1576. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4

pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1577. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1578. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1579. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1580. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1581. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in

an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.C. GEN. STAT. § 25-2-314)

1582. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1583. Plaintiffs bring this Count on behalf of the New Carolina Class members.

1584. GM is a merchant with respect to motor vehicles within the meaning of the N.C. Gen. Ann. § 25-2-314.

1585. Under N.C. Gen. Ann. § 25-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1586. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1587. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes.

1588. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1589. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**HH.   Claims Brought on Behalf of the North Dakota Class**

**COUNT I**

**VIOLATIONS OF THE NORTH DAKOTA CONSUMER FRAUD ACT
(N.D. CENT. CODE § 51-15-02)**

1590. Plaintiffs (for purposes of all North Dakota Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1591. Plaintiffs bring this Count on behalf of the North Dakota Class members.

1592. Plaintiffs, North Dakota Class members, and GM are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

1593. Defendant engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

1594. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise. . . . The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition." N.D. CENT. CODE § 51-15-

02.  As set forth above and below, Defendant committed deceptive acts or practices, with the intent that Plaintiffs and other Class members rely thereon in connection with their purchase or lease of the Class Vehicles.

1595. GM's actions, as set forth herein, occurred in the conduct of trade or commerce.

1596. In the course of GM's business, GM willfully and knowingly failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful, unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any

material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unlawful and deceptive acts and practices in violation of the North Dakota CFA.

1597. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1598. Plaintiffs and Class members reasonably relied upon GM's false and misleading misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injection system prior to purchase or lease.

1599. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1600. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class members.

1601. GM knew or should have known that its conduct violated the North Dakota CFA.

1602. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1603. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material

because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1604. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1605. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1606. GM's violations present a continuing risk to Plaintiffs as well as to the general public; indeed, the unlawful acts and practices complained of herein affect the public interest.

1607. Further, GM knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, GM is liable to Plaintiffs and the North Dakota Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.  Plaintiffs further seek an order enjoining GM's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON NORTH DAKOTA LAW)

1608. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1609. Plaintiffs bring this Count on behalf of the North Dakota Class members.

1610. As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the North Dakota Class members about the true defective nature of the Class Vehicles, and denied Plaintiffs and other Class members information that is highly relevant to their purchasing or leasing decisions.

1611. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.   Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1612. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

- 391 -

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1613. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1614. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1615. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1616. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

1617. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class

members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1618. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that catastrophic failure of the Bosch CP4 Pumps will cause ruinous damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1619. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1620. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and

engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1621. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1622. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1623. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of

Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1624. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1625. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1626. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1627. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1628. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in

an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.D. CENT. CODE § 41-02-31)

1629. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1630. Plaintiffs bring this Count on behalf of the North Dakota Class members.

1631. GM is a merchant with respect to motor vehicles within the meaning of the N.D. Cent. Code § 41-02-31.

1632. Under N.D. Cent. Code § 41-02-31, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1633. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1634. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes.

1635. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1636. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## II.    Claims Brought on Behalf of the Ohio Class

### COUNT I

### VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (OHIO REV. CODE § 1345.01 *ET SEQ.*)

1637. Plaintiffs (for purposes of all Ohio Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1638. Plaintiffs bring this Count behalf of the Ohio Class members.

1639. Plaintiffs and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("Ohio CSPA").

1640. GM is a "supplier" as defined by the Ohio CSPA.

1641. Plaintiffs' and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the Ohio CSPA.

1642. The Ohio CSPA, Ohio Rev. Code § 1345.02, broadly prohibits "an unconscionable act or practice in connection with a consumer transaction." Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing "(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; [and] (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." OHIO REV. CODE § 1345.02. Defendant's conduct as alleged above and below constitutes

unfair and unconscionable acts or practices in consumer sales transactions in violation of Ohio Rev. Code § 1345.02. By concealing the known defects in the Class Vehicles, GM participated in unconscionable acts and practices that violated the Ohio CSPA.

1643. In the course of GM's business, GM willfully and knowingly failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful, unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the

Class Vehicles. GM engaged in unlawful and deceptive acts and practices in violation of the Ohio CSPA.

1644. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

1645. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle), and directly affecting the operability of the Class Vehicles.

1646. GM knew at the time of the consumer transactions that the Plaintiffs and other Class members would not receive a substantial benefit from their acquisitions of the Class Vehicles.

1647. GM knowingly made misleading representations on which the Plaintiffs and other Class members were likely to rely to their detriment. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1648. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1649. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1650. GM knew or should have known that its conduct violated the Ohio CSPA.

1651. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1652. Due to GM's specific and superior knowledge that the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Class Vehicles will fail when used with U.S. diesel fuel, that the Class Vehicles do not have the expected durability over the other diesel vehicles or their

namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1653. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1654. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1655. GM's violations present a continuing risk to Plaintiffs as well as to the general public; indeed, the unlawful acts and practices complained of herein affect the public interest.

1656. Plaintiffs seek actual damages, plus an amount not exceeding $5,000 in noneconomic damages, an order enjoining GM's deceptive and unfair conduct, court

costs and attorneys' fees as a result of Defendant's violations of the Ohio CSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

1657. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1658. Plaintiffs bring this Count on behalf of the Ohio Class members.

1659. As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the Ohio Class members about the true defective nature of the Class Vehicles, and denied Plaintiffs and other Class members information that is highly relevant to their purchasing or leasing decisions.

1660. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

1661. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, which consistently demonstrates Class Vehicles driving in America as if they are

compatible with U.S. diesel fuel, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or lease of the Class Vehicles.

1662. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

1663. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would acquire a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase or lease a Class Vehicle.

1664. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the

expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1665. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1666. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1667. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1668. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1669. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1670. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1671. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1672. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1673. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY IN TORT

1674. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1675. Plaintiffs bring this Count on behalf of the Ohio Class members.

1676. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1677. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes. GM thus failed to meet the expectations of a reasonable consumer, as the Class Vehicles fail in their ordinary, intended use because they do not function as a reasonable consumer would expect.

1678. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1679. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**JJ.    Claims Brought on Behalf of the Oklahoma Class**

### COUNT I

### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15, § 751 *ET SEQ.*)

1680. Plaintiffs (for purposes of all Oklahoma Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1681. Plaintiffs bring this Count on behalf of the Oklahoma Class members.

1682. Plaintiffs and the Oklahoma Class members are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), Okla. Stat. tit. 15, § 752.

1683. Defendant is a "person," "corporation," or "association" within the meaning of Okla. Stat. tit. 15 § 15-751(1).

1684. The sale or lease of the Class Vehicles to the Oklahoma Class members was a "consumer transaction" within the meaning of Okla. Stat. tit. 15, § 752, and GM's actions as set forth herein occurred in the conduct of trade or commerce.

1685. The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices when committed in the course of business: (1) "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics, . . . uses, [or] benefits, of the subject of a consumer transaction;" (2) making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another;" (3) "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and (4) otherwise committing "an unfair or deceptive trade practice." *See* Okla. Stat. tit. 15, § 753. GM participated in misleading, false, or deceptive acts that violated the Oklahoma CPA.

1686. GM's actions, as set forth herein, occurred in the conduct of trade or commerce.

1687. In the course of GM's business, GM willfully and knowingly failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable

American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful, unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unlawful and deceptive acts and practices in violation of the Oklahoma CPA.

