IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK D. CHAPMAN, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS LLC,<br><br>        Defendant. | Case No. 2:19-cv-12333-TGB-DRG<br><br>Hon. Terrence G. Berg<br>Magistrate Judge David R. Grand |

**GENERAL MOTORS' REPLY IN SUPPORT OF
MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT
<u>EDWARD M. STOCKTON</u>**

## INTRODUCTION

Plaintiffs try to recast the fundamental flaws in Edward Stockton's damages methodology as quibbles between experts that go to the weight of his opinions, not their admissibility. But these are not mere disagreements between equally qualified experts. Stockton's methodology and the conclusions he draws do not meet basic standards of scientific integrity or validity. He manipulates and arbitrarily excludes over half of the data underlying his cost-of-repair opinions, including data from nearly all of the named plaintiffs. He calculates damages based on a failure rate that includes repairs unrelated to plaintiffs' defect theory. And he offers nothing more than his own admitted conjecture to support an unworkable proposal to allocate overpayment damages between current and former vehicle owners. These failings render his opinions inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).[1]

## ARGUMENT

### I.   Stockton's Methodological Errors Go to Admissibility, Not Weight.

Plaintiffs do not dispute the many ways in which Stockton grossly manipulated his data set to produce an arbitrarily narrowed sample of repair records

---

[1] These methodological shortcomings echo Stockton's recently excluded opinions in a similar automotive class action where he "categorically excluded [] data from his analysis although it may be relevant" and his "methodology [was] not sufficiently or properly tied to the relevant issue[.]" *Garcia v. Volkswagen Grp. of Am., Inc.*, 2022 WL 2542291, at *5 (E.D. Va. July 7, 2022).

1

from which he draws his conclusions about the "typical" cost of repair. As Stockton readily admits, he omitted *thousands* of records from the repair data produced by GM, excluding repairs for *7 of 9 named plaintiffs* in this case,[2] and he then subjectively eliminated *over half* of the remaining data.[3] At virtually every step of this unjustified data "cleansing" process, Stockton introduced bias and artificially inflated his damages figure.[4] That alone should lead even a novice economist to test whether his methods may have biased the results. But Stockton did not calculate a confidence interval or attempt to assess the potential for error in his calculations. Mot. at 8-9. His failure to do so makes his damages estimate "nothing more than a guess . . . ." *Desai v. Geico Cas. Co.*, 2021 WL 5762999, at *15 (N.D. Ohio Dec. 6, 2021); *Hurt v. Com. Energy*, 2015 WL 410703, at *5 (N.D. Ohio Jan. 29, 2015) (excluding expert who "failed to account for possible biases" in her analysis).

In their Opposition, plaintiffs gloss over these fundamental methodological flaws, and insist that they go to the weight of Stockton's opinions, rather than their admissibility. But controlling Sixth Circuit law is clear: basic methodological flaws,

---

[2] Decl. of Lorin Hitt ("Hitt Decl.") ¶ 105, ECF No. 117-53, PageID.35660.
[3] Dep. of Edward M. Stockton ("Stockton Dep.") at 196:17-24, 216:25-217:17, ECF 120-3, PageID.37057, 37063-64.
[4] Mot. to Exclude Opinions and Testimony of Pls' Expert Edward M. Stockton ("Mot."), ECF No. 120, at 8-9, PageID.36993-94. Plaintiffs do not contest that every step of Stockton's data "cleanse" increased his damages estimate. *See* Pls' Opp. to GM's Mot. to Exclude the Opinions and Testimony of Pls' Expert Edward M. Stockton ("Opp."), ECF No. 133, PageID.38685.

