UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARK D. CHAPMAN, ET AL.** | **2:19-CV-12333-TGB-DRG** |
| Plaintiffs, | **ORDER GRANTING AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF NOS. 111/112)** |
| vs. | |
| **GENERAL MOTORS LLC,** | |
| Defendant. | |

Plaintiffs allege that General Motors (GM) installed Bosch CP4 fuel pumps in GMC and Chevrolet diesel trucks from model years 2011-2016 despite knowing the pumps were defectively manufactured. Having completed their initial phase of discovery, Plaintiffs seek certification of nine state-specific classes under various legal theories. For the reasons explained below, the motion will be **GRANTED IN PART AND DENIED IN PART.**

## I.   BACKGROUND

### A.   Factual Allegations

The Court refers to its previous explanation of the defect alleged in this case. *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1268-70 (E.D. Mich. 2021). Briefly, this case is about a defect in GMC and Chevrolet trucks with 6.6L Duramax engines from model years 2011-2016, caused by GM's decision to equip the vehicles with a Bosch CP4 pump. ¶ 1, ECF No. 40, PageID.3393. According to Plaintiffs, the CP4

pump is more fragile and susceptible to wear and tear than its predecessor, the Bosch CP3 model, because of several differences in its design. ¶¶ 123-135, ECF No. 40, PageID.3478-85. Its potential for malfunction is exacerbated by a factor unique to the United States—our diesel fuel is "drier" than the diesel fuel available in other countries because of emissions-related EPA regulations. Because the CP4 pump relies on the diesel fuel itself for lubrication, it is uniquely unsuited for use with our "dry" diesel. *Id.* at ¶¶ 148-52.

The combination of the allegedly subpar pump design and lack of lubricity from American diesel fuel leads to wear and tear which can, among other things, cause small metal shavings to build up within the pump or engine and fuel block generally. If there is too much buildup, "catastrophic failure" may occur: the truck suddenly stalls or loses power, requiring a tow and often times replacement of the bulk of the fuel system. *Id.* at ¶¶ 137-140. Even if the truck does not experience catastrophic failure, the wear and tear on the pump damages the fuel injector and other parts of the engine, causing owners to suffer damages. *Id.* at ¶ 141.

Plaintiffs allege GM was aware of these issues even before it began to sell vehicles with the CP4 engine. *Id.* at ¶¶ 8, 185. Despite that knowledge, it failed to disclose the defect to consumers at the point of sale or in any other communication—and instead described the vehicles as having increased durability and fuel efficiency. Plaintiffs further allege

that, instead of taking steps to remedy the problem, GM actively concealed it for as long as possible. *Id.* at ¶¶ 9, 186-88. GM stopped using the CP4 pump after the 2016 model year of the class vehicles, switching to another model of pump that had been in use since 2004. *Id.* at ¶ 218.

Plaintiffs assert that, even though not all class members have experienced catastrophic failures, they have all been damaged by GM's failure to disclose the CP4 design defect. ECF No. 111, PageID.21006. They propose to divide themselves into two sub-groups: a cost-of-repair group, for class members who experienced catastrophic failure and had to pay for repairs out-of-pocket; and an overpayment group, for class members who have not experienced catastrophic failures but who would not have paid the price they were charged for their vehicles had they been told of the design defect. *Id.* at PageID.21032.

### B.   Procedural Posture

The Court takes note of several procedural developments since it denied GM's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint. First, a number of named Plaintiffs have been dismissed or substituted from the case. ECF Nos. 85, 94, 95, 104. Second, a case regarding the same conduct that was separately filed in a Texas district court was transferred to this district and consolidated with this case. ECF No. 105. Parties began discovery in May 2021.

Plaintiffs have moved for class certification. ECF Nos. 111/112. Both parties have also filed various *Daubert* motions, seeking to exclude

3

testimony of five expert witnesses who offer opinions in support of and against class certification. ECF Nos. 119/120 (Stockton); ECF No. 121 (Edgar); ECF No. 122 (Gaskin and Weir); ECF Nos. 124/125 (Harrington). The Court held a hearing on all these motions on August 5, 2022 and asked Plaintiffs for supplemental briefing regarding their proposed class definition, to which GM responded. ECF Nos. 154, 157. The parties also filed supplemental briefs to apprise the Court of recent caselaw developments. *See* ECF Nos. 146, 147, 155, 156, 158, 162, 163.

The Court has carefully reviewed the parties' submissions and arguments. The *Daubert* motions are addressed by a separate order. This order resolves Plaintiffs' motion for class certification.

## II.   LEGAL STANDARDS

Class certification is appropriate when the moving party "affirmatively demonstrate[s] … compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotations omitted). This is a two-step process. The party seeking class certification first must satisfy the four threshold showings under Rule 23(a) that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

These "four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotations omitted).

Next, the moving party must show that its proposed class "satisf[ies] at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. Plaintiffs seek certification only under Rule 23(b)(3), which requires a finding by the Court that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading standard;" the moving party "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis in original). Before granting class certification, the Court must conduct a "rigorous analysis" into whether Rule 23 has been satisfied. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996). The analysis may "overlap with the merits of the plaintiff's underlying claim because a class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp.*, 569 U.S. at 33-34 (internal quotations omitted). The analysis extends to expert testimony, which may not be accepted

uncritically as establishing a Rule 23 requirement. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307, 323 (3d Cir. 2008).

Nonetheless, the analysis and inquiry into the merits must be focused on and limited to "only those matters relevant to deciding if the prerequisites of Rule 23 are met;" the Court "may not turn the class certification proceedings into a dress rehearsal for a trial on the merits." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013) (internal quotations omitted).

### III.   ANALYSIS

### A.   Proposed class structure

Plaintiffs' motion initially sought certification of one multi-state class for claims of breach of implied warranty of merchantability for "all persons or entities who purchased one or more Class Vehicles" in any of thirty-five states, along with nine single-state liability classes each encompassing multiple live claims from the Second Amended Class Action Complaint. ECF No. 111, PageID.20970-72. "Class Vehicles" are defined as "model year 2011-2016 Duramax diesel 6.6L V8 LML engine trucks purchased in the United States, manufactured by GM and marketed as the Chevrolet Silverado or GMC Sierra." ECF No. 154.

Since the Court's request for supplemental briefing, Plaintiffs have altered their certification request. They now propose a two-step certification process. ECF No. 154. As a first step, they ask the Court to certify nine state-specific classes with the following claims:

1. **<u>Alabama Class</u>:** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Alabama from March 1, 2010, to the date of the Court-ordered notice to the Certified Alabama Class. This class seeks certification of claims for: (i) unjust enrichment [Count C.III]. Plaintiffs move for the appointment of Michael John McCormick as class representative of the Alabama Class.

2. **<u>California Class</u>:** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in California from March 1, 2010, to the date of the Court-ordered notice to the Certified California Class. This class seeks certification of claims for: (i) violation of the California Unfair Competition Law, Cal Bus. & Prof. Code § 17200 et seq. [Count F.I]; (ii) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. [Count F.II];  and (iii) violation of the implied warranty of merchantability under California law, Cal. Civ. Code § 1791 et seq. [Count F.III], and the Magnuson-Moss Warranty Act [A.I]. Plaintiffs move for the appointment of Stacy Wade Sizelove, Calvin Smith, and Kevin Lawson as class representatives of the California Class.

3. **<u>Florida Class</u>:** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Florida from March 1, 2010, to the date of the Court-ordered notice to the Certified Florida Class. This class seeks certification of claims for: (i) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 510.201 et seq. [Count K.I]; and (ii) unjust enrichment [Count K.II]. Plaintiffs move for the appointment of Holly Reasor as class representative of the Florida Class.

