UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARK CHAPMAN, *et al.*,**  Plaintiffs,  vs.  **GENERAL MOTORS LLC,**  Defendants. | 2:19-CV-12333-TGB-DRG  **ORDER DENYING EMERGENCY MOTION FOR STAY (ECF NO. 195)** |

GM has filed an "emergency" motion seeking a stay of proceedings in this matter pending the Sixth Circuit's decision on whether to accept GM's petition to appeal this Court's March 31, 2023 decision to certify a class and, if that petition is granted, to also stay the proceedings pending the determination of the appeal itself. ECF No. 195. In the alternative, GM asks for proceedings to be stayed until the Sixth Circuit resolves two other appeals in class-action auto-defect cases. Plaintiffs oppose the request. ECF No. 197.

For the reasons explained below, the motion will be **DENIED**.

### I.  PROCEDURAL OVERVIEW

#### *A. Pre-Class Certification Proceedings*

This lawsuit began in 2019, when a group of plaintiffs filed a complaint against GM, alleging that GM knowingly equipped diesel trucks with defectively designed and manufactured fuel pumps—unsuitable for use with American diesel fuel—and lied to consumers

1

about it. These plaintiffs proposed to prosecute breach-of-warranty claims on behalf of a nationwide class and also to assert additional claims on behalf of smaller, state-specific classes. ECF No. 1.

Over time, the complaint was amended to add more plaintiffs, ECF No. 15, others were dismissed, and, in 2020, it was consolidated with four other cases concerning the same alleged defect, ECF No. 33. In the then-operative complaint, plaintiffs asserted 114 claims under the laws of 49 states. ECF No. 40.

GM moved to dismiss the complaint on several grounds, raising—among other things—challenges to plaintiffs' standing and the sufficiency of their allegations and state-law procedural bars to their claims. ECF No. 48. The Court entered an order resolving this motion in March 2021. ECF No. 80. A total of 93 claims survived. In late 2021, the case was consolidated with a fifth one concerning the same alleged defect, causing additional delays. ECF Nos. 105 & 107.

### B. Class Certification

By March 2022, plaintiffs were prepared to move for class certification. ECF Nos. 111 & 112. Because of the scale of the suit, briefing on the motion—and the accompanying *Daubert* motions regarding evidence submitted in support of and against class certification—required extensions. ECF Nos. 114, 116, 117, 119, 120, 121, 122, 124, 125, 127, 128, 129, 130, 131, 132, 133, 134, 137, 138, 139, 143, 148, 149. Oral argument on the motions was heard in August 2022.

At the class-certification hearing, Plaintiffs suggested altering the scope of their initial class-certification request, so the Court requested supplemental briefing on the proposal. ECF No. 152. Specifically, while plaintiffs initially proposed a multi-state class and nine state-specific classes, at the hearing they asked the Court to consider only the nine state-specific classes for purposes of the motion and return to the question of a possible multi-state class later.

After receiving and reviewing the supplemental briefing, as well as several additional submissions of supplemental authority by both parties, the Court entered orders resolving the class certification and *Daubert* motions in March 2023. ECF Nos. 169 & 170. The orders declined to exclude any of the parties' experts during class certification and certified the following seven-state specific classes:

1. <u>California Class</u>: All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in California from March 1, 2010, to the date of the Court-ordered notice to the Certified California Class, on claims for: (i) violation of the California Unfair Competition Law, Cal Bus. & Prof. Code § 17200 et seq. [Count F.I]; (ii) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. [Count F.II]; and (iii) violation of the implied warranty of merchantability under California law, Cal. Civ. Code § 1791 et seq. [Count F.III], and the Magnuson-Moss Warranty Act [A.I].

2. <u>Florida Class</u>: All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Florida from March 1, 2010, to the date of the Court-ordered notice to the Certified Florida Class, on a claim for violation of the Florida

Deceptive and Unfair Trade Practices Act, Fla. Stat. § 510.201 et seq. [Count K.I].

3. <u>Illinois Class</u>: All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Illinois from March 1, 2010, to the date of the Court-ordered notice to the Certified Illinois Class, on a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. [Count O.I].

4. <u>Iowa Class</u>: All persons who purchased one or more of the Class Vehicles from a GM-authorized dealership in Iowa from March 1, 2010, to the date of the Court-ordered notice to the Certified Iowa Class, on a claim under the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1 et seq. [Count Q.I].

5. <u>New York Class</u>: All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in New York from March 1, 2010, to the date of the Court-ordered notice to the Certified New York Class, on a claim for violation of the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349(a) [Count HH.I].

6. <u>Pennsylvania Class</u>: All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Pennsylvania from March 1, 2010, to the date of the Court-ordered notice to the Certified Pennsylvania Class, on a claim for violation of the implied warranty of merchantability under Pennsylvania law, 13 Pa. Cons. Stat. Ann. § 2314 [Count NN.II], and the Magnuson-Moss Warranty Act [A.I].

