## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK D. CHAPMAN, *et al.*,

          Plaintiffs,

      v.

GENERAL MOTORS LLC,

          Defendant.

Case No. 2:19-cv-12333-TGB-DRG

Hon. Terrence G. Berg
Magistrate Judge David R. Grand

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MODIFICATION OF CLASS CERTIFICATION ORDER

Plaintiffs Mark Chapman, Kyle McDuffie, Bryan Joyce, Stacy Wade Sizelove, Kevin Allen Lawson, Holly Reasor, Homero Medina, Jacqueline Bargstedt, Calvin Smith, Nathan Howton, and Trisha Alliss, by and through their counsel ("Class Plaintiffs"), respectfully move the Court for an Order:

1. Granting preliminary approval of the proposed class action Settlement;

2. Authorizing and directing the Parties to retain JND Legal Administration as the Settlement Administrator; and

3. Scheduling a date for the Final Approval Hearing not earlier than one hundred and eighty-five (185) days after Preliminary Approval is granted.

In support of this Motion, Class Plaintiffs have contemporaneously filed a Memorandum of Law, with exhibits thereto.

In accordance with L.R. 7.1(a), counsel for the Class Plaintiffs sought the concurrence of counsel for GM in the relief sought by this Motion on June 7, 2024, and GM consents to this motion.

For the reasons set forth in the Memorandum of Law, Class Plaintiffs respectfully request that the Court grant their Unopposed Motion and enter the accompanying Proposed Order, attached hereto as Exhibit 2.

DATED: June 7, 2024                    Respectfully submitted,

                                       HAGENS BERMAN SOBOL SHAPIRO LLP

                                       */s/ Steve W. Berman*
                                       Steve W. Berman
                                       Jerrod C. Patterson
                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                       1301 Second Avenue, Suite 2000
                                       Seattle, WA 98101
                                       Telephone: (206) 623-7292
                                       steve@hbsslaw.com
                                       jerrodp@hbsslaw.com

Robert C. Hilliard
Lauren A. Akers
Bonnie J. Rickert
HILLIARD LAW
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone: (361) 882-1612
bobh@hilliard-law.com
lakers@hilliard-law.com
brickert@hilliard-law.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt, Jr. (P81118)
THE MILLER LAW FIRM PC
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

*Attorneys for Plaintiffs and the Certified Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK D. CHAPMAN, *et al.*,

        Plaintiffs,

      v.

GENERAL MOTORS LLC,

        Defendant.

Case No. 2:19-cv-12333-TGB-DRG

Hon. Terrence G. Berg
Magistrate Judge David R. Grand

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MODIFICATION OF <u>CLASS CERTIFICATION ORDER</u>

# TABLE OF CONTENTS

**Page**

QUESTIONS PRESENTED..................................................................v

STATEMENT OF CONTROLLING OR MOST IMPORTANT
      AUTHORITY .............................................................. vii

I.    INTRODUCTION ................................................................1

II.   PROCEDURAL HISTORY ...........................................................3

III.  FACTUAL BACKGROUND..........................................................6

IV.  THE SETTLEMENT AGREEMENT AND TERMS....................................7

     A.    The Settling Classes ....................................................7

     B.    Relief And Settlement Consideration.....................................9

          1.    Future warranty coverage and payment for repairs. ..................9

          2.    Establishment of common fund ...............................10

               a.    Overview.........................................10

               b.    Payments to Repair Group............................10

               c.    Payments to Former Owner Group................12

     C.    Release of claims......................................................13

     D.    Settlement notice and right to opt out ...............................13

     E.    Class Counsel fees and expenses and Class
          Representatives' service awards........................................15

V.    THE COURT SHOULD MODIFY THE CERTIFIED
     CLASSES TO CONFORM TO THE SETTLEMENT
     AGREEMENT...............................................................15

VI.  THE PROPOSED SETTLEMENT SATISFIES THE
     STANDARD FOR PRELIMINARY APPROVAL ...................................17

A.  There is no Fraud or Collusion............................................................18

B.  The Complexity, Expense, And Likely Duration of The
    Litigation Favor Approval..................................................................19

C.  The Amount of Discovery Engaged in by The Parties
    Favors Approval ...............................................................................20

D.  The Likelihood of Success on The Merits Favors
    Approval...........................................................................................20

E.  Experience And Class Counsel's Opinions Favor
    Approval...........................................................................................21

F.  The Settlement is Fair to Absent Class Members ...............................22

G.  The Settlement is Consistent with the Public Interest.........................22

VII.    THE FORM AND MANNER OF NOTICE ARE PROPER .......................23

VIII.   CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

Amchem Prods., Inc. v. Windsor,
521 U.S. 591 (1997)............................................................................18

Bautista v. Twin Lakes Farms, Inc.,
2007 WL 329162 (W.D. Mich. Jan. 31, 2007)....................................19

Bowling v. Pfizer,
144 F. Supp. 3d. 945 (S.D. Ohio Nov. 16, 2015) ...............................12

In re Cardizem CD Antitrust Litig.,
218 F.R.D. 508 (E.D. Mich. 2003) ................................................21, 23

Chapman v. Gen. Motors LLC,
2023 WL 274780 (E.D. Mich. Mar. 31, 2023)...........................passim

