## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK D. CHAPMAN, *et al.*, | Case No. 2:19-cv-12333-TGB-DRG |
| Plaintiffs, | |
| | Hon. Terrence G. Berg |
| v. | Magistrate Judge David R. Grand |
| GENERAL MOTORS LLC, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiffs Mark Chapman, Kyle McDuffie, Bryan Joyce, Stacy Wade Sizelove, Kevin Allen Lawson, Holly Reasor, Homero Medina, Jacqueline Bargstedt, Calvin Smith, Nathan Howton, and Trisha Alliss ("Class Plaintiffs"), by and through their counsel, respectfully move the Court for an Order:

1. Granting final approval of the proposed class action Settlement; and

2. Finally modifying its March 31, 2023 Order on Class Certification, to reflect the extended period of the proposed Settlement Classes.

In support of this Motion, Class Plaintiffs have contemporaneously filed a Memorandum of Law, with exhibits thereto.

In accordance with L.R. 7.1(a), counsel for the Class Plaintiffs sought the concurrence of counsel for GM in the relief sought by this Motion on January 3, 2024, and GM does not oppose this motion.

For the reasons set forth in the Memorandum of Law, Class Plaintiffs respectfully request that the Court grant their Unopposed Motion and enter the accompanying Proposed Order.

DATED: January 7, 2025                    Respectfully submitted,

                                          HAGENS BERMAN SOBOL SHAPIRO LLP

                                          /s/ Steve W. Berman
                                          Steve W. Berman
                                          Jerrod C. Patterson
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1301 Second Avenue, Suite 2000
                                          Seattle, WA 98101
                                          Telephone: (206) 623-7292
                                          steve@hbsslaw.com
                                          jerrodp@hbsslaw.com

                                          Robert C. Hilliard
                                          Lauren A. Akers
                                          Bonnie J. Rickert
                                          HILLIARD LAW
                                          719 S. Shoreline Blvd.
                                          Corpus Christi, TX 78401
                                          Telephone: (361) 882-1612
                                          bobh@hilliard-law.com
                                          lakers@hilliard-law.com
                                          brickert@hilliard-law.com

E. Powell Miller (P39487)
Dennis A. Lienhardt, Jr. (P81118)
THE MILLER LAW FIRM PC
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com

*Attorneys for Plaintiffs and the Certified
Classes*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK D. CHAPMAN, *et al.*,

          Plaintiffs,

      v.

GENERAL MOTORS LLC,

          Defendant.

Case No. 2:19-cv-12333-TGB-DRG

Hon. Terrence G. Berg
Magistrate Judge David R. Grand

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
<u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

**Page**

QUESTIONS PRESENTED ................................................................v

STATEMENT OF CONTROLLING OR MOST IMPORTANT
      AUTHORITY ...........................................................................vi

I.      INTRODUCTION ..................................................................1

II.     THE SETTLEMENT AGREEMENT AND TERMS ...................4

     A.    The Settling Classes ....................................................4

     B.    Relief and settlement consideration ..........................5

          1.    Future warranty coverage and payment for repairs ...................5

          2.    Establishment of common fund ................................6

               a.    Overview...............................................6

               b.    Payments to Repair Group................................6

               c.    Payments to Former Owner Group.................................7

III.    THE COURT SHOULD FINALLY MODIFY THE
       CERTIFIED CLASSES TO CONFORM TO THE
       SETTLEMENT AGREEMENT ..................................................8

IV.    THE PROPOSED SETTLEMENT SATISFIES THE
       STANDARD FOR final APPROVAL .........................................9

     A.    There is no fraud or collusion. ...........................10

     B.    The complexity, expense, and likely duration of the
          litigation favor approval. ..................................11

     C.    The amount of discovery engaged in by the Parties favors
          approval. .........................................................11

     D.    The likelihood of success on the merits favors approval. ...................12

- i -

E.    Experience and Class Counsel's opinions favor approval. .................13

F.    The Settlement is fair to absent Class Members. .................................14

G.    Reaction of the Settlement Class to the Settlement
      supports final approval. ........................................................................14

      1.    Overview ......................................................................................14

      2.    Class Member Objections ...........................................................15

H.    The Settlement is consistent with the public interest. .........................19

I.    The other factors set forth in Rule 23(e)(2) support final
      approval. ...............................................................................................20

      1.    The proposed method of distributing relief to the
            Class is effective and efficient. ..................................................20

      2.    The requested attorneys' fees and expenses are fair
            and reasonable. ............................................................................21