1688. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle), and directly affecting the operability of the Class Vehicles.

1689. GM knew at the time of the consumer transactions that the Plaintiffs and other Class members would not receive a substantial benefit from their acquisitions of the Class Vehicles.

1690. GM knowingly made misleading representations on which the Plaintiffs and other Class members were likely to rely to their detriment. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

1691. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1692. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1693. GM knew or should have known that its conduct violated the Oklahoma CPA.

1694. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw

upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and

c.     Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1695. Due to GM's specific and superior knowledge that the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Class Vehicles will fail when used with U.S. diesel fuel, that the Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1696. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1697. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1698. GM's violations present a continuing risk to Plaintiffs as well as to the general public; indeed, the unlawful acts and practices complained of herein affect the public interest.

1699. GM's conduct as alleged herein was unconscionable because (1) Defendant, knowingly or with reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transactions were entered into, Defendant knew or had reason to know that price grossly exceeded the price at which similar vehicles were readily obtainable in similar transactions by like consumers; and (3) Defendant knew or had reason to know that the transaction Defendant induced the consumers to enter into were excessively one-sided in favor of Defendant.

1700. Because GM's unconscionable conduct caused injury to Oklahoma Class members, Plaintiffs and the Oklahoma Class seek recovery of actual damages, discretionary penalties up to $2,000 per violation, punitive damages, and reasonable attorneys' fees, under Okla. Stat. tit. 15, § 761.1.  Plaintiffs and other Class members further seek an order enjoining GM's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON OKLAHOMA LAW)

1701. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1702. Plaintiffs bring this Count on behalf of the Oklahoma Class members.

1703. As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the Oklahoma Class members about the true defective nature of the Class Vehicles, and denied Plaintiffs and other Class members information that is highly relevant to their purchasing or leasing decisions.

1704. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle).  Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel.  Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1705. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1706. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1707. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1708. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1709. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

1710. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class

members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1711. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will catastrophically fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that catastrophic failure of the Bosch CP4 Pumps will cause ruinous damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1712. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1713. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and

engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1714. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1715. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1716. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of

Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1717. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1718. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1719. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1720. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1721. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in

an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (OKLA. STAT. ANN. § 12A-2-314)

1722. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1723. Plaintiffs bring this Count on behalf of the Oklahoma Class members.

1724. GM is a merchant with respect to motor vehicles within the meaning of the Okla. Stat. Ann. § 12A-2-314.

1725. Under Okla. Stat. Ann. § 12A-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1726. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1727. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes.

1728. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1729. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**KK. Claims Brought on Behalf of the Oregon Class**

### COUNT I

**VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
(OR. REV. STAT. § 646.605, ET SEQ.)**

1730. Plaintiffs (for purposes of all Oregon Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1731. Plaintiffs bring this Count on behalf of the Oregon Class members.

1732. GM is a "person" within the meaning of Or. Rev. State § 646.605(4).

1733. The Class Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

1734. Pursuant to the Oregon Unfair Trade Practices Act ("Oregon UTPA"), a person engages in an unlawful trade practice if in the course of the person's business the person "(1) employs any unconscionable tactic in connection with selling, renting or disposing of . . . goods or services." OR. REV. STAT. ANN. § 646.607(1). The Oregon UTPA prohibits a person from, in the course of the person's business, doing any of the following: "(e) representing that . . . goods . . . have . . . characteristics . . . uses, benefits . . . or qualities that they do not have; (g) representing that . . . goods . . . are of a particular standard [or] quality . . . if they are of another; (i) advertising . . . goods or services with intent not to provide then as advertised;" and "(u) engaging in any other unfair or deceptive conduct in trade or commerce." OR. REV. STAT. § 646.608(1). GM participated in misleading, false, or deceptive acts that violated the Oregon UTPA. By concealing the known defects in Plaintiffs' Class Vehicles, GM engaged in deceptive business practices prohibited by the Oregon UTPA.

1735. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

1736. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the Oregon UTPA.

1737. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' high-pressure fuel injection pump and disperse throughout the fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1738. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1739. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1740. GM knew or should have known that its conduct violated the Oregon UTPA.

1741. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw

upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1742. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump

disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1743. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1744. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1745. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1746. Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). Plaintiffs and other Class members also seek to recover attorneys' fees, and any other just and proper relief available under the Oregon UTPA. Due to the significant level of reprehensibility, malice, reckless and outrageous indifference of GM's conduct, Plaintiffs and other Class members seek punitive damages.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON OREGON LAW)

1747. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1748. Plaintiffs bring this Count on behalf of the Oregon Class members.

1749. As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the Oregon Class members about the true defective nature of the Class Vehicles, and denied Plaintiffs and other Class members information that is highly relevant to their purchasing or leasing decisions.

1750. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or other Class members.

1751. In the course of GM's business, GM willfully failed to disclose and systematically and actively concealed that the CP4 fuel pump in Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, which consistently demonstrates Class Vehicles driving in America as if they are compatible with U.S. diesel fuel, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unlawful trade practices, unfair methods of competition, unconscionable practices, and unfair or deceptive acts or practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or lease of the Class Vehicles.

1752. Despite this knowledge, GM marketed the Class Vehicles, touting the increased durability, performance, and longevity of the Class Vehicles, and further

affirmatively misrepresented to Plaintiffs and Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects and that the Class Vehicles were compatible with U.S. diesel fuel—representations GM knew were false when made.

1753. The foregoing omitted facts and representations were material because they directly impacted the value, quality and safety of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would acquire a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase or lease a Class Vehicle.

1754. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other

Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1755.  Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1756.  GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1757.  GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1758. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1759. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1760. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1761. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1762. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1763. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (OR. REV. STAT. § 72-3140)

1764. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1765. Plaintiffs bring this Count on behalf of the Oregon Class members.

1766. GM is a merchant with respect to motor vehicles within the meaning of the Or. Stat. Ann. § 72-3140.

1767. Under Or. Stat. Ann. § 72-3140, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1768. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1769. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles

causes metal shards to wear off of the CP4 high-pressure fuel pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes.

1770. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1771. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## LL.   Claims Brought on Behalf of the Pennsylvania Class

### COUNT I

### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1 *ET SEQ.*)

1772. Plaintiffs (for purposes of all Pennsylvania Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1773. Plaintiffs bring this Count on behalf of the Pennsylvania Class members.

1774. Plaintiffs purchased or leased their Class Vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

1775. All of the acts complained of herein were perpetrated by GM in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

1776. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:

(i) "Representing that goods or services have . . . characteristics, . . . [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade . . . if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).  GM engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated Pennsylvania CPL.

1777. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and

constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the Pennsylvania CPL.

1778. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the Vehicles' high-pressure fuel injection pump and disperse throughout the fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1779. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1780. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1781. GM knew or should have known that its conduct violated the Pennsylvania CPL.

1782. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1783. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by

Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1784. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1785. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1786. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1787. GM is liable to Plaintiffs and the Pennsylvania Class members for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 P.S. § 201-9.2(a).  Plaintiffs and the Pennsylvania Class members are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON PENNSYLVANIA LAW)

1788. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1789. Plaintiffs bring this Count on behalf of the Pennsylvania Class members.