2

such as unreasonably manipulating the underlying data, render an expert's opinions unreliable and inadmissible. *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510-11 (6th Cir. 2014) (excluding expert due to "the unreasonableness of [his] methods" and "the faulty and incomplete data upon which they were based . . . .");[5] *Sheffield v. Int'l Paper Co.*, 2020 WL 1882906, at *2-3 (W.D. Tenn. Feb. 26, 2020) (expert excluded when he used only a portion of the data he had available and "[i]gnore[d] [s]ubstantial [a]vailable [d]ata without [e]xplanation.").[6]

Unable to defend Stockton's arbitrary data manipulation, plaintiffs argue that his dataset it reliable because the *starting* data was "GM's own data." Opp. at 1, PageID.38677. This simply underscores GM's point: GM provided *actual* and *complete* cost of repair data to plaintiffs, and then Stockton manipulated it beyond all recognition and removed over half the records before he conducted his analysis of "typical" repair costs.[7] *See Sheffield*, 2020 WL 1882906, at *2-3.

---

[5] Plaintiffs mischaracterize *Ask Chemicals*, claiming the expert was excluded there because he "served as a mouthpiece for plaintiff's position." Opp. at 15, PageID.38691. In reality, the Sixth Circuit affirmed that exclusion was proper because the expert used "fundamentally flawed data and impermissible methods" such that his data "could not serve as a reasonable basis" to support his opinions. *Ask Chems.*, 593 F. App'x at 510.

[6] *Sheehan v. Daily Racing Form, Inc.*, 104 F. 3d 940, 942 (7th Cir. 1997) (affirming exclusion of expert's analysis because "the omission of [specific data points] from the sample tested was arbitrary."); *In re Sonic Corp. Customer Data Security Breach Litigation*, 2021 WL 5916743, at *6-7 (N.D. Ohio Dec. 15, 2021) (excluding expert for using an "unrepresentative sample[]" and failing to account for bias).

[7] Plaintiffs' only response to the fact that Stockton's damages model *excludes* named plaintiffs' own repair data is to argue that those damages are outside the range of the

3

Ultimately, the best plaintiffs can muster is to argue that Stockton "transparently show[ed] exactly how he made his calculations, based on GM's own records." *Id.* at 15-16. The fact that Stockton *disclosed* his unreliable methodology does not render it *reliable*. *Daubert*, 509 U.S. at 594 (among other things, court must consider the "known or potential rate of error" in the expert's methodology).[8]

## II. Stockton's Damages Model Is Not Tailored To Plaintiffs' Defect Theory.

Plaintiffs contend that putative class members who experienced fuel pump failures due to the alleged defect outside of the warranty period are entitled to recover cost of repair damages. But they do not dispute that Stockton's cost-of-repair model and damages calculations are based on fuel pump replacement data that reflects *all* pump replacements, including those replaced for reasons having nothing to do with any alleged defect, such as a failed seal, physical damage, misfuelling, customer misuse, customer abuse, or misdiagnosis.[9] Stockton's model cannot satisfy

---

"typical cost of repair across the class," which by definition makes them *not* typical of the class they seek to represent. Opp. at 17 n.7, PageID.38693.

[8] Plaintiffs attempt to analogize this case to *Counts v. General Motors, LLC*, 2022 WL 2078023 (E.D. Mich. June 9, 2022). There is no indication that in *Counts*, Stockton arbitrarily excluded over half of the relevant data points, made countless other manipulations to the underlying data, and failed to apply even the most basic statistical techniques to determine the potential for error.

[9] Stockton confirmed that he analyzed all pump replacements without regard to the underlying reason for replacement and that his dataset consisted of *any* CP4 repair performed at a GM dealership. *See* Stockton Dep. 184:1-5, ECF No. 133-3, PageID.38719 ("[T]he universe of repairs that I got was primarily made up and filtered down to from CP4 failures where there is a kit or pre-kit equivalent, which is the repair.")