4. **<u>Illinois Class</u>:** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Illinois from March 1, 2010, to the date of the Court-ordered notice to the Certified Illinois Class. This class seeks certification of claims for: (i) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. [Count O.I]; and (ii) unjust enrichment [Count O.III]. Plaintiffs move for

the appointment of Nathan Howton and Trisha Alliss as class representatives of the Illinois Class.

5. **<u>Iowa Class:</u>** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Iowa from March 1, 2010, to the date of the Court-ordered notice to the Certified Iowa Class. This class seeks certification of claims under: (i) the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1 et seq. [Count Q.I]. Plaintiffs move for the appointment of William McDuffie as class representative of the Iowa Class.

6. **<u>Michigan Class:</u>** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Michigan from March 1, 2010, to the date of the Court-ordered notice to the Certified Michigan Class. This class seeks certification of claims for: (i) unjust enrichment [Count X.III]. Plaintiffs move for the appointment of Arnold Recchia as class representative of the Michigan Class.

7. **<u>New York Class:</u>** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in New York from March 1, 2010, to the date of the Court-ordered notice to the Certified New York Class. This class seeks certification of claims for: (i) violation of the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349(a). [Count HH.I]; and (ii) unjust enrichment [Count HH.IV]. Plaintiffs move for the appointment of Mark Chapman as class representative of the New York Class.

8. **<u>Pennsylvania Class:</u>** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Pennsylvania from March 1, 2010, to the date of the Court-ordered notice to the Certified Pennsylvania Class. This class seeks certification of claims for: (i) violation of the implied warranty of merchantability under Pennsylvania law, 13 Pa. Cons. Stat. Ann. § 2314 [Count NN.II], and the Magnuson-Moss Warranty Act [A.I]; and (ii) unjust enrichment [Count NN.III]. Plaintiffs move for the appointment of John Cappiello and Bryan Joyce as class representatives of the Pennsylvania Class.

9. **<u>Texas Class:</u>** All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Texas from March 1, 2010, to the date of the Court-ordered notice to the Certified Texas Class. This class seeks certification of claims for: (i) violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.49 [Count II in the *Click* complaint]; (ii) violation of the implied warranty of merchantability under Texas law, Tex. Bus. & Com. Code §§ 2.314 & 2A.212 [Count IV in the *Click* complaint], and Magnuson-Moss Warranty Act [A.I]; and (iii) unjust enrichment [Count III in the *Click* complaint]. Plaintiffs move for the appointment of Troy Bowen, Homero Medina, and Jacqueline Bargstedt as class representatives of the Texas Class.

*Id.* at PageID.41171. This newly proposed structure removes the implied warranty of merchantability claims for three states—California, Pennsylvania, and Texas—from the multi-state class and folds them into the state-specific classes. Plaintiffs then propose, as a second step, to revisit the question of certifying a multi-state class action after the claims of the state-specific classes are resolved in a bellwether trial.

In deciding whether to certify these state classes, the Court expresses no opinion as to the propriety of later certifying a multi-state class. To be sure, "the notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues … has achieved general acceptance by both bench and bar." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). But before a trial court may utilize results from a bellwether trial for any purpose extending beyond the cases tried, it must find that the cases tried are representative of the larger group of

claims from which they are selected. *Id.* at 1020. Plaintiffs have not addressed how or whether the California, Pennsylvania, or Texas claims for implied warranty of merchantability are representative of the multi-state claims. Nor have they spoken to how proceeding with a bellwether trial favors judicial economy, fairness, and swift resolution of the claims.

Nonetheless, the soundness of this approach is not directly before the Court. Plaintiffs' supplemental briefing seeks certification only of the nine state-specific classes. To the extent that Plaintiffs are currently still requesting certification of a multi-state class, they have not as of yet submitted an adequate analysis justifying it in this case, so this request is denied. But this denial is without prejudice. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 231-32 (D. Mass. 2006) (denying without prejudice request for nationwide class certification where plaintiffs did not submit adequate analysis of feasibility of nationwide class and instead certifying class under consumer protection laws of a single state).

## B.    Proffer of Evidence Common to the Class

Plaintiffs' main source of evidence regarding the alleged design defect comes from reports and testimony by Dr. Bradley L. Edgar. The Court will not recount the specifics. Briefly, Dr. Edgar concludes that each class vehicle is equipped with a CP4 pump, and that the design of the pump is fragile, fundamentally flawed in several respects, and

10

incompatible with diesel fuel sold in America. His report calculates projected failure rates of class vehicles during their useful life.

Plaintiffs intend to offer common proof—through testimony of GM engineers, internal testing data, and GM's correspondence with Bosch—that GM knew of the alleged design defect even before it began production of class vehicles. They also intend to offer common proof—through testimony by GM employees, GM's internal warranty data, GM's instructions to dealerships, and marketing literature—that GM failed to disclose the design defect and actively concealed it even though class vehicles immediately began failing in the field.

To calculate their damages, Plaintiffs proffer two models of damages: one premised on the cost of repairs paid by consumers whose engines failed catastrophically, and a second based on the theory that even those consumers who paid no repair costs still were damaged because they overpaid for the trucks at the time of purchase. The cost-of-repair model was created by Plaintiffs' expert Ted Stockton, who used data sources provided by GM to calculate the average out-of-pocket cost of repair for consumers who experienced a catastrophic failure. The overpayment model was created by Plaintiffs' experts Steven Gaskin and Colin Weir, who used a conjoint analysis survey to determine the difference in value between what consumers understood themselves to be bargaining for and what they actually received.

### C.    Standing

The Court begins with GM's argument regarding standing because it is jurisdictional and therefore foundational. In opposing class certification, GM reprises its argument from its Motion to Dismiss that named plaintiffs whose vehicles have not experienced a catastrophic failure do not have standing and therefore cannot represent the class. It contends that anyone whose vehicle still performs properly has received the "benefit of their bargain" and therefore has not suffered an injury-in-fact under Article III. ECF No. 116, PageID.33806-07.

The Court has previously rejected this argument, concluding that even those who have not yet experienced a failure have adequately alleged they have been damaged by overpaying for their vehicles as a consequence of GM's failure to disclose the problems with the CP4 pump. ECF No. 80, PageID.7805-06. GM has not advanced any new arguments, so the Court's conclusion regarding standing remains the same.

### D.    Class Certification Requirements Under Rule 23(a)

The Court next considers whether Plaintiffs can satisfy the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation.

#### *1. Numerosity*

Numerosity is shown when the number of plaintiffs is too large to make joinder practicable but not so large as to make administration impossible. *In re. Am. Med. Sys., Inc.*, 75 F.3d at 1079. There is no strict

numerical test to determine whether the class is large enough or its members too numerous to be properly joined. Plaintiffs provide a table estimating the number of class vehicles sold in each state at issue, ranging from 238 (Michigan) to 5,000 (Texas). ECF No. 111-2, PageID.21130. These facts are sufficient to satisfy the numerosity requirement.

## 2. Commonality

A class action must include "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, Plaintiffs "must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that the common answer relates to the actual theory of liability in the case." *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).

In arguing that this element of Rule 23(a) is satisfied, Plaintiffs identify a number of common questions of fact and law bearing on the resolution of their claims: (1) whether there is a defect in the class vehicles; (2) whether GM had knowledge of the defect, including prior to production; (3) whether GM failed or omitted to disclose the defect; (4) whether this omission was material; (5) whether Plaintiffs were harmed by these omissions; and (6) what relief, if any, class members are entitled to receive. ECF No. 111, PageID.21008.