7. <u>Texas Class</u>: All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Texas from March 1, 2010, to the date of the Court-ordered notice to the Certified Texas Class, on a claim for violation of the implied warranty of merchantability under Texas law, Tex. Bus. & Com.

> Code §§ 2.314 & 2A.212 [Count IV in the Click complaint], and Magnuson-Moss Warranty Act [A.I].

The class-certification order directed the parties to meet and confer regarding the issue of class notice.

### C. Post-Certification Filings

The class certification and *Daubert* orders generated another round of filings by the parties. GM filed a motion for reconsideration of the class-certification order and asked the Court to certify a portion of the *Daubert* order for interlocutory appeal. ECF Nos. 171 & 172. The Court denied its requests. ECF Nos. 178 & 179. GM additionally filed a motion to modify the scheduling order in effect at the time, and plaintiffs moved to toll the statute of limitations for certain claims not approved for class treatment. ECF No. 176 & 177. The Court stayed briefing on these two motions pending a status conference.

At the status conference on June 13, 2023, the Court discussed several matters—including the status of Plaintiffs' pending motion, GM's intention to appeal the class-certification order, the status of class notice, and scheduling for dispositive motions. It also requested supplemental briefing concerning the effect of the Sixth Circuit's intervening decision in *Fox v. Saginaw County*, 67 F. 4th 284 (6th Cir. 2023), on the case.

After the status conference, the parties agreed to a schedule for dispositive motions. ECF No. 183. The Court received the supplemental briefs, ECF Nos. 184 & 185, and entered an order directing class notice,

ECF No. 186, noting that GM agreed to the form of the notice but objected to its issuance in light of its stated intention to file a Rule 23(f) petition. On June 21, 2023, GM filed the Rule 23(f) petition in the Sixth Circuit. *In re: General Motors*, No. 23-0106 (6th Cir. June 21, 2023).

On August 31, 2023, after the parties indicated an intention to attempt to mediate the case at another status conference, the Court entered a stipulated order extending the deadlines for dispositive motions. ECF No. 194. According to that stipulated order, the following deadlines are in effect:

- Dispositive Motions: November 7, 2023
- Responses: December 22, 2023
- Replies: January 25, 2024

On November 1, 2023, shortly before the deadline for dispositive motions, GM filed the now-pending "emergency" motion for a stay. ECF No. 195. Plaintiffs' motion to toll the limitations period on certain claims remains pending, as does GM's Rule 23(f) petition in the Sixth Circuit.

## II.   LEGAL STANDARD

A court has inherent power to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Factors for a court to consider in deciding whether to issue a stay include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties

6

interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

When a motion to stay is "premised on the alleged significance of another case's imminent disposition, courts have considered the potential dispositive effect of the other case, judicial economy achieved by awaiting adjudication of the other case, the public welfare, and the relative hardships to the parties created by withholding judgment." *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015).

## III. DISCUSSION

GM contends that this case should be stayed for two reasons. ECF No. 195, PageID.42265. First, it says that the fact of its Rule 23(f) petition "alone is compelling reason." *Id.* Second, it notes that the Sixth Circuit recently granted interlocutory review of class certification orders in two auto-defect cases, *In re Gen. Motors LLC*, No. 23-0104 (6th Cir. Oct. 23, 2023), and *In re Nissan N. Am.*, No. 23-0501 (6th Cir. Oct. 24, 2023). *Id.* at PageID.42267-68. Because it believes that the Sixth Circuit will soon "weigh in on critical issues impacting the propriety of the Court's class certification order" in this case, GM urges that proceeding to the merits would be "inefficient." *Id.* at PageID.42265. It notes that another court in this district recently stayed a large-scale auto-defect case in light of these other two appeals. *Id.*; *In re General Motors Corp. Air Conditioning Marketing & Sales Practices Litigation*, No. 18-md-02818 (E.D. Mich. Oct. 31, 2023) (Leitman, J.).

7

### *A. Likelihood of Success*

In its briefing, GM acknowledges that establishing a likelihood of success in this case is a two-part inquiry: first, it must establish a likelihood that the Sixth Circuit will grant its petition; second, it must establish a likelihood that any resulting opinion that issues in this case—or the other two it has identified—will be favorable to it. As the Sixth Circuit has noted, a "Rule 23(f) appeal is never to be routine." *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002). The parties disagree over the likelihood that GM's Rule 23(f) petition will be granted in the first place. ECF No. 195, PageID.42270; ECF No. 197, PageID.42467. The Court acknowledges that, given that the Sixth Circuit accepted interlocutory appeals in other class-action auto-defect cases, the petition in this case may also be granted because there are unsettled issues of class-certification law percolating in various district courts in the circuit.