Daoust v. Maru Rest. LLC,
2019 WL 1055231 (E.D. Mich. Feb. 20, 2019)............................24, 25

Franks v. Kroger Co.,
649 F.2d 1216 (6th Cir. 1981) ............................................................18

Ginebra v. GM LLC,
No. 1:18-cv-25209 (S.D. Fla.) ...............................................................4

Griffin v. Flagstar Bancorp, Inc.,
2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................................18

IUE-CWA v. Gen. Motors Corp.,
238 F.R.D. 583 (E.D. Mich. 2006) ......................................................20

Martinez v. Robert Bosch GMBH,
No. 9:18-cv-81500 (S.D. Fla.) ................................................................4

Moonan v. GM LLC,
No. 4:18-cv-07054 (N.D. Cal.) ...............................................................4

In re Packaged Ice Antitrust Litig.,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................22

- iii -

*Rankin v. Rots*,
    2006 WL 1876538 (E.D. Mich. June 27, 2006) ...................................................22

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ...................................................23

*Robinson v. Ford Motor Co.*,
    2005 WL 5253339 (S.D. Ohio June 15, 2005) ...................................................19

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................19, 21

*UAW v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) .................................................22

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .......................................................................18, 19

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) .............................................................................19

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ................................................................. *passim*

## QUESTIONS PRESENTED

1. Whether the Parties' proposed Class Action Settlement, as reflected in the Settlement Agreement (attached as Exhibit 1), is fair, reasonable, and adequate and should be preliminarily approved?

Suggested Answer: Yes.

2. Whether the Court should modify its March 31, 2023 Order on Class Certification, to reflect the extended time period of the proposed settlement classes?

Suggested Answer: Yes.

3. Whether the Court should grant preliminary approval of the Parties' proposed Class Action Settlement Agreement when federal policy favors settlement of class actions; the Parties negotiated the proposed settlement at arm's-length and in good faith; and the settlement reflects a fair, adequate, and reasonable resolution to the dispute?

Suggested Answer: Yes.

4. Whether the Court should approve the Parties' proposed notices to Class Members where they fairly and fully apprise the prospective Members of the

Class of the terms proposed in the settlement, the reasons for the settlement, the legal effect of the settlement, and provide Class Members with an opportunity to lodge objections and/or opt out?

Suggested Answer: Yes.

5. Whether the Court should set a date for a fairness hearing to consider any objections to the proposed settlement?

Suggested Answer: Yes.

010784-21/2648717 V1

## STATEMENT OF CONTROLLING OR
## MOST IMPORTANT AUTHORITY

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*Daoust v. Maru Rest. LLC*, 2019 WL 1055231 (E.D. Mich. Feb. 20, 2019)

*In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)

## I.   INTRODUCTION

Class Plaintiffs and GM (collectively, the "Parties") have reached a proposed settlement resolving allegations that certain 2011-2016 GMC and Chevrolet diesel trucks equipped with 6.6L Duramax engines (the "Class Vehicles") contain defective high-pressure fuel pumps (the "CP4 pump").[1]  Class Plaintiffs allege that the CP4 pump has a fragile and unstable design, which causes metal parts to rub against each other, creating metal shavings that contaminate the fuel system, which can cause catastrophic engine failure (the alleged "CP4 Defect").  Class Plaintiffs further allege that GM knew about the CP4 Defect prior to selling these vehicles to the public, and that it knew the risk of catastrophic engine failure would be material to a reasonable consumer.  On March 31, 2023, the Court certified seven state-specific classes on behalf of persons and/or entities who purchased Class Vehicles from GM-authorized dealerships in California, Florida, Illinois, Iowa, New York, Pennsylvania, and Texas. *See Chapman v. Gen. Motors LLC*, 2023 WL 274780, at *21 (E.D. Mich. Mar. 31, 2023). GM denies these allegations and denies that the Class Vehicles are defective.

Over the past nine months, the Parties have participated in two formal mediation sessions with the assistance of experienced mediator Tom McNeill of Tom McNeill ADR, PLLC.  The Parties have also engaged in numerous individual discussions with the mediator and several arm's-length negotiations with each other.

---

[1] GM discontinued the use of the CP4 pump starting with MY2017.

As a result of these negotiations, Class Plaintiffs have achieved a settlement that will provide substantial relief to the Class. The benefits the Class Members will receive as a result of this Settlement are entirely fair, reasonable, and adequate, especially in light of the substantial risks posed by continued litigation.

Under the terms of the Settlement Agreement, GM will be providing a total payment of $50 million for the benefit of the Class. As described in detail below, these funds (less costs and attorneys' fees) will be used to compensate Class Members who have paid out of pocket ("OOP") for repairs to their trucks related to the alleged CP4 Defect (the "Repair Group"), and those that allegedly overpaid for their vehicles at the point of sale and no longer own their vehicles (the "Former Owner Group"). Some Class Members identifiable through databases will receive direct payments, with no requirement that they submit a claim. Although the precise amount of OOP payments to each Class Member is not yet known, Class Plaintiffs' expert Ted Stockton estimates $6,356 for each repair, assuming a 50% claims rate. If the claims rate is 25%, Class Members would receive approximately $12,712 per repair. *See* Stockton Decl. ¶ 14.

In addition, GM will provide a future limited warranty, for a term of 12 months from the date of Final Approval or until the Class Vehicle reaches 200,000 miles, whichever comes first, to cover 50% of the cost of repair or replacement of a CP4 fuel pump in a Class Vehicle due to a catastrophic fuel pump failure during that term. This

is prospective relief that benefits all current truck owners in the Class and adds value in addition to the $50 million.  *See id.*

Finally, for Class Members who sold their trucks and did not have OOP expenses for an uncovered repair, they are entitled to compensation under the Settlement Agreement for their alleged overpayment.  Assuming a claims range rate of 5-10%, the amount of overpayment compensation would be $400–$800 per claimant.  *See* Stockton Decl. ¶ 16.

Taken together, this is an exceptional result for the Class, which seeks to both compensate truck owners who have already paid for a repair,  and provide some peace of mind for current truck owners who are concerned about future pump failures.

The Settlement satisfies all the prerequisites for preliminary approval, and Class Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed Preliminary Approval Order.  Class Plaintiffs also seek to modify the class certification Order to expand the time period of the Settlement Class to the date of the Court-ordered settlement notice.

## II.   PROCEDURAL HISTORY

Class Plaintiffs' counsel has spent thousands of hours working on this case for over six years.  Class Counsel[2] initially brought suit collectively against GM, Ford Motor Company, FCA US LLC, and Bosch for CP4 fuel pump defect-based claims in

---

[2] The Court has appointed Hagens Berman Sobol Shapiro LLP, the Miller Law Firm, and Hilliard Law as counsel for the Class.  *See* 2023 WL 2746780, at *8.

- 3 -

three separate jurisdictions (collectively, the "Consolidated CP4 Class Actions").[3] Class Counsel expended significant time and resources (including extensive consultation with automotive engineering experts) to research, craft, and identify details of how the CP4 fuel pump defect manifests in the vehicles.  *See* Hilliard Decl. ¶ 5.  Class Counsel subsequently dismissed the Actions without prejudice and immediately refiled separate class actions against GM alone in Texas, California, and Florida.[4] These three cases were ultimately consolidated into *Chapman*, along with *Dawson v. General Motors LLC*, No. 3:19-cv-08680 (D.N.J.), and *Fortmayer v. General Motors LLC*, 2:19-cv-14667 (E.D. La.).  *See* ECF No. 33.

On May 22, 2020, Class Plaintiffs filed their Second Amended and Consolidated Class Action Complaint.  ECF No. 40.  On July 21, 2020, GM filed its motion to dismiss, which the Parties fully briefed by October 6, 2020.  ECF Nos. 48, 53, 56.  On March 31, 2021, the Court granted in part and denied in part the motion.  ECF No. 80 (the "MTD Order").  On July 29, 2021, GM filed a motion for partial reconsideration of the Court's MTD Order, which the Court denied on November 9, 2021.  ECF Nos. 90-92, 100.

On November 10, 2021, Class Plaintiffs filed their initial Motion for Class Certification.  ECF Nos. 101-103. Shortly thereafter, however, the parties agreed to formally consolidate the *Click* case into the *Chapman* case, and then refile a motion for class certification incorporating the Texas-based *Click* claims.  ECF Nos. 105, 107.

---

[3] *See Berry v. Robert Bosch GMBH*, No. 2:18-cv-00318 (S.D. Tex.), *Hockensmith v. Robert Bosch GMBH*, No. 6:18-cv-01885 (M.D. Fla.), and *Martinez v. Robert Bosch GMBH*, No. 9:18-cv-81500 (S.D. Fla.).

[4] *See Click v. GM LLC*, No. 2:18-cv-00455 (S.D. Tex.), *Moonan v. GM LLC*, No. 4:18-cv-07054 (N.D. Cal.), and *Ginebra v. GM LLC*, No. 1:18-cv-25209 (S.D. Fla.).

On March 2, 2022, Class Plaintiffs filed an Amended and Consolidated Motion for Class Certification, along with expert reports and accompanying exhibits. ECF Nos. 110-112. The parties also briefed four *Daubert* motions. ECF Nos. 119-122, 124-125, 128-134, 137-139, 142-143, 148-149. On August 5, 2022, the Court held oral arguments on these motions, and ordered supplemental briefing on class certification, which Class Plaintiffs submitted on August 12, 2022. ECF Nos. 151-152, 154.

On March 31, 2023, the Court issued its Order Denying Motions to Exclude Expert Witness Testimony (the "*Daubert* Order"), and issued its Order Granting and Denying in Part Plaintiffs' Motion for Class Certification (the "Class Certification Order") the same day. ECF No. 169 (*Daubert*), *Chapman v. Gen. Motors LLC*, 2023 WL 274780 (E.D. Mich. Mar. 31, 2023) (class certification). The Court certified seven state-specific Classes: California, Florida, Illinois, Iowa, New York, Pennsylvania, and Texas. 2023 WL 2746780, at \*21-22.

On April 14, 2023, GM moved to reconsider the Court's Class Certification Order, and filed a motion to certify the Court's *Daubert* Order for interlocutory appeal ("GM's interlocutory appeal motion"). ECF Nos. 171-172. On June 6, 2023, the Court issued an Order Denying in Part and Granting in Part GM's motion for reconsideration, and separately issued an Order denying GM's interlocutory appeal motion. ECF Nos. 178, 179.

On June 20, 2023, GM filed its Petition for Permission to Appeal Pursuant to Rule 23(f) ("GM's Sixth Circuit Petition") with the Sixth Circuit Court of Appeals.[5]

---

[5] *See In re: Gen. Motors LLC*, No. 23-0106 (6th Cir. 2023), Doc. 1 (June 20, 2023).

Class Plaintiffs filed their Answer on July 5, 2023, and GM filed a motion for leave to file a reply on July 14, 2023. *Id.* at Docs. 12-14. GM's Sixth Circuit Petition remains pending. On November 1, 2023, GM filed an emergency stay motion pending appeal. ECF No. 195. The Court denied the motion. ECF Nos. 197, 198, 204.

On November 7, 2023, GM filed its motion for partial summary judgment as to the Class claims. ECF Nos. 200-201. Class Plaintiffs filed their opposition and exhibits in support on December 22, 2023,[6] and GM filed its reply on January 25, 2024. ECF Nos. 208-210, 214-216. That motion remains pending.

## III.   FACTUAL BACKGROUND

Class Plaintiffs allege that Class Vehicles[7] contain a CP4 high-pressure fuel injection pump. The CP4's highly stressed and fragile design causes metal shavings to disperse throughout the vehicle's fuel system from the first fueling. ¶¶ 2, 4,[8] PageID.3391-3392. This disintegration process ultimately leads to catastrophic failure of fuel and engine systems, including while the vehicle is in motion, causing sudden loss of engine power. *E.g.*, ¶ 4, PageID.3392. Even though GM knew before it manufactured the Class Vehicles that the CP4 pump was particularly incompatible with U.S. diesel-fuel standards, GM chose the European-designed fuel pump for its 2010-2016 6.6L V8 Duramax diesel engine vehicles. ¶¶ 2, 122, PageID.3391, 3478-

---

[6] *See id.* at ECF Nos. 208-210.

[7] The "Class Vehicles" consist of 2010-2016 model year GM-manufactured diesel-fueled automobiles equipped with a 6.6L V8 Duramax LML engines or LGH engines equipped with a CP4 fuel injection pump as specifically outlined in the SAC. ¶ 111, PageID.3470-3471.

[8] All "¶" references are to Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 40).

- 6 -

3479. Class Plaintiffs allege that they and all Class Members paid a premium for their diesel vehicles, and were harmed by being sold vehicles with a defective fuel injection pump that is substandard for U.S. diesel fuel. *E.g.*, ¶¶ 10, 16, PageID.3395, 3499.

Class Plaintiffs allege that the fuel-pump failures cause engine shutdowns, often while the vehicles are moving, with many drivers reporting trucks stalling at highway speeds. *E.g.*, ¶¶ 14, 100, 197, PageID.3396-3397, 3463, 3521. Plaintiffs allege GM then charges consumers $10,000 to fix it, when it allegedly knows that "any such repair is futile because it will not actually fix the issue so long as the vehicle is being filled with U.S. diesel." ¶ 3, PageID.3391. Plaintiffs allege GM knew of the defect and of the alleged safety hazards it imposed, rendering GM legally obligated to disclose the defect to customers. *E.g.*, ¶¶ 189-91, PageID.3516-3518. By allegedly actively concealing the defect, Plaintiffs allege GM injured Class Plaintiffs and other Class Members, and incurred liability under all states' statutory fraud counts and engaged in common-law fraud.  GM denies the allegations.

## IV.   THE SETTLEMENT AGREEMENT AND TERMS

### A.   The Settling Classes

The Settlement Agreement was reached on behalf of the following Classes (collectively, the "Settlement Class Members" and the "Certified States"):

> All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in California from March 1, 2010 to the date of the Court-ordered settlement notice.

- 7 -

All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Florida from March 1, 2010, to the date of the Court-ordered settlement notice.

All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Illinois from March 1, 2010, to the date of the Court-ordered settlement notice.

All persons who purchased one or more of the Class Vehicles from a GM-authorized dealership in Iowa from March 1, 2010, to the date of the Court-ordered settlement notice.

All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in New York from March 1, 2010, to the date of the Court-ordered settlement notice.

All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Pennsylvania from March 1, 2010, to the date of the Court-ordered settlement notice.

All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Texas from March 1, 2010, to the date of the Court-ordered settlement notice.

Excluded from the Settlement Class are: GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; any judge to whom this Action is assigned, his or her spouse; individuals and/or entities who validly and timely opted-out of the previously certified Classes or who validly and timely opt-out of the Settlement Class; and current or former owners of a Class Vehicle that previously released their claims in an individual settlement with GM with respect to the issues raised the Action.

- 8 -

The Settlement provides substantial relief to the Class. As detailed below, it includes a significant fund to pay individuals who have had out-of-pocket repair costs, to former Class Vehicle owners, and a 12-month new warranty for repairs performed at GM-authorized dealerships related to the CP4 Defect for all Class Members. The Settlement also includes direct notice of the settlement benefits and the rights of Class Members.

**B.     Relief And Settlement Consideration**

**1.     Future warranty coverage and payment for repairs.**

All current Settlement Class Members who still own their trucks will receive prospective future warranty coverage for repairs performed at GM-authorized dealerships on the CP4 fuel pump and related components, at 50% coverage (the "Future Reimbursement Program"). *See* Class Action Settlement Agreement ("SA") (attached hereto as Ex.1), at ¶ 3.5. This extended warranty coverage will run with the vehicles regarding of ownership, for up to 12 months, from the date of Final Approval, or 200,000 miles from original sale (whichever comes first). *See id.* ¶¶ 3.5-3.6. Pursuant to the Agreement, claims under the Future Reimbursement Program will be submitted to and administered by JND. *Id.* ¶ 3.7. Class Members who submit valid and timely claim forms to JND will receive 50% reimbursement for repairs or replacements incurred during the Future Warranty Coverage and Reimbursement Program time period. *See id.* ¶¶ 3.8-3.9.

This is a substantial benefit for the Class, as it provides some peace of mind for current Class Vehicle owners who are concerned about a pump failure in the future. This future warranty applies to all Class Vehicles, including the earliest year models, which means that Class Vehicle owners who for years have not had warranty coverage will be eligible for an additional 12 months of warranty.

### 2. Establishment of common fund

#### a. Overview

The Settlement provides for a non-reversionary fund of $50 million, which includes costs and attorneys' fees. The maximum amount of attorneys' fees, costs, and expenses that Class Counsel will seek is $15 million, which is 30% of the settlement amount and does not account for the value of future repairs paid for under this settlement. Of the remaining $35 million, $30 million will be allocated to compensate the Repair Group, and $5 million to compensate the Former Owner Group.

#### b. Payments to Repair Group.

Class Plaintiffs' expert Ted Stockton estimates that there are approximately 9,400 trucks that (i) were purchased from a GM dealership (either used or new) from the Certified States; (ii) experienced a catastrophic engine failure due to the CP4 Defect; and (iii) for which truck owners had to pay out of pocket for repair, either because the repairs were not covered under warranty or the trucks were out of warranty. *See* Stockton Decl. ¶¶ 8-9. With $30 million in funds, if the claims and

- 10 -

direct payment rate is 50%, the payments would be approximately $6,356 per repair, and if the claims rate is 25%, the payments would be approximately $12,712. *Id.* ¶ 14. This is a substantial benefit for the class, as Mr. Stockton previously calculated the average cost of repair as $9,551.  *See id.* ¶ 12.  Repair Class Members will receive payments through a two-step process, as detailed below.

*First*, Class Members that are easily identifiable will be paid directly.[9]  Class Plaintiffs, through JND, intend to use GM's own records, DMV records, and commercial databases to identify individuals who have paid out of pocket for a CP4 repair.[10]  This first step will reach some, but not all, Class Members because a substantial portion of the Class had repairs done at third party repair shops, not at GM dealerships.  This process also will not identify people who currently have a different address than at the time of purchase and repair.

*Second*, for Class Members who will not receive a direct payment in the first step, JND will conduct a notice campaign, with claim forms for Class Members to

---

[9] Direct payments to class members are generally regarded as particularly beneficial to the class.  *See, e.g.*, *Bowling v. Pfizer*, 144 F. Supp. 3d 945, 957 (S.D. Ohio Nov. 16, 2015).

[10] *See* Declaration of Gina M. Interpido-Bowden re: Settlement Notice Plan & Plan of Allocation ("JND Decl.") ¶¶ 47-55.  More specifically, the Claims Administrator will cross-reference GM's records that identify CP4 repairs by VIN number, against (1) an S&P database of vehicles purchasers and (2) DMV registration records.  *Id.* ¶ 21.

complete and submit.  JND will then pay out a pro rata share to direct payees and successful claimants for *each* qualifying repair.  *See* JND Decl. ¶ 50-51.[11]

### c.    Payments to Former Owner Group.

For the remaining Class Members in the Former Owner Group, JND will use $5 million in funds to compensate the Former Owner Group using a claims-based system. Mr. Stockton estimates that there are approximately 125,000 trucks in this group.  The payments based on varying claims rates are as follows (*see* Stockton Decl. ¶¶ 14, 16):

- 5% claimant rate = 6,250 claimants.  $5M/6,2500 = $800 per claimant.

- 7% claimant rate = 8,750 claimants.  $5M/8,750 = $570 per claimant.

- 10% claimant rate = 12,500 claimants.  $5M/12,500 = $400 per claimant.

Class Plaintiffs' conjoint expert estimated an overpayment amount of $4,760. *See* 3/2/22 Edgar Rep., ECF No. 111-1, at 84 (Table 13-5); 3/2/22 Weir Rep., ECF No. 111-32, at Ex. 3.  As a result, the overpayment amounts would range from 8.5% to 17% of the experts' overpayment calculations, which is appropriate for this case. First, there is a substantial risk that Plaintiffs could win at trial, receive a monetary judgment for the Repair Group, but receive nothing for the Former Owner Group. Just in the last six months, there have been two cases where juries found FCA liable

---

[11] In other words, if a truck owner had two repairs not covered by warranty, he or she would receive twice the amount as a truck owner with only one uncovered repair.

but awarded no damages.[12]  This result drives up the costs and expenses for the class, and obtains nothing in return.  Second, the Repair Group has paid thousands of dollars out of pocket for the repair.  From an equitable perspective, they should receive more proportionately than the Former Owner Group.

## C.    Release of claims

In exchange for the above relief, Class Plaintiffs and the Settlement Class will release GM from liability for all claims arising out of this litigation and the facts or circumstances that were or could have been alleged in the litigation. *See* SA ¶ 2.24; *id.* § (VII).  However, the Settlement Agreement does not release claims for death, personal injuries, damage to tangible property other than a Class Vehicle, or subrogation.  *Id.* ¶ 7.2.

## D.    Settlement notice and right to opt out

Following the Court granting preliminary approval of the Settlement, JND will provide by direct U.S. mail, *and* by email, to all reasonably identifiable Class Members: a copy of the Short Form ("Postcard") Notice attached as Exhibit D to the Settlement Agreement. *See id.* ¶¶ 5.3, 5.5; *see also* Ex. D to Settlement Agreement. JND will also set up and maintain a Settlement Website where Class Members can

---

[12] *See* Law360, *Fla. Jury Awards No Damages in Chrysler Headrest Trial* (Feb. 13, 2024), *available at* https://www.law360.com/articles/1792004; Law360, *Fiat Chrysler Avoids Damages in Faulty Headrest Class Action* (Nov. 14, 2023) (Mass.), *available at* https://www.law360.com/articles/1766430/fiat-chrysler-avoids-damages-in-faulty-headrest-class-action

access the Long Form Notice, as well as a copy of the Settlement Agreement, the operative complaint, GM's answer to the operative complaint, and additional information about the Action and Settlement. *Id*. ¶ 5.5. Both the Short Form and Long Form Notice will include the address of the Settlement Website, as well as a toll-free number for an interactive voice recording service that allows Class Members to leave a request for a paper copy of the Long-Form Notice.

Any Class Member may make a request for exclusion from the Class Settlement by submitting a request in writing as set forth in the Notice. *See id.* ¶ 9.2. The deadline for submitting such request will be specified in the Court's preliminary approval order. *Id*. ¶ 9.3. Any request for exclusion shall (i) state the Class Member's full name and current address; (ii) provide the model year and Vehicle Identification Number ("VIN") of his/her/its Class Vehicle(s) and the approximate date(s) of purchase; and (iii) specifically and clearly state his/her/its desire to be excluded from the Settlement and from the Class. *Id*. ¶ 9.4.

JND shall report the names of all Class Members who have submitted a request for exclusion to the Parties on a weekly basis, beginning 30 days after the Notice Date. *Id.* ¶ 9.7. Any Class Member who previously opted-out of the certified Classes is not eligible to participate in the settlement.

- 14 -

**E.      Class Counsel fees and expenses and Class Representatives' service awards**

Class Plaintiffs intend to file a motion for attorneys' fees and expenses prior to the final approval hearing. The Parties have agreed that Class Counsel may apply to the Court for attorneys' fees and expenses, inclusive of costs, for an amount not to exceed $15,000,000. *Id*. ¶ 6.1. GM has agreed not to oppose a request up to this amount. *Id*. Further, the Parties have agreed GM will separately pay Service Awards of $5,000 to each of the Class Representatives. *Id*. ¶ 6.2.

**V.      THE COURT SHOULD MODIFY THE CERTIFIED CLASSES TO CONFORM TO THE SETTLEMENT AGREEMENT**

The Parties respectfully ask the Court to modify for purposes of settlement the class definitions certified in the Class Certification Order to conform to the time period negotiated by the Parties.  The certified Classes presently cover persons or entities who purchased the Class Vehicles from March 1, 2010 "to the date of the Court-ordered notice" of the state Classes, which was June 29, 2023.  2023 WL 274780, at *21 (E.D. Mich. Mar. 31, 2023); *see also* ECF No. 186 (directing Class notice).  The Parties have agreed to extend the class period for the Settlement Class to "the date of the Court-ordered settlement notice," which will likely be in December 2024 at the earliest.

Plaintiffs submit that there is good cause for modifying the previously certified class definitions because all of the Rule 23 factors that supported the Court's initial Order apply equally to the proposed Settlement Class:

***Numerosity*** (Rule 23(a)(1)):  The numerosity requirement is met because the additional time period will only result in *more* Class Members, as additional Class Vehicle owners continue to pay out of pocket for a CP4 repair.  *See* 2023 WL 274780, at *6 (numerosity met).

***Commonality*** (Rule 23(a)(2)):  The same common questions of law and fact cited by the Court are applicable to the Settlement Class, including "whether the CP4 pump rendered the class vehicles fundamentally unfit for use, whether GM knew of the defect, and whether GM withheld its knowledge of the defect from consumers." *Id.* at *6.

***Typicality*** (Rule 23(a)(3)):  The Class Members' interests continue to be aligned with the interests of the absent Class Members in part because the Settlement Class maintains the limitation that the vehicles are purchased from GM dealerships, and "each [class representative] asserts that there were no disclosures to them of the alleged defect." *Id.* at *7.

***Adequacy*** (Rule 23(a)(4)):  Class Representatives are adequate because, as this Court held, they "have vigorously pursued the interests of absent class members, including participating in discovery and sitting for depositions." *Id.* at *8.  They also

"seek the same relief in the form of either recovery of repair costs [or] compensation for alleged overpayment for defective cars as the point of sale." *Id.*

*Predominance* (Rule 23(b)(3)): The Court noted that the predominance factor requires "a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[13] Those same questions exist for the Settlement Class.

Class Plaintiffs accordingly request that the class definitions certified in the Class Certification Order be modified and extended to the "date of Court-ordered settlement notice." GM consents to this conditional modification solely for the purpose of settlement.

## VI.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions. *See* Fed. R. Civ. P. 23(e); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d

---

[13] *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)) (emphasis in original).

1216, 1224 (6th Cir. 1981); *UAW*, 497 F.3d at 632 ("[W]e must consider—the federal policy favoring settlement of class actions[.]"); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.").

The Sixth Circuit relies on seven factors in evaluating class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) fairness to absent class members; and (7) the public interest. *UAW*, 497 F.3d at 626; *see also Williams*, 720 F.2d at 922-23. In considering these factors, courts apply a "strong presumption" in favor of finding a settlement to be fair.[14]  As set forth below, the seven-factor standard supports approval of the Settlement Agreement.

## A.     There is no Fraud or Collusion

The Parties were all represented by experienced counsel. Class Counsel have significant experience litigating numerous consumer class actions, including automotive defect cases.  *See* Berman Dec. ¶ 2; Hilliard Dec. ¶ 2. The Settlement Agreement was achieved only after arm's-length and good faith negotiations between

---

[14] *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."); *see also Bautista v. Twin Lakes Farms, Inc.*, 2007 WL 329162, at *5 (W.D. Mich. Jan. 31, 2007); *Robinson v. Ford Motor Co.*, 2005 WL 5253339, at *4 (S.D. Ohio June 15, 2005).

the Parties with Detroit-based mediator Tom McNeill. As such, there is no indication of fraud or collusion.  Berman Decl. ¶ 5; *In re Telectronics Pacing*, 137 F. Supp. 2d at 1018 (citing NEWBERG ON CLASS ACTIONS § 11.51 (3d ed. 1992)) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

## B.     The Complexity, Expense, And Likely Duration of The Litigation Favor Approval

The Settlement in this action comes at an appropriate time, given that the Court has granted class certification as to seven states; summary judgment has been fully briefed (but not yet decided); and GM's Rule 23(f) Petition remains pending in the Sixth Circuit.  This Settlement also avoids the risk and costs of an eventual trial in this case, which would hinge on complex issues involving the CP4 Defect, GM's knowledge of the defect, and the robustness of its testing procedures, among other issues.

Even if Class Plaintiffs prevailed at trial, it could be years before any Settlement Class Member received any benefit in light of the likely post-trial motions and appeals to follow; GM obviously has been aggressive in litigating all issues in this case.  *See supra* § II. In contrast, the Settlement provides substantial relief to Class Members in a prompt and efficient manner. "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006).

**C.     The Amount of Discovery Engaged in by The Parties Favors Approval**

The Parties have engaged in substantial discovery.  From approximately June 2019 through July 2023, the Parties have collectively exchanged more than 145 sets of discovery requests and responses; produced and reviewed more than 44,500 documents; conducted 15 class representative vehicle inspections; conducted 30 depositions; and produced 21 expert reports, including 17 Plaintiffs' expert reports and four GM expert reports, totaling more than 870 substantive pages in length.  *See* Berman Decl. ¶ 3.  Based on this discovery, the Parties have a good understanding of the respective strengths, weaknesses, and risks of continued litigation.

**D.     The Likelihood of Success on The Merits Favors Approval**

When evaluating the reasonableness of a class action settlement, courts consider "the risks, expense, and delay Plaintiffs would face if they continued to prosecute this complex litigation through trial and appeal and weighs those factors against the amount of recovery provided to the Class in the Proposed Settlement." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). A settlement is generally viewed favorably because it "avoids the costs, delays, and multitudes of other problems associated with them." *See In re Telectronics Pacing*, 137 F. Supp. 2d at 1013 (citation and internal quotation marks omitted).

Here, but for the Settlement, the litigation would largely continue to be contested, and counsel for all Parties were committed to litigate this case through trial and beyond, as necessary. Accordingly, there are substantial risks and costs if this

- 20 -

action were to proceed. While Class Counsel believes that the Class Plaintiffs and Class would ultimately prevail at trial, Class Counsel recognizes that ultimate success is not assured and believes that, when considering the risks of proving both liability and recoverable damages—and surviving appeal—the Settlement is unquestionably fair, adequate, and reasonable. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *11 (E.D. Mich. Dec. 13, 2011) (while plaintiffs may "remain optimistic about their ultimate chance of success . . . there is always a risk that Defendants could prevail with respect certain legal or factual issues," which weighs in favor of approval of settlement). Avoiding unnecessary expense of time and resources clearly benefits all parties and the Court. *See UAW v. Ford Motor Co.*, 2006 WL 1984363, at *24 (E.D. Mich. July 13, 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement.").

## E. Experience And Class Counsel's Opinions Favor Approval

In considering approval of a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006). Class Counsel here have extensive experience in handling complex mass torts and class action cases, including automotive defect cases like at issue here (as discussed below). Class Counsel have thoroughly investigated and analyzed the claims alleged in this action and made informed judgments regarding the Settlement

and believe it is fair, reasonable, and adequate. Class Counsel also engaged in good-faith bargaining overseen by an experienced mediator. This further weighs in support of preliminary approval.

**F.     The Settlement is Fair to Absent Class Members**

This factor evaluates whether the settlement "appears to be the result of arm's length negotiations between the parties and fairly resolves all claims which were, or could have been asserted." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) (internal citation omitted). As set forth above, the Settlement Agreement was reached only after multiple arm's-length mediation sessions and extensive settlement discussions over the course of nine months. Berman Decl. ¶ 5.  The resulting Settlement Agreement provides fair terms to all Settlement Class Members. Moreover, the release in this case extends only to claims that were or could have been asserted in this case and thus there is no risk of unfairness to absent Class Members.  All named class representatives support the settlement.  *See* Berman Decl. ¶ 4; Hilliard Decl. ¶¶ 3-4.

**G.     The Settlement is Consistent with the Public Interest**

Finally, the Court considers whether the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD*, 218

- 22 -

F.R.D. at 530 (quoting *Granada Inv., Inc.*, 962 F.2d at 1205). Here, it is clearly in the public interest to approve this Settlement. The Settlement provides extensive benefits, including payments to Class Members who have paid out of pocket for repairs, and a 12-month new warranty on the CP4 pump.  It further resolves the claims of the Class, eliminates the risk of non-recovery on behalf of the Class, provides certainty to GM, and eases the burden of the Court's resources.

## VII.   THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which the Class Notice is disseminated, as well as its content, must satisfy Rule 23(e)(1) (governing settlement notice) and due process. *See Daoust v. Maru Rest. LLC*, 2019 WL 1055231, at *2 (E.D. Mich. Feb. 20, 2019). Class Plaintiffs adequately satisfy these requirements. Rule 23(e) requires that notice of a proposed settlement be provided to class members. Fed. R. Civ. P. 23. Notice satisfies the Rule when it adequately puts Settlement Class Members on notice of the proposed settlement and "describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Daoust*, 2019 WL 1055231, at *2.

Here, following the Court granting preliminary approval of the Settlement, JND will provide all Class Members with a Short Form Notice substantially in the form attached as Exhibit D to the Settlement Agreement, and will further provide Class Members with access to the Long Form Notice, and the Settlement Fund and

- 23 -

Reimbursement Program Claim Forms. *See supra* § (IV)(D); *see also* SA at Exs. A-C. JND will also set up and maintain a Settlement Website where Class Members can access the aforementioned documents, as well as a copy of the Settlement Agreement, the operative complaint, and additional information about the Action and Settlement. *Id* ¶ 5.5. The Notice will include the address of the Settlement Website, as well as a toll-free number for an interactive voice recording service that allows Class Members to leave requests or questions. *Id.* ¶ 5.6.

The proposed notice plan satisfies all of Rule 23's requirements. The language of the Class Notice was drafted and agreed to by the Parties and is written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for requesting exclusion; (5) the identity of Class Counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. *See* SA at Exs. C and D. The Class Notice thus allows Settlement Class Members to make an informed and intelligent decision on whether to exclude themselves or object to the Settlement. In addition, pursuant to Rule 23(h), the proposed Class Notice sets forth the maximum amount of Attorneys' Fees and Expenses and Case Contribution Awards that may be sought.

The dissemination of the Class Notice also satisfies all requirements. JND will mail and email the Short Form notice to the last known address of each potential member of the Settlement Class, which will be checked and updated via the National Change of Address database. *See* SA ¶ 5.3. The Short Form Notice provides access to the Long Form Notice and applicable claim forms. If any Class Notice is returned as undeliverable, JND shall perform a reasonable search for a more current address and re-send the Class Notice. *Id.* Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

## VIII. CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interest of the Class Members; (2) modify the class definitions in the Court's March 31, 2023 class certification Order to expand the time period for the Settlement Classes through the date of Court-ordered settlement notice; (3) approve the form and content of, and direct the distribution of, the proposed Class Notice and accompanying Settlement Fund Claim Form and Reimbursement Program Claim Form; (4) authorize and direct the Parties to retain JND Legal Administrative as Settlement Administrator; and (5) schedule a Final Approval Hearing not earlier than 185 days after Preliminary Approval is granted.

- 25 -

DATED: June 7, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Steve W. Berman*
Steve W. Berman
Jerrod C. Patterson
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
jerrodp@hbsslaw.com

Robert C. Hilliard
Lauren A. Akers
Bonnie J. Rickert
HILLIARD LAW
719 S. Shoreline Blvd.
Corpus Christi, TX 78401
Telephone: (361) 882-1612
bobh@hilliard-law.com
lakers@hilliard-law.com
brickert@hilliard-law.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt, Jr. (P81118)
THE MILLER LAW FIRM PC
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

*Attorneys for Plaintiffs*

- 26 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 7, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

By: */s/ Steve W. Berman*
Steve W. Berman

- 27 -