V.    THE FORM AND MANNER OF NOTICE ARE PROPER .......................22

VI.    CONCLUSION..............................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................9

*Bautista v. Twin Lakes Farms, Inc.*,
    2007 WL 329162 (W.D. Mich. Jan. 31, 2007)....................................10

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .............................................12, 19

*Daoust v. Maru Rest. LLC*,
    2019 WL 1055231 (E.D. Mich. Feb. 20, 2019)..................................22

*Daoust v. Maru Rest., LLC*,
    2019 WL 2866490 (E.D. Mich. July 3, 2019)...................................15

*In re Flint Water Cases*,
    571 F. Supp. 3d 746 (E.D. Mich. 2021) .........................................15

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) ..................................................9

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................................9

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ...............................................11

*N.Y. State Teachers' Ret. Sys. v. GM*,
    315 F.R.D. 226 (E.D. Mich. 2016) ...............................................19

*In re Nationwide Fin. Servs. Litig.*,
    2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ..................................14

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................13

*Rankin v. Rots*,
    2006 WL 1876538 (E.D. Mich. June 27, 2006) ................................13

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ...................................................14

*Robinson v. Ford Motor Co.*,
    2005 WL 5253339 (S.D. Ohio June 15, 2005) ..................................................10

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................10, 12

*UAW v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) .................................................13

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ................................................................................9

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) .............................................................................10

## Other Authorities

Fed. R. Civ. P. 23 .............................................................................*passim*

## QUESTIONS PRESENTED

1. Whether the Court should approve the proposed settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)?

   Suggested Answer: Yes.


2. Whether the Court should finally modify its March 31, 2023 Order on Class Certification, to reflect the extended period of the proposed settlement classes?

   Suggested Answer: Yes.

## STATEMENT OF CONTROLLING OR
## MOST IMPORTANT AUTHORITY

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*Daoust v. Maru Rest. LLC*, 2019 WL 1055231 (E.D. Mich. Feb. 20, 2019)

## I.    INTRODUCTION

Subject to this Court's final approval, Class Plaintiffs and GM (collectively, the "Parties") have reached a proposed Settlement[1] resolving allegations that certain 2011-2016 GMC and Chevrolet diesel trucks equipped with 6.6L Duramax engines (the "Class Vehicles") contain defective high-pressure fuel pumps (the "CP4 pump").[2] As detailed below, the Settlement is an excellent result for the Settlement Class, providing a significant and certain benefit to vehicle owners in a case that presented numerous hurdles and risks.   Plaintiffs respectfully submit that the Court should grant final approval of the Settlement.

Over the span of nine months, the Parties participated in two formal mediation sessions with the assistance of experienced mediator Tom McNeill of Tom McNeill ADR, PLLC. The Parties have also engaged in numerous individual discussions with the mediator and several arm's-length negotiations with each other. As a result of these negotiations, Class Plaintiffs have achieved a settlement that will provide substantial relief to the Class. The benefits Class Members will receive are entirely fair, reasonable, and adequate, especially in light of the substantial risks posed by continued litigation.

---

[1] The Settlement Agreement is attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval. *See* ECF No. 222-2. The capitalized terms used in this Memorandum are defined in Section (II) of the Settlement Agreement.

[2] GM discontinued the use of the CP4 pump starting with MY2017.

Under the terms of the Settlement Agreement, GM will provide a total payment of $50 million for the benefit of the Class. As described in detail below, these funds (less costs and attorneys' fees) will be used to compensate Class Members who have paid out of pocket ("OOP") for repairs to their trucks related to the alleged CP4 Defect (the "Repair Group"), and those that allegedly overpaid for their vehicles at the point of sale and no longer own their vehicles (the "Former Owner Group"). Some Class Members identifiable through databases will receive direct payments, with no requirement that they submit a claim. Although the precise amount of OOP payments to each Class Member is not yet known, Class Plaintiffs' expert Ted Stockton estimates $6,356 for each repair, assuming a 50% claims rate. If the claims rate is 25%, Class Members would receive approximately $12,712 per repair. *See* Stockton Decl. ¶ 14, ECF No. 222-4, PageID.55573-55574¶.

In addition, GM will provide a future limited warranty, for a term of 12 months from the date of Final Approval or until the Class Vehicle reaches 200,000 miles, whichever comes first, to cover 50% of the cost of repair or replacement of a CP4 fuel pump in a Class Vehicle due to a catastrophic fuel pump failure during that term. This is prospective relief that benefits all current truck owners in the Class and adds value in addition to the $50 million. *See id.*

Finally, for Class Members who sold their trucks and did not have OOP expenses for an uncovered repair, they are entitled to compensation under the

Settlement Agreement for their alleged overpayment. Assuming a claims range rate of 5-10%, the amount of overpayment compensation would be $400–$800 per claimant. *See id.* ¶ 16, PageID.55574.

Taken together, this is an exceptional result for the Class, which seeks to both compensate truck owners who have already paid for a repair, and provide some peace of mind for current truck owners who are concerned about future pump failures.

On July 16, 2024, the Court preliminary approved the Settlement, and conditionally modified the class definitions from its previous Class Certification Order (ECF No. 170) to expand the period of the Settlement class to the date of the Court-ordered settlement notice. *See* ECF No. 236, PageID.55811-55812. The Court further approved the process by which Settlement Class Members would receive notice of the Settlement and submit claims, objections, or requests for exclusion. The Class Administrator (JND Legal Administration ("JND")) sent postcard notice to over 390,000 Class Members. *See* Decl. of Gina Intrepido-Bowen re: Settlement Notice Plan Implementation (hereafter "Intrepido-Bowden Decl."), at ¶ 11. The deadlines to submit objections and requests for exclusion from the Settlement Class have passed, with only 18 timely objections and 19 timely requests for exclusion from the Settlement submitted to JND. *See id.* ¶¶ 43-45.[3]

_____

[3] According to JND, there were also 153 timely exclusions filed and one untimely exclusion filed during the Notice of Pendency, before the Settlement Agreement was reached. *Id.* ¶ 44.

The Settlement satisfies all the prerequisites for final approval, and Class Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the proposed Final Approval Order. Class Plaintiffs also seek to finally modify the class certification Order to expand the period of the Settlement Class to the date of the Court-ordered settlement notice.

## II.    THE SETTLEMENT AGREEMENT AND TERMS

### A.    The Settling Classes

The Settlement Agreement was reached on behalf of the following Classes (collectively, the "Settlement Class Members" and the "Certified States"):

> All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in California from March 1, 2010, to the date of the Court-ordered settlement notice.

> All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Florida from March 1, 2010, to the date of the Court-ordered settlement notice.

> All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Illinois from March 1, 2010, to the date of the Court-ordered settlement notice.

> All persons who purchased one or more of the Class Vehicles from a GM-authorized dealership in Iowa from March 1, 2010, to the date of the Court-ordered settlement notice.

> All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in New York from March 1, 2010, to the date of the Court-ordered settlement notice.

> All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Pennsylvania from March 1, 2010, to the date of the Court-ordered settlement notice.

All persons or entities who purchased one or more of the Class Vehicles from a GM-authorized dealership in Texas from March 1, 2010, to the date of the Court-ordered settlement notice.

Excluded from the Settlement Class are: GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; any judge to whom this Action is assigned, his or her spouse; individuals and/or entities who validly and timely opted-out of the previously certified Classes or who validly and timely opt-out of the Settlement Class; and current or former owners of a Class Vehicle that previously released their claims in an individual settlement with GM with respect to the issues raised the Action.

## B.   Relief and settlement consideration

### 1.   Future warranty coverage and payment for repairs

All current Settlement Class Members who still own their trucks will receive prospective future warranty coverage for repairs performed at GM-authorized dealerships on the CP4 fuel pump and related components, at 50% coverage (the "Future Reimbursement Program"). *See* Class Action Settlement Agreement ("SA") at ¶ 3.5, ECF No. 222-2, PageID.55482-55483. This extended warranty coverage will run with the vehicles regardless of ownership, for up to 12 months, from the date of Final Approval, or 200,000 miles from original sale (whichever comes first). *See id.* ¶¶ 3.5-3.6, PageID.55482-55483. Pursuant to the Agreement, claims under the Future Reimbursement Program will be submitted to and administered by JND. *Id.* ¶ 3.7,

PageID.55483. Class Members who submit valid and timely claim forms to JND will receive 50% reimbursement for repairs or replacements incurred during the Future Warranty Coverage and Reimbursement Program period. *See id.* ¶¶ 3.8-3.9, PageID.55484-55485.

This is a substantial benefit for the Class, as it provides some peace of mind for current Class Vehicle owners who are concerned about a pump failure in the future. This future warranty applies to all Class Vehicles, including the earliest year models, which means that Class Vehicle owners who for years have not had warranty coverage will be eligible for an additional 12 months of warranty.

### 2. Establishment of common fund

#### a. Overview

The Settlement provides for a non-reversionary fund of $50 million, which includes costs and attorneys' fees. The maximum amount of attorneys' fees, costs, and expenses that Class Counsel seek is $15 million, which is 30% of the settlement amount and does not account for the value of future repairs paid for under this settlement. Of the remaining $35 million, $30 million will be allocated to compensate the Repair Group, and $5 million to compensate the Former Owner Group.

#### b. Payments to Repair Group

Class Plaintiffs' expert Ted Stockton estimates that there are approximately 9,400 trucks that (i) were purchased from a GM dealership (either used or new) from the Certified States; (ii) experienced a catastrophic engine failure due to the CP4

Defect; and (iii) for which truck owners had to pay out of pocket for repair, either because the repairs were not covered under warranty or the trucks were out of warranty. *See* Stockton Decl. at ¶¶ 8-9, ECF No. 222-4, PageID.55571-55572. With $30 million in funds, if the claims and direct payment rate is 50%, the payments would be approximately $6,356 per repair, and if the claims rate is 25%, the payments would be approximately $12,712. *Id.* ¶ 14, PageID.55573-55574. This is a substantial benefit for the class, as Mr. Stockton previously calculated the average cost of repair as $9,551. *See id.* ¶ 12, PageID.55573. Repair Class Members will receive payments through a two-step process, as detailed in Plaintiffs' Unopposed Motion for Preliminary Approval,[4] which the Court granted on July 16, 2024.[5]

### c.   Payments to Former Owner Group.

For the remaining Class Members in the Former Owner Group, JND will use $5 million in funds to compensate the Former Owner Group using a claims-based system. Mr. Stockton estimates that there are approximately 125,000 trucks in this group. The payments based on varying claims rates are as follows (*see* Stockton Decl. ¶¶ 14, 16, ECF No. 222-4, PageID.55573-55574):

- 5% claimant rate = 6,250 claimants. $5M/6,2500 = $800 per claimant.

- 7% claimant rate = 8,750 claimants. $5M/8,750 = $570 per claimant.

- 10% claimant rate = 12,500 claimants. $5M/12,500 = $400 per claimant.

---

[4] *See* ECF No. 222, PageID.55450-55451.
[5] *See* ECF No. 236.

### III.   THE COURT SHOULD FINALLY MODIFY THE CERTIFIED CLASSES TO CONFORM TO THE SETTLEMENT AGREEMENT

The Parties respectfully ask the Court to finally modify for purposes of settlement the class definitions certified in the Class Certification Order to conform to the period negotiated by the Parties. Under the Court's March 31, 2023 Class Certification Order (ECF No. 170), the certified Classes covered persons or entities who purchased the Class Vehicles from GM-authorized dealerships in the Certified States between March 1, 2010, through "the date of the Court-ordered notice" of the certification of the state Classes, which was June 29, 2023. The Court's Order Granting Preliminary Approval conditionally modified the class definitions to extend the class period for the Settlement Class to "the date of the Court-ordered settlement notice." *See* ECF No. 236, PageID.55811-55812. As detailed in Plaintiffs' Motion for Preliminary Approval, and as the Court ultimately found in its Order Granting Preliminary Approval, there is good cause for modifying the previously certified class definitions because all of the Rule 23 factors that supported the Court's initial Order apply equally to the proposed Settlement Class. *See* ECF No. 222, PageID.55454-55456; ECF No. 236, PageID.55811-55812.

Class Plaintiffs accordingly request that the class definitions certified in the Class Certification Order be finally modified and extended to the "date of Court-

ordered settlement notice." GM consents to this final modification solely for the purpose of settlement.

## IV.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions. *See* Fed. R. Civ. P. 23(e); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *UAW*, 497 F.3d at 632 ("[W]e must consider—the federal policy favoring settlement of class actions . . . ."); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.").

The Sixth Circuit relies on seven factors in evaluating class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) fairness to absent class members; and (7) the public interest. *UAW*, 497 F.3d at

626; *see also Williams*, 720 F.2d at 922-23. In considering these factors, courts apply a "strong presumption" in favor of finding a settlement to be fair.[6] As set forth below, the seven-factor standard supports approval of the Settlement Agreement.

**A.    There is no fraud or collusion.**

The Parties were all represented by experienced counsel. Class Counsel have significant experience litigating numerous consumer class actions, including automotive defect cases. *See* Berman Decl. ¶ 2, ECF No. 222-5, PageID.55601;Hilliard Decl. ¶ 2, ECF No. 222-6, PageID.55636. The Settlement Agreement was achieved only after years of vigorously contested litigation, and after arm's-length and good faith negotiations between the Parties with Detroit-based mediator Tom McNeill. There is no indication of fraud or collusion. *See* Berman Decl. ¶ 5, ECF No. 222-5, PageID.55602; *In re Telectronics Pacing*, 137 F. Supp. 2d at 1018 (citing NEWBERG ON CLASS ACTIONS § 11.51 (3d ed. 1992)) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

---

[6] *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."); *see also Bautista v. Twin Lakes Farms, Inc.*, 2007 WL 329162, at *5 (W.D. Mich. Jan. 31, 2007); *Robinson v. Ford Motor Co.*, 2005 WL 5253339, at *4 (S.D. Ohio June 15, 2005).

**B.      The complexity, expense, and likely duration of the litigation favor approval.**

The Settlement in this action comes at an appropriate time, given that the Parties have been litigating the issues in this case for more than five years, the Court has granted class certification as to seven states, and summary judgment has been fully briefed (but not yet decided). This Settlement also avoids the risk and costs of an eventual trial in this case, which would hinge on complex issues involving the CP4 Defect, GM's knowledge of the defect, and the robustness of its testing procedures, among other issues.

Even if Class Plaintiffs prevailed at trial, it could be years before any Settlement Class Member received any benefit in light of the likely post-trial motions and appeals to follow; GM obviously has been aggressive in litigating all issues in this case. In contrast, the Settlement provides substantial relief to Class Members in a prompt and efficient manner. "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006).  This factor favors final approval.

**C.      The amount of discovery engaged in by the Parties favors approval.**

The Parties have engaged in substantial discovery. From approximately June 2019 through July 2023, the Parties have collectively exchanged more than 145 sets of discovery requests and responses; produced and reviewed more than 44,500 documents; conducted 15 class representative vehicle inspections; conducted 30

- 11 -

depositions; and produced 21 expert reports, including 17 Plaintiffs' expert reports and four GM expert reports, totaling more than 870 substantive pages in length. *See* Berman Decl. ¶ 3, ECF No. 222-5, PageID.55601-55602. Based on this discovery, the Parties have a good understanding of the respective strengths, weaknesses, and risks of continued litigation, which directly informed the Settlement Agreement terms.

**D.    The likelihood of success on the merits favors approval.**

When evaluating the reasonableness of a class action settlement, courts consider "the risks, expense, and delay Plaintiffs would face if they continued to prosecute this complex litigation through trial and appeal and weighs those factors against the amount of recovery provided to the Class in the Proposed Settlement." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). A settlement is generally viewed favorably because it "'avoids the costs, delays, and multitudes of other problems associated with them.'" *See In re Telectronics Pacing*, 137 F. Supp. 2d at 1013 (citation omitted).

Here, but for the Settlement, the litigation would largely continue to be contested, and counsel for all Parties were committed to litigate this case through trial and beyond, as necessary. Accordingly, there are substantial risks and costs if this action were to proceed. While Class Counsel believes that the Class Plaintiffs and Class would ultimately prevail at trial, Class Counsel recognizes that ultimate success is not assured and believes that, when considering the risks of proving both liability and recoverable damages—and surviving appeal—the Settlement is unquestionably

fair, adequate, and reasonable. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *11 (E.D. Mich. Dec. 13, 2011) (while plaintiffs may "remain optimistic about their ultimate chance of success . . . there is always a risk that Defendants could prevail with respect [to] certain legal or factual issues," which weighs in favor of approval of settlement). Avoiding unnecessary expense of time and resources clearly benefits all parties and the Court. *See UAW v. Ford Motor Co.*, 2006 WL 1984363, at *24 (E.D. Mich. July 13, 2006) ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement.").

## E. Experience and Class Counsel's opinions favor approval.

In considering approval of a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006). Class Counsel here have extensive experience in handling complex mass torts and class action cases, including automotive defect cases like at issue here. *See* ECF No. 222-5, Berman Decl. ¶ 3 & Ex. A, PageID.55601, 55605-55635; ECF No. 222-6, Hilliard Decl. ¶ 2 & Ex. A, PageID.55636, 55640-55655. Class Counsel have thoroughly investigated and analyzed the claims alleged in this action and made informed judgments regarding the Settlement and believe it is fair, reasonable, and adequate. Class Counsel also engaged in good-faith bargaining overseen by an experienced mediator. This further weighs in support of final approval.

**F.     The Settlement is fair to absent Class Members.**

This factor evaluates whether the settlement "appears to be the result of arm's length negotiations between the parties and fairly resolves all claims which were, or could have been asserted." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) (internal citation omitted). As set forth above, the Settlement Agreement was reached only after years-long litigation, as well as multiple arm's-length mediation sessions and extensive settlement discussions over the course of nine months. ECF No. 222-5, Berman Decl. ¶ 5, PageID.55602. The resulting Settlement Agreement provides fair terms to all Settlement Class Members. Moreover, the release in this case extends only to claims that were or could have been asserted in this case and thus there is no risk of unfairness to absent Class Members. All named class representatives support the settlement. *See id.* at ¶ 4, PageID.55602; ECF No. 222-6, Hilliard Decl. ¶¶ 3-4, PageID.55636-55637.

**G.     Reaction of the Settlement Class to the Settlement supports final approval.**

**1.     Overview**

"In considering a class action settlement, the Court should also look to the reaction of the class members." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *7 (S.D. Ohio Aug. 19, 2009). In accordance with the timeline provided in the Preliminary Approval Order, JND mailed copies of the Notice to 390,038 Class Members. *See* Intrepido-Bowden Decl. ¶ 11. The deadlines for Settlement Class

- 14 -

Members to object to the Settlement, or to request exclusion from the Settlement Class, have both passed. The response to the Settlement has been overwhelmingly favorable. There have only been 19 timely requests for exclusion from the Class Settlement, and 18 objections to the Class Settlement. *See id.* ¶¶ 43, 45.[7] This means that less than .004% of Settlement Class Members sought exclusion, and less than .005% of Settlement Class Members objected. These percentages favor final approval of the Settlement. *See Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at \*3 (E.D. Mich. July 3, 2019) ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness." (citation omitted)); *In re Flint Water Cases*, 571 F. Supp. 3d 746, 783-84 (E.D. Mich. 2021) (granting final approval of settlement despite "a very small percentage" of class members objecting to its terms). In addition, JND has already received 3,035 claim forms from prospective Settlement Class Members,[8] and as noted above, the Settlement also has the full support of all the Plaintiffs. *See supra* § IV.F.

## 2. Class Member Objections

Below is a summary of objections received by JND to the Settlement.

Jeff Miller objected on the grounds that the settlement should not be limited to original owners, it should not be limited to GM-authorized dealerships performing the

---

[7] Separately, during the Notice of Class Pendency period, there were 153 timely Class exclusion requests submitted, one of which was later withdrawn. *See id.* at ¶ 44.
[8] *See* Intrepido-Bowden Decl. ¶ 47.

pump replacements, and it should include replacement of the CP4 pump with the CP3 pump. ECF No. 244. On Mr. Miller's first two points, the settlement is not limited to original owners, although it is limited to purchases from GM dealerships (either new or used), which is consistent with the Court's ruling on class certification. The settlement is also not limited to GM-authorized dealerships performing the repair; the Settlement provides for reimbursement for repair by GM or any third party.   In addition, it is unrealistic to suggest that GM would have agreed to replace the CP4 pump with the CP3 pump in 390,000+ vehicles.

Roger Adams objected on the grounds that the extended warranty should last longer than 12 months, and that there should be no time limitation because he has low mileage on his truck and his pump may not fail until after the time period has elapsed. GM realistically would not agree to extend a warranty indefinitely, and the extended warranty as negotiated by counsel provides a significant future benefit to Class Members. *See supra* § II.B.1. Mr. Adams also objects because the extended warranty only covers 50% of the costs, and truck owners with previous failures will be fully reimbursed for their costs. This is not accurate; the amounts paid to Class Members will depend on the claims rate, which may be more or less than the coverage offered by the extended warranty.

Peter Buckle, who purchased a Class Vehicle new in 2014, also objects to 50% coverage of future repairs, because he expected the vehicle to last through his

retirement years. Michael Sternberg similarly objects to the extended warranty provision, although based on an incorrect assumption about the costs he will bear for a repair.[9] Robert Wardlaw objects on similar grounds, although erroneously suggests that this Court has *concluded* that the CP4 pump is "unreasonably fragile and susceptible to catastrophic failure." But a time/mileage warranty is the industry standard, and the extended warranty will be provided equally to all Class Members for vehicles which are all currently out of factory warranty. Mr. Buckle, Mr. Sternberg, and Mr. Wardlaw also had the opportunity to exclude themselves from the Class and seek separate, individual relief, but they did not do so.

Adrian Diaz and Christopher Fleming further object to the settlement because the terms purport to favor Class Members with prior failures, and the extended warranty only covers 50% of future repairs. Plaintiffs incorporate by reference their responses to Mr. Buckle's objections.

Gerard Fox submitted a handwritten objection, and he contends that the pump should be replaced "now or anytime it malfunctions before 200,000 miles regardless of time or at least 20 years." Similarly, James Heberer submitted an objection on the ground that the CP4 pump should be replaced with the CP3 pump. Gregory Sannebeck

---

[9] Mr. Sternberg contends requiring repairs to occur at GM dealerships means that "GM will actually make money on this settlement after the invoice is inflated enough so that my half covers the whole repair and then some." There is no basis for this assertion, and the claims administration process (including the extended warranty claims) will continue to be overseen and monitored by JND during the entire 12-month period.

and Jerome Winters object on both of these grounds as well. As detailed above, realistic limitations on extended warranties are the industry standard, and replacement of the pump with a different pump was not a feasible outcome from the settlement negotiations.

Terrie Geter and Russell Kirk object to the requirement that vehicles must be purchased from a GM dealership under the Settlement terms. Once again, this is consistent with the Court's ruling on class certification, and Geter and Kirk's vehicles may still be covered under the terms of the extended warranty, regardless of where they purchased the vehicle.

Neil Hickox objects because "previous owners who did not have to make any repairs should [not] be entitled to any compensation," because those funds should be provided to current owners who have not yet had repairs. Payment to previous truck owners based on an overpayment theory is consistent with Plaintiffs' damages theory, which this Court has upheld at every stage of this litigation. And it is not true that current owners are unprotected; they benefit from the extended warranty negotiated by the Parties.

Eric Kopp's objection is based on the misunderstanding that he would not be entitled to compensation because his repairs were performed by a third party in November 2023. Plaintiffs' counsel have asked JND to clarify the terms of the settlement with Mr. Kopp.

- 18 -

David Salvalzo's objection seems to be based on his inability to pay the full repair cost, and his truck is currently inoperable until he pays for the repair. This is an unfortunate situation, but not a problem that a Settlement Agreement, covering all Class Members, can realistically resolve. If Mr. Salvalzo can find a way to finance the repair, he will be compensated under the terms of the Settlement Agreement, and if his Class Vehicle still has less than 200,000 miles, he will be eligible for the future reimbursement program if his vehicle experiences CP4 fuel pump failure in the future.

Stanley S. Shoemaker and Jeffrey Wieners object because each of them purchased the vehicles in Arkansas, which puts them outside the class. Mr. Shoemaker and Mr. Wiener are not bound by the terms of the Settlement Agreement and have no standing to object. *See, e.g.*, *N.Y. State Teachers' Ret. Sys. v. GM*, 315 F.R.D. 226, 239 (E.D. Mich. 2016) (non-class members lacked standing to object to settlement).

**H.   The Settlement is consistent with the public interest.**

The Court also considers whether the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc.*, 962 F.2d at 1205). Here, it is clearly in the public interest to approve this Settlement. The Settlement provides extensive benefits, including payments to Class Members who have paid out of pocket for repairs, and a

12-month new warranty on the CP4 pump. It further resolves the claims of the Class, eliminates the risk of non-recovery on behalf of the Class, provides certainty to GM, and eases the burden of the Court's resources.

## I.     The other factors set forth in Rule 23(e)(2) support final approval.

Rule 23(e)(2), as amended, further considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), and (iv); Fed. R. Civ. P. 23(e)(2)(D). Each of these additional considerations supports final approval of the Settlement.

### 1.     The proposed method of distributing relief to the Class is effective and efficient.

As fully detailed in Class Counsel's Motion for Preliminary Approval,[10] the method of distributing Class Members' relief is effective and efficient. Some Class Members are automatically entitled to Settlement payments without having to submit any claim form or take any other steps. Other Class Members may submit a claim form for reimbursement costs relating to the costs of their CP4 repairs. *See* Intrepido-Bowden Decl. Ex. G

---

[10] *See* ECF No. 222, PageID.55441, 55450-55451.

**2.     The requested attorneys' fees and expenses are fair and reasonable.**

Class Counsel previously filed a Motion for Attorneys' Fees, Expenses, and Incentive Awards (ECF No. 246) ("Fee and Expense Motion"), which is incorporated by reference. As detailed therein, Class Counsel is applying to the Court for attorneys' fees and expenses in the amount of $15,000,000. These amounts include all fees, costs, and expenses incurred by Class Counsel in connection with this litigation and are reasonable given the risk and complexity of the case and the skill and effort expended by Counsel. Class Counsel is also applying to the Court for service awards to be paid by GM (separate and apart from the $50 million settlement) of $5,000 for each Class Plaintiff, for a total of $55,000 in service awards. GM does not oppose Class Counsel's Fee and Expense Motion.

**a.     The Settlement treats Settlement Class Members equitably.**

Finally, the proposed Settlement treats all Settlement Class Members equitably relative to one another. There is no preferential treatment for any member of the Settlement Class. Plaintiff Class Members will receive the same benefit as all Settlement Class Members, with Court-approved service awards providing

compensation to Plaintiffs for efforts they expended on behalf of the Settlement Class, which were crucial to the successful settlement.[11]

## V.   THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which Class Settlement Notice is disseminated, as well as its content, must satisfy Rule 23(e)(1) (governing settlement notice) and due process. *See Daoust v. Maru Rest. LLC*, 2019 WL 1055231, at *2 (E.D. Mich. Feb. 20, 2019). Rule 23(e) requires that notice of a proposed settlement be provided to class members. Fed. R. Civ. P. 23. A proposed notice satisfies the Rule when it adequately puts Settlement Class Members on notice of the proposed settlement and "describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Daoust*, 2019 WL 1055231, at *2.

Here, following the Court granting preliminary approval of the Settlement, JND directly provided all Class Members with (a) a Short Form Notice substantially in the form attached as Exhibit D to the Settlement Agreement; (b) access to the Long Form Notice; and (c) access to the Settlement Fund and Reimbursement Program Claim Forms. *See supra* § IV.G; Intrepido-Bowen Decl. ¶ 4; *see also id.* ¶¶ 11, 15-22, 24-33 (describing JND's extensive direct outreach efforts to Settlement Class Members); *id.*

---

[11] Rule 23(e)(2)(C)(iv) asks the Court to consider any additional agreements made by the Parties in connection with the Settlement. The Settlement (and its related exhibits) is the only agreement made by the Parties in connection with the Settlement.

¶ 23 (noting that "[c]ombined, the direct notice effort successfully delivered notice to 375,728 Class Members, or 96% of the known Class.").

JND also set up and maintained a Settlement Website where Class Members may access the aforementioned documents, as well as a copy of the Settlement Agreement, the operative complaint, and additional information about the Action and Settlement. *Id.* ¶¶ 34-37. The Notice included the address of the Settlement Website, as well as an email address, P.O. box, and toll-free number so that Class Members may directly reach out to obtain information about the Settlement, all of which JND will continue to maintain throughout the Settlement administration process. *Id.* ¶¶ 38-40. As of December 27, 2024, JND has received more than 8,600 calls and emails via the toll-free line and email address. *Id.* ¶¶ 38-39.

The proposed notice plan satisfies all of Rule 23's requirements. The language of the Class Notice was drafted and agreed to by the Parties and is written in plain, simple terminology, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for requesting exclusion; (5) the identity of Class Counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. *See* July 7, 2024 Intrepido-Bowden Decl. at ¶¶ 16-17 & Ex. B, ECF No. 222-7, PageID.55661, 55720-55722; ECF No. 236,

- 23 -

PageID.55812-55813 (Order Approving Proposed Notice Plan). The Class Notice thus allows Settlement Class Members to make an informed and intelligent decision on whether to exclude themselves or object to the Settlement.

The dissemination of the Class Notice also satisfies all requirements. JND mailed and emailed the Short Form notice to the last known address of each potential member of the Settlement Class, which was checked and updated via the National Change of Address database. *See* Intrepido-Bowden Decl. ¶ 13. The Short Form Notice provides access to the Long Form Notice and applicable claim forms. Accordingly, Settlement Class Notice in this case complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

## VI.   CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement and issue a final modification of the certified class for settlement purposes.

DATED: January 7, 2025                    Respectfully submitted,

                                          HAGENS BERMAN SOBOL SHAPIRO LLP

                                          */s/ Steve W. Berman*
                                          Steve W. Berman
                                          Jerrod C. Patterson
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1301 Second Avenue, Suite 2000
                                          Seattle, WA 98101
                                          Telephone: (206) 623-7292
                                          steve@hbsslaw.com
                                          jerrodp@hbsslaw.com

                                          Robert C. Hilliard
                                          Lauren A. Akers
                                          Bonnie J. Rickert
                                          HILLIARD LAW
                                          719 S. Shoreline Blvd.
                                          Corpus Christi, TX 78401
                                          Telephone: (361) 882-1612
                                          bobh@hilliard-law.com
                                          lakers@hilliard-law.com
                                          brickert@hilliard-law.com

                                          E. Powell Miller (P39487)
                                          Dennis A. Lienhardt, Jr. (P81118)
                                          THE MILLER LAW FIRM PC
                                          950 W. University Drive, Suite 300
                                          Rochester, MI 48307
                                          Telephone: (248) 841-2200
                                          epm@millerlawpc.com
                                          dal@millerlawpc.com

                                          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 7, 2025, the foregoing was

electronically filed with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to counsel of record.

By: */s/ Steve W. Berman*
Steve W. Berman

- 26 -