1790. As alleged herein, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and (most importantly) facts concerning the compatibility of the Class Vehicles with U.S. diesel fuel, in order to defraud and mislead the Pennsylvania Class members about the true defective nature of the Class Vehicles, and denied Plaintiffs and other Class members information that is highly relevant to their purchasing or leasing decisions.

1791. GM willfully failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM employed acts of deception, fraud, misrepresentation, and/or concealment of material facts with intent that others rely upon such fraud, concealment, suppression, or omission, in connection with Class members' acquisition of Class Vehicles.

1792. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4

fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or the Class.

1793. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1794. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1795. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1796. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

1797. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class

members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1798. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will catastrophically fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that catastrophic failure of the Bosch CP4 Pumps will cause ruinous damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1799. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1800. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and

engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1801. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1802. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1803. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased a Class Vehicle, or would have paid substantially less for their Class Vehicle based on GM's false representations and omissions, or, in the case of

Plaintiffs and other Class members whose vehicles experienced catastrophic CP4 pump failure, would have taken affirmative steps to mediate the impact of or prevent said failure.

1804. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1805. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. diesel fuel; and, as a result, certain Plaintiffs and other Class members have already been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1806. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1807. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1808. In addition, GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in

- 438 -

an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (13 PA. CONS. STAT. ANN. § 2314)

1809. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1810. Plaintiffs bring this Count on behalf of the Pennsylvania Class members.

1811. GM is a merchant with respect to motor vehicles within the meaning of the 13 Pa. Cons. Stat. Ann. § 2314.

1812. Under 13 Pa. Cons. Stat. Ann. § 2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1813. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1814. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death. This defect directly impacts the operability of the Class Vehicles and renders them unfit for their ordinary purposes.

1815. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1816. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

1817. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1818. Plaintiffs bring this Count on behalf of the Pennsylvania Class members.

1819. This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

1820. GM has received and retained a benefit from Plaintiffs and inequity has resulted.

1821. GM has benefitted from selling and leasing the Class Vehicles for more than they were worth as a result of GM's conduct, at a profit, and Plaintiffs have overpaid for the Class Vehicles and been forced to pay other costs.

1822. Thus, all Plaintiffs conferred a benefit on GM.

1823. It is inequitable for GM to retain these benefits.

1824. Plaintiffs were not aware of the true facts about their Class Vehicles, and did not benefit from GM's conduct but rather relied on it to their detriment.

1825. GM knowingly accepted the benefits of its unjust conduct.

1826. As a result of GM's conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

**MM. Claims Brought on Behalf of the Rhode Island Class**

## COUNT I

### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)

1827. Plaintiffs (for purposes of all Rhode Island Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1828. Plaintiffs bring this Count on behalf of the Rhode Island Class members.

1829. Plaintiffs and other Class members are persons who purchased or leased Class Vehicles primarily for personal, family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

1830. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. R.I. GEN. LAWS § 6-13.1-2.

1831. Rhode Island's Unfair Trade Practices and Consumer Protections Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;" "(vii) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" "(ix) Advertising goods or services with intent not to sell them as advertised;" "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;" "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer;" and "(xiv) Using other methods, acts or practices which mislead or deceive Members of the public in a material respect." R.I. GEN. LAWS § 6-13.1-1(6).

1832. GM engaged in unlawful trade practices, including: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they

do not have; (2) representing that the Class Vehicles are of a particular standard and quality when they are not; (3) advertising the Class Vehicles with the intent to sell them as advertised; and (4) otherwise engaging in conduct that is unfair or deceptive and likely to deceive. Plaintiffs and other Class Members purchased or leased the Class Vehicles for personal, family, or household purposes. GM's conduct violated the Rhode Island CPA, and GM knew or should have known that its conduct would be in violation thereof.

1833. In the course of GM's business, it willingly failed to disclose and actively concealed that the CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving a stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. GM's acts had the capacity, tendency and effect of deceiving or misleading consumers, including Plaintiffs and other Class members.

1834. The facts concealed and omitted by GM were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the incompatibility of the Class Vehicles with the fuel intended to be used with said vehicles (and the consequences of said incompatibility), and the defective nature of the CP4 fuel pump at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

1835.  Plaintiffs and Class members are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). Plaintiffs and the Class also seek punitive damages in the discretion of the Court.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON RHODE ISLAND LAW)

1836.  Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1837.  Plaintiffs bring this Count on behalf of the Rhode Island Class members.

1838.  As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Rhode Island Class members about the true defective nature of the Class Vehicles.

1839.  As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

1840.  As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1841.  As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1842.  As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1843.  Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

1844.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1845. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection

systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1846. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1847. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1848. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the

incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1849. GM's devious scheme to design, market, and sell Class Vehicles with inherently defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1850. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

1851. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1852. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class

members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1853. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1854. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1855. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (R.I. GEN. LAWS § 6A-2-314)

1856. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1857. Plaintiffs bring this Count on behalf of Rhode Island Class members against GM.

1858. Pursuant to R.I. Gen. Laws § 6A-2-314A, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions

where Plaintiffs and other Class members purchased or leased the Class Vehicles from GM.

1859. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which automobiles are used.

1860. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death, and further rendering them fundamentally useless.

1861. GM has been provided notice of these issues by the numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1862. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV

## UNJUST ENRICHMENT

1863. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1864. Plaintiffs bring this Count on behalf of the Rhode Island Class members.

1865. This claim is pleaded in the alternative to any contract-based claim brought on behalf of Plaintiffs and other Class members.

1866. As a result of its wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defective nature of the Class Vehicles and the

concealment thereof, GM charged a higher price for the Class Vehicles than the Class Vehicles' true value and GM, therefore, obtained monies that rightfully belong to Plaintiffs and other Class members.

1867. GM has benefitted from manufacturing, selling, and leasing at an unjust profit defective Class Vehicles whose value was artificially inflated by GM's concealment of the defective nature of the CP4 fuel pump and of the Class Vehicles, and false representations related thereto.

1868. GM enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for their vehicles that actually had lower values.

1869. GM has knowingly received and retained unjust benefits from Plaintiffs and other Class Members, and inequity has resulted.

1870. It would be inequitable and unconscionable for GM to retain these wrongfully obtained benefits.

1871. Because GM concealed its fraud and deception, Plaintiffs and other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from GM's misconduct.

1872. As a result of GM's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and other Class Members, in an amount to be proven at trial.

**NN.   Claims Brought on Behalf of the South Carolina Class**

## COUNT I

### VIOLATIONS OF THE SOUTH CAROLINA
### UNFAIR TRADE PRACTICES ACT
### (S.C. CODE ANN. § 39-5-10 *ET SEQ.*)

1873.  Plaintiffs (for purposes of all South Carolina Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1874.  Plaintiffs bring this Count on behalf of the South Carolina Class members.

1875.  GM is a "person" under S.C. Code Ann. § 39-5-10.

1876.  The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39-5-20(a). GM's conduct and acts were offensive to public policy or immoral, unethical, or oppressive, thus unfair; indeed, to manufacture, distribute, and promote large-engined diesel vehicles with a known susceptibility to catastrophic failure while the vehicle is in  motion is surely detrimental to the public at large. GM's unfair or deceptive acts or practices were prohibited by the South Carolina UTPA.

1877.  GM's actions, as set forth herein, occurred in the conduct of trade or commerce.

1878.  In the course of GM's business, GM willfully failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's advertising campaign, a reasonable American

consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the South Carolina UTPA.

1879. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1880. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1881. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1882. GM knew or should have known that its conduct violated the South Carolina UTPA.

1883. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1884. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to

bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1885. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1886. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

*1887.* GM's  violations set forth herein present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein had an adverse impact on the public interest. Specifically: (1) the number of consumers affected by GM's deceptive practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on

other consumers is significant. Additionally, GM's conduct was offensive to public interest because the unfair acts and practices have the potential for repetition.

1888. Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiffs seek monetary relief against Defendant to recover for economic losses, reasonable attorney's fees and costs. Because Defendant's actions were willful and knowing, Plaintiffs' damages should be trebled.

1889. Plaintiffs further allege that Defendant's malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the Class to cruel and unjust hardship as a result.

## COUNT II

### VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT (S.C. CODE ANN. § 56-15-10 *ET SEQ.*)

1890. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1891. Plaintiffs bring this Count on behalf of the South Carolina Class members.

1892. GM is a "manufacturer" as set forth in S.C. Code Ann. § 56-15-10, as at all relevant times it was engaged in the business of manufacturing or assembling new and unused motor vehicles.

1893. GM committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-30.

1894. GM engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs, the South Carolina Class members, and to the public.

1895. GM's bad faith and unconscionable actions include, but are not limited to: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving the Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving the Class Vehicles has been supplied in accordance with a previous representation when it has not.

1896. GM resorted to and used false and misleading advertisements in connection with its business. As alleged above, GM made numerous material statements about the safety, reliability, and functionality of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of GM's unlawful advertising and representations as a whole.

1897. Plaintiffs and other Class members bring this action pursuant to S.C. Code Ann. § 56-15-110(2), as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the Court.

1898. Plaintiffs are entitled to double their actual damages injunctive relief, the cost of the suit and attorney's fees pursuant to S. C. Code Ann. § 56-15-110. Plaintiffs also seeks treble damages because GM acted maliciously.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON SOUTH CAROLINA LAW)

1899. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1900. Plaintiffs bring this Count on behalf of the South Carolina Class members.

1901. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 fuel pump in the Class Vehicles and (more importantly) facts concerning the durability and performance of Class Vehicles and their engines, in order to defraud and mislead the Plaintiffs and other Class members about the true defective nature of the Class Vehicles, or GM acted with reckless disregard for the truth and denied Plaintiffs and other Class members information that is highly relevant to their purchasing decision.

1902. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the South Carolina Class about the true defective nature of the Class Vehicles.

1903. As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

1904. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1905. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1906. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system

components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1907. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

1908. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1909. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will catastrophically fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have

the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1910. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1911. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1912. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of

inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1913. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1914. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

1915. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1916. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch

CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1917. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1918. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1919. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (S.C. CODE § 36-2-314)

1920. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1921. Plaintiffs bring this Count on behalf of the South Carolina Class members.

1922. GM is a merchant with respect to motor vehicles within the meaning of the S.C. Code § 36-2-314.

1923. Under S.C. Code § 36-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1924. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1925. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death, and further rendering them fundamentally useless.

1926. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1927. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**OO.  Claims Brought on Behalf of the South Dakota Class**

**COUNT I**

**VIOLATIONS OF SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-1 *ET SEQ.*)**

1928. Plaintiffs (for purposes of all South Dakota Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1929. Plaintiffs bring this Count on behalf of the South Dakota Class members.

1930. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person in fact been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS § 37-24-6(1).  GM's conduct as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentation, concealment, suppression and omission of material facts in violation of the South Dakota CPL, including but not limited to, GM's misrepresentations and omissions regarding the safety and reliability of the Class Vehicles, and their incompatibility with U.S. diesel fuel.

1931. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

1932. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices. GM's unfair and deceptive acts or practices constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with

the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the South Dakota CPL.

1933. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

1934. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1935. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

1936. GM knew or should have known that its conduct violated the South Dakota CPL.

1937. GM owed Plaintiffs and Class members a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and

c.   Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1938. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible

with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1939. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1940. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1941. GM's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1942. Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs and the other Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the South Dakota CPL.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON SOUTH DAKOTA LAW)

1943. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1944. Plaintiffs bring this Count on behalf of the South Dakota Class members.

1945. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Rhode Island Class members about the true defective nature of the Class Vehicles.

1946. As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

1947. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1948. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1949. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1950. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

1951. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1952. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1953. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy

diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

1954. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

1955. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

1956. GM's devious scheme to design, market, and sell Class Vehicles with inherently defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

1957. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

1958. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

1959. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

1960. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

1961. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

1962. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (S.D. CODIFIED LAWS § 57A-2-314)

1963. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1964. Plaintiffs bring this Count on behalf of the South Dakota Class members.

1965. GM is a merchant with respect to motor vehicles within the meaning of the S.D. Codified Laws § 57A-2-314.

1966. Under S.D. Codified Laws § 57A-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

1967. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

1968. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and

subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death, and further rendering them fundamentally useless.

1969. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

1970. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### PP.   Claims Brought on Behalf of the Tennessee Class

### COUNT I

### VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET SEQ.*)

1971. Plaintiffs (for purposes of all Tennessee Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1972. Plaintiffs bring this Count on behalf of the Tennessee Class members.

1973. Plaintiffs and Tennessee Class members are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

1974. GM is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

1975. GM's conduct complained of herein affected "trade," "commerce" and/or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

1976. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to:  "(5) Representing that goods or services have . . . characteristics, [or] . . . benefits . . . that they do not have;" "(7) Representing that goods or services are of a particular standard, quality or grade . . . if they are of

another;" "(9) Advertising goods or services with intent not to sell them as advertised;" and "(27) Engaging in any other act or practice which is deceptive to the consumer or any other person." TENN. CODE ANN. § 47-18-104. GM violated Tennessee CPA by engaging in unfair or deceptive acts.

1977. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the

Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

1978. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure and an exorbitant repair bill that GM refuses to cover by blaming the consumer for "fuel contamination."

1979. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, omissions, and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles, and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1980. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

1981. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class. In the alternative (or in addition), GM failed to disclose material facts to Plaintiffs and the Class, including but not limited to the fact that the Class Vehicles are inherently incompatible with U.S. diesel fuel because of the defective CP4 pump.

1982. GM knew or should have known that its conduct violated the Tennessee CPA.

1983. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1984. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the

partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1985.  GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1986.  Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

1987.  GM's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1988.  Pursuant to Tenn. Code § 47-18-109(a), Plaintiffs and the Tennessee Class members seek monetary relief against GM measured as actual damages in an amount to be determined at trial, treble damages as a result of GM's willful or knowing violations, attorney's fees, and any other just and proper relief available under the Tennessee CPA.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON TENNESSEE LAW)

1989. Plaintiff incorporate by reference all paragraphs as though fully set forth herein.

1990. Plaintiffs bring this Count on behalf of the Tennessee Class members.

1991. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Tennessee Class members about the true defective nature of the Class Vehicles.

1992. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

1993. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

1994. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

1995. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

1996. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

1997. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

1998. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to

Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

1999. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2000. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2001. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2002. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2003. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2004. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2005. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4

fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2006. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2007. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2008. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (TENN. CODE ANN. § 47-2-314)

2009. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2010. Plaintiffs bring this Count on behalf of the Tennessee Class members.

2011. GM is a merchant with respect to motor vehicles within the meaning of the Tenn. Code Ann. § 47-2-314.

2012. Under Tenn. Code Ann. § 47-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

2013. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

2014. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death, and further rendering them fundamentally useless.  To be sure, the Class Vehicles are dangerously defective in this regard, and are imminently dangerous to human life for from their use for the purpose for which Plaintiffs and Class members purchased said Vehicles.

2015. The defective nature of the Class Vehicles was not apparent so that Plaintiffs and Class members could have ascertained the defect on their own.

2016. GM has been provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

2017.  As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## QQ.  Claims Brought on Behalf of the Utah Class

### COUNT I

### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT (UTAH CODE ANN. § 13-11-1 *ET SEQ.*)

2018. Plaintiffs (for purposes of all Utah Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

2019.  Plaintiffs bring this Count on behalf of the Utah Class members against GM.

2020. GM qualifies as a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA").  UTAH CODE ANN. § 13-11-3.

2021. Plaintiffs and the Class members are "persons" under Utah Code Ann. § 13-11-3.

2022. Sales and leases of the Class Vehicles to Plaintiffs and the other Class members are "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3(2).

2023. The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4.  Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally:  (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not."  UTAH CODE ANN. § 13-11-4.  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  UTAH CODE ANN. § 13-11-5.  GM committed deceptive acts or practices in the conduct of trade or commerce, by, among other things: (a) engaging in unconscionable acts; (b) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; and (c) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not.

2024. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

2025. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel

injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the Utah CSPA.

2026. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

2027. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, omissions, and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles, and Plaintiffs and other Class members were not aware of the defective nature of these systems prior to purchase or lease. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

2028. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

2029. GM committed deceptive acts and practices intentionally and knowingly through misrepresentation of material facts regarding the Class Vehicles with the intent to mislead Plaintiffs and the Class members.

2030. GM knew or should have known that its conduct violated the Utah CSPA.

2031. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and

c.     Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2032. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2033. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

2034. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

2035. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

2036. Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs and the Class seek monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Plaintiffs and each Utah Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON UTAH LAW)

2037. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2038. Plaintiffs bring this Count on behalf of the Utah Class members.

2039. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Utah Class members about the true defective nature of the Class Vehicles.

2040. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

2041. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2042. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

2043. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

2044. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

2045. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity,

durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2046. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

2047. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2048. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2049. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2050. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2051. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will

fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2052. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2053. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2054. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2055. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2056. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (UTAH CODE ANN. § 70A-2-314)

2057. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2058. Plaintiffs bring this Count on behalf of the Utah Class members.

2059. GM is a merchant with respect to motor vehicles within the meaning of the Utah Code Ann. § 70A-2-314.

2060. Under Utah Code Ann. § 70A-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

2061. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

2062. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle), thereby causing an increased likelihood of serious injury or death, and further rendering them fundamentally useless.

2063. The defective nature of the Class Vehicles was not apparent so that Plaintiffs and Class members could have ascertained the defect on their own.

2064. GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

2065. As a direct and proximate result of GM's breach of implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### RR.   Claims Brought on Behalf of the Vermont Class

### COUNT I

### VIOLATIONS OF THE VERMONT CONSUMER FRAUD ACT (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)

2066. Plaintiffs (for purposes of all Vermont Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

2067. Plaintiffs bring this Count on behalf of the Vermont Class members.

2068. The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce."  VT. STAT. ANN. TIT. 9, § 2453(a).

2069. GM was and is a seller within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

2070. GM's acts and omissions, as defined throughout this Complaint, were unfair and deceptive acts or practices in commerce which violated the Vermont CFA, and GM knew or should have known that its conduct violated this Statute.

2071. Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON VERMONT LAW)

2072. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2073. Plaintiffs bring this Count on behalf of the Vermont Class members.

2074. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Vermont Class about the true defective nature of the Class Vehicles.

2075. As alleged above, Defendant knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

2076. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2077. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

2078. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

2079.  Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

2080.  The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2081.  Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to

Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

2082. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2083. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2084. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2085. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2086. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2087. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they acquired vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2088. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and

Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2089. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2090. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2091. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (VT. STAT. ANN. TIT. 9A, § 2-314)

2092. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2093. Plaintiffs bring this Count on behalf of the Vermont Class members.

2094. GM is a merchant with respect to motor vehicles under Vt. Stat. Ann. tit. 9A, § 2-104.

2095. Under Vt. Stat. Ann. tit. 9A, § 2-314, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used was implied by law in the transactions when Plaintiffs and the Class purchased or leased their Class Vehicles from GM.

2096. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by GM and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel causes a breakdown of the CP4 fuel pump (a condition that GM knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery and engine systems.

2097. It was reasonable to expect that Plaintiffs and other Class members may use, consume or be affected by the manifest defect in the Class Vehicles.

2098. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle, thereby causing an increased likelihood of serious injury or death).

2099. GM has been provided notice of this defect via, *inter alia*, complaints by Plaintiffs and Class Members to GM either orally or in writing, complaints to GM dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2100. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

### SS.    Claims Brought on Behalf of the Virginia Class

### COUNT I

### VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VA. CODE ANN. § 59.1-196 *ET SEQ.*)

2101. Plaintiffs (for purposes of all Virginia Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

2102. Plaintiffs bring this Count on behalf of the Virginia Class members.

2103. GM is a "supplier" as defined by Va. Code Ann. § 59.1-198.  The transactions between Plaintiffs and the other Class members on the one hand and GM on the other, leading to the purchase or lease of the Class Vehicles by Plaintiffs and the other Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

2104. The Virginia Consumer Protection Act ("Virginia CPA") prohibits the following fraudulent acts or practices committed by a supplier in a consumer transaction: "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; . . . (8) advertising goods or services with intent not to sell them as advertised; . . . [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  VA. CODE ANN. § 59.1-200(A).

2105. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

2106. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the Virginia CPA.

2107. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

2108. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, omissions, and misleading statements, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles, and Plaintiffs and other Class members were not aware of the defective nature of these systems prior to purchase or lease. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

2109. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

2110. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2111. GM knew or should have known that its conduct violated the Virginia CPA.

2112. GM owed Plaintiffs and the other Class members a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.      Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.      Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2113. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other

Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2114. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

2115. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

2116. GM's violations present a continuing risk to Plaintiffs as well as to the general public; indeed, GM's unlawful acts and practices complained of herein affect the public interest.

2117. Pursuant to Va. Code Ann. § 59.1-204, Plaintiffs and the Class members seek monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for Plaintiffs and each Class member.  Because GM's conduct was committed willfully and knowingly, Plaintiffs and each Class member are each entitled to recover the greater of (a) three times actual damages or (b) $1,000.

2118. Plaintiffs also seek an order enjoining GM's fraudulent, unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under Virginia General Business Law § 59.1-204 *et seq.*

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON VIIRGINIA LAW)

*2119.* Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2120.  Plaintiffs bring this Count on behalf of the Virginia Class members.

2121.  As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Virginia Class about the true defective nature of the Class Vehicles.

2122.  As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

2123.  As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2124.  As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

2125.  As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

2126. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

2127. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers. GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2128. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to

Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

2129. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2130. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2131. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2132. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2133. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2134. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they acquired vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2135. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and

Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2136. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2137. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2138. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (VA. CODE ANN. § 8.2-314)

2139. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2140. Plaintiffs bring this Count on behalf of the Virginia Class members.

2141. GM is a merchant with respect to motor vehicles within the meaning of the Va. Code Ann. § 8.2-314.

2142. Under Va. Code Ann. § 8.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

2143. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by GM and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel causes a breakdown of the CP4 fuel pump (a condition that GM knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery and engine systems.

2144. It was reasonable to expect that Plaintiffs and other Class members may use, consume or be affected by the manifest defect in the Class Vehicles.

2145. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle, thereby causing an increased likelihood of serious injury or death).

2146. GM has been provided notice of this defect via, *inter alia*, complaints by Plaintiffs and Class Members to GM either orally or in writing, complaints to GM dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2147. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

### TT.   Claims Brought on Behalf of the Washington Class

### COUNT I

### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*)

2148. Plaintiffs (for purposes of all Washington Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

2149. Plaintiffs bring this Count on behalf of the Washington Class members.

2150. GM, Plaintiffs, and each member of the Washington Class are "person[s]" under Wash. Rev. Code Ann. § 19.86.010(1) ("Washington CPA").

2151. At all relevant times, GM was and is engaged in "trade" or "commerce" under Wash. Rev. Code Ann. § 19.86.010(2).

2152. The Washington CPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE ANN. § 19.96.010. GM's conduct was unfair because it (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. In short, GM's conduct has been deceptive because it has the capacity or tendency to deceive.

2153. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Class Vehicles are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 high-pressure fuel injection pump and disperse throughout the Vehicles' fuel injection systems, leading to catastrophic engine failure (oftentimes while the

vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). Particularly in light of GM's national advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner. GM's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Class Vehicles. GM engaged in unfair and deceptive business practices in violation of the Washington CPA.

2154. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing moving stall and subsequent inability to restart the vehicle).

2155. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

2156. GM's unfair or deceptive acts or practices, fraud, misrepresentations, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

2157. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

2158. GM knew or should have known that its conduct violated the Washington CPA.

2159. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

a.   Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2160. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2161. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

2162. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

2163. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendant's unlawful acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by GM's deceptive practices are in the hundreds of thousands nation-wide; (2) GM has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold and distributed for use with American diesel fuel, the likelihood of continued impact on other consumers is significant.

2164. GM is liable to Plaintiffs and the Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages up to $25,000, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code. Ann. § 19.86.090.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON WASHINGTON LAW)

2165. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2166. Plaintiffs bring this Count on behalf of the Washington Class members

2167. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Bosch CP4 Pump in the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Washington Class members about the true defective nature of the Class Vehicles.

2168. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

2169. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2170. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

2171. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

2172. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel. These representations were false when made, and GM knew them to be false.

2173. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2174. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

2175. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy

diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2176. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2177. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2178. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2179. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2180. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they acquired vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2181. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2182. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2183. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2184. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (WASH. REV. CODE ANN. § 62A.2-314)

2185. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2186. Plaintiffs bring this Count on behalf of the Washington Class members.

2187. Under Wash. Rev. Code Ann. § 62A.2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

2188. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

2189. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by GM and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel causes a breakdown of the CP4 fuel pump (a condition that GM knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate

and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery and engine systems.

2190. It was reasonable to expect that Plaintiffs and other Class members may use, consume or be affected by the manifest defect in the Class Vehicles.

2191. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle, thereby causing an increased likelihood of serious injury or death).

2192. GM has been provided notice of this defect via, *inter alia*, complaints by Plaintiffs and Class Members to GM either orally or in writing, complaints to GM dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2193. Plaintiffs and other Class members were the intended third-party beneficiaries of GM's contracts with its authorized dealerships and therefore direct privity is not required for this Count.

2194. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**UU.  Claims Brought on Behalf of the West Virginia Class**

## COUNT I

### VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT (W. VA. CODE § 46A-1-101 *ET SEQ.*)

2195. Plaintiffs (for purposes of all West Virginia Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

2196. Plaintiffs state this Count on behalf of the West Virginia Class members.

2197. Plaintiffs intend to assert a claim under the West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce. . ." W. VA. CODE § 46A-6-104. Plaintiffs will make a demand in satisfaction of W. Va. Code § 46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once the required 20 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the West Virginia CCPA.

## COUNT II

### FRAUDULENT CONCEALMENT (BASED ON WEST VIRGINIA LAW)

2198. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein

2199. Plaintiffs bring this Count on behalf of the West Virginia Class members.

2200. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and moreover

facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the West Virginia Class members about the true defective nature of the Class Vehicles.

2201. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

2202. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2203. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

2204. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

2205. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

2206. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the

decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2207. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

2208. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel

pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2209. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2210. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2211. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2212. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and

GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2213. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2214. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2215. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2216. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2217. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order

to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (W. VA. CODE § 46-2-314)

2218. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2219. Plaintiffs bring this Count on behalf of the West Virginia Class members.

2220. At all relevant times, GM was and is a merchant with respect to motor vehicles within the meaning of the W. Va. Code § 46-2-314.

2221. Under W. Va. Code § 46-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from GM.

2222. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

2223. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by GM and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel causes a breakdown of the CP4 fuel pump (a condition that GM knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery and engine systems.

2224. It was reasonable to expect that Plaintiffs and other Class members may use, consume or be affected by the manifest defect in the Class Vehicles.

2225. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle, thereby causing an increased likelihood of serious injury or death).

2226. GM has been provided notice of this defect via, *inter alia*, complaints by Plaintiffs and Class Members to GM either orally or in writing, complaints to GM dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2227. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## VV. Claims Brought on Behalf of the Wisconsin Class

### COUNT I

### VIOLATIONS OF THE WISCONSIN
### DECEPTIVE TRADE PRACTICES ACT
### (WIS. STAT. § 110.18)

2228. Plaintiffs (for purposes of all Wisconsin Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

2229. Plaintiffs bring this Count on behalf of the Wisconsin Class members.

2230. GM is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

2231. Plaintiffs and Wisconsin Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1). Plaintiffs and Wisconsin Class members purchased or leased one or more Class Vehicles in Wisconsin.

2232. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits an "assertion, representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1). By systematically concealing the defects in the Class Vehicles, GM's conduct, acts, and practices violated the Wisconsin DTPA.

2233. GM's actions, as set forth above, occurred in the conduct of trade or commerce.

2234. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). GM affirmatively asserted, represented, and stated that the Class vehicles have increased durability, performance, and longevity and were fuel-efficient. Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in prohibited acts with the affirmative assertions, representations, or statement of facts that are false, deceptive, or misleading with the intent to induce an obligation. GM engaged in unfair and deceptive business practices in violation of the Wisconsin DTPA.

2235. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure.

2236. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

2237. GM's unfair and deceptive acts or practices, involving fraud, misrepresentation, and the suppression or omission of material facts, were likely to and did in fact deceive reasonable consumers.

2238. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class members.

2239. GM knew or should have known that its conduct violated the Wisconsin DTPA.

2240. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw

upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c. Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

2241. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other

Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2242. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

2243. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

2244. GM's violations present a continuing risk to Plaintiffs as well as to the general public; indeed, GM's widespread, unlawful acts and practices complained of herein affect the public interest.

2245. Plaintiffs and Wisconsin Class members seek actual damages, court costs, attorneys' fees, and other relief provided for under Wis. Stat. § 100.18(11)(b)(2).  Because GM's conduct was committed knowingly and/or intentionally, Plaintiffs and Wisconsin Class members are entitled to treble damages and any other such relief necessary to deter GM's unlawful conduct in the future.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON WISCONSIN LAW)

2246. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2247. Plaintiffs bring this Count on behalf of the Wisconsin Class members.

2248. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Wisconsin Class members about the true defective nature of the Class Vehicles.

2249. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

2250. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2251. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

2252. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

2253. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

2254. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2255. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

2256. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy

diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2257. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2258. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2259. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2260. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2261. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2262. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2263. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2264. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2265. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## WW. Claims Brought on Behalf of the Wyoming Class

### COUNT I

## VIOLATIONS OF THE WYOMING CONSUMER PROTECTION ACT

## (WYO. STAT. §§ 40-12-105 *ET SEQ.*)

2266. Plaintiffs (for purposes of all Wyoming Class Counts) restate and incorporate by reference all paragraphs as though fully set forth herein.

2267. This Count is stated on behalf of the Wyoming Class members.

2268. GM, Plaintiffs, and Class members are "persons" within the meaning of Wyo. Stat. § 40-12-102(a)(i).

2269. Under the Wyoming Consumer Protection Act ("Wyoming CPA"), a person engages in a deceptive trade practice when, in the course of its business and in connection with a consumer transaction, it knowingly: "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;" "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not…;" "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false;" "(x) Advertises merchandise with intent not to sell it as advertised;" or "(xv) Engages in unfair or deceptive acts or practices." WYO. STAT. § 45-12-105.

2270. In the course of GM's business, GM willfully failed to disclose and actively concealed that the Bosch CP4 fuel pump in the Class Vehicles is incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the pump and disperse throughout the Vehicles' fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle). GM affirmatively asserted, represented, and stated that the Class vehicles have increased durability, performance, and longevity and were fuel-efficient. Particularly in light of GM's advertising campaign, a reasonable American consumer would expect the Class Vehicles to be compatible with *American* diesel fuel. Accordingly, GM engaged in prohibited acts with the affirmative assertions, representations, or statement of facts that are false, deceptive, or misleading with the intent to induce an obligation. GM engaged in unfair and deceptive business practices in violation of the Wyoming CPA.

2271. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the normal use of the Class Vehicles causes metal shards to wear off of the fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure.

2272. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations, and had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own, as the Class Vehicles' high-pressure fuel injection systems are a deeply internal component part in the Class Vehicles and Plaintiffs and other Class members were not aware of the defective nature of the Bosch CP4 fuel pump in that high-pressure fuel injections system prior to purchase or lease.

2273. GM's unfair and deceptive acts or practices, involving fraud, misrepresentation, and the suppression or omission of material facts, were likely to and did in fact deceive reasonable consumers.

2274. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class members.

2275. GM knew or should have known that its conduct violated the Wyoming CPA.

2276. GM owed Plaintiffs and the Class a duty to disclose the truth about the incompatibility of the Bosch CP4 fuel pump in the Class Vehicles with U.S. diesel fuel because GM:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and the effect of low-lubricity diesel fuel on high-pressure fuel injection systems in its vehicles, including the uptick in warranty claims it saw upon the introduction of the Bosch CP4 fuel pumps into the Class Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class;

    c.    Made incomplete representations regarding the quality and durability of the Class Vehicles when used with U.S. diesel fuel, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations; and

    d.    Had duties under the TREAD Act and related regulations to disclose and remedy this inherent safety defect.

2277. Due to GM's specific and superior knowledge that the Bosch CP4 fuel pumps in the Class Vehicles will fail when combined with U.S. diesel fuel, its false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, GM had a duty to disclose to Plaintiffs and other Class members that their vehicles were

incompatible with the use of U.S. fuel, that the Bosch CP4 fuel pumps will fail in Class Vehicles when used with U.S. diesel fuel, that Class Vehicles do not have the expected durability over the other diesel vehicles or their namesake predecessor engines, that failure of the Bosch CP4 fuel pumps will cause damage to the Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Longevity, durability, performance, and safety are material concerns to diesel truck consumers. GM represented to Plaintiffs and other Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2278. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

2279. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations, fraud, deceptive practices, and omissions.

2280. GM's violations present a continuing risk to Plaintiffs as well as to the general public; indeed, GM's widespread, unlawful acts and practices complained of herein affect the public interest.

2281. Pursuant to Wyo. Stat. § 40-12-108(a), Plaintiffs intend to seek monetary relief against GM measured as actual damages in an amount to be determined at trial, in addition to any other just and proper relief available under the Wyoming CPA.

2282. In accordance with Wyo. Stat. § 45-12-109, Plaintiffs will send a notice letter to Defendant GM and will amend their allegations herein accordingly once the applicable statutorily required notice period has elapsed if GM has failed to remedy the defects and damages complained of herein.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON WYOMING LAW)

2283. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

2284. Plaintiffs bring this Count on behalf of the Wyoming Class members.

2285. As alleged above, GM intentionally concealed and suppressed material facts concerning the durability and performance of the Class Vehicles and moreover facts concerning the Class Vehicles' compatibility with American diesel fuel, in order to defraud and mislead the Wyoming Class members about the true defective nature of the Class Vehicles.

2286. As alleged above, GM knew that there was a significant uptick in the number of high-pressure fuel pump failures from the moment it introduced the CP4 fuel pump into certain of its diesel vehicle models beginning with the 2011 model year, but did not disclose this information to Plaintiffs or Class members.

2287. As alleged above, GM knew at least by 2002 that its diesel fuel injection systems required heightened lubricity, which was not met by American diesel fuel specifications.

2288. As alleged above, GM had specific knowledge by at least 2010 that its vehicles equipped with CP4 high-pressure fuel injection systems were incompatible with American diesel fuel specifications.

2289. As alleged above, prior to the design, manufacture, and sale of the Class Vehicles, GM knew that the Bosch CP4 Pumps were expected to quickly fail in the Class Vehicles and that such failure would result in contamination of the fuel system components and require repair and replacement of those components, the repairs or replacements of which GM would refuse to cover free of charge or truly ameliorate.

2290. Despite this knowledge, GM marketed the Class Vehicles in advertising and other forms of communication, including the standard and uniform material provided with each Class Vehicle, that the Class Vehicles had no significant defects, had increased durability and performance longevity, and were compatible with U.S. diesel fuel.  These representations were false when made, and GM knew them to be false.

2291. The foregoing omitted facts and representations were material because they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and other Class members, because those facts directly impacted the decision regarding whether or not Plaintiffs and other Class members would purchase a Class Vehicle, and because they induced and were intended to induce Plaintiffs and other Class members to purchase a Class Vehicle. Longevity, durability, performance, safety, and compatibility with U.S. diesel fuel are material concerns to U.S. diesel truck consumers.  GM represented to Plaintiffs and Class members that they were purchasing or leasing vehicles that were compatible with U.S. diesel fuel, when in fact the combination of U.S. diesel fuel with the CP4 fuel pump in the Class Vehicles creates a ticking time-bomb, wherein pump disintegration begins at the first fill of the tank and it is only a matter of time before catastrophic failure occurs.

2292. Due to its specific and superior knowledge that the Bosch CP4 Pumps in the Class Vehicles will fail, and due to its false representations and omissions regarding the incompatibility of the Class Vehicles' high-pressure fuel injection systems with U.S. diesel fuel, GM had a duty to disclose to Plaintiffs and Class members that their vehicles were incompatible with U.S. diesel fuel, that the Bosch CP4 Pumps will fail in Class Vehicles, that Class Vehicles do not have the expected durability over other gas-powered vehicles or of their namesake predecessor diesel engines, that failure of the Bosch CP4 Pumps will cause catastrophic damage to Class Vehicle engines and engine systems, and that Class members would be required to bear the cost of the damage to their vehicles. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.

2293. GM knew that Plaintiffs and other Class members would and did reasonably rely upon GM's false representations and omissions. Consumers buy diesel vehicles from Defendant because they believe they will safely last so many more miles than other diesel trucks as well as non-diesel trucks. This durability and vehicle longevity is exactly what GM touted, all the while knowing that the CP4 fuel pump was incompatible with American diesel fuel such that it could and does render the Class Vehicles inoperable and worthless within the useable life of the vehicle.

2294. Meanwhile, Plaintiffs and other Class members had no way of knowing that GM's representations and omissions were false and misleading, that an internal component part of the Class Vehicles is devastatingly defective to the entire fuel and engine system, that the Class Vehicles were incompatible with the fuel GM knew would be used to operate the Class Vehicles, that the normal and intended use of the Class Vehicles will cause the Bosch CP4 Pumps to fail, or that GM would refuse to repair, replace, or compensate Plaintiffs and other Class members for the failure of

the Bosch CP4 Pumps and the known consequences of that failure to the Class Vehicle engines.

2295. GM falsely represented the quality and nature of the Class Vehicles and omitted material facts regarding the lack of durability of the Class Vehicles, the incompatibility of the Class Vehicles with the fuel intended by GM to be used in the Class Vehicles, and the consequences of that incompatibility, for the purpose of inducing Plaintiffs and other Class members to purchase Class Vehicles, and to increase GM's revenue and profits.

2296. GM's devious scheme to design, market, and sell Class Vehicles with defective CP4 pumps, knowing that U.S. fuel was certain to be used in the Class Vehicles and the consequence of using U.S. diesel fuel in those vehicles, then concealing their fraudulent scheme from the public and consumers over numerous model years, reveals a corporate culture that emphasized sales and profits over integrity and an intent to deceive Plaintiffs, other Class members and the American public regarding the durability and performance of the Class Vehicles.

2297. Had Plaintiffs and other Class members known that the Class Vehicles did not have increased durability over other diesel vehicles, that the Class Vehicles were incompatible with the fuel intended by Plaintiffs, the other Class members, and GM to be used in the Class Vehicles (without which the Class Vehicles would serve no purpose to Plaintiffs and other Class members), or that the Class Vehicles will fail when used as intended, Plaintiffs and other Class members would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

2298. Because of GM's false representations and omissions, Plaintiffs and other Class members have sustained damages because they own vehicles that are diminished in value as a result of GM's concealment of the true nature and quality of the Bosch CP4 Pump in the Class Vehicles. Plaintiffs and other Class members

have also sustained damages by having to pay for fuel additives and/or CP4 conversion kits to prevent a catastrophic CP4 failure from occurring or reoccurring.

2299. GM's failure to disclose the incompatibility of the Class Vehicles with U.S. diesel fuel was intended to cause and did cause Plaintiffs and other Class members to operate Class Vehicles with U.S. fuel; and, as a result, certain Plaintiffs and other Class members have been damaged by the catastrophic failure of the Bosch CP4 Pumps in their Class Vehicles, resulting in damages to Class members and Plaintiffs including but not limited to the cost of repair or replacement of the CP4 fuel pump, the cost of damage caused to the Class Vehicles by the failure of the CP4 fuel pump, loss of use of the Class Vehicles, loss of earnings, and other damages.

2300. GM still has not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the incompatibility of the Class Vehicles with U.S. diesel fuel.

2301. Accordingly, GM is liable to Plaintiffs and other Class members for damages in an amount to be proved at trial.

2302. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Class members' rights, and the representations made by GM to them were made in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (WYO. STAT. §§ 34.1-2-314)

2303.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

2304. This claim is brought on behalf of the Wyoming Class members.

2305. GM is and was at all relevant times a merchant with respect to motor vehicles.

2306. Under Wyoming law, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and the other Class members purchased or leased the Class Vehicles from GM.

2307. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Class Vehicles are incompatible with the use of American diesel fuel (the fuel intended to be used by GM and expected to be used by Plaintiffs and other Class Members) in that use of American diesel fuel causes a breakdown of the CP4 fuel pump (a condition that GM knew would occur prior to the design and sale of the Class Vehicles), resulting in fuel contamination, ultimate and inevitable catastrophic failure of the Bosch CP4 Pump, and contamination and failure of other components in the Class Vehicle fuel delivery and engine systems.

2308. It was reasonable to expect that Plaintiffs and other Class members may use, consume or be affected by the manifest defect in the Class Vehicles.

2309. The Class Vehicles are inherently defective in that they are incompatible with U.S. diesel fuel such that the normal use of the Class Vehicles causes metal shards to wear off of the CP4 fuel pump and disperse throughout the vehicle's fuel injection system, leading to catastrophic engine failure (oftentimes while the vehicle is in motion, causing a moving stall and subsequent inability to restart the vehicle, thereby causing an increased likelihood of serious injury or death).

2310. GM has been provided notice of this defect via, *inter alia*, complaints by Plaintiffs and Class Members to GM either orally or in writing, complaints to GM dealerships, intermediate sellers, or repair facilities either orally or in writing,

presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities, countless consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

2311. As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

2312. Pursuant to applicable state statutes, Plaintiffs will mail a copy of this action to the Attorney General's office for the states of Connecticut, Illinois, Louisiana, Missouri, New Jersey, Oregon, Texas, Utah, and Washington.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class members who have purchased or leased the defective Class Vehicles, respectfully request that the Court enter judgment in Plaintiffs' favor and against GM, as follows:

A.    Certification of the proposed State Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.    An order temporarily and permanently enjoining GM continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Restitution, including at the election of Class members, recovery of the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles;

E.    Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain

consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

F.      An order requiring GM to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: August 6, 2019          HAGENS BERMAN SOBOL SHAPIRO LLP

 s/ Steve W. Berman
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert C. Hilliard
HILLIARD MARTINEZ GONZALES LLP
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone: (361) 882-1612
bobh@hmglawfirm.com

E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com

Andrew Parker Felix, Esq.
MORGAN & MORGAN, P.A.
20 North Orange Ave., Ste. 1600
P.O. Box 4979
Orlando, FL 32801
Telephone: (407) 244-3204
Facsimile: (407) 245-3334
Andrew@forthepeople.com