4

*Daubert* or *Comcast v. Behrend*, 569 U.S. 27 (2013), where it is not appropriately tailored to plaintiffs' theory of liability and where Stockton's overbroad analysis ignores "other possible causes or confounding factors" in the data. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F. 3d 244, 253 (6th Cir. 2001). As in *Nelson*, the record here is replete with evidence of other factors that could have caused a pump to fail[10]—"evidence which, it appears, [Stockton] utterly ignored." *Id.*

Plaintiffs argue that Stockton reasonably relied on a failure rate provided to him by their technical expert, Dr. Edgar. But *even if* Stockton is allowed rely on another expert's calculation of CP4 pump replacements and *even if* Stockton is allowed to "assume a material defect" in the CP4 pump before calculating damages, he still must confirm that his calculations are based on reliable data that fits with plaintiffs' damages theory. Both Stockton and Dr. Edgar concede that their data includes pumps installed in non-class vehicles, and pumps that failed for a variety of reasons, or that were replaced and later determined not to have failed at all.[11]

### III. Stockton's "Overpayment" Allocation Method Is Unworkable and Purely Speculative.

Plaintiffs' Opposition also does not demonstrate that Stockton's proposed method for allocating overpayment damages among multiple owners of a vehicle

---

[10] *See* Mot. at 16, PageID.37001.

[11] *See* Stockton Dep. 77:10-79:22, ECF No. 120-3, PageID.37045-47; Dep. of Bradley L. Edgar, Ph.D. ("Edgar Dep.") 199:1-11; 195:18-196:1; 189:15-191:14, ECF No. 121-2, PageID.37286-87.

5

that did not experience a fuel pump failure is backed by a testable or reliable methodology. It is quite the opposite, in fact, as Stockton *admitted* in his deposition that his proposal is based only on his subjective "intuition."[12] Failing to put forward a rigorous and tested methodology renders his allocation proposal inadmissible. *See Garcia*, 2022 WL 2542991, *5 (excluding Stockton's opinions where he failed to account for relevant features).[13]

Stockton's previous attempts at allocating overpayment damages between current and former owners have been excluded under Rule 702 precisely because they are not reliable and are not founded on any scientific methodology. *Sloan v. General Motors LLC*, 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020). Plaintiffs claim that "Stockton is *not* proposing a model to share the cost of a single repair across different owners, which is the model the *Sloan* court rejected," but they misunderstand Stockton's excluded opinions in *Sloan*. *See* Opp. at 22, PageID.38698 (emphasis in original). In *Sloan*, Stockton proposed that overpayment damages should be measured by the cost of repair, and he then proposed that those overpayment damages could be allocated between current and former owners

---

[12] Stockton Dep. 112:25, ECF No. 120-3, PageID37049.

[13] Plaintiffs' attempt to present Stockton's overpayment allocation methodology as merely a "post-certification issue of claims administration" does not make his unscientific proposal admissible. Opp. at 19, PageID.38695. At class certification, plaintiffs "must show damages are susceptible of measurement across the entire class" using a reliable methodology. *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 267 (N.D. Ohio 2014) (internal quotation marks and citation omitted).

precisely as he proposes to allocate damages here. *Sloan*, 2020 WL 1955643, at *48.

## IV. Stockton's Opinions and Testimony Would Unfairly Prejudice GM.

Plaintiffs do not seriously engage with GM's prejudice arguments. Stockton's dataset is incomplete, flawed, biased, and divorced from plaintiffs' theory of liability, and his overpayment model is the product of his untested "intuition."[14] Expert testimony is unduly prejudicial when it "rest[s] on speculation" and where the expert's "methodology had not been scientifically tested[.]" *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 653 (6th Cir. 2009).

## CONCLUSION

GM respectfully requests that the Court exclude the opinions and testimony of plaintiffs' expert Edward Stockton.

Dated: July 15, 2022

Respectfully submitted,

*s/ April N. Ross*
Kathleen Taylor Sooy
April N. Ross
Andrew Pruitt
Rachel P. Raphael
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202-624-2500
Facsimile: 202-628-5611
ksooy@crowell.com
aross@crowell.com
apruitt@crowell.com

---

[14] Stockton Dep. 112:25, ECF No. 120-3, PageID37049.

rraphael@crowell.com

Jeffrey K. Lamb
Adam M. Wenner
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-7405
jlamb@honigman.com
awenner@honigman.com

*Counsel for General Motors LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2022, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *April N. Ross*
April N. Ross