GM responds that "it is not enough to recite common questions; there must be common answers provided by common classwide proof."

13

ECF No. 116, PageID.33807. But GM conflates the issue of whether Plaintiffs have shown commonality under Rule 23(a)(2) with whether they have shown predominance under Rule 23(b)(3). As will be discussed below, Rule 23(b)(3) functions as an important check against the permissive requirements of Rule 23(a)(2). *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1080. Although commonality and predominance are related, commonality does not require that *only* common questions exist and is readily shown. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 105 (E.D. Mich. Dec. 9, 2019) (Lawson, J.) ("Not all questions of law and fact raised in the complaint need be common. … The standard is not [that] demanding." (alterations in original)).

The issues Plaintiffs have identified are sufficient to show commonality. Although Plaintiffs allege a variety of legal theories under the laws of several states, recovery under all of them will require common answers to the questions of whether the CP4 pump rendered the class vehicles fundamentally defective and unfit for use, whether GM knew of the defect, and whether GM withheld its knowledge of the defect from consumers. And "there need be only a single issue common to all members of the class" to satisfy commonality. *In re Am. Med. Sys.*, 75 F.3d at 1080 (internal quotations omitted); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (commonality requirement was satisfied by single question of whether throttle body assembly in class vehicles was defective).

14

### 3. *Typicality*

Typicality requires that a "sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (internal quotations omitted). Class members' claims must be "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (internal citations omitted). The typicality inquiry is meant to ensure that the representatives' interests are aligned with the interests of the absent class members. *Id.*

GM contends that the plaintiffs are not typical of the class because putative class members include consumers who had unique purchasing experiences—*i.e.*, they bought their vehicles from various sources, including GM dealerships, independent resellers, and private individuals. ECF No. 116, PageID.33832-83. But Plaintiffs' proposal to limit their class definition to reduces the differences in their individual purchasing experiences by narrowing the relevant experience to sales at GM-authorized dealerships, and they assert that GM communicated with consumers through these dealerships. ECF No. 111, PageID.21016-17. GM also contends that plaintiffs are not typical of the class because they face unique defenses. ECF No. 116, PageID.338833. These arguments are more germane to whether common issues will predominate under Rule 23(b)(3) and will be addressed below.

15

The Court concludes that Plaintiffs are typical of the classes within the meaning of Rule 23. Subject to the qualification below, each Plaintiff purchased a class vehicle in the state they are representing. Each asserts that there were no disclosures to them of the alleged defect. Each either experienced a catastrophic failure or paid a price for their vehicle they would not have paid if the design defect had been disclosed to them and seeks the same form of either compensation for alleged overpayment or recovery of costs incurred in repairing or replacing defective pumps. Their interests thus "align[] with those of the represented group." *Sprague*, 133 F.3d at 399 (internal quotations omitted).

### 4. Adequacy of Representation

Under Rule 23(a)(4), the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with the unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)). "The linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Id.* (internal citations omitted).

GM challenges a handful of named plaintiffs as inadequate representatives. ECF No. 116, PageID.338832-83. Many of its challenges

16

are now moot because they concern representatives for classes Plaintiffs are no longer seeking to certify.

As regards its remaining challenges, GM asserts that McCormick (AL), Howton (IL), Smith (CA), and Reasor (FL) are inadequate representatives because they agreed to arbitrate any claims related to their vehicles. ECF No. 116, PageID.33834. But the Court is persuaded by Plaintiffs' argument that GM has waived its right to assert this argument by failing to raise it in its answer to the operative complaint or otherwise attempting to assert it at a previous point in the litigation, which has been pending since 2019. *Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009).

GM also contends that Bargstedt (TX), Bowen (TX), Lawson (CA), Sizelove (CA), and Smith (CA) are not adequate representatives because their claims are time-barred. ECF No. 119, PageID.33834. But Plaintiffs argue that, as a result of GM's acts in concealing the defect, they were unable to discover their claims earlier and seek class-wide tolling of the relevant limitations periods. Any limitation period issues therefore do not render these Plaintiffs inadequate as class representatives.

GM also contends that Cappiello is not a member of the class he purports to represent (purchasers from Pennsylvania). ECF No. 116, PageID.33834. This argument is well-taken because Plaintiffs' complaint alleges that Cappiello purchased his vehicle in Texas. ECF No. 40, ¶ 68. Since Plaintiffs now seek to limit the Pennsylvania class to only

17

individuals who purchased their vehicles from GM-authorized dealerships in Pennsylvania, Cappiello is not a member of the class and cannot represent it. Nonetheless, GM mounts no challenges to the ability of Bryan Joyce to represent the Pennsylvania class.

With the exception of Cappiello, the Court concludes that the named Plaintiffs are adequate class representatives. They have vigorously pursued the interests of absent class members, including participating in discovery and sitting for depositions. Their claims are typical of the classes which they represent; they seek the same relief in the form of either recovery of repair costs pr compensation for alleged overpayment for defective cars at the point of sale. The Court can discern no conflicts of interest.

GM also offers no reason to question the qualifications of Hagens Berman Sobol Shapiro LLP, Hilliard Martinez Gonzalez LLP, and The Miller Law Firm P.C. to serve as class counsel, so the Court will find that they are adequately qualified to serve as class counsel.

### E.    Class Certification Requirements Under Rule 23(b)(3)

Having concluded that Rule 23(a) is satisfied, the Court now turns to whether class certification is appropriate under Rule 23(b)(3). Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Rule provides that the following factors are "pertinent" to the predominance and superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (D) the likely difficulties in managing a class action."

## F. Predominance

The bulk of GM's arguments opposing class certification concern whether Plaintiffs can meet the predominance requirement. The Supreme Court has emphasized that Rule 23(b)(3) requires "a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original). The "mere fact that questions peculiar to each individual of the class action remain after the common questions of the defendant's liability have been resolved" does not defeat class certification. *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (internal quotations omitted).

### 1. Common fuel defect

GM first argues that Plaintiffs cannot show a central defect stretching across the classes because, it says, Dr. Edgar's testimony is insufficient to demonstrate a defect and should be excluded by the Court.

ECF No. 116, PageID.33808-09. The Court has admitted Dr. Edgar's testimony and finds that it raises an issue that a defect exists, so this argument is moot.

GM also argues that even assuming some defect, Plaintiffs cannot show GM knew about it at the point of sale for each class member, which is required for their consumer protection and fraudulent concealment claims. GM notes that over the period the class vehicles were manufactured, it and Bosch made several "design and process changes" to the CP4 pump. It therefore argues that the question of its "knowledge" regarding the CP4 defect could be varied over time. ECF No. 116, PageID.33809-10. For example, if after a given update GM plausibly believed the problem was fixed, GM posits it cannot be said to have had "knowledge" regarding cars manufactured after understanding that the problem was fixed, even if the defect did in fact still exist. *See, e.g., In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 6873453, at *4 (N.D. Cal. Nov. 22, 2016) (affirming decision not to certify class because of "too much variability in the material facts throughout the class period to permit a class-wide inference with respect to Ford's knowledge of and state of mind about the depth and quality of [alleged software] defects").

But proof fails on this point. GM cites no record evidence indicating its employees or engineers held this kind of mindset. And the *Myford Touch* litigation is distinguishable because that case involved a software

defect that was being constantly updated and modified, unlike the static defect caused by a physical component alleged here. Further, as Plaintiffs noted at oral argument, were a jury to hear evidence that GM's level of knowledge was different at different times, it could simply limit GM's liability accordingly. Even if GM's "knowledge" changed over time, such a fact does not devolve into a series of individualized issues—the question of whether and when GM knew about this defect may be answered once for the whole class based on common evidence.

### 2. Class-wide Inference of Reliance or Causation

GM next contends that each of Plaintiffs' claims will require individualized inquiries into the Plaintiffs' subjective states of mind. The Court examines the elements of each claim below.

### (a)   *Alabama*

### i.   Unjust enrichment [Count C.III]

To prevail on a claim of unjust enrichment in Alabama, a plaintiff must show that "defendant holds money which, in *equity and good conscience*, belongs to the plaintiff or holds money which was improperly paid to defendant because of *mistake or fraud*." *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So.2d 1111, 1123 (Ala. 2003) (emphasis in original).

The Alabama Supreme Court has routinely held that these claims are unsuitable for class treatment because their resolution requires an inquiry into each plaintiff's subjective state of mind. *See*, *e.g.*, *Funliner of Ala. LLC v. Pickard*, 873 So.2d 198, 211 (Ala. 2003) (explaining that

unjust-enrichment claims based on fraud require individualized inquiry into each plaintiff's state of mind); *Smart Prof'l Photocopy Corp. v. Childers-Sims*, 850 So.2d 1245, 1249 (Ala. 2002) (holding that "proof essential to support [unjust enrichment claim] … defeats the predominance and superiority requirements of Rule 23(b)(3)").

Plaintiffs have not met their burden to show that common issues will predominate in the Alabama class, so the Court will not certify it.

### (b)   *California*

#### i.   California Consumer Legal Remedies Act (CLRA) Claim, Cal. Civ. Code § 1750 et seq. [Count F.II]

The CLRA prohibits specified "unfair methods of competition and unfair or deceptive acts or practices" in consumer transactions. Cal. Civ. Code § 1770(a). As relevant here, unlawful practices include "representing that goods have … characteristics … which they do not have" and "representing that goods … are of a particular standard, quality, or grade, … if they are of another." *Id.* § 1770(a)(5), (7). "[A]ny consumer who suffers any damage" as a result of conduct prohibited by the CLRA may sue to recover or obtain actual damages, an injunction, restitution, and punitive damages. Cal. Civ. Code § 1780(a).

A CLRA claim requires a showing "not only that a defendant's conduct was deceptive but that the deception caused [the plaintiffs] harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (Cal. Ct. App. 2009) (internal quotations omitted). California courts have held that

causation may be established on a class-wide basis by a showing of materiality. *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156-57 (Cal. Ct. App. 2010). And materiality of an alleged misrepresentation is assessed through a "reasonable man" standard. *Id.* That a defendant can show a lack of causation as to a handful of members does not necessarily make causation an individual issue. *Id.* at 157. CLRA claims may be based on "an omission of a fact the defendant was obliged to disclose." *Daughtery v. Am. Honda Motors Co., Inc.*, 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006).

GM argues that individual issues will predominate in Plaintiffs' CLRA claim because the proposed class is comprised of "individuals who bought their vehicles from various sources under various circumstances" and "there is no evidence of an extensive and long-running advertising campaign that all class members can plausibly be presumed to have seen." ECF No. 116, PageID.338811. Relying on the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 20120), it asserts that reliance cannot be presumed on a class-wide basis because awareness of the disclosure would vary from customer to customer even the alleged defect had been disclosed. *Id.*

*Mazza* involved an affirmative misrepresentation about an optional braking system, which added $4,000 to the vehicle price. *Mazza*, 666 F.3d at 585-86. Honda advertised that this system was designed to prevent rear-end collisions in several brochures and commercials, some of which

23

explained that the system "does have some limitations, and will not detect all possible accident causing situations." *Id.* at 586. The Ninth Circuit reversed the district court's class certification decision, concluding that—because of the variations between the advertisements, and the fact that some openly disclosed the system's limitations—the class would need to be redefined in such a way as to include only members who were exposed to the allegedly misleading advertising. *Id.* at 596.

Plaintiffs' claim, however, is not that they viewed false advertising—but that GM knew of a material design defect that it failed to disclose. If Plaintiffs can prove that the defect exists and that GM's omission was material—*i.e.*, that "a reasonable man would attach importance to its existence or nonexistence in determining his choice in the transaction in question," they can prove causation as to the entire class. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 145; *see also Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (holding that common issues predominated as to "whether [defendant] was aware of the alleged design defects" and "whether [defendant] had a duty to disclose its knowledge" in CLRA claim).

Plaintiffs' proposal to limit the class only to individuals who purchased their vehicles from a GM-authorized dealership resolves any remaining concerns about lack of commonality. Whether GM did or did not disclose the defect can be established through common proof regarding whether GM used its dealerships to communicate with

24

consumers and did not disclose the defect at the point of sale. *See Alger v. FCA US LLC*, 334 F.R.D. 415, 427-28 (E.D. Cal. 2020) (individual issues did not predominate in CLRA claim concerning auto manufacturer's duty to disclose defective headrest); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 531-33 (C.D. Cal. 2012) (same concerning claim regarding defective rear suspension); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480-81 (C.D. Cal. 2012) ("active concealment of a material fact" can be shown by common proof).

Finally, GM argues that certification is inappropriate because it did not receive written, pre-suit notice of this claim, as required by Cal. Civ. Code. § 1782. This argument would have been appropriate in a motion to dismiss. The notice requirement's purpose is to forestall litigation by "giv[ing] the manufacturer ... sufficient notice of alleged defects to permit appropriate corrections or replacements," as the notice "commences the running of certain time constraints upon the manufacturer or vendor within which to comply with the corrective provisions." *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40 (Cal. Dist. Ct. App. 1975). At this juncture, GM has been on notice of the alleged defect since the suit was filed in 2019. And compliance with § 1782's pre-suit notice requirement is not an element of a prima facie case under the CLRA. *Elliott v. Tandy Corp.*, No. B170862, 2005 WL 2064432, at *3 (Cal. Ct.

App. Aug. 29, 2005). It may limit the remedies available to Plaintiffs, but it does not present a predominance problem.[1]

Plaintiffs have adequately demonstrated that issues susceptible to class-wide proof will predominate with respect to their CLRA claim.

### ii.   California Unfair Competition Law (UCL) Claim, Cal. Bus. & Prof. Code § 17200 et seq. [Count F.I]

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act of practice." Cal. Bus. & Prof. Code § 17200. The California Supreme Court has recognized that "[c]lass actions have often been the vehicle through which UCL actions have been brought." *In re Tobacco II Cases*, 207 P.3d 20, 30 (Cal. 2009). Though they contain some differences, claims under the CLRA and UCL are often considered together at the class certification stage. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 982-83 (C.D. Cal. 2015) (collecting cases).

---

[1] GM additionally argues that Plaintiffs' proposed class is problematic because it includes "all" purchasers, whereas the CLRA defines "consumers" as individuals who seek to acquire goods or services for "personal, family, or household purposes." Cal. Civ. Code § 1761(d). Plaintiffs concede as much in their reply brief. ECF No. 127, PageID.37887. The Court finds that, at this juncture, modification of the class definition to reflect this limitation is not necessary because Plaintiffs also raise claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., which does not contain similar limitations. Common issues will predominate in resolving the merits of both claims. The question of which class members may recover under which theory is a damages allocation question, which the Court need not resolve at this stage. *See Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 578 (E.D. Mich. 2022) (Ludington, J.).

Defendants do not mount any specific challenges against certification of Plaintiffs' UCL claims. And the California Supreme Court has unequivocally held that "relief under the UCL is available without individualized proof of deception, reliance[,] and injury." *In re Tobacco II Cases*, 207 P.3d at 35. Plaintiffs' UCL claim depends on proof co-extensive with Plaintiffs' CLRA claim regarding the alleged design defect, what GM knew or did not know, and what it disclosed to consumers.

The Court concludes that common issues will predominate with respect to Plaintiffs' UCL claim, so this claim will be certified.

### iii. Implied Warranty of Merchantability Claim under California Law, Cal. Civ. Code § 1791 et seq. [Count F.III], and the Magnuson-Moss Warranty Act [A.I]

California's implied warranty of merchantability is codified in the Song-Beverly Consumer Warranty Act, which provides that "every sale of consumer goods that are sold at retail … shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792.

The Magnuson-Moss Warranty Act (MMWA), meanwhile, provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply … a[n] .. implied warranty … may bring suit for damages" in federal district court. 15 U.S.C. § 2310(d)(1)(B). It does not describe the elements of a breach of implied warranty claim but instead permits consumers to enforce implied warranties in federal court.

27

*See In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 644 F. App'x 515, 516 (6th Cir. 2016). Plaintiffs' MMWA claim stands or falls with their Song-Beverly Consumer Warranty claim.

In California, "[t]he core test of merchantability is fitness for the ordinary purpose for which such goods are used" *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (Cal. Ct. App. 2007). "Such fitness is shown if the product is 'in safe condition and substantially free of defects.'" *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (Cal. Ct. App. 2009) (internal quotations omitted). A current manifestation of a malfunction is not an element of a breach of implied warranty claim. *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918, 923 (Cal. Ct. App. 2001). A plaintiff need only demonstrate that a product "contains an inherent defect that is substantially certain to result in malfunction during the useful life of the product." *Id.* at 908.

Plaintiffs have common evidence, in the form of Dr. Edgar's testimony about the likelihood of malfunction during a vehicle's useful life, capable of establishing whether the class vehicles are unfit for use on a class-wise basis under California law. *See Victorino v. FCA US LLC*, 326 F.R.D. 282, 300 (S.D. Cal. 2018); *In re Myford Touch Consumer Litig.*, No. 13-CV-03072, 2016 WL 7734558, at *25 (N.D. Cal. Sept. 14, 2016).

Accordingly, common issues will predominate with respect to this claim.[2]

### (c) *Florida*

#### i. Florida Deceptive and Unfair Trade Practices (FDUTPA) Claim, Fla. Stat. § 510.201 et seq. [Count K.1]

A FDUPTA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (internal quotations omitted); *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). It is governed by a "reasonable consumer" standard, obviating the need for proof of individual reliance by class members. *Office of the Attorney Gen. v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) ("[T]he issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.")

GM argues that, notwithstanding this "reasonable person" standard, the issue of causation will generate "highly individualized questions" not susceptible to common proof—including whether a

---

[2] In supplemental briefing, GM argues that the Song-Beverly Act limits recovery to "consumers" in a manner to similar to the CLRA. ECF No. 157, PageID.41251. Again, the Court finds that any issues on this score will not defeat predominance. Instead, if Plaintiffs prevail on the merits of all of their California claims, these issues will become issues of damages allocation.

particular consumer knew about the alleged defect and purchased the vehicle anyway, whether a deficiency attributable to the defect actually manifested itself, and whether the purchase price reflected the alleged defect—because the circumstances surrounding each class member's vehicle purchase vary. ECF No. 116, PageID.33812-13.

Such arguments merely seek to circumvent the "reasonable consumer" standard. Plaintiffs' proposal to limit the class to individuals who purchased vehicles from GM-authorized dealerships resolves any variations in purchasing circumstances. Meanwhile, proof that a class member knew about the defect but purchased the vehicle anyway does not generate a need for "individualized inquiries" into Plaintiffs' mental states; it merely shifts the needle toward a conclusion that any alleged omission by GM was not material. *Carriuolo*, 823 F.3d at 985. ("The mental state of each class member is irrelevant.") Whether the alleged defect actually manifested itself has no bearing on what consumers would have done if they were provided with information about the defect. And whether GM-authorized dealerships adjusted vehicle prices to account for the alleged defect is susceptible to common proof through dealership invoices. Plaintiffs' contention is that they did not.

GM further argues that certification is inappropriate because the FDUPTA limits relief to actual damages. ECF No. 116, PageID.33813. True enough, the Florida District Court of Appeal has held that FDUPTA damages do not include consequential damages, such as repair or resale

30

damages. *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008). But "actual damages" under the FDUPTA include the "benefit of the bargain," measured by "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered.'" *Carriuolo*, 823 F.3d at 986 (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1986)). Gaskin and Weir's overpayment damage model is intended to provide proof of this sort of "actual damage" on a class-wide basis.

The Court is satisfied that common issues and evidence predominate with regard to Plaintiffs' claim under FDUTPA.

### ii.   Unjust Enrichment [Count K.II]

A Florida unjust enrichment claim has three elements: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006). Critically for the present purpose, before it can grant relief on this claim, a court must examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would persist. *Ortiz v. Ford Motor Co.*, 909 So. 2d 479, 481 (Fla. Dist. Ct. App. 2005) (holding that "the equities surrounding each class member's purchase of their vehicle is not the same").

Some courts have certified Florida unjust enrichment claims as appropriate for class treatment. These courts acknowledge that the claims generally require individualized inquiries but reason that certain claims may nonetheless be susceptible to common proof. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657-58 (S.D. Fla. 2012) (equities concerning claim that bank allegedly actively concealed overdraft policy from all consumers would be the same); *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommc'ns, Inc.*, 275 F.R.D. 638, 646-47 (M.D. Fla. 2011) (same with regard to claim that utility allegedly double-billed plaintiffs for costs already paid).

But as the Eleventh Circuit has observed, these courts are in the minority. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). And this Court is not persuaded that Plaintiffs' claims fall into the narrow class of cases identified by courts that have approved unjust enrichment claims for class treatment. Florida courts have been unequivocal that an examination of individual circumstances is required in the context of an unjust enrichment claim. The Court is mindful that the heart of Plaintiffs' theory is that there is an inherent design defect which immediately devalued their vehicles. But whether GM's retention of the purchase price is equitable may depend on any number of factors, such as why a class member purchased a vehicle, how often they used it, whether they experienced any problems with it, and more.

For this reason, Plaintiffs cannot show that common issues will predominate as to this claim.

**(d)   *Illinois***

### i.   Illinois Consumer Fraud and Deceptive Practices Act (ICFA) Claim, 815 ILCS 505/1 [Count O.I]

An ICFA claim requires a plaintiff to establish: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009). To be actionable, a misrepresentation must be "material," as determined through a reasonable person standard. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996); *see also Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) (noting that "the Illinois Supreme Court has repeatedly held that … reliance is not required to establish a consumer fraud claim" and collecting cases). The last two elements of the claim require a showing that the deceptive act "proximately caused" the plaintiff's damages. *De Bouse*, 922 N.E.2d at 313.

GM asserts that, notwithstanding the objective standard regarding reliance, showing proximate causation under ICFA will require individualized proof. It relies on two cases from the Seventh Circuit, *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575 (N.D. Ill. 2005), and *Siegel v.*

33

*Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010), to argue that individual questions such as "what each [class] member heard, saw, or knew" and "why plaintiff purchased a particular brand of [a product]" will predominate over any common issues.

These cases are distinguishable. *Oshana* involved a claim that Coke, through ads it began running in 1984, tricked consumers into believing that fountain and bottled Diet Coke have the same ingredients, though they contain different types of sweeteners. When the plaintiff appealed the district court's denial of class certification, the Seventh Circuit explained the issue surrounding class certification as follows:

> Membership in … the proposed class required only the purchase of a fountain Diet Coke from March 12, 1999, forward. Such a class could include millions who were not deceived and thus have no grievance under the ICFA. Some people may have bought fountain Diet Coke *because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin. Countless members of [the] putative class action could not show any damage, let alone damage proximately caused by Coke's alleged deception.

*Oshana*, 472 F.3d at 514. *Siegel*, meanwhile, involved a summary judgment motion rather than class certification. As the Seventh Circuit explained, the main issue preventing the plaintiff's case from going to trial was that he did not even contend that the defendant's conduct was deceptive; he was merely upset about high gas prices. 612 F.3d at 937.

34

GM is right that proximate causation under the ICFA is a complex issue. The Illinois Supreme Court has explained that "deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff." *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004). At the same time, it has held that "omission or concealment of a material fact in the conduct of trade of commerce constitutes consumer fraud," and that a "material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick*, 675 N.E.2d at 595.

Federal courts have noted that "Illinois courts have certified classes asserting violations of the ICFA, where the defendant engaged in 'uniform' conduct toward the class, and successful adjudication of the named plaintiff's claim would establish a right to recover for all class members." *In re Glaceau Vitaminwater Mktg. & Sales Practice Litig.*, Nos. 11-MD-2215, 11-CV-00925, 11-CV-00926, 11-CV-00927, 11-CV-00996, 2013 WL 3490349, at *9 (E.D.N.Y. July 10, 2013) (collecting cases); *see also Rikos*, 799 F.3d at 514 (affirming class certification of ICFA claim and collecting cases). The Court finds this reasoning persuasive. Plaintiffs are alleging a uniform failure to disclose a defect affecting consumers across the class that occurred at the point of sale.

And as noted above, whether GM failed to disclose a material defect is susceptible to common proof.

Accordingly, the Court concludes that common issues and evidence will predominate with respect to Plaintiffs' claim under ICFA.

### ii.    Unjust Enrichment [Count O.III]

To sustain a claim for unjust enrichment in Illinois, a plaintiff must show that a defendant unjustly retained a benefit to the plaintiff's detriment, violating fundamental principles of justice, equity, and good conscience. *See People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992).

In its own research, the Court has found that Illinois courts have, on occasion, approved class treatment of unjust enrichment claims. *See, e.g.*, *Clark v. TAP Pharm. Prods., Inc.*, 798 N.E.2d 123, 133 (Ill. App. Ct. 2003). And some federal courts have concluded that an Illinois unjust enrichment claim "will stand or fall with the related [ICFA] claim." *See Clearly v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). But plaintiffs' briefing does not address whether balancing the equities under Illinois law turns on proof of an individual consumer's circumstances.

Plaintiffs have failed to carry their burden to show that certification of their unjust enrichment claim under Illinois law is appropriate.

36

**(e)**   *Iowa*

>    **i.   Iowa Private Right of Action for Consumer Frauds Claim, Iowa Code Ann. § 714H.1 et seq. [Count Q.I]**

The Iowa Private Right Act allows any "consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act" to bring a claim for "actual damages." Iowa Code Ann. § 714H.5(1). Prohibited acts include engaging "in a practice or act [a] person knows or reasonably should know is an unfair practice … or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, … concealment, suppression, or omission." *Id.* § 714H.3(1). Within the Consumer Fraud Act, "deception" means "an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts." *Id.* § 714H.2(5). There is relatively little Iowa case law addressing how these provisions apply.

Relying on the Southern District of Iowa's decision in *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150 (S.D. Iowa 2001), GM asserts that proof of any alleged omission can only come from a case-by-case analysis of each class member's exposure. ECF No. 166, PageID.33815. But *Estate of Mahoney* was decided in 2001, eight years before the Iowa Private Right Act was enacted in 2009, so it is difficult to discern its relevance to the issue of whether common issues will predominate in Plaintiffs' Iowa Private Right Act claim.

GM also relies on the Eighth Circuit's decision in *Brown v. Louisiana-Pacific Corp.*, 820 F.3d 339, 349 (8th Cir. 2016), to argue that Plaintiffs' claim is not susceptible to common proof because Plaintiffs need to prove that, "but-for [GM's] purported misrepresentation, [they] would not have elected to purchase the vehicle." The *Brown* court affirmed the grant of summary judgment in the favor of an individual defendant who had "no evidence" that he was the recipient of any representation made by the defendant. This is inquiry differs from the predominance analysis at class certification.

 The Iowa Court of Appeals has recently explained that "[u]niform misrepresentations weigh in favor of certifying the class." *Detmer v. La'James College of Hairstyling, Inc. of Fort Dodge*, 974 N.W.2d 182 (Table), 2021 WL 5919050, at *6 (Iowa Ct. App. 2021). Since plaintiffs now propose to limit the class to consumers who purchased their vehicles at a GM-authorized dealership, and Iowa judges whether an act or omission is deceptive through an objective reasonableness standard, common issues of GM's knowledge and concealment will predominate.

Accordingly, the Court is satisfied that common issues and evidence will predominate with respect to this claim of a violation of the Iowa Private Right Act.[3]

---

[3] In footnote in its supplemental brief, GM additionally argues that the Iowa Private Act limits recovery to "natural persons." ECF No. 157, PageID.41250. This point is well-taken. *See* Iowa Code § 714H.2(3).

38

**(f)** *Michigan*

### i.   Unjust Enrichment [Count X.III]

Under Michigan law, the elements of an unjust enrichment are: "(1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain." *B&M Die Co. v. Ford Motor Co.*, 421 N.W.2d 620, 622 (Mich. Ct. App. 1988). While courts in this district have certified classes bringing Michigan unjust enrichment claims in the past, they have also recognized that case law has changed such that class certification on these claims is no longer appropriate because "individual analysis of each class member's transaction is necessary to determine liability." *Corwin v. Lawyers Title Ins. Co.*, 276 F.R.D. 484, 485-86 (E.D. Mich. 2011) (Lawson, J.).

Plaintiffs' briefing does not address whether balancing equities under Michigan law turns on an evaluation of each consumer's individual circumstances. As a result, Plaintiffs have failed to show that class treatment of a claim for unjust enrichment under Michigan law is appropriate.

**(g)** *New York*

### i.   New York Deceptive Practice Act Claim, N.Y. Gen. Bus. Law § 349 [Count HH.I]

New York General Business Law § 349 creates a private cause of action for any person injured by "deceptive acts or practices in the conduct of any business, trade or commerce." A plaintiff must show: (1)

the challenged act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) plaintiff was injured as a result. *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-27 (1995). Neither proof of reliance nor scienter are required. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012). To establish that a representation or omission is material, a plaintiff need only establish that it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26.

GM argues that individual issues will predominate because class members purchased their vehicles at various times, under various circumstances, based on various information sources, and with various degrees of knowledge about the vehicle and CP4 pump. ECF No. 116, PageID.33817. As with many of Plaintiffs' claims, however, their proposal to limit the class only to individuals who bought their vehicles from GM-authorized dealerships in New York resolves this problem. This limitation narrows the proofs required, as Plaintiffs will be able to present common evidence of whether a design defect exists and whether the defect was disclosed at the point of sale.

Accordingly, the Court is satisfied that common issues will predominate in Plaintiffs' § 349 claim under the New York Deceptive Practice Act.

### ii.   Unjust Enrichment [Count HH.IV]

A New York unjust enrichment claim has three elements: (1) that the defendant was enriched (2) at the plaintiff's expense and (3) that the circumstances were such that equity and good conscience require that the defendant make restitution. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Unjust enrichment is available as a cause of action "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

In its own research, the Court has discovered that New York courts have occasionally approved class treatment of unjust enrichment claims and approved an aggregate damages model as appropriate in certain contexts. *See In re Coordinated Title Ins. Cases*, 784 N.Y.S. 2d 919 (Table), 2004 WL 690380, at *8 (N.Y. App. Div. 2004) ("The defendants raise an interesting point as to what portion of funds would be subject to disgorgement. … The question of overpayment is common to the entire proposed class. Should liability be determined, disgorgement may be contemplated and percentages allocated at the appropriate time.") But Plaintiffs have made no effort to explain how their claim may fall within this narrow class of claims susceptible to common proof.

Accordingly, Plaintiffs have not met their burden to establish that common issues predominate with respect to their claim for unjust enrichment under New York common law.

**(h)** *Pennsylvania*

> **i. Implied Warranty of Merchantability Claim under Pennsylvania law, 13 Pa. Cons. Stat. Ann. § 2314 [Count NN.II] and the Magnuson-Moss Warranty Act [A.I]**

Pennsylvania law imposes an implied warranty of merchantability on all contracts for the sale of goods. 13 Pa. Const. Stat. § 2314. To be merchantable, the goods must be "fit for the ordinary purposes for which such goods are used." *Id.* § 2314(b). Under Pennsylvania law, "[t]he concept of 'merchantability' does not require that the goods be the best quality, or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used." *Gall v. Allegheny Cty. Health Dep't*, 555 A.2d 786, 789-90 (Pa. 1989) (internal citations omitted).

The Pennsylvania Supreme Court has previously held, in the context of a car defect case, that the types of evidence Plaintiffs intend to offer here—warranty data, internal memoranda, and expert testimony—is sufficient to establish class-wide proof of a breach of an implied warranty of merchantability on a class-wide basis. *Samuel-Bassett v. Kia Motors Am, Inc.*, 34 A.3d 1, 23-24 (Pa. 2011).

The Court is satisfied that common issues will predominate with respect to implied warranty of merchantability under Pennsylvania law.

### ii.   Unjust Enrichment [Count NN.II]

To assert a claim of unjust enrichment in Pennsylvania, a plaintiff must show: "(1) benefits conferred on the defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Williams Twp. Bd. of Supervisors v. Williams Twp. Emergency Co.*, 986 A.2d 914, 923-24 (Pa. Commw. Ct. 2009) (internal citations omitted).

As with Plaintiffs' other unjust enrichment claims, because they lack factual development or argument demonstrating how balancing the equities for a Pennsylvania unjust enrichment claim is susceptible to common proof, they will not be certified.

### (i)   *Texas*

### i.   Texas Deceptive Trade Practices Act (TDTPA) Claim, Tex. Bus. & Com. Code § 17.49 [Count II in the *Click* complaint]

To prove a claim under the Texas Deceptive Trade Practices Act (TDTPA), a plaintiff must establish that defendant violated a specific prohibition of the Texas Business and Commercial Code §§ 17.46 and 17.50. As relevant here, the TDPTA prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended

to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Tex. Bus. & Com. Code § 17.46(b)(24). A TDTPA claim requires a plaintiff to prove he actually relied to his detriment on a misleading or deceptive act. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) (violation of § 17.50(a) "is not complete without a finding of reliance").

Relying on several federal district court decisions, Plaintiffs assert that this claim is susceptible to class treatment because Texas courts apply an objective materiality test to determine whether a business practice was likely to deceive a consumer acting reasonably. ECF No. 111, PageID.21026. But these cases largely concern common-law fraudulent misrepresentation.

The Texas Supreme Court has not completely foreclosed the possibility of a class-wide claim under the TDTPA. But it has severely limited whether one can go forward by demanding a high standard of proof for class-wide reliance:

> [C]lass members … are held to the same standards of proof of reliance—and for that matter all the other elements of their claims—that they would be required to meet if each sued individually. This does not mean, of course, that reliance or other elements of their causes of action cannot be proved class-wide with evidence generally applicable to all class members; class-wide proof is possible when class-wide evidence exists. But evidence insufficient to prove reliance in a suit by an individual does not become sufficient in a class action simply because there are more plaintiffs. Inescapably individual differences cannot be concealed in a throng.

*Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693-94 (Tex. 2002). Plaintiffs suggest that reliance can be shown on behalf of the entire class because GM's representations (or lack thereof) were uniform. But the Texas Court of Appeals has observed that receipt by class members of the same representation is generally insufficient to establish reliance on a class-wide basis, as reliance "can be shown only by demonstrating [each] person's thought processes in reaching the decision." *See Fidelity & Guar. Life Ins. Co.*, 165 S.W.3d 416, 423 (Tex. Ct. App. 2005) (internal quotations omitted); *see also Thomas v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-01860, 2022 WL 1164229, at *6 (N.D. Cal. Apr. 20, 2022); *Gordon v. Sig Sauer, Inc.*, No. 4:19-CV-585, 2020 WL 4783186, at *13 (S.D. Tex. Apr. 20, 2020).

Plaintiffs thus cannot show that common issues predominate with respect to a claim under the Texas Deceptive Trade Practices Act (TDTPA).

     **ii.   Implied Warranty of Merchantability Claim under Texas law, Tex. Bus. & Com. Code §§ 2.314 & 2A.212 [Count IV in the *Click* complaint], and Magnuson-Moss Warranty Act [A.I]**

The elements of an implied warranty of merchantability claim under Texas law are: 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury. Tex. Bus. Com. Code. § 2.314; *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331,

336 (Tex. Ct. App. 2003). Under Texas law, a product is not unmerchantable "simply because it does not function as well as the buyer would like, or even as well as it could." *Everitt v. TK-Taito, LLC*, 178 S.W.3d 844, 854 (Tex. Ct. App. 2005). But a product is considered defective if the defect "will inevitably manifest itself in the ordinary use of the product and that defect renders the product unfit for the ordinary purposes for which the product is used." *Id.* at 856.

The Court concludes that whether a product is unmerchantable in the context of this claim is susceptible to class-wide proof in the form of the reports and opinions of Dr. Edgar. And Texas law provides that plaintiffs may recover "actual damages" for a breach of an implied warranty of merchantability, including "the difference between the value of the goods accepted and the value of the goods if they had been as warranted," as well as "personal injury" and "property damage." *Polaris Indus., Inc.*, 119 S.W.3d at 336-37. Damages are thus susceptible to class-wide proof through Plaintiffs' overpayment and cost-of-repair models.

Accordingly, the Court is satisfied that common issues will predominate with respect to an implied warranty of merchantability claim under Texas law.

### iii.   Unjust Enrichment [Count III in the *Click* complaint]

Under Texas law, unjust enrichment occurs when a defendant wrongfully secures a benefit or passively receives a benefit that it would

be "unconscionable" to retain. *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. Ct. App. 2009). The Texas Supreme Court has held that, even in situations where the benefit—*i.e.*, the price paid by class members to the defendant—is uniform, "individual differences between each class member's experience" will necessitate individualized inquiries to "determine in whose favor the equities weigh in resolving the[] claims." *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 163 (Tex. 2007) (internal citations omitted) ("We recognize that the claim Barrera asserts involves issues that are common to the class; presumably, the restocking fee was uniformly calculated and applied when consumers returned the specific items. But … there are inescapably individual differences between each class member's experience.").

In light of this highly individualized inquiry, the Court cannot see how Plaintiffs can propose a damages model that will adequately account for each individual consumer's experience. Plaintiffs cannot carry their burden to show that common issues will predominate in and unjust enrichment under Texas law.

### 3. Affirmative Defenses

GM next argues that there are two affirmative defenses that potentially create individual issues. ECF No. 116, PageID.33827-28. As an initial matter, the Sixth Circuit has noted that affirmative defenses on their own do not "compel a finding that common liability issues do not

predominate." *In re HCA Holdings, Inc.*, No. 14-0511, 2015 WL 10575861, at *2 (6th Cir. Feb. 26, 2015). They should be considered alongside other issues, but when "a threshold common issue predominates, a class action is often the preferable form of litigation." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020).

GM argues that some class members' actions may be untimely if relevant statutes of limitations are not tolled. But Plaintiffs assert that they are seeking class-wide tolling based on GM's continued denial of the defect, so the Court concludes that any obstacles created by statutes of limitation do not create individualized issues at this juncture.

GM also argues that some customers may be subject to arbitration agreements. But as noted above, the Court is persuaded by Plaintiffs' argument that GM has waived its right to assert this argument by not mentioning it in its Answer or attempting to enforce arbitration rights earlier in the litigation. *Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009). These issues do not defeat a finding of predominance.

### 4. Class-wide Measure of Damages

GM also criticizes Plaintiffs' damages models for failing to satisfy *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), which requires that damages be tied to the theory of class-wide harm. The details of those models, created by Plaintiffs' experts Stockton, Gaskin, and Weir, are explained in this Court's order addressing the parties' *Daubert* motions. Many of GM's arguments concerning whether Plaintiffs' damages models

sufficiently "fit" their theory of the case repeat the same arguments raised in their *Daubert* motions, so the Court will not revisit them here.

In short, the Court concludes that both Stockton's repair model and Gaskin and Weir's overpayment model satisfy Rule 23 and *Comcast*. The repair model is designed to calculate the damages class members had to pay out of pocket to repair their vehicles if they experienced catastrophic failure. This accords with Plaintiffs' theory that certain class members suffered damages in the form of repair costs after experiencing catastrophic failures because of the alleged defect in their vehicles. Any issues with whether the Stockton adequately culled his data before making his calculations are issues for a jury.

Meanwhile, the overpayment model is supposed to determine the price differential between what a customer paid with the expectation of receiving a non-defective vehicle and what he or she should have paid in light of receiving a defective one. The model accords with Plaintiffs' theory that certain class members were damaged by overpaying for defective vehicles, and similar models have previously been approved by federal courts across the country to determine overpayment injuries. *See, e.g.*, *Nguyen v. Nissan North Am., Inc.*, 932 F.3d 811, 818 (9th Cir. 2019) (approving "benefit-of-the-bargain" damages model).

## G.  Superiority

For the claims specified above, the Court concludes that Plaintiffs meet Rule 23(b)(3)'s superiority requirement because, given the need for

expert testimony to establish whether the CP4 pump is inherently defective, the prospect of recovery would be dwarfed by the cost of litigating cases on an individual basis. In light of this, class members are unlikely to pursue individual actions. And the array of predominating common questions and issues—*i.e.*, whether the pump was defective and rendered the class vehicles unmerchantable and fundamentally defective, whether GM knew that the pump was defective, whether GM had a duty to disclose that the pump was defective, and whether GM breached its duty to disclose that the pump was defect—renders adjudication in a single action effective and efficient.

The Sixth Circuit has previously agreed that class proceedings are superior to individual litigation in similar auto defect cases. *See, e.g.*, *Daffin*, 458 F.3d at 554 ("The threshold issue of whether Ford's warranty promise can reasonably be read to cover the alleged defect at issue in this case, regardless of manifestation … , is better litigated in the class context.") While GM has identified certain issues that affect some class members but not others, such as statutes of limitations and arbitration agreements, those issues do not render class certification inappropriate: they are comparatively insignificant to the central common questions that will drive resolution of the claims. And the Court is satisfied that proceeding with the seven classes certified at this stage does not present insurmountable problems of manageability.

## CONCLUSION

The Motion for Class Certification (ECF No. 111/112) is **GRANTED** as to the California, Florida, Illinois, Iowa, New York, Pennsylvania, and Texas classes with respect to the claims outlined above. It is **DENIED** as to the Alabama and Michigan classes.

It is hereby ordered that the following classes are **CERTIFIED**:

1. All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in California from March 1, 2010, to the date of the Court-ordered notice to the Certified California Class, on claims for: (i) violation of the California Unfair Competition Law, Cal Bus. & Prof. Code § 17200 et seq. [Count F.I]; (ii) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. [Count F.II];  and (iii) violation of the implied warranty of merchantability under California law, Cal. Civ. Code § 1791 et seq. [Count F.III], and the Magnuson-Moss Warranty Act [A.I].

2. All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Florida from March 1, 2010, to the date of the Court-ordered notice to the Certified Florida Class, on a claim for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 510.201 et seq. [Count K.I].

3. All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Illinois from March 1, 2010, to the date of the Court-ordered notice to the Certified Illinois Class, on a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. [Count O.I].

4. All persons who purchased one or more of the Class Vehicles from a GM-authorized dealership in Iowa from March 1, 2010, to the date of the Court-ordered notice to the Certified Iowa Class, on a claim under the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1 et seq. [Count Q.I].

5. All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in New York from March 1, 2010, to the date of the Court-ordered notice to the Certified New York Class, on a claim for violation of the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349(a) [Count HH.I].

6. All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Pennsylvania from March 1, 2010, to the date of the Court-ordered notice to the Certified Pennsylvania Class, on a claim for violation of the implied warranty of merchantability under Pennsylvania law, 13 Pa. Cons. Stat. Ann. § 2314 [Count NN.II], and the Magnuson-Moss Warranty Act [A.I].

7. All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Texas from March 1, 2010, to the date of the Court-ordered notice to the Certified Texas Class, on a claim for violation of the implied warranty of merchantability under Texas law, Tex. Bus. & Com. Code §§ 2.314 & 2A.212 [Count IV in the *Click* complaint], and Magnuson-Moss Warranty Act [A.I].

It is further **ORDERED** that Michael John McCormick (AL), Stacy Wade Sizelove (CA), Calvin Smith (CA), Kevin Lawson (CA), Holly Reasor (FL), Nathan Howton (IL), Trisha Alliss (IL), William McDuffie (IA), Mark Chapman (NY), Bryan Joyce (PA), Troy Bowen (TX), Homero Medina (TX), and Jacqueline Bargstedt (TX) are **DESIGNATED** as representatives for their respective classes.

It is further **ORDERED** that Hagens Berman Sobol Shapiro LLP, Hilliard Martinez Gonzalez LLP, and The Miller Law Firm P.C. are appointed as class counsel for all classes.

It is further **ORDERED** that counsel for the parties must meet and confer and present to the Court within 30 days of the date of this Order a proposal for a notice to class members for each class that complies with Federal Rule of Civil Procedure 23(c)(2)(b), and a method of delivering the notice to absent class members.

An order setting a status conference will follow.

**IT IS SO ORDERED,** this 31st day of March, 2023.

BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

53