But it is not enough to show a likelihood that the petition will be granted. GM must also establish a likelihood that any opinion that issues in this case or the other cases which it has identified will be favorable to it. On this point, GM's argument stalls out. Class certification decisions are "subject to a very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion." *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004) (internal quotations omitted). This deferential standard of review, *see id.*, coupled with the fact that the Court has already twice carefully reviewed

8

and rejected the arguments GM proposes to make to the Sixth Circuit, renders its likelihood of success speculative at best.

Ultimately, the Court finds that GM has not demonstrated a likelihood of success on the merits that would be sufficient to justify granting a sweeping and indefinite stay of proceedings in this case.

### B. Irreparable Harm

The Court next considers the possibility of irreparable injury absent a stay. GM contends that it will be irreparably injured if proceedings continue because class litigation is far more expensive than litigating plaintiffs' individual claims and because it may be forced to settle without having its certification issues ruled upon by the Sixth Circuit—*i.e.*, it asserts that the class-certification decision is a "death knell" to the litigation. ECF No. 195, PageID.42271.

In evaluating irreparable harm, the Court generally looks to three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). A showing of irreparable harm requires more than a general reference to litigation costs with continued district court proceedings or settlement pressures without specific information. *See Lyngaas v. Curaden AG*, No. 17-10910, 2019 WL 2635966, at *2 (E.D. Mich. June 27, 2019); *In re Polyurethane Foam Antitrust Litig.*, No. 10-02196, 2014 WL 12591692, at *4 (N.D. Ohio May 16, 2014).

9

GM describes the "death knell" factor and the hardship it is facing in vague and conclusory terms. From its briefing, it appears that the same considerations of expense and settlement are present in most—if not all—cases that have received class treatment. In any event, "irreparable harm" usually means more than injuries "in terms of money, time and energy necessarily expended in the absence of a stay." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

And even if GM had provided greater detail about the hardships it is facing, the procedural posture of this case cuts against a finding of irreparable harm based on litigation costs alone. The class-certification decision has been made; the parties have already incurred the expense of litigating a class-certification motion, and class notices have already issued, and discovery has been completed. This case is now at the summary-judgment stage, and it would be speculative for the parties to presume how the motions for summary judgment may be decided. This is a different posture than *In re: General Motors Corp. Air Conditioning Mktg. & Sales Practices Litig.*, 18-md-02818 (E.D. Mich. Oct. 31, 2023), where another court in this district issued an order holding the proceedings in abeyance *prior* to resolving the pending class certification motion. The only remaining steps in this case are the litigation of the dispositive motions—which will take some time—and trial.

The Court concludes that, at this juncture, the possibility of irreparable harm does not weigh strongly in favor of a stay.

10

### C. Injury to Other Interested Parties

Against this, the Court must weigh the potential harm to other interested parties, such as plaintiffs who have been litigating this case since 2019, absent class members, and potential witnesses. "[A] party has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. U.S. District Courts*, 565 F.2d 393, 396 (6th Cir. 1977). It is impossible to predict how long the Sixth Circuit may need to resolve GM's Rule 23(f) petition. It may well be decided before this Court rules on the summary judgment motions, or it may not. And even if the Court of Appeals grants the petition, it could be many months or even a year or more before the briefing, argument, and any decision on the merits might be reached. Additional delay may prejudice these other interested parties, as memories fade and witnesses and evidence become unavailable through the passage of time.

The possibility of harm in this analysis weighs against GM.

### D. Public Interest

Finally, the Court must consider the public interest. Public interest is generally served by speedy resolution of cases, and this is a complex case, involving many parties, that has been pending since 2019.

Moreover, part of the purpose of a stay is also to avoid duplicative proceedings. But the claims in this case are already proceeding on two tracks: 1) the track of claims which this Court has approved for class treatment; and 2) the track of claims which remain live and which this

11

Court has not approved for class treatment. A stay will do nothing to alter this reality. A stay will also significantly affect scheduling in a number of other cases pending on this Court's docket, each of which is just as deserving of prompt and efficient resolution as are the claims that have been certified for class treatment.

## IV. CONCLUSION

For the reasons explained above, the Court concludes that the sweeping and immediate stay of proceedings GM is requesting is unwarranted. GM's motion for a stay is therefore **DENIED**, and briefing on dispositive motions shall continue as currently scheduled. This denial is without prejudice to renewal should the Sixth Circuit issue any decision favorable to GM in *In re Gen. Motors LLC*, No. 23-0104 (6th Cir. Oct. 23, 2023), or *In re Nissan N. Am.*, No. 23-0501 (6th Cir. Oct. 24, 2023) that directly affects the merits of the class certification decision in this case.

**IT IS SO ORDERED**, this 17th day